UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

IN RE:                                               **MDL NO. 1893 ALL CASES**
RC2 CORP. TOY LEAD PAINT
PRODUCTS LIABILITY LITIGATION         Case No. 07 C 7184
_____

## DEFENDANTS' MEMORANDUM IN SUPPORT OF
## THEIR MOTION TO STAY PROCEEDINGS

Defendants RC2 Corporation and Learning Curve Brands, Inc. (collectively "RC2")
move the Court to stay all proceedings in this Multi-District Litigation ("MDL") pending final
approval of the settlement in *Barrett v. RC2 Corporation*, pending before the Circuit Court of
Cook County, Illinois, No. 07 CH 20924.

### I.      INTRODUCTION

The federal actions in this MDL purportedly represent the same nationwide plaintiff class
and assert the same claims as those made in a parallel state court action, titled *Barrett v. RC2
Corporation*.  Recently, the *Barrett* parties reached a comprehensive settlement with RC2, which
has received preliminary court approval.  Once the *Barrett* settlement receives final approval, the
plaintiffs' claims in the federal actions will be barred by *res judicata*.  Consequently, this Court
should exercise its judicial prerogative to stay this MDL in the interest of judicial economy.

### A.      The *Barrett* Lawsuit

On August 7, 2007, Plaintiff Byron Barrett filed a class-action lawsuit in the Circuit
Court of Cook County, Illinois against RC2.  In his complaint, Mr. Barrett alleged that RC2
marketed, manufactured, and distributed Thomas & Friends™ Wooden Railway Toys with paint
containing excess levels of lead.  Mr. Barrett brought his lawsuit on behalf of himself and all
other "purchasers of Thomas & Friends Wooden Railway vehicles, buildings, and other train set

components ("Thomas & Friends Toys") containing lead paint and which were distributed by Defendant between the dates of January 2005 and June 2007." [See *Barrett* Complaint, ¶ 1, a true and accurate copy of which is attached hereto as **Exhibit A**].

The *Barrett* court preliminarily approved the *Barrett* settlement by handwritten order on January 22, 2008. The current Preliminary Approval Order, however, was entered on January 23, 2008. [*See* Preliminary Approval Order, a true and accurate copy of which is attached to Defendants' Motion to Stay Proceedings]. The hearing for final approval is scheduled for May 6, 2008. The *Barrett* settlement provides comprehensive relief for the same class members purportedly represented in the federal cases in this MDL.

## II.    ARGUMENT

### A.    A Stay of this MDL Promotes Judicial Economy

As recognized by the United States Supreme Court, courts have the inherent power to use stays to control their dockets in the interest of judicial economy: "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936); *See also Board of Trustees of Teachers' Retirement System of Illinois v. Worldcom, Inc.*, 244 F. Supp.2d 900, 905-06 (N.D. Ill. 2002) (granting stay of proceedings to promote judicial economy). Moreover, the Seventh Circuit has warned that duplicative litigation represents an impediment to judicial economy: "[T]he results of simultaneous litigation of identical issues in the state and federal courts may be both 'unseemly' and a 'grand waste' of the efforts of the parties and the courts." *LaDuke v. Burlington Northern R.R. Co.*, 879 F.2d 1556, 1560 (7th Cir. 1989). Thus, it is within a court's prerogative to grant a stay when presented with duplicative litigation.

The federal MDL actions are unquestionably duplicative of the *Barrett* litigation.  The

federal MDL actions and the *Barrett* matter are all putative class actions that purport to represent

nationwide plaintiff classes consisting of all purchasers of Thomas & Friends™ Wooden

Railway Toys with paint containing excess levels of lead.  [Exhibit A**,** ¶ 1; Illinois Consolidated

Complaint, ¶ 1, a true and accurate copy attached hereto as **Exhibit B**.][1]   All the Complaints

assert claims based on consumer fraud, breach of warranties, negligence and unjust enrichment

as well.  [Exhibit A**,** ¶¶ 30-49, Exhibit B ¶¶ 78-112, 124-130, 136-151].  Moreover, they all seek

monetary damages based on RC2's alleged conduct.  [Exhibit A, ¶ 7, Exhibit B, ¶ 6].  Thus, there

is no substantive difference between the federal MDL actions and the *Barrett* litigation.

Not only are the federal MDL actions duplicative, they are also unnecessary.  The *Barrett*

parties have reached a comprehensive settlement that covers the same claims and parties as those

represented in this MDL.  The *Barrett* Court has already entered a preliminary settlement order,

certified a settlement class, and set a final settlement approval hearing date.  Upon final approval

of the *Barrett* settlement and entry of final judgment, the putative class claims asserted by the

federal MDL plaintiffs will be barred by the doctrine of *res judicata*.

Due to the *res judicata* effects of a state court settlement, federal courts are particularly

apt to exercise their inherent power to grant stays when presented with a preliminary settlement

reached in a parallel state court action.  *See Advanced Internet Tech., Inc. v. Google, Inc.*, Nos. C

05 02579 RMW, C 05 02885 RMW, 2006 WL 889477 (N.D. Cal. April 5, 2006) (granting stay

of federal class action where a parallel state court class action settlement had been preliminarily

approved); *Chartener v. Provident Mut. Life Ins. Co.*, No. Civ. A. 02 8045, 2003 WL 22518526

(E.D. Pa. Oct. 22, 2003) (granting stay of federal class action pending final resolution of state

---

[1] Other cases included in the MDL describe the putative class in similar terms.

court class action settlement); *Saltzman v. Kirshner*, No. 77 Civ. 2886, 1978 WL 1096 (S.D.N.Y. Jan. 31, 1978) (same).

This MDL represents a perfect scenario for the Court to exercise its inherent power to stay litigation in the interest of judicial economy. The MDL actions are duplicative of the *Barrett* matter. Once final approval of the *Barrett* settlement is obtained, the decision should have a *res judicata* effect and preclude any further prosecution of this case. As such, all of the time, energy, and resources spent by this court and counsel during this short interim period will be needlessly wasted. Further, even if, for some reason, final approval is not granted on the *Barrett* settlement, there will be no prejudicial effect on the Plaintiffs. Rather, the only effect would be a short delay in the proceedings. Thus, this Court should grant RC2's Motion to Stay Proceedings.

**B.      The Multi-Factor Test Set Forth in *Colorado River* also Supports Staying the Present Proceedings**

In addition to the Court's inherent power to stay litigation in the interest of judicial economy, the United States Supreme Court articulated an additional basis for granting a stay in its seminal *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) decision. In *Colorado River*, the United States Supreme Court set forth a framework by which a federal court can dismiss a duplicative federal action when there is a parallel proceeding in state court. Over the years, some courts have also used the *Colorado River* test as guidance when determining whether to issue a stay of proceedings; however, as noted above, a significant number of courts have not done so. In this case, and under this factual scenario, the decision is academic as the facts and circumstances of this case support a stay as described above and under the more rigorous *Colorado River* doctrine. This outcome is hardly surprising as both of legal arguments rest upon the same basic philosophy: that federal court abstention, based on the

4

presence of a parallel state court proceeding, rests on principals of "(w)ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation."  424 U.S. at 817.

The *Barrett* action is a parallel proceeding, the disposition of which will provide a fair and final adjudication of the issues arising from or related to the Thomas & Friends™ Wooden Railway Toys.  Accordingly, the Court should stay all proceedings in this MDL in order to conserve judicial resources and promote a comprehensive disposition of litigation.

### 1.      The *Barrett* Matter is a Parallel Action

The *Colorado River* doctrine applies only where concurrent state and federal actions are "parallel." *LaDuke,* 879 F.2d at 1559.  Thus, in order to grant a stay, this Court must determine that the *Barrett* action constitutes "parallel" litigation to this MDL.  "Suits are 'parallel' when substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Id.* (quoting *Calvert Fire Ins. Co. v. American Mut. Reinsurance Co.*, 600 F.2d 1228, 1229 n. 1 (7th Cir. 1979)).  Consequently, the *Barrett* action is a parallel action if it involves:  1) substantially similar parties; 2) who are litigating similar claims.  A review of *Barrett* and this MDL reveals that they are indeed, "parallel" actions.

As previously discussed, the MDL actions and the *Barrett* matter are brought as putative class actions.  The plaintiff classes defined in *Barrett* and the Illinois Consolidated matter are indistinguishable.  The *Barrett* Complaint defines the plaintiff class as "purchasers of Thomas & Friends Wooden Railway vehicles, buildings, and other train set components ("Thomas & Friends Toys") containing lead paint and which were distributed by Defendant between the dates of January 2005 and June 2007."  [Exhibit A, ¶ 1].  The Illinois Consolidated plaintiffs define their plaintiff class as "all persons who purchased Thomas & Friends Wooden Railway vehicles,

buildings and other train set components which contain lead paint and which were imported and/or distributed by Defendants between January 2005 and June 2007." [Exhibit B, ¶ 1][2]. Based upon these definitions of the plaintiff classes in *Barrett* and the Illinois Consolidated matter, they are clearly substantially similar.

The Defendants named in the two actions satisfy the "substantially similar" criteria as well. The *Barrett* Complaint names RC2 Corporation as the defendant. [Exhibit A.] The Illinois Consolidated plaintiffs have named RC2 Corporation along with Learning Curve Brands, Inc. ("Learning Curve") as Defendants. [Exhibit B.] Thus, the Illinois Consolidated matter adds Learning Curve in addition to RC2. This difference, however, is without merit. Learning Curve is a wholly owned subsidiary of RC2 Corporation. Although Learning Curve is not named in the *Barrett* Complaint, the Seventh Circuit has held that the defendants in parallel suits need not be identical. Instead, the defendants need only have similar interests in the dispute. *Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 700-01 (7th Cir. 1992). It is clear that RC2 Corporation and Learning Curve have similar interests in both the *Barrett* litigation and the Illinois Consolidated matter as they both are named for purposes of imposing liability for the distribution of Thomas & Friends™ Wooden Railway Toys[3]. Consequently, both complaints name substantively the same defendants. As both the plaintiff classes and defendants in the *Barrett* litigation and this MDL are substantially similar, the two actions satisfy the first prong of the "parallel" actions test.

---

[2] The other federal actions contained within the MDL define their putative classes in a substantially similar manner.

[3] Other cases included in the MDL name similar RC2 subsidiaries. Further, the *Murdock v. RC2 Corp., et al.*, Cause No. 07-cv-7188, also names two retailers, Toys 'R' Us and Walmart, as defendants. The claims against the retailers are the same as those against RC2. Further, the *Barrett* settlement releases all claims against these retailers.

Both matters satisfy the second prong as well.  Both *Barrett* and this MDL are class-action lawsuits based on the Defendants' alleged manufacturing, marketing, and/or distributing of Thomas & Friends™ Wooden Railway Toys made with paint containing excess levels of lead. [Exhibit A, ¶ 1-2, Exhibit B, ¶ 1-2].  The federal complaints, as well as *Barrett*, assert claims based on consumer fraud, breach of warranties, negligence, and unjust enrichment.  [Exhibit A, ¶¶ 30-49, Exhibit B ¶¶ 78-112, 124-130, 136-151][4].  Furthermore, both complaints seek monetary damages based on the Defendants' alleged conduct.  [Exhibit A, ¶ 7, Exhibit B, ¶ 6][5]. Thus, it is clear that both the *Barrett* action and the federal actions contained within the MDL assert similar claims.

As both the *Barrett* litigation and this MDL unmistakably involve substantially similar parties who assert similar claims, the two suits constitute "parallel" litigation, which may be stayed or dismissed pursuant to a *Colorado River* abstention analysis.

**2.    Eight of the Ten *Colorado River* Factors Strongly Support Abstention**

*Colorado River* set forth a series of factors that a federal court should consider when determining whether a dismissal, or in this case a stay, is appropriate.  *Colorado River*, 424 U.S. at 818-19.  Over time, courts have concluded that these factors are:  1) whether the state has assumed jurisdiction over property; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the order in which jurisdiction was obtained by the

---

[4] Likewise, the other federal actions contained within the MDL contain similar claims.

[5] The only difference between the *Barrett* complaint and the federal actions is that some of the federal cases  include a cause of action seeking damages for medical monitoring.  However, this distinction is not sufficient to defeat this stay.  The settlement agreement preliminarily approved by the *Barrett* Court releases these claims.  Courts have recognized that it is appropriate, acceptable, and enforceable for a release to go beyond the claims specifically spelled out in the Complaint. *See Williams v. General Elec. Capital Auto Lease, Inc.*, 159 F.3d 266, 273-74 (7th Cir. 1998) ("[T]he weight of authority holds that a federal court may release not only those claims alleged in the complaint, but also a claim 'based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented *and might not have been presentable in the class action*.") (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287 (9th Cir. 1992) (emphasis in original).

concurrent forums; 5) the source of governing law, state or federal; 6) the adequacy of state-court action to protect the federal plaintiff's rights; 7) the relative progress of state and federal proceedings; 8) the presence or absence of concurrent jurisdiction; 9) the availability of removal; and 10) the vexatious or contrived nature of the federal claim. *See LaDuke*, 879 F.2d at 1559.

The decision whether to dismiss or stay a federal action due to parallel state court litigation does not rest on a mechanical checklist. Instead, it relies on a careful balancing of the important factors as they apply in a given case. *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 16 (1983). A review of the *Colorado River* factors demonstrates that the balance weighs in favor of a stay in this MDL.

### i.  The Barrett Court has Assumed Jurisdiction

The *Barrett* Court has assumed jurisdiction over the property at issue, thus satisfying the first *Colorado River* factor. Some courts have found that a class-wide settlement, which has been preliminarily approved, is a form of *res* over which the court has dominion. *See e.g. In re First Commodity Corp., Customer Accounts Litigation*, 89 B.R. 283, 290 (D. Mass. 1988) (finding a *res* existing as a result of a class action settlement).[6] Moreover, by preliminarily certifying a settlement class, the *Barrett* Court has assumed jurisdiction over the parties and claims at issue in both *Barrett* and the present MDL. No similar certification or resulting jurisdiction has been or should be asserted by this Court over any of the classes proposed by Plaintiffs herein.

### ii.  Threat of Piecemeal Litigation

---

[6] Other courts which have found a class wide settlement not to be "r*es* or property" have found the factor to be "wholly irrelevant" in similar occurrences. *De Simas v. Big Lots Stores, Inc.*, No. C 06 6614 SI, 2007 WL 686638 at *6 (N.D. Cal. March 2, 2007) (granting stay of federal class action where a parallel state court class action settlement had been preliminarily approved).

Also of importance is the third *Colorado River* factor; the desirability of avoiding piecemeal litigation.  "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results."  *LaDuke*, 897 F.2d at 1560 (citations omitted.)  Because the claims asserted in this MDL overlap with those resolved by the preliminarily approved *Barrett* settlement; considerations of comity, conservation of judicial resources, and wise judicial administration all strongly support abstention.  This same conclusion has been reached by a host of federal courts.  *See LaDuke*, 879 F.2d at 1556 (holding that the threat of piecemeal litigation from two parallel suits warranted federal abstention); *Caminiti*, 962 F.2d at 701 (holding that "the desirability of avoiding piecemeal litigation is the factor weighing most heavily in favor of a stay" where only two parallel suits had been filed); *Schomber by Schomber v. Jewel Companies, Inc.*, 614 F. Supp. 210 (N.D. Ill. 1985) (staying federal class action where one parallel state court class action was already underway); *Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 211 (2nd Cir. 1985) (upholding district court's grant of stay because "the danger of piecemeal litigation is the paramount consideration in this case");  *Romine v. Compuserve Corp.*, 160 F.3d 337 (6th Cir. 1998) (upholding stay of class action due primarily to the threat of piecemeal litigation); *Franklin Commons East P'ship v. Abex Corp.*, 997 F. Supp. 585 (D.N.J. 1998) (granting motion to stay parallel federal court litigation and noting that the desirability of avoiding piecemeal litigation is the most important factor in a federal court's decision to abstain).

In upholding a federal district court's decision to abstain in favor of the state court proceeding, the Sixth Circuit observed that class action litigation is particularly well suited to application of *Colorado River* abstention:

> Complex class litigation is particularly suited to the application of a non-duplication principle…[D]uplication of such class litigation, with all the

multiplicity of waste attendant in it, is simply more likely to present an exceptional circumstance warranting *Colorado River* abstention.

*Romine*, 160 F.3d at 341 (citations omitted).  As both *Barrett* and this MDL involve indistinguishable classes and claims, this Court should follow the lead of numerous federal courts and stay this MDL pending final resolution of *Barrett.*

### iii.  Relative Progress of the Parallel Actions

Along with the threat of piecemeal litigation, another factor which supports the Defendants' argument for a stay is the seventh *Colorado River* factor:  the relative progress of the parallel actions.  The state court case has progressed to a point where a settlement was reached and preliminarily approved by the court.  The federal case is still in the initial stages of discovery and has multiple motions to dismiss pending.  As such, the substantial progress of the *Barrett* matter supports the requested stay.

### iv.  Order in Which Jurisdiction is Obtained

The fourth factor; the order in which jurisdiction was obtained by the concurrent forums, also supports a stay.  With respect to jurisdiction, the *Barrett* court, by conditionally certifying a settlement class, has assumed jurisdiction over the class.  On the other hand, this Court is still several months away from even considering the question of class certification.[7]

If this Court determines that this factor relates to jurisdiction of the initial case, rather than class certification, the factor still would not support Plaintiffs.  Eighteen cases are currently consolidated before this Court.  Of these eighteen cases, some were initially filed prior to *Barrett*, while others were filed afterwards.  Accordingly, determining the order in which this Court and the *Barrett* Court obtained jurisdiction is difficult and largely superfluous when

---

[7] As this Court will recall, Plaintiffs in the Illinois Consolidated action sought an order requesting Motions for Class Certification to be filed on May 2, 2008.  At the urging of Defendants, Plaintiffs agreed to a slightly earlier date.

10

juxtaposed with other, more relevant factors.  Moreover, the technical order in which jurisdiction

was obtained should not be the sole focus of this factor.  "[P]riority should not be measured

exclusively by which complaint was filed first, but rather in terms of how much progress has

been made in the two actions."  *Moses H. Cone*, 460 U.S. at 21.  *See also Schomber*, 614 F.

Supp. at 217 ("As noted in *Moses H. Cone*, this factor should not be determined by a race to the

courthouse but instead by the extent of progress in the respective forums.")

### v.  Source of Governing Law

The fifth *Colorado River* factor, source of governing law, also supports a stay.  Plaintiffs

have focused their complaints on claims governed by state law, including various states'

consumer fraud acts, commercial codes, and products liability law.[8]  The absence of federal law

is notable as "the presence of federal-law issues must always be a major consideration weighing

against surrender."  *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 25-6.  As

there are no federal law issues, the fifth factor supports the Defendants' argument for abstention.

### vi.  Adequacy of State Court Action to Protect Federal Plaintiffs' Rights

The adequacy of the state court action to protect the federal plaintiffs' rights is the sixth

factor in the *Colorado River* test.  As previously stated, both the *Barrett* matter and this MDL are

brought on behalf of a class representing all persons who purchased Thomas & Friends™

Wooden Railway vehicles, buildings, and other train set components which contain an excess

amount of lead and were distributed by the Defendants between January 2005 and June 2007.

Furthermore, all of the Plaintiffs' claims in this litigation are based on state law.[9]  Thus, there is

---

[8] One of the recently transferred cases, *Murdock v. RC2 Corp., et al.*, Cause No. 07-cv-7188, contains a single claim based upon federal law, a claim for violation of the Consumer Product Safety Act ("CPSA").  None of the other 17 lawsuits include a federal claim.  Further, there is a Motion to Dismiss currently pending with regards to Murdock's CPSA claim.

[9] *See infra*, footnote 8.

no reason why the state court action would not be an adequate forum for the federal court plaintiffs.

### vii. Concurrent Jurisdiction

The eighth *Colorado River* factor examines whether there is concurrent jurisdiction over the plaintiffs' claims.  As both this Court and the *Barrett* Court have concurrent jurisdiction over each and every one of the class members' claims, the eighth *Colorado River* factor weighs in favor of abstention as well.

### viii. Vexatious Litigation

Finally, the multiplicity of lawsuits filed against the Defendants, each purporting to represent interchangeable plaintiff classes, who seek substantially similar damages for identical alleged acts by the Defendants, certainly falls into the category of "vexatious" litigation.  *See Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1289 (7th Cir. 1988) (holding that separate suits initiated within several months of one another, seeking substantially the same relief from substantially the same parties constituted vexatious litigation).  The flood of identical lawsuits against the Defendants does not promote the pursuit of justice on behalf of the allegedly injured plaintiffs, but instead represents a potential bonanza of attorney-fees for the class plaintiffs' attorneys who manage to propel the litigation in their particular forum ahead the fastest.  In order to avoid this race to collect attorney fees, the Court should abstain from proceeding with this litigation and allow the parallel *Barrett* matter to reach its final conclusion.

### 2. The Remaining Factors are Ambiguous

The two remaining *Colorado River* factors neither support nor detract from the Defendants' arguments in favor of abstention.  The second factor examines the inconvenience of the federal forum geographically.  Although *Barrett* and this MDL are in separate courts, thereby

12

forcing the Defendants to defend simultaneous suits in different locations, both courts are located in Cook County, Illinois. Thus, this factor is largely irrelevant.

Finally, the relevance of the ninth factor, which examines whether removal to federal court is available is mitigated by the settlement. The *Barrett* parties have reached a settlement and need only final approval to fully resolve the litigation. At this point, it would be counterproductive for the Defendants to remove *Barrett* to federal court and sacrifice the efforts of the *Barrett* Court and parties. Thus, this factor should not weigh into the Court's decision to stay this MDL.

**D.    A Stay Will Not Prejudice The MDL Plaintiffs if the *Barrett* Settlement Does Not Receive Final Approval**

Finally, a stay of the federal MDL will not unduly prejudice the MDL plaintiffs. The *Barrett* court has already granted preliminary settlement approval. It has also set a date of May 6, 2008 for the final settlement approval hearing. When the settlement receives final approval, the claims of the federal MDL class members who do not opt out of the settlement will be barred by *res judicata*. But if a stay is granted in this MDL, and the *Barrett* settlement is not approved or otherwise finalized, then, at that time, the federal MDL plaintiffs will be free to proceed with this action. Nothing will be lost in the interim. However, in the interim, this Court and the parties will be spared the time and expense of litigating an action that will likely be rendered moot by the *Barrett* settlement. Accordingly, granting a stay pending final approval of the *Barrett* settlement does not unduly prejudice the plaintiffs while providing substantial economies of time and expense to the Court and parties.

## III.    CONCLUSION

The *Barrett* parties have reached a settlement that, upon final approval, will provide a full

and fair resolution of the Thomas & Friends™ Wooden Railway Toys litigation.  Thus, for the

reasons stated above, the Court should grant the Defendants' Motion to Stay Proceedings.

Dated: January 25, 2008

Respectfully submitted,

RC2 CORPORATION AND LEARNING
CURVE BRANDS, INC.


*s/ Judy S. Okenfuss*
Judy S. Okenfuss
*By one of their attorneys*

Judy S. Okenfuss
James L. Petersen
ICE MILLER LLP
One American Square
Suite 3100
Indianapolis, IN  46282-0200
(317) 236-2100

Bart T. Murphy #6181178
ICE MILLER LLP
2300 Cabot Drive, Suite 455
Lisle, IL  60532
(630) 955-6392

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 25th day of January, 2008, a copy of the foregoing has been filed electronically using the Court's CM/ECF system which sent electronic notification of this filing to the following counsel for Plaintiffs:

> Elizabeth A. Fegan  beth@hbsslaw.com
> Jack Reise  jreise@csgrr.com
> Joe R. Whatley, Jr.  jwhatley@wdklaw.com
> Robert James Pavich  rpavich@monicopavich.com
> Thomas A. Zimmerman, Jr.  tom@attorneyzim.com
> William N. Riley  wirliey@price-law.com

Additionally, the undersigned hereby certifies that a copy of the foregoing has been deposited in the U.S. Mail, first class postage prepaid, on the  25th day of January 2008, addressed to:

> Frederic S. Fox
> KAPLAN KILSHEIMER & FOX LLP
> 805 Third Avenue
> New York, NY  10022
>
> James A. Streett
> STREETT LAW FIRM, PA
> 107 West Main
> Russellville, AK  72811
>
> Thomas M. Ferlauto
> KING & FERLAUTO LLP
> 1880 Century Park East, Suite 820
> Los Angeles, CA  90067
>
> John S. Steward
> BURSTEIN LAW FIRM, P.C.
> 225 S. Meramec, Suite 925
> St. Louis, MO  63105
>
> W. Lewis Garrison, Jr.
> Gayle L. Douglas
> HENINGER GARRISON DAVIS, LLC
> 2224 First Avenue North
> Birmingham, AL  35203
>
> John Balestriere
> Craig Stuart Lanza
> BALESTRIERE PLLC
> 225 Broadway, Suite 2700

15

New York, NY  10007

Lance A. Harke, P.A.
Sarah Clasby Engel, P.A.
Howard M. Bushman, Esq.
HARKE & CLASBY LLP
155 South Miami Ave., Suite 600
Miami, FL  33130

Davy Carter
271 West Main Street
Suite 201
P.O. Box 628
Cabot, AR  72023

Peter S. Pearlman, Esq.
COHN LIFLAND PEARLMAN
HERRMANN & KNOPF LLP
Park 80 Plaza West-One
Saddle Brook, NJ  07663

Jeffrey Aaron Cooke
THE COOKE LAW OFFICE
PO BOX 188
331 Columbia Street
Lafayette, IN  47902

Kenneth A. Wexler
WEXLER TORISEVA WALLACE LLP
1 North LaSalle Street
Suite 200
Chicago, IL  60602

*s/ Judy S. Okenfuss*
Judy S. Okenfuss
ICE MILLER LLP
One American Square
Suite 3100
Indianapolis, IN  46282
(317) 236-2115

16