UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE:  RC2 CORP. TOY LEAD PAINT PRODUCTS LIABILITY LITIGATION | ) ) ) ) | MDL No. 1893 <br> Case No. 1:07-cv-7184 (Lead Case) |
|      *      *      * | ) ) | |
| APRIL WILSON, PARENT AND GUARDIAN OF MATTHEW WILSON, A MINOR, | ) ) ) ) | |
|            Plaintiff, | ) ) ) | Case No. 1:08-cv-308 <br> The Honorable Harry D. Leinenweber, Judge |
|         v. | ) ) ) | |
| RC2 CORPORATION, | ) ) ) | |
|            Defendant. | ) | |

**DEFENDANT'S RESPONSE TO MOTION TO REMAND REMOVED ACTION**

Defendant RC2 Corporation ("RC2"), for its response to the Motion to Remand Removed Action filed by Plaintiff April Wilson, parent and guardian of Matthew Wilson, a minor ("Wilson"), states as follows:

## I. *Introduction*

This case was originally filed in the Circuit Court of Lee County, Arkansas, on September 21, 2007.  Plaintiff April Wilson seeks to represent a class consisting of "all children under the age of eighteen (18) living in the State of Arkansas who are in possession of Thomas & Friends™ Wooden Railway trains and accessories manufactured between January 2005 and June 2007 and coated with toxic lead paint, and who have been, continue to be, and may in the future

be adversely affected by the actions and omissions which are the subject of this complaint." Class Action Complaint ("Complaint") ¶ 6.  (Complaint attached hereto as Exhibit 1).

Defendant RC2 received a copy of the state court Summons and Complaint on October 12, 2007.  On November 8, 2007, RC2 removed the case to the United States District Court for the Eastern District of Arkansas, Eastern Division.  (Notice of Removal of Civil Action Under 1453(b) attached hereto as Exhibit 2).  Subsequently, the Court stayed proceedings pending the ruling of the Judicial Panel on Multidistrict Litigation ("JPML") on the motions to transfer.  Wilson filed a Response to Defendant's Motion for Stay and, at the same time, also filed a Motion to Remand Removed Action with a supporting affidavit and brief.  (Motion and supporting affidavit attached hereto as Exhibits 3 and 4 respectively.)  On November 28, 2007, Judge Holmes granted the motion to stay and ordered that "the response to the motion to remand must be filed within 14 days after the MDL panel enters its order."  Therefore, RC2 is now filing this Response to Motion to Remand Removed Action.

## II.  *Statutory Basis for Removal*

Under the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (2005) ("CAFA"), a "class action" filed in state court may be removed to federal court if:  (1) the number of members of the proposed class is at least 100: (2) at least one plaintiff and one defendant are citizens of different states; and (3) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.  *See* 28 U.S.C. §§ 1332(d)(2), (d)(5)(B), and (d)(6). In the Motion to Remand, Wilson does not dispute that RC2 has satisfied the first two criteria for removal, and thus the only issue raised is whether the aggregate amount in controversy exceeds $5,000,000.

In response to RC2's Notice of Removal, in which RC2 demonstrated that the Five Million Dollar amount in controversy requirement was met, Plaintiff filed an Affidavit stating that she, as class representative, would "limit any potential class recovery to less than $5,000,000.00 in total damages, attorney's fees, and injunctive relief." Affidavit ¶ 1. Wilson also defined in her Affidavit the term "total damages," used in her Complaint to mean "all damages, including every conceivable damage award, including punitive damages, treble damages, and awards of attorney's fees." *Id.* at ¶ 3.

### III.    *The Five Million Dollar Amount in Controversy Requirement Has Been Met*

Plaintiff cannot defeat removal of her complaint by recasting her allegations in the Motion to Remand. It is well established law that, in determining the amount in controversy, the court focuses on the situation the day the suit was removed. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006) ("what matters is the amount put in controversy on the day of removal …. it was not clear on the day of removal that Oshana would not seek or recover punitive damages …."). Thus, "[b]ecause jurisdiction is determined as of the instant of removal, a post-removal affidavit or stipulation is no more effective than a post-removal amendment of the complaint." *In re Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir. 1992) (per curiam). As such, a plaintiff cannot defeat federal jurisdiction simply by filing a post-removal affidavit stating she is seeking less than the jurisdictional amount. *Id.* Therefore, the post-removal affidavit filed by Plaintiff stating she (on behalf of the class) would limit recovery to less than the jurisdictional amount does not defeat removal. *Harmon v. OKI Systems*, 115 F.3d 477, 479 (7th Cir. 1997), (citing *Shell Oil*).

Because Wilson's post-removal affidavit is of no effect, the determination of the amount in controversy turns on the allegations of the Complaint and the Notice of Removal. As

discussed below, those allegations, at a minimum, "show a reasonable probability that the stakes exceed the minimum," and, as such, removal was proper. *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005)

In this case, the Complaint alleges that RC2 is liable to the plaintiff and the class "under the theories of Negligence, Strict Liability, Products Liability, and Breach of Implied Warranty of Merchantability and Fitness for a Particular Purpose." Complaint ¶ 23. The Complaint prays for the following relief:

> **WHEREFORE**, the Plaintiff, as representative of the aforementioned class, prays for judgment against the Defendant, RC2 Corporation, in the amount of **Four Million Seven Hundred Fifty Thousand Dollars ($4,750,000.00 USD)**, for injuries and damages sustained caused by Defendant's willful negligence, for costs, attorney's fees and all other relief to which the Plaintiff and the class may be entitled.

*Id.* p. 4 (emphasis in original). Under CAFA, the claims of the individual class members "shall be aggregated" to determine whether the amount in controversy exceeds $5,000,000. 28 U.S.C. § 1332(d)(6). Here, on the face of the Complaint, plaintiff and the class are seeking compensatory damages for their claims in the amount of $4,750,000. However, Plaintiff's prayer for relief does not stop with this demand. Rather, they also seek judgment for costs, "attorney's fees and all other relief to which Plaintiff and the class may be entitled."[1] As such, the question before this court on the Motion to Remand is whether the amount in controversy is met when all of these damages, including the requested $4,750,000 as well as damages for willful negligence, attorneys fees and all other relief, are aggregated.

With respect to this issue and as the proponent of federal jurisdiction, RC2 only has the burden of showing by a preponderance of the evidence that the amount in controversy

---

[1] RC2 recognizes that costs do not count towards the jurisdictional amount in controversy and has not argued otherwise.

requirement has been met. *Oshana*, 472 F.3d at 511.[2]  In other words, RC2 "must show a reasonable probability that the stakes exceed the minimum." *Brill*, 427 F.3d at 449; *Oshana*, 472 F.3d at 512-13 (removal held proper where it was "plausible" that more than the jurisdictional amount was at stake).  The focus is on "what the plaintiff is claiming (and thus the amount in controversy between the parties), not whether plaintiff is likely to win or be awarded everything he seeks." *Brill*, 427 F.3d at 449.  Once the proponent of jurisdiction has set out the amount in controversy, only a "legal certainty" that the judgment will be less forecloses federal jurisdiction. *Id.* at 448.

The language of Plaintiff's Complaint clearly demonstrates her intent to seek more than Five Million Dollars.  Language which is used to support punitive damages is used liberally throughout the Complaint.  Further, claims are included which allow attorney fees by statute. With these additional claims, the amount sought easily surpasses the Five Million Dollar amount in controversy jurisdictional requirement.

### A. *The Potential Punitive Damages Must be Included in Determining the Amount in Controversy*

Punitive damages may be included in the amount in controversy when applicable state law authorizes their recovery.  *Buller v. Owner Operator Independent Driver Risk Retention Group, Inc.*, 461 F. Supp. 2d 757, 763 (S.D. Ill. 2006); *Hall v. Triad Financial Services, Inc.*, No. 07-0184-MJR, 2007 U.S. Dist. LEXIS 75253, at *7 (S.D. Ill. Oct. 10, 2007) *citing Geschke v. Air Force Ass'n.*, 425 F.3d 337, 341 (7th Cir. 2005); *Anthony v. Sec. Pac. Fin. Serv., Inc.*, 75 F.3d 311, 315 (7th Cir. 1996).  In this case, although the Complaint does not specifically request

---

[2] Although this case originated within the Eighth Circuit (Arkansas), this Court applies Seventh Circuit law in deciding jurisdictional questions.  *In Re StarLink Corn Products Liability Litigation*, 211 F. Supp. 2d 1060, 1063-64 (N.D. Ill. 2002).

punitive damages, it also does not rule out that possibility. *Oshana*, 472 F.3d at 512 ("Oshana could have amended her state court complaint to seek a punitive damages award."). If anything, the Complaint's prayer for "injuries and damages sustained caused [sic] by Defendant's willful negligence" and for "all other relief to which Plaintiff and the class may be entitled" strongly suggests that Wilson and the class will seek punitive damages in addition to the $4,750,000 in compensatory damages.[3]

The Complaint alleges that RC2's conduct has been "unconscionable, reckless, wonton [sic], and negligent" because "lead paint has been known to be a threat to the health of children for over thirty (30) years." Complaint ¶ 14. The Complaint further alleges that RC2 has "unconscionably profited" by directly marketing "unlawful, toxic, and deadly toys" to Arkansas children. *Id.* at ¶ 17. Finally, the Complaint alleges that RC2 "must be deterred by this action from unjustly and unconscionably profiting at the expense of the health of the children residing in the State of Arkansas." *Id.* at ¶ 22. The only reasonable inference is that if plaintiff is able to prove these allegations, plaintiff would ask for punitive damages on behalf of the class.

Under Arkansas law, "[t]he purpose of punitive damages is deterrence and punishment of wrongdoing." *Thomas Auto Co., Inc. v. Craft*, 763 S.W.2d 651, 654 (Ark. 1989). Paragraph 22 of the Complaint specifically asserts that RC2 "must be deterred" – an obvious effort to plead a basis for punitive damages. The Arkansas Supreme Court has held that an award of punitive damages is justified where the defendant "acted wantonly in causing the injury or with such a conscious indifference to the consequences that malice may be inferred." *Stein v. Lukas*, 823 S.W.2d 832, 834 (Ark. 1992). In other words, "there must be an element of willfulness or such

---

[3] Although RC2 does not believe the Plaintiffs are entitled to punitive damages, that is not the issue at this early stage of the proceedings. Rather, the focus is the amount in controversy based upon the pleadings.

reckless conduct on the part of the defendant as is equivalent thereto." *Id.* The court in *Stein* quoted the following Arkansas model jury instruction with approval:

> [Defendant] knew or ought to have known, in the light of the surrounding circumstances, that his conduct would naturally or probably result in injury and that he continued such conduct in the reckless disregard of the consequences from which malice can be inferred.

*Id.*, quoting Arkansas Model Jury Instruction 2217.

In short, under Arkansas law punitive damages may be awarded where the defendant acted "wantonly" in causing the injury; continued its conduct with a "conscious indifference" to the consequences of its actions; or continued its conduct in "reckless disregard" of those consequences. *Stein*, 823 S.W.2d at 834. The Complaint in this case tracks this language, alleging that RC2's conduct was "unconscionable, reckless, [and] wanton," as well as negligent. Complaint ¶¶ 14, 15. The additional references to marketing "deadly toys" to children and the need to deter RC2 from "unconscionably profiting" at the expense of children's health make it clear that plaintiff is in fact claiming punitive damages. It is equally reasonable to infer that the combination of $4,750,000 in compensatory damages, plus punitive damages, makes it at least "plausible" that more than Five Million Dollars was at stake on the date of removal. *Oshana*, 472 F.3d at 512-13.

### B. **_Attorney Fees May Also Count Towards Satisfying the Amount in Controversy Requirement_**

In addition, attorney's fees count toward the jurisdictional amount, at least up to the time of removal. *Oshana*, 472 F.3d at 512. The Seventh Circuit has not yet expressly decided whether anticipated post-removal attorney's fees may be included in the aggregated claims of the individual class members for jurisdictional purposes under CAFA. However, other courts have allowed to fees to be included. *See Nowak v. Innovative Aftermarket Systems, L.P.*, No. 4: 06CV01622, 2007 U.S. Dist. LEXIS 62360, at *17-18 (E.D. Mo. Aug. 23, 2007) (considering

anticipated attorney's fees in determining whether CAFA's $5 million jurisdictional amount was met).

Under Arkansas law, a successful class action recovery of a common fund entitles the class to an award of reasonable attorney's fees. *Powell v. Henry*, 592 S.W.2d 107, 108-109, (Ark. 1980). In addition, plaintiff may have a statutory basis for recovery of attorney's fees under either Ark. Code Ann. § 16-22-308 (as applied to breach of warranty actions) or Ark. Code Ann. § 4-88-113(f) (Deceptive Trade Practices Act). *See Curry v. Thornsberry*, 98 S.W.3d 477, 483-484 (Ark. Ct. App. 2003); *Thomas v. Olson*, 220 S.W.3d 627, 632-33 (Ark. 2005). In this case, an attorney's fee award of $250,000 would represent only 5.26% of the compensatory damages claimed. By comparison, in *Powell*, the Arkansas Supreme Court specifically approved an award of attorney's fees in the amount of fifteen percent of the class recovery. *Powell*, 592 S.W.2d at 110-11.[4] Therefore, even a small award of attorney fees will be sufficient to meet the amount in controversy requirement.

## <u>*Conclusion*</u>

For the reasons set forth above and in the Notice of Removal, the pending Motion to Remand should be denied.

Dated: January 24, 2008

---

[4] RC2 recognizes that the general rule in this circuit is that only attorney's fees already incurred at the time that federal jurisdiction is invoked may be counted toward the requisite amount in controversy. *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 958 (7th Cir. 1998). In enacting CAFA, however, Congress clearly intended to expand federal court jurisdiction with respect to certain types of class actions. Since attorney's fees are often what drives class actions, it seems unlikely that Congress intended to exclude anticipated attorney's fees from the calculation of the aggregate amount in controversy under CAFA. In any event, this Court need not reach that issue because in this case, the combination of $4,750,000 in alleged compensatory damages plus punitive damages is sufficient to meet the $5 million jurisdictional amount, without adding pre-removal or anticipated attorney's fees.

Respectfully submitted,

RC2  CORPORATION  AND  LEARNING
CURVE BRANDS, INC.


*s/ Judy S. Okenfuss*
Judy S. Okenfuss
*By one of their attorneys*

Judy S. Okenfuss
James L. Petersen
ICE MILLER LLP
One American Square
Suite 3100
Indianapolis, IN  46282
(317) 236-2100

Bart T. Murphy #6181178
ICE MILLER LLP
2300 Cabot Dr., Ste. 455
Lisle, IL  60532
(630) 955-6392

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 25th day of January 2008, a copy of the foregoing has been filed electronically using the Court's CM/ECF system which sent electronic notification of this filing to the following counsel for Plaintiffs:

| | |
|---|---|
| | Elizabeth A. Fegan  beth@hbsslaw.com |
| | Jack Reise  jreise@csgrr.com |
| | Joe R. Whatley, Jr.  jwhatley@wdklaw.com |
| | Robert James Pavich  rpavich@monicopavich.com |
| | Thomas A. Zimmerman, Jr.  tom@attorneyzim.com |
| | William N. Riley  wirliey@price-law.com |

Additionally, the undersigned hereby certifies that a copy of the foregoing has been deposited in the U.S. Mail, first class postage prepaid, on the  25th day of January 2008, addressed to:

Frederic S. Fox
KAPLAN KILSHEIMER & FOX LLP
805 Third Avenue
New York, NY  10022

James A. Streett
STREETT LAW FIRM, PA
107 West Main
Russellville, AK  72811

Thomas M. Ferlauto
KING & FERLAUTO LLP
1880 Century Park East, Suite 820
Los Angeles, CA  90067

John S. Steward
BURSTEIN LAW FIRM, P.C.
225 S. Meramec, Suite 925
St. Louis, MO  63105

W. Lewis Garrison, Jr.
Gayle L. Douglas
HENINGER GARRISON DAVIS, LLC
2224 First Avenue North

- 10 -

Birmingham, AL  35203

John Balestriere
Craig Stuart Lanza
BALESTRIERE PLLC
225 Broadway, Suite 2700
New York, NY  10007

Lance A. Harke, P.A.
Sarah Clasby Engel, P.A.
Howard M. Bushman, Esq.
HARKE & CLASBY LLP
155 South Miami Ave., Suite 600
Miami, FL  33130

Davy Carter
271 West Main Street
Suite 201
P.O. Box 628
Cabot, AR  72023

Peter S. Pearlman, Esq.
COHN LIFLAND PEARLMAN
HERRMANN & KNOPF LLP
Park 80 Plaza West-One
Saddle Brook, NJ  07663

Jeffrey Aaron Cooke
THE COOKE LAW OFFICE
PO BOX 188
331 Columbia Street
Lafayette, IN  47902

Kenneth A. Wexler
WEXLER TORISEVA WALLACE LLP
1 North LaSalle Street
Suite 200
Chicago, IL  60602

*s/ Judy S. Okenfuss*
Judy S. Okenfuss
ICE MILLER LLP
One American Square
Suite 3100
Indianapolis, IN  46282
(317) 236-2115

- 11 -

I/2068657.1