# Exhibit 2

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| BYRON BARRETT, individually and on behalf of a class of similarly situated individuals, | ) ) ) | |
| Plaintiff, | ) ) | No. 07 CH 20924 |
| v. | ) ) | Judge William Maki |
| RC2 CORPORATION, | ) ) ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT**

This class action concerns the much-publicized recall of hundreds of thousands of "Thomas & Friends Wooden Railway" toys sold by Defendant RC2 Corporation. Named Plaintiff Byron Barrett seeks both money damages and injunctive relief. In October 2007, the Parties agreed to mediate the dispute before the Honorable Judge Robert Boharic (ret.). Over the next two months, Judge Boharic oversaw the initiation and completion of extensive discovery, consisting of thousands of pages of documents and the depositions of RC2's Chief Executive Officer and Products Integrity Manager. Through the mediation process the Parties were able to reach a "Settlement" agreement that they present to the Court for preliminary approval. A copy of the proposed settlement agreement is attached as Exhibit A.

Under the Settlement, class members are entitled to exchange their recalled toys for the choice of either (a) a full cash refund or (b) replacement toys with extra "bonus" toys supplied by RC2. The Settlement Agreement also provides injunctive relief requiring RC2 to intensify and increase its system of quality control checks to ensure the safety of Thomas & Friends Wooden Railway products and also individual relief to class members as detailed below. Finally, RC2 will be making a cy pres donation of $100,000 to a not-for profit entity to be approved by the Court.

Given the strength of this Settlement it is of little surprise that it is supported not only by Plaintiff and RC2, but also by the lead plaintiffs and their respective counsel in four

independently filed cases currently pending in California, New Jersey, Tennessee, and Florida.

Plaintiff thus moves the Court to preliminary approve the instant settlement, certify the settlement class, and appoint the following leadership structure for Class Counsel in this case:

- <u>Liason Counsel</u>: Gino DiVito of Tabet DiVito & Rothstein, LLC.

- <u>Lead Counsel</u>: Jay Edelson of KamberEdelson, LLC, Scott Kamber of KamberEdelson, LLC and William M. Audet of Audet & Partners, LLP.

- <u>Affiliated Class Counsel</u>: B.J. Wade Glassman of Edwards, Wade & Wyatt, P.C., William H. Garvin of Garvin & Milles, and Mark C. Gardy of Gardy & Notis, LLP.

For convenience, a proposed preliminary schedule of events leading to a final approval hearing (the "Settlement Hearing") is provided in Section VIII of this brief.

## I.    NATURE OF THE CURRENT LITIGATION

### A.    Barrett's Complaint

Plaintiff Byron Barrett brought the underlying Class Action on behalf of purchasers or owners of Thomas & Friends Wooden Railway products (the "Settlement Toy Products")[1] which were recalled in June and September of 2007 due to excess heavy metals, primarily lead, in the surface paint of the toys. The Settlement Toy Products were manufactured for Defendant by third party manufacturers in China. Defendant marketed and distributed these toys specifically intended for children throughout the United States.

The U.S. Consumer Product Safety Commission ("CPSC") has declared that "[t]oys and other articles intended for use by children that bear 'lead-containing paint'" are "banned hazardous products." On or about June 13, 2007, in cooperation with the CPSC, Defendant recalled approximately 1.5 million Thomas & Friends Wooden Railway toys, all of which had been manufactured, in part or in whole, in China. On September 26, 2007, Defendant announced

---

[1]  The Settlement Toy Products are defined in Exhibit 1 to the Settlement Agreement, which includes pictures of the subject toys.

two additional recalls of over 200,000 toys, again due to the presence of lead paint found on toys manufactured in China.

Plaintiff's complaint alleges that, despite knowing of the dangers of excessive lead in paint manufactured, used, or applied to toys in China, Defendant failed to take reasonable steps to ensure that its products were safe for use by children.

**B.     Other State Cases**

In addition to the *Barrett* case, four similar class actions were filed by Audet & Partners, LLP in California, Wade & Wyatt, P.C. in Tennessee, by Garvin & Milles in Florida, and by Gardy & Notis, LLP in New Jersey[2]. Those attorneys actively participated in the formulation of case strategy and the settlement process, including reviewing discovery, asking questions at depositions, attending strategy conferences, and participating in the several mediation sessions.

**C.     Defendant's Position**

Defendant concedes that the paint in certain of the Settlement Toy Products contained unacceptable levels of lead and other heavy metals. However, it maintains that once it was alerted to these problems, it immediately notified the federal government and began the process of issuing a voluntary recall. Defendant further notes that it systematically tested its products more broadly, and issued additional recalls accordingly.

Defendant also maintains that, without a settlement, it was prepared to vigorously defend itself against the merits of the suit as well as adversarial class certification.

**II.     SETTLEMENT HISTORY**

In August 2007 (shortly after the instant suit was filed), Barrett's counsel, along with William Audet, who was representing a similar putative class in a California-filed case, met in person with RC2's counsel to discuss their respective views of the case and to determine whether they could agree upon any pre-trial procedures. Coming out of that initial meeting, the Parties

---

[2] There were a number of cases filed in federal court by a variety of firms. Because no leadership structure was appointed (and indeed there seemed to be significant in-fighting between the respective lawyer groups) and given the well-grounded concerns about keeping the settlement process confidential, Plaintiff was not able to speak with any of the attorneys in these cases during the mediation process.

agreed to share informal discovery. Over a period consisting of the next two months, counsel met twice more in person and engaged in several telephonic conferences. Over time, the focus of these discussions turned to the prospect of settlement.

In October 2007, the Parties, by agreement, retained the Honorable Robert Boharic (ret.) to serve as a mediator. Over the next two months, which included three mediation sessions, Judge Boharic helped the parties agree first on a formal exchange of discovery. Specifically, the plaintiffs in the respective state cases agreed to make themselves available for depositions and agreed to provide any other relevant information requested by Defendant. Similarly, Defendant made available thousands of pages of documents, including internal test results, correspondence with the government about all phases of the recalls, timelines, the customer complaints that triggered the initial recall, and product pricing information.

After reviewing those documents, Defendant produced both its Chief Executive Officer and Products Integrity Manager for depositions by three of the attorneys representing the plaintiffs.

Following discovery, the Parties had a final mediation session in front of Judge Boharic, which was attended by four plaintiffs' attorneys – including Gino DiVito, Jay Edelson, Scott Kamber and William Audet – as well as RC2. By the conclusion of that fourth session, the Parties had reached an agreement in principle. The Parties subsequently negotiated a comprehensive 34 page Settlement Agreement which they present to the Court for preliminary approval.

## II.    TERMS OF THE SETTLEMENT

The key terms of the settlement follow:

1.    *Class Definitions.*    The Settlement Class is defined as follows:

> All Persons who purchased or otherwise acquired any Settlement Toy Products in the United States. Excluded from the Settlement Class are Defendant, any entity in which Defendant has a controlling interest or which has a controlling interest in Defendant, and Defendant's legal representatives, assigns and successors, as

well as any person who has timely filed a Request for Exclusion from the Settlement Class. Also excluded are the Judge to whom this case is assigned and any member of the Judge's immediate family. In addition, excluded from the Settlement Classes are all Persons who, in accordance with the terms of this Agreement, properly execute and timely file a Request for Exclusion with the Claims Administrator under this Agreement.

2.    *Individual Class Member Benefits:*

Each Class Member who timely submits a claim shall have four options to obtain individual relief.

A. **Option 1 - Cash Reimbursement Program:** Any Class member in current possession, custody or control of any Settlement Toy Product shall be entitled, upon submission of proof of purchase evidence, to compensation for either the actual price paid or the suggested retail price of the product. If the Class Member is unable to submit appropriate proof of the purchase price paid, then the class member shall be paid the suggested retail price of the Settlement Toy Product. In order to obtain a benefit under this program, the class members shall return the settlement toy product, along with a completed copy of the Claim Form to the Claims Administrator. The Claims Administrator shall issue one benefit per exchanged toy. Only one Class Member shall be compensated per toy.

B. **Option 2 - The Toy Exchange Program:** Class members may choose to be compensated under the toy exchange program. Under the toy exchange program, the class member shall be entitled to a replacement toy of equal or greater value, plus a bonus toy. All shipping and postage costs shall be borne by Defendant.

C. **Option 3 – Cash Refund With Proof of Purchase:** Class members who destroyed or disposed of their Settlement Toy Product(s) may receive a cash refund for their Settlement Toy Product(s) (up to a maximum of two), if they have proof of purchase evidence establishing they purchased the Settlement Product Toy or someone else purchased the Settlement Product Toy and gave it to them, by timely submitting a completed claim form along with their proof of purchase evidence to the Claims Administrator.

**D. Option 4 – Coupon for Disposed Settlement Toy Product With No Proof of Purchase.** Class Members who destroyed or disposed of their Settlement Toy Product(s) and do not have proof of purchase evidence, may still receive a $15.00 coupon for each Settlement Product Toy they disposed of (up to a maximum of two) by timely submitting a completed claim form to the Claims Administrator.

3.    *Group Relief*

In addition to the individual relief described above, Defendant has agreed to provide the following group relief:

A.    **Injunctive Relief:** Defendant has agreed that it shall on or before a date 60 days after final judgment is entered in this action, create and implement a Quality Assurance Program ("QAP") for the Thomas & Friends Wooden Railway products sold by it which are painted, which shall include the following five components or items: (1) establish minimum testing and auditing procedures for all incoming material(s) used by any of Defendant's contract manufacturers and all outgoing finished products distributed in the United States; (2) establish a direct link between United States representatives of RC2 and RC2 representatives in offshore facilities to allow for the direct reporting of any Thomas & Friends Wooden Railway products which fail applicable heavy metals testing; (3) establish a program to trace the source and location of any problem/deficient products to the source; (4) purchase and use on a regular basis in both the United States and any offshore facilities, XRF testing equipment and utilize such equipment for regular basis and on-spot testing basis of painted products of Defendant; and (5) all contracts entered into between RC2 and contract manufacturers after the date final judgment is entered for the production of Thomas & Friends Wooden Railway products containing painted surfaces shall contain a clause that requires the contract manufacturer to comply with RC2's minimum testing and auditing procedures for incoming materials pursuant to the QAP. The QAP may be revised by Defendant to accommodate any improved technology and/or relevant improved laws or regulations or restrictions in the United States or any location of any contract manufacturer. Defendants shall be in good faith compliance with their obligation to implement the

aforementioned five steps or items within 60 days of final approval of this Settlement, notwithstanding any appeal or objection or collateral challenge to the terms of this Settlement Agreement up to and until January 1, 2011. However, if a final order which is not subject to further review is entered rejecting approval of this Settlement, Defendants shall not be obligated to implement the injunctive relief outlined in this paragraph. Defendants shall be obligated to follow the QAP with respect to the production of applicable Thomas & Friends Wooden Railway products, to the extent Defendants are producing such products, until January 1, 2011. After January 1, 2011, Defendant shall abide by commercially reasonable methods, given the then-current state of technology and applicable laws and regulations, to assure product safety and integrity of its Thomas & Friends Wooden Railway products.

      **B.**    <u>Cy Pres</u>: Defendant shall pay $100,000 to an appropriate non-profit organization to be approved by the Court.

      **C.**    <u>Payment of Notice and Administrative Fees</u>: Defendant will pay for the cost of sending the Class Notice and any other notice as required by the Court as well as all costs of administration of the settlement.

      **D.**    <u>Compensation for the Class Representatives</u>: In addition to any award under the Settlement, and in recognition of their efforts on behalf of the Class, the Class Representatives in this case and all affiliated state cases that join the settlement shall receive and award collectively of $5,000 as appropriate compensation for their time and effort serving as the Class Representative in this litigation.

      **E.**    <u>Payment of Attorneys Fees</u>: Defendant has agreed to pay Lead Class Counsel, subject to Court approval, $2,900,000.00 (two million, nine hundred thousand dollars) in attorneys' fees and reimbursement of costs. Defendant agrees that this amount is fair and reasonable and that it will not object to or otherwise challenge Class Counsel's application for reasonable attorneys' fees and for reimbursement of costs and other expenses. Lead Class Counsel has, in turn, agreed not to seek more than said amount from the Court.

4.    *Release*:

With respect to any and all Claims, and upon entry of Final Order and Judgment without further action, for good and valuable consideration, Plaintiff, on behalf of himself and the Settlement Class and as the representative of the Settlement Class, shall expressly, and all Settlement Class members shall be deemed to have, and by operation of the final judgment contemplated by this Agreement shall have, fully, finally, and forever expressly waived and relinquished with respect to Settled Claims, to the fullest extent permitted by law, any and all provisions, rights, and benefits of section 1542 of the California Civil Code and any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or principle of common law that is similar, comparable, or equivalent to section 1542 of the California Civil Code, which provides: "A general release does not extend to claims which the creditor does not  know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

For purposes of this Release, "Settled Claim" means  any claim, liability, right, demand, suit, matter, obligation, damage, loss or cost (including the cost of remediation), action or cause of action, of every kind and description that the Releasing Party has or may have, including assigned claims whether known or unknown, asserted or unasserted, latent or patent, that is, has been, could reasonably have been or in the future might reasonably be asserted by the Releasing Party either in the Action or in any other action or proceeding in this Court or any other court or forum, regardless of legal theory, and regardless of the type or amount of relief or damages claimed, against any of the Released Parties arising from or in any way relating to the manufacture, distribution, handling or touching or contact of any kind, and marketing or use (including playing with or storing) of the Settlement Toy Product. Without limiting the generality of the foregoing, Settled Claim shall include, with regard to the foregoing subject matter:

(1)    any class, group, collective or individual claim for any breach or violation of any federal or state statute, case law, common law or other law;

8

(2)    any claim for breach of any duty imposed by law, by contract or otherwise;

(3)    any claim based on strict product liability, consumer statute, negligence, medical monitoring, breach of express or implied warranty, racketeering, fraud, conspiracy, consumer fraud, negligent misrepresentations and/or omissions, or intentional misrepresentations and/or omissions;

(4)    any claim arising from or in any way related to the design, manufacture, production, sale, promotion or distribution of the Settlement Toy Products by Defendant or retailers selling such products;

(5)    any claim for damages, injunctive relief, class damages or relief, medical monitoring (whether as a claim or a form of damages), penalties, punitive damages, exemplary damages, or any claim for damages based upon any multiplication or enhancement of compensatory damages associated with the above; and

(6)    any *class* claim for personal injury, including but not limited to claims for medical monitoring whether as a claim or damages or remedy for a claim.

Notwithstanding the foregoing, the term "Settled Claim" does not include any individual claim for personal injury of any Class Member.

## V.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

The procedure for review of a proposed class action settlement is well-established two-step process. *See Newberg on Class Actions*, §11.25, at 38-39 (4th Ed. 2002); *Langendorf v. Irving Trust Co.*, 614 N.E.2d 23, 26 (1st Dist. 1992), *abrogated on other grounds by, Brundidge v. Glendale Fed. Bank*, 659 N.E.2d 909 (1st Dist. 1995). The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." *Newberg*, §11.25, at 38-39 (quoting *Manual for Complex Litigation*, §30.41 (3rd Ed.)). This hearing is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing. *Id.*

If the court finds a settlement proposal "within the range of possible approval," it then proceeds to the second step in the review process--the fairness hearing. *Id.* Class members are notified of the proposed settlement and of the fairness hearing at which they and all interested parties have an opportunity to be heard. Here, there is no question that the proposed settlement – which was reached with the mediation services of Judge Boharic (ret.) -- is "within the range of possible approval."

In addition to injunctive relief and a $100,000 cy pres award to an appropriate not-for-profit entity, class members filing Claim Forms are entitled to receive either full cash refunds replacement toys (plus an additional "bonus" toy"), or if they lack proof of purchase evidence, coupons for the purchase of Thomas & Friends Wooden Railway toys from Defendants internet store. Further, the Defendant is not required to, nor does it in fact, release individual claims for personal injury. In the end, the Settlement ensures that Defendant's toys are safe on a going-forward basis, and provides the class with full cash refunds or the option of getting toys worth more than the toys that were recalled.

As not insignificant proof of its fairness, well-credentialed class attorneys for four separate state actions against RC2 have joined this settlement. This settlement easily falls well "within the range of possible approval," and should be preliminary approved.

## VI.    THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED

For Settlement purposes only, the Parties ask the Court to certify the Settlement Class defined above. Likewise, for settlement purposes only, the Parties agree this action satisfies the "prerequisites for the maintenance of a class action" as set forth in section 2-801 of the Illinois Code of Civil Procedure, which provides:

> An action may be maintained as a class action in any court of this State and a party may sue or be sued as a representative party of the class only if the court finds:
> (1)    The class is so numerous that joinder of all members is impracticable.
> (2)    There are questions of fact or law common to the class, which common questions predominate over any questions affecting only

individual members.

(3)     The representative parties will fairly and adequately protect the interest of the class.

(4)     The class action is an appropriate method for the fair and efficient adjudication of the controversy.

735 ILCS 5/2-801; *see also Lee v. Allstate Life Ins. Co.*, 361 Ill.App.3d 970, 838 N.E.2d 15, 20 (2nd Dist. 2005). Here each prerequisite is met.

### 1.     Numerosity/Impracticality of Joinder

Section 2-801(1) is satisfied where "the class is so numerous that joinder of all members is impracticable." This numerosity requirement is met where "to join such a large number of plaintiffs in a single suit would render the suit unmanageable and, in contrast, multiple separate claims would be an imposition on the litigants and the courts." *Gordon v. Boden*, 224 Ill. App. 3d 195, 200 (1st Dist. 1991) (citing *Steinberg v. Chicago Medical School*, 69 Ill. 2d 320, 337 (1977); *Hoover v. May Dept. Stores Co.*, 62 Ill. App. 3d 106, 114 (1978), rev'd on other grounds, 77 Ill. 2d 93 (1979)).

The proposed Class includes all persons who purchased any of the Thomas Trains recalled products. Given that over 1.7 million units were recalled, there is little question that there is a sufficient number of Class Members exist to satisfy the numerosity requirement. *See Tassan v. United Development Co.*, 88 Ill. App. 3d 581 (1st Dist. 1980) (numerosity requirement could be satisfied by a class of 150 condominium owners for breach of warranty); *Kulins v. Malco, A Microdot Co., Inc.*, 121 Ill. App. 3d 520 (1st Dist. 1984) (30 class members sufficient); *Carrao v. Health Care Service Corp.*, 118 Ill. App. 3d 417, 427 (1st Dist. 1983) ("allegation in the [c]omplaint that the class consists of over 1,000 members provides an ample basis for the trial court's conclusion that joinder of all members is impracticable").

Furthermore, joinder of the Class Members' claims would be completely impracticable because plaintiffs are disbursed throughout the country and because each plaintiff's economic claim is so small that few individual plaintiffs could afford to bring an individual lawsuit. *See Wood River*, 555 N.E.2d at 1154; *Gordon*, 586 N.E.2d at 464.

## 2.    Common Issues Of Fact and Law Predominate

Section 2-801(2) is satisfied where there are "questions of fact or law common to the class" and those questions "predominate over any questions affecting only individual members." This case raises a number of such questions for the settlement including whether the settlement is fair, and what is the proper form of notice.

## 3.    Adequate Representation

Section 2-801(3) is satisfied where "[t]he representative parties will fairly and adequately protect the interest of the class." The purpose of this adequacy of representation requirement is "to insure that all class members will receive proper, efficient, and appropriate protection of their interests in the presentation of the claim." *Purcell & Wardrope Chtd. v. Hertz Corp.*, 175 Ill. App.3d 1069, 1078 (1st Dist. 1988); *accord, Gordon v. Boden*, 224 Ill. App. 3d 195, 203 (1st Dist. 1991).

As the Supreme Court held in *Miner v. Gillette Co.*, 87 Ill. 2d 7 (1981):

> The test applied to determine adequacy of representation is whether the interests of those who are parties are the same as those who are not joined and whether the litigating parties fairly represent those not joined. The attorney for the representative party must be qualified, experienced and generally able to conduct the proposed litigation. Additionally, plaintiff's interest must not appear collusive.

*Miner*, 87 Ill. 2d at 14 (internal quotation marks and citation omitted); *see also Eshaghi*, 214 Ill. App. 3d at 1000 (quoting *Miner*).

In the instant case, Byron Barrett has the same interests as the other Class Members — all have purchased or acquired allegedly defective recalled products and seek compensation for their allegedly defective product. Therefore he has no interests antagonistic to the Class Members' interests. *Gordon*, 586 N.E.2d at 466. Further, Class Counsel are well respected members of their legal communities, have regularly engaged in major complex litigation, have had extensive experience in class action lawsuits involving defective consumer products and, in particular, have broad experience in consumer-based, complex litigation similar in size, scope and complexity to

the present case.  See Exhibits B-D (attaching firm resumes of Tabet, Divito & Rothstein, LLC, Kamber & Edelson, LLC, Audet & Partners, LLP respectively).

### 4.    Fair and Efficient Adjudication of the Controversy

Section 2-801(4) is satisfied where "]he class action is an appropriate method for the fair and efficient adjudication of the controversy." The test for appropriateness was stated in *Gordon v. Boden*, 224 Ill. App. 3d 195 (1st Dist. 1991):

> In applying this prerequisite in a particular case, a court considers whether a class action: (1) can best secure the economies of time, effort and expense, and promote uniformity; or (2) accomplish the other ends of equity and justice that class actions seek to obtain.

*Gordon*, 224 Ill. App. 3d at 203.

The *Gordon* court explained that "our holding that the first three prerequisites of section 2 801 are established makes it evident that the fourth requirement is fulfilled." *Gordon*, 224 Ill. App. 3d at 204; *accord, Purcell & Wardrope Chtd. v. Hertz Corp.*, 175 Ill. App. 3d 1069, 1079 (1st Dist. 1988) ("the predominance of common issues [may] make a class action . . . a fair and efficient method to resolve the dispute"). Thus, the fact that numerosity, commonality, predominance, and adequacy of representation have been demonstrated in the instant case makes it "evident" that the appropriateness requirement is satisfied as well.

Other considerations further support the appropriateness of the instant case for class certification. As the court noted in Gordon, a "controlling factor in many cases is that the class action is the only practical means for class members to receive redress." *Gordon*, 224 Ill. App. 3d at 203; *accord, Eshaghi v. Hanley Dawson Cadillac Co., Inc.*, 214 Ill. App. 3d 995, 1004 (1st Dist. 1991) ("In a large and impersonal society, class actions are often the last barricade of consumer protection.")

The next requirement is that the "representative parties will fairly and adequately protect the interest of the class." Here, Class Counsel have broad experience in class litigation and other complex litigation (including serving as class counsel in other similar actions under the Physical Fitness Act and Automatic Contract Renewal Act), and are fully qualified to prosecute this action.

See Exhibits B-D. The class representatives similarly have no interests antagonistic to their classes, and did not condition their approval of settlement on an agreed sum for their incentive awards.

The instant case satisfies the final requirement of section 2-801, because a "class action is an appropriate method for the fair and efficient adjudication of the controversy." Certification of the Plaintiff Classes is the first step to seeing that each class member has the opportunity to receive significant compensation. If this case could not proceed on a class-wide basis, it is unlikely (given the relatively small amount of individual damages) that any significant number of class members would be able to sue individually.

## VII.    THE PROPOSED NOTICE AND FORM OF NOTICE SHOULD BE APPROVED

Pursuant to the Settlement Agreement, Defendant has agreed to notify the class of this settlement in several ways:

- First, Defendant has the e-mail and/or residential addresses of thousands of potential class members. Defendant will send notice via e-mail to those people, or, in the case there is no valid e-mail address, will send notice via first class mail.
- Second, Defendant will pay to have national print or web publications publicize the settlement.
- Third, Defendant will pay to have an internet website set up wherein class members can access the pertinent settlement documents.

(Copies of the long and short form notices are attached as Exhibits 2 and 3 to Exhibit A, the Settlement Agreement).

The proposed notice is neutral in tone and neither promotes nor discourages the assertion of claims. It also provides the settlement class members with a detailed explanation of their options to allow each of them to make an informed decision. The Parties request the Court to approve the form and method of notice proposed.

## VIII.    PROPOSED PRELIMINARY SCHEDULE

The Parties propose the following schedule leading to the Fairness Hearing for final approval of the settlement:

1.    Settlement Website to be established shortly after entry of Preliminary Approval Order (PAO)

2.    E-mail notice sent out                within 30 days after PAO entered

3.    U.S. mail notice mailed              within 45 days after PAO entered

4.    Publication notice                       45 days after PAO entered

5.    Deadline for Opt-outs/Objections    75 days after PAO is entered            *qc*

6.    Submission of papers in support of  7 days prior to Final Fairness Hearing Date
       final approval of settlement

7.    Final Fairness Hearing               90 days after PAO is entered.

8.    Claim Bar Deadline:                   60 days after Final Fairness Hearing    *no*

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that (1) the Court certify the requested settlement class, (2) appoint Byron Barrett as the lead plaintiff, (3) appoint the requested leadership structure for Class Counsel, (4) Preliminarily approve the propose settlement, (5) approve the form and method of proposed Notice, and (5) the Court order the issuance of the Notice and all other actions detailed in the schedule proposed in Section VIII above.

Dated:

Respectfully submitted,

BYRON BARRETT

By one of his Attorneys

Jay Edelson
KAMBER EDELSON LLC
53 West Jackson Bvld., Suite 1530
Chicago, Illinois 60604
(312) 589-6370
attorney no. 44146

Gino L. DiVito
TABET DIVITO & ROTHSTEIN LLC
180 North LaSalle Street, Suite 1510
Chicago, Illinois 60601
(312) 762 9450

William M. Audet
AUDET & PARTNERS, LLP
221 Main Street, Suite 1460
San Francisco, CA 94105