# Exhibit 11



**GovTrack.us**
Tracking the 110th United States Congress

Ads by Google

**RealtyTrac ® Foreclosures**
Most Foreclosure Listings. 1.3M+ Listings.
Free 7-Day Trial.

**Estimate My Roof Cost**
Prescreened Roofing Contractors Request 3
Roof Quotes in 20 Seconds

---

**New! Legislative Analysis Community Blog:**   A new blog has started on the **front page** of GovTrack for nonpartisan, thoughtful
analysis of legislative issues, written by citizens like you. Join in to help others track Congress---it's a community effort! Experts wanted!

---

| Bills | Legislators | Votes | Track Congress / Log In | Active Bills | Recent Votes | Learn More | About GovTrack | Find: |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | bill number/keyword |

**What's this?**

(?) The Congressional Record is the official journal of Congress's daily proceedings.

Though often a transcript of the debates on the House and Senate floors, like C-SPAN transcripts, the Congressional Record can be significantly modified by Members of Congress after the fact. Entries in the Congressional Record can reflect the edited, prepared versions of statements actually made on the floor, and on very rare occasions can contain seeming entire debates between Members of Congress that never took place.

Only floor proceedings are a part of the Record, and so committee meetings are not available this way.

**Primary Source**

(i) This excerpt from the Congressional Record comes from THOMAS (section 57).

Congressional Record > Feb 16, 2005

# CLASS ACTION FAIRNESS ACT

The United States House of Representative

Feb 16, 2005

Section 57

### In This Section...


*Rep. Goodlatte [R-VA]:* Mr. Speaker, with the leave of the Speaker, we have the opportunity for the next hour to talk about major and historic legislation that will come before the Congress... 🔊


*Rep. Davis [R-KY]:* Mr. Speaker, I thank the gentleman for yielding. Mr. Speaker, I rise today in support of the Class Action Fairness Act, and I speak as a former small business... 🔊


*Rep. Keller [R-FL]:* Mr. Speaker, I thank the gentleman from Virginia for yielding. Our colleagues in Congress owe the gentleman from Virginia (Mr. Goodlatte) a great debt of gratitude for... 🔊


*Rep. Goodlatte [R-VA]:* Mr. Speaker, I thank the gentleman. One of the issues that the critics of this legislation argue is that it would undermine federalism principles by removing to... 🔊


*Rep. Gingrey [R-GA]:* I thank the gentleman from Virginia (Mr. Goodlatte) for allowing me to participate in this hour to discuss something of such tremendous import to the people of this... 🔊


*Rep. Goodlatte [R-VA]:* I thank the gentleman for his support of this legislation and his very cogent reasoning about why it is needed. I have one last chart I want to show before we... 🔊

### Record Text

**Chair:** Under the Speaker's announced policy of January 4, 2005, the gentleman from Virginia (Mr. Goodlatte) is recognized for 60 minutes as the designee of the majority leader.

**Rep. Robert Goodlatte [R-VA]:** Mr. Speaker, with the leave of the Speaker, we have the opportunity for the next hour to talk about major and historic legislation that will come before the Congress tomorrow.

The Senate has already passed legislation reforming class action lawsuit abuses, and now the House of Representatives will take it up and pass it and send it to the President of the United States.

Why is this such a historic occasion? Because abuses in class actions have been going on for many years. In fact, this House has worked for over 6 years to reform this difficulty and get to the point where we are today.

This legislation has passed the House of Representatives in each of the last three Congresses, but each time it was stymied in the United States Senate. The fact of the matter is that as the legislation progressed through the House, it got more and more votes,

more and more bipartisan support, but never could get the threshold needed to pass in the other body. That has now changed. The Senate has passed legislation. It is a little different from what the House has passed in the past, but it holds the same core principle of reforming the abuses that are taking place today all across the country with class action lawsuits.

Some of these abuses are absolutely startling. In a nationwide class action lawsuit filed in Alabama against the Bank of Boston over mortgage escrow accounts, the class members won the case, but actually lost money. Under the settlement agreement, the 700,000 class members received small payments of just a couple of dollars or no money at all. About a year later they found out that anywhere from $90 to $140 had been deducted from their escrow accounts to pay their lawyers' legal feels of $8.5 million. In other words, they had to pay more than they have received in settlement in order to satisfy multi-million dollar attorneys' fees.

When some of those class members sued their class action lawyers for malpractice, the lawyers countersued them for $25 million saying their former clients were trying to harass them.

In another classic case, in the settlement of a class action lawsuit in Madison County, Illinois, against Thompson Consumer Electronics over alleged faulty television sets, consumers were eligible for rebates on future purchases ranging in value from $25 to $50 if you spent more than $100 on a Thompson Electronics product. So in other words, your settlements was a coupon to buy more of what was alleged to being defective in the first place.

How did the attorneys do? Well, the attorneys pocketed $22 million in attorneys' fees. Some consumers reportedly walked away from the settlement altogether because the form was so complicated and the attorneys' fees were so high.

Recently, President Bush had down at the Commerce Department a forum to discuss these abuses, and one of these plaintiffs in this Thompson Electronics case was there. And after explaining what she had been through and the frustration of having a television set that did not work and being represented in a class action that did not work and winding up with a coupon to buy something she did not want to buy and seeing the attorneys get $22 million in attorneys' fees, she said, Where is the justice in that?

The fact of the matter is there is no justice in our current class action system and it is, in effect, a racket.

How did we get to this point? Well, it has to do with a problem with our Federal laws. When our Founding Fathers wrote our Constitution, they very wisely provided for a Federal judiciary, a judiciary that could hear cases from different people in different States so that if in the founding of our country and ever since people felt that they might not be treated as fairly in a foreign jurisdiction in a court across the country somewhere far from where they have lived, they could have the opportunity to remove it to the Federal courts where they would in theory get more impartial treatment. This has persisted for the entire history of our country.

However, our Founding Fathers never heard of class action lawsuits. They are a 20th-century development and they are not without their merit. Class actions afford efficiencies to our courts because if people have an identical claim against one or more defendants, they can be consolidated into a class and brought before the court in an efficient manner and sometimes these cases involve hundreds of thousands or even millions of plaintiffs.

This legislation does nothing to affect the right of people to bring their class action lawsuits in State courts or Federal courts. But under the original establishment of our Federal courts, this diversity jurisdiction of the courts where you had parties from different States disputing each other, had to set a minimum amount before you could bring the case into courts; and over the years that number has risen to $75,000 per plaintiff.

So in other words, if a person who lives in my State of Virginia has an injury in the State of Maryland across the Potomac River and they bring a lawsuit in the State court, if that case involves more than $75,000 in damages, the case can be removed to the Federal courts. However, when you apply that rule to class actions, it is the same. It is $75,000, but it is per plaintiff. So if you have a million plaintiffs in a case, you have to multiply by one million times $75,000 or show a $75 billion case in order to get into Federal court. That is wrong, that a $75,000 simple case that can easily be handled in the State courts would be entitled

Case 1:07-cv-07184   Document 7-13   Filed 01/28/2008   Page 4 of 14

to the Federal courts and a $75 billion case or say a $70 billion case, less than the $75 billion threshold there, cannot get into the Federal courts. It is wrong. It should be corrected, and this legislation does it in a very simple fashion.

Instead of $75,000 per plaintiff, it is $5 million, but 5 million for the entire class, all the claims added together. And this will mean that no longer will you have what is called "forum shopping" taking place where the plaintiffs' attorneys can choose the jurisdiction they want to bring the case in and keep it there.

Why is that significant? Because we have over 4,000 jurisdictions across the country, 4,000 different State jurisdictions, sometimes simple county governments, sometimes a collection of counties within a State, but 4,000 different places where you can bring a lawsuit. The plaintiffs attorneys, and there are only a small number of plaintiffs attorneys who handle these big class action lawsuits, the plaintiffs attorneys know which of those 4,000 jurisdictions, maybe a dozen, maybe two dozen of them, are overwhelmingly biased and favorable to the plaintiffs in a class action.

There was one State court county in Alabama a few years ago where more nationwide class action lawsuits were considered in that one county than the entire Federal judiciary of more than 600 district court judges combined. That is an abuse. Today the same thing takes place in other jurisdictions around the country, and this legislation would correct that. More importantly, it would treat all the parties fairly because not only could the defendants remove a case to Federal courts, but any or all of the plaintiffs in the case would also have the right to remove that case to Federal court under appropriate circumstances. The judge would have discretion, if the case looked like it really did principally involve people in one State, it would be kept in that State. But if it

In addition to changing the jurisdictional requirements, there are also other things that will make it easier for plaintiffs to be treated fairly and defendants to be treated fairly as well. The Washington Post is one of more than 100 newspapers around the country that have endorsed this legislation. And they said it so wisely a few years ago. They have been supporting this for a long time. We do not often on our side of the aisle cite The Washington Post, but this gives you an idea of how serious this problem is and how widespread the support for this problem is: "The clients get token payments while the lawyers get enormous fees. This is not justice. It is an extortion racket that only Congress can fix."

I say to my fellow Members of Congress, tomorrow we are going to do just that, and send a bill identical to the bill with the Senate to the President of the United States for signing into law to once and for all change this abusive extortion racket.

At this time it is my pleasure to recognize some other Members who have come down to speak on this issue. The first one is a new Member of the Congress who campaigned for election on legal reforms and who has identified this legislation as something that has great merit and we thank him for his early support, that is, the gentleman from the State of Kentucky (Mr. Davis).

**Rep. Geoff Davis [R-KY]:** Mr. Speaker, I thank the gentleman for yielding.



Mr. Speaker, I rise today in support of the Class Action Fairness Act, and I speak as a former small business owner who has watched industry damage, jobs lost and costs increased across the entire spectrum of our economy here in the United States.

This legislation will put an end to trial attorneys' forum shopping to find a friendly court where settlement awards will line their pockets while hitting victims and consumers in their pocketbooks. For too long, we have watched State courts try to manage a crush of cases that have been increasing year by year and that should have never entered the courtroom. These frivolous lawsuits frankly are merchandising the process of justice, making a profit for the few for the expense of freedom, liberty, and justice for the majority of people in this country.

Overall, class-action filings in the United States have increased 1,000 percent in the last 10 years, yet there has been no increase in capacity in our courtrooms, and the net result of that is to assure that our courts are slowed. There is a tremendous backlog of legitimate cases that need to be heard, and we are doing our citizens a disservice, again while a few make a tremendous amount of money, and the alleged victims in these cases collect nothing in damages of any substance.

Case 1:07-cv-07184    Document 7-13    Filed 01/28/2008    Page 5 of 14

In some jurisdictions, class-action filings have increased 4,000 percent, virtually bringing the legal system to a halt in those areas. Let me repeat that because it is such a significant number. Class-action filings in some jurisdictions have increased 4,000 percent. Mr. Speaker, this has become a money game, indeed a monopoly; ironically, very similar to the game of Monopoly.

If we look at the chart to my right, we can see how that game is played. Those who are profiteering in this business come up with an idea for a lawsuit. The next thing they do is find a plaintiff to play that off and then finally make allegations. In fact, legitimate rules of evidence need not apply here to simply get a forum to create press and public opinion. And finally, they are free from rule 23 to begin shopping these cases.

I have seen it in a variety of industries. I have seen it hurt our veterans in many ways while lining the pockets of just a few plaintiff attorneys in just a few States, and at the end of the day, business is impeded, jobs are going to be lost, and are lost in a wide variety of sectors.

Let us look at an example of a variety of these claims. Blockbuster, the video rental company, had a claim against it. $9.25 million were paid to the attorneys who were bringing forth that case. What was the benefit of it to the alleged victims in that case? Free movie coupons. This is an injustice. It is a misuse of our legal system, and frankly, I believe that that money was unethically acquired by those attorneys utilizing the judicial system in an inappropriate way.

The Bank of Boston case, $8.5 million were paid to attorneys, and indeed, some of the plaintiffs at the end of the settlement had to pay legal fees to cover the damages.

What happens to us? Our employers are hit. Our health insurance and liability policies in small business go up. Ultimately, plaintiffs' attorneys win and the consumer loses. Every Member of this body loses. The American citizen loses.

Unfortunately, the result of this class-action process, what it has become is it makes many of these settlements pass on to consumers considerable hikes in goods and services. It limits our access to markets, and frankly, it limits our ability to compete in the global economy for us, right now. This is bad for us as consumers and in business and for citizens.

The Class Action Fairness Act offers solutions to judicial loopholes that are abused by a minority of trial attorneys. It does not impede the filing of any legitimate claim nor does it prohibit legitimate claimants from seeking redress from a company that has harmed them. Let me make it clear. We are not preventing anybody from having a right to redress for legitimate damages. We are simply preventing a scourge that is hurting our Nation and our economy now.

The Class Action Fairness Act allows Federal courts to hear cases that involve true interstate issues while preserving the State courts for true local issues, which is as the founders built it into the Constitution.

This is a good bill. Mr. Speaker, I am proud to support it.

**Rep. Robert Goodlatte [R-VA]:** Mr. Speaker, I thank the gentleman. We are also joined by another leader for legal reforms, the gentleman from Florida (Mr. Keller), who has been very supportive of this class-action legislation for several years now, and we thank him for his leadership on the issue and I am pleased to yield to him.



**Rep. Ric Keller [R-FL]:** Mr. Speaker, I thank the gentleman from Virginia for yielding. Our colleagues in Congress owe the gentleman from Virginia (Mr. Goodlatte) a great debt of gratitude for successfully and persistently pursuing this legislation for a great number of years, and tomorrow he will finally put the ball in the end zone, and he is to be congratulated.

Mr. Speaker, I rise today in strong support of this class-action reform legislation.

The bottom line is that class-action reform is badly needed. Currently, crafty lawyers are able to game the system by filing large, nationwide class-action suits in certain preferred State courts like Madison County, Illinois, where judges are quick to certify class actions and quick to approve settlements which reward attorneys with millions of dollars but give

their clients worthless coupons.

Speaking of Madison County, let us look at this chart here, and as we can see, Madison County, Illinois, which by the way has been called the number one judicial hellhole in the United States, there were 77 class-action lawsuits filed in 2002 and 106 class-action lawsuits filed in 2003. Now, the movie "Bridges of Madison County" was a love story. The "Judges of Madison County" would be a horror flick.

Unfortunately, all too often it is the lawyers who drive these cases and not the individuals who are allegedly injured. For example, in a suit against Blockbuster for late fees, the attorneys received $9.25 million for themselves while their clients got a coupon for a $1 discount on their next video rental.

Similarly, in a lawsuit against the company who makes Cheerios, the attorneys received $2 million for themselves, while the plaintiffs received a coupon for a free box of Cheerios.

In a nutshell, these out of control class-action lawsuits are killing jobs, hurting small business people who cannot afford to defend themselves and hurting consumers who have to pay a larger amount for goods and services.

This legislation provides much-needed reform in two key areas. First, it eliminates much of the forum shopping by requiring that most of these nationwide class-action claims be filed in Federal court.

Second, it cracks down on these coupon-based, class-action settlements by requiring that attorney-fee awards be based either on the value of the coupons actually redeemed or by the hours actually billed by the attorney in prosecuting the case.

Mr. Speaker, this legislation should comfortably pass the U.S. House of Representatives tomorrow. Last week, this exact bill received 72 votes, broad bipartisan support, in the U.S. Senate, and last year we passed a very similar class-action reform bill in the U.S. House with 253 votes.

I urge my colleagues to vote yes on this class-action reform legislation. It is about justice. It is about common sense and it is about time.

**Rep. Robert Goodlatte [R-VA]:** Mr. Speaker, I thank the gentleman.


One of the issues that the critics of this legislation argue is that it would undermine federalism principles by removing to Federal courts cases that should be decided by the State courts. Well, that is exactly the opposite of what is going on here. These critics are wrong.

The Class Action Fairness Act restores, rather than undermines, federalism principles. Why is that? Because, as I noted earlier, the fact of the matter is that these cases involve plaintiffs from often all 50 jurisdictions, and when the case is brought in one State court, in one county in that State, and that judge then makes a decision, that judge is deciding the law, not just for the State of Illinois, if you happen to be in Madison County, but he or she is deciding that case for all 50 States, and that is something that our Constitution intends be available to people to have decided not in one particular State court jurisdiction but in our Federal courts. That is one of the principal reasons why our Federal courts were established, and it is in those courts that these types of cases should be heard, but under the current rules they cannot be.

So what happens in Madison County, Illinois, as this chart shows, affects the whole country. The overwhelming majority of class actions filed in Madison County are nationwide lawsuits in which 99 percent of the class members live outside of the county. As a result, decisions reached in Madison County's courts affect consumers all over the country, and the county's elected judges effectively set national policies on important commercial issues.

So, in terms of restoring States rights, that is exactly what this legislation does. It makes sure that the rights of all 50 States are protected in the judicial proceedings related to class-action lawsuits and that one State does not have the opportunity to establish policy that directly affects other States.

Let me give my colleagues another example of that. Several years ago, State Farm Insurance Company was sued because they were requiring their adjusters in automobile

cases to calculate the adjustments using what are called after-market parts. After-market parts are not used parts. They are new parts, but made by companies other than the original manufacturer of the automobile. There is nothing wrong with the quality of the parts, but they are often less expensive because they are manufactured in a competitive environment where anybody can make these parts. Therefore, the price is generally lower. And the reason why State Farm was doing that was in part because it is good policy to save money for your insureds and keep your insureds premiums low, but also because many of the insurance commissioners of the 50 States also encouraged or, as in the case of Massachusetts, even required the use of after-market parts wherever possible.

Well, this suit was brought, alleging that that was wrong, and State Farm was put in a position of being in a court in Illinois in which they were going to have the decisions of the 50 State insurance commissioners, none of whom had any problem with this policy, overturned by one court judge who was not even experienced in terms of handling insurance policies like the insurance commissioners are that do it in and day out every day, but one judge could overturn the policies of the other 50 States. So that, indeed, is a reason for concern.

What happened? State Farm decided to go to court, to go to trial in that case and they lost. That jury and that judge found a $1.3 billion liability for something that 50 State insurance commissioners said was a perfectly legitimate thing to do, that was actually saving consumers money, but now, because they could not remove the case to Federal court, they got stuck with a $1.3 billion judgment.

Can my colleagues imagine the effect that has on the company's ability to borrow money on the value of the stock of the shareholders of a company? It has a devastating impact. That case is still under appeal.

Other companies see that and they know that when they get into these particular hand-picked jurisdictions where the judges and juries are known to be biased in favor of the plaintiff, in virtually every instance they know that when you get brought into those courts and you cannot remove the case to Federal court, where they will get fairer treatment, they better settle up. That is why we get some of these abusive cases like this one I want to bring to my colleagues' attention.

This one involved Chase Manhattan Bank. Chase Manhattan Bank was sued, and they settled the case rather than go to court and risk that. Well, what do you suppose the plaintiffs got in that settlement? This is an actual copy of one of those settlements. Thirty cents. That is what each plaintiff got in the case. What did the plaintiffs' attorneys get? They got $4 million in attorneys' fees. But the people they represented got 33 cents each.

There was a catch, though. That was back when postage cost 34 cents and you had to use a 34 cent postage stamp to mail in your acceptance of the 33 cent settlement, for a net loss of one cent. How ridiculous can you get.

It has an impact on other insurance companies, too. A few years ago, I found I had been made a plaintiff in a case brought in Santa Fe, New Mexico, against Massachusetts Mutual Life Insurance Company. What was it alleged Massachusetts Mutual had done wrong? Well, when you get your premium, your bill, from Massachusetts Mutual, you can pay it on a monthly, quarterly, or annual basis. If you pay it on a monthly basis, you pay a little more than on a quarterly basis, and that is a little bit more than on an annual basis. Why? Because if you pay on an annual basis, it costs them a lot less money to send out one bill than to send out 12 bills a year, and they have the opportunity to get that money sooner invested. So it is a little less expensive to them, and they pass that savings along to the consumer.

The plaintiff in this case and their attorney said they should have to spell out exactly what the difference in savings is rather than simply look at the bill and see that these payments are 12 times what there is and that that is a little more. They said they had to make a disclosure under laws that are not even supposed to apply to insurance companies.

Well, they went ahead and settled that case. Why? I asked them. They said because they did not want to get in the same situation that State Farm Insurance Company found itself in with a $1.3 million lawsuit. What was the agreed-upon settlement they sent to the judge in that Santa Fe, New Mexico, court? Well, it provided for $13 million in attorneys' fees, $5 million up front, $5 million over a period of time, and a nice $3 million universal life insurance policy for the plaintiffs' attorneys. Is that not nice?

Now, what did the plaintiffs get? The plaintiffs, all the plaintiffs got a promise that Massachusetts Mutual would not do this again. Now there is a new settlement proposed because that one actually was withdrawn when they realized how embarrassing it was for the plaintiffs' attorneys to get $13 million in fees and the plaintiffs would simply get a promise for nothing. Now they have changed it so the plaintiffs might get as much as $50 off on their policy. The plaintiffs' attorneys would still get the massive 8-digit settlement amount in the multimillions of dollars.

That is wrong. And it is just one more clear example of evidence why this is an extortion racket. Here are some more of what we call the class action wheel of fortune.

If you are a company, or if you work for a company that gets caught up in the class action wheel of fortune, watch out, because it can affect your job, it can affect the success of your company and get you tied up in these multimillion dollar cases where there really is little or no damage; or, even if there is, like there was in the Thompson Electronics case, where the television sets were not working, the attorneys got $22 million and the plaintiffs got a coupon, a $50 coupon or a $25 coupon to buy more of the same thing they were not happy about in the first place.

Now, let us look at the class action wheel of fortune. Kay Bee Toys. The lawyers spin the wheel and get $1 million. The consumers get 30 percent off on selected products for 1 week. One week to go to the store and use your coupon to buy certain selected products. Maybe if you are unhappy with Kay Bee Toys in the first place you do not want to go back to settle with them. But that is okay, that is what you get, and the lawyers get a million.

Poland Spring Water, $1.35 million for the lawyers, and the consumers got a coupon for more water.

Ameritech, $16 million for the lawyers. The consumers? A $5 phone card.

Premier Cruise Lines, the lawyers got $887,000. The consumers, $30 to $40 cruise coupons. If you were not happy with your cruise and were part of this lawsuit, the lawyers got almost $1 million and you got a $30 to $40 coupon for future use on a cruise.

How about computer monitor litigation involving several companies. The lawyers got $6 million and the consumers got a $13 rebate on future product purchases.

Register.com, the lawyers got $642,500 and the consumers $5 coupons.

This kind of abuse is what this legislation is designed to correct. It is time to end the class action wheel of fortune and benefit all consumers in America who do not seek companies treated in this fashion and lawyers lining their pockets with excessive attorneys' fees because they have an extortion situation or the defendant in the case knows that if they do not pay those big attorneys' fees and get away with giving a coupon or something to the plaintiffs themselves, they could go to court and wind up with a much larger judgment because they are in an unfair, hostile court, just like State Farm found itself in.

We are going to change that so that people, when they see this situation, both the plaintiffs who find themselves made a party to a case and the defendants, can remove that case to Federal court. They will still have a right to bring the class action, but it will be examined and dealt with under more standard rules and in a fairer and more impartial judiciary.

We have more examples. This is the apple juice example. As this chart shows, in the settlement of a class action lawsuit alleging that Coca Cola improperly added sweeteners to apple juice, it was the lawyers who got a sweet deal: $1.5 million in fees and costs.

Unfortunately, class members came up empty again, receiving 50-cent coupons but no cash.

Crayola Crayons. Another favorite American brand. In the settlement of a class action lawsuit over alleged improper manufacturing of Crayola Crayons, consumers received 75-cent coupons to buy more of the crayons, while their lawyers pocketed $600,000 in attorneys' fees.

Then we have the famous golf ball case. In the settlement of a class action lawsuit over the terms of a promotion for Pinnacle golf balls, the manufacturer paid $100,000 in attorneys' fees and no cash to class members, who received three free golf balls.

Well, thankfully, people are beginning to recognize this abuse. Newspapers all across the country, newspapers whose editorial boards reflect widely different ideological viewpoints on many issues have found common ground on the need to adopt the Class Action Fairness Act. More than 100 editorials so far support the legislation.

I earlier cited The Washington Post. They also had this to say about it: "No area of U.S. civil justice cries out more urgently for reform than the high-stakes extortion racket of class actions, in which truly crazy rules permit trial lawyers to cash in at the expense of businesses. Passing this bill would be an important start to rationalizing a system that is out of control."

The Chicago Tribune said that the Class Action Fairness Act would "substantially end the practice of forum shopping, stop seeking a home in State courts that are deemed most likely to produce juicy settlements. This would go a long way to halt the worst class action abuses. It should be the law." And very soon after tomorrow, it will be the law.

News Day, a Long Island newspaper, said: "In a deal that should cement class action lawsuit reform, three Democratic Senators have now signaled support for a bill. The tweaks they won made a good bill better. Class action lawsuits are ripe for reform. The Senate bill would curtail abuses by moving the largest nationwide class actions into Federal courts and toughening judicial scrutiny of settlements. The changes Democrats won will help ensure that largely local cases remain in State courts. Congress should enact this needed reform."

The Orlando Sentinel said: "The Senate's proposal is worthy of becoming law."

The Providence Journal, from Rhode Island: "The Senate should pass a long overdue reform to curb abuses in class action lawsuits. Class action suits involving interstate commerce, which is implied by having plaintiffs in more than one State, clearly belong in Federal court. The consumers should no longer have to bear the onerous costs of the practice of venue shopping."

Spokesman Review, from Washington State: "The Class Action Fairness Act would restore common sense to a valid and needed legal procedure."

The Hartford Courant: "After 5 years of trying, Congress appears ready to curtail the worst abuses. Legislators have debated the issue long enough. There is no good reason to wait another year to adopt this important reform."

They said that last August. They had to wait another year. Let us hope they do not have to wait any longer than tomorrow when we will have a big bipartisan vote in support of this reform.

Earlier, I think one of my colleagues mentioned the Blockbuster case. That is the deal where in the settlement of a class action lawsuit filed in Texas against Blockbuster Video over late fees, currently on appeal to the Texas Supreme Court, the plaintiffs' lawyers will receive $9.25 million in fees and expenses and the class members will receive two coupons for movie rentals and a $1-off coupon.

While the lawyers made enough money to produce their own movie, Blockbuster customers could not even use their coupons to buy a bag of popcorn, because their coupons only covered nonfood items. The settlement allows Blockbuster to continue its practice of charging customers for a new rental period when they return a tape late. Blockbuster later changed that policy, but they should not be put in a position of being in a hostile court where attorneys get a $9.25 million settlement, and all they do is antagonize their consumers by giving them coupons.

In State court class actions, the lawyers take the money. The Bank of Boston case. The lawyers, $8.5 million. The plaintiffs actually lost money. The Blockbuster case. The lawyers, $9.25 million. The plaintiffs, $1 off the next movie. The Coca Cola case. The lawyers, $1.5 million and the plaintiffs, 50-cent coupons.

And how about Cheerios? A honey of a deal if you are an attorney. As part of a settlement of a class action lawsuit in Cook County, Illinois, against the manufacturer of Cheerios, the company put coupons for a free box of cereal in the newspapers, but it was the plaintiffs' lawyers who got the prize at the bottom of the cereal box. They milked the company for $2 million in fees, an estimated $1,200 per hour for their legal services. For these class action attorneys, Cheerios truly proved to be a "honey of an O."

In the case involving a lawsuit filed in California, more than 50 well-known computer manufacturers and distributors were accused of misrepresenting the screen size of their computer monitors. The nationwide class of an estimated 40 million consumers received an offer of a $13 rebate on new computers. That is great. You have a computer screen that probably does not bother most people that the size of the computer screen was a little different than was represented to them, but if they want to go out and buy a whole new computer, get a new screen, the size they might want, they get a $13 rebate. How do you suppose the attorneys did? Well, they got $6 million in legal fees.

In a recent class action lawsuit in Cane County, Illinois, against Poland Spring, the class members claimed that the company's bottled water was not pure and was not from a spring. Under the settlement, the consumers received coupons for a discount. On what? More Poland Spring water. Poland Spring admitted no wrongdoing, and it is not changing anything about the way it bottles or markets its waters. So what was that worth to all those plaintiffs, who were represented by the attorneys in that case, who got the opportunity to get a coupon for more water? Well, those lawyers who did that good work, they got $1.3 million in attorneys' fees.

How about this one, where the lawyers sail away with fees and the consumers get coupons. In a class action lawsuit filed in Florida against Premier Cruise Lines, consumers allege they were charged for port charges higher than Premier actually paid. Under the settlement, the class members received coupons for a $30 to $40 discount on another cruise line, because Premier has since gone out of business.

Imagine that. A many-thousands-of-dollars cruise, and you can get a $30 or $40 discount if you use this coupon. What do you suppose the lawyers got? They got nearly $900,000 in attorneys' fees. While the lawyers made off with all the money, another cruise line gained a promotional opportunity.

The lawyers receive $1 million and sell out their class in the Cook County, Illinois, case against Kay Bee Toys over alleged deceptive pricing practices. The toy company paid attorneys and fees costing $1 million, but no cash to the class members. As part of the settlement, the store held a 1-week, unadvertised 30-percent-off sale on selected products.

My colleagues, this is indeed an abuse.

In addition, we want to mention something that helps these consumers in these cases. These coupon settlements will get much closer scrutiny after this law takes effect.

The bill provides a number of new protections for plaintiff class members, what you might call a consumer bill of rights, including greater judicial scrutiny for settlements that provide class members only coupons as relief for their injuries. The bill also bars the approval of settlements in which class members suffer a net loss. In addition, the bill includes provisions that protect consumers from being disadvantaged by living far away from the courthouse.

These additional consumer protections will ensure that class-action lawsuits benefit the consumers they are intended to compensate. This legislation does not limit the ability of anyone to file a class-action lawsuit. It does not change anyone's right to recovery. It simply closes the loophole allowing Federal courts to hear big lawsuits involving truly interstate cases, while ensuring that purely local controversies remain in State courts.

This is exactly what the framers of the Constitution had in mind when they established Federal diversity jurisdiction. It has taken us more than 200 years but it is now time to make clear that these devices that the framers of the Constitution did not know about, but, certainly if they did, would be very concerned about, now would be entitled to be heard in the court best suited to decide these complicated, multistate, multiplaintiff, sometimes millions of plaintiff cases, sometimes many defendants in the case.

Mr. Speaker, there are more abuses of class-action lawsuits. I think we have covered a great many of them. I think we have made plain that this is a situation deserving of repair by the Congress. In fact, I have been working on this legislation for over 6 years and it is long overdue. These abuses keep piling up. Each time we bring the legislation up, we have more and more of these examples.

It is long overdue that we finally have the opportunity to correct this problem. It is one that has a very simple correction. End the abusive forum shopping by a handful of lawyers who

specialize in these cases and know the handful of jurisdictions where they are going to get this kind of spectacular treatment on one side and unfair treatment on the other side, and let us go to what our judicial system is supposed to be all about; and that is fair treatment, equal application of the laws and standards that are imposed to make sure that these kinds of abusive cases are heard in fair courts, so that businesses do not feel like they are forced to deal with a situation where they have to settle the case because they know they are in a jurisdiction

In recent years State courts have been flooded with class actions. As a result of the adoption of different class-action certification standards in the various States, the same class might be certifiable in one State and not another, or certifiable in State court but not in Federal court. This creates the potential for abuse of the class-action device, particularly when the case involves parties from multiple States or requires the application of the laws of many States.

For example, some State courts routinely certify classes before the defendant is even served with a complaint and given a chance to defend itself. Other State courts employ very lax class-action treatment certification criteria, rendering virtually any controversy subject to class-action treatment.

There are instances where a State court in order to certify a class has determined that the law of that State applies to all claims, including those of purported class members who live in other States. This has the effect of making the law of that State applicable nationwide. Where is the State's rights in that? Where are the principles of federalism in that, where one State court judge can tell the other 49 States what the law should be in their States? That is not what is intended and that is why our Founding Fathers intended to have Federal courts handle cases just like these.

The existence of State courts that broadly apply class certification rules encourages plaintiffs to forum shop for the court that is most likely to certify a purported class. Believe me, they do just that. Because most State courts are going to do a good job handling class actions, but because the system is designed the way it is, those attorneys will bring those cases to just a handful, a dozen or two dozen jurisdictions around the country, and that is what creates the unfairness and that is why the Federal courts need to be available as a forum to decide these cases if any of the parties choose to seek to remove the case to those courts.

In addition to forum shopping, parties frequently exploit major loopholes in Federal jurisdiction statutes to block the removal of class actions that belong in Federal court. For example, plaintiffs' counsel may name parties that are not really relevant to the class claims in an effort to destroy diversity. How fair is that? Somebody gets sued and added to a lawsuit not because they have done anything wrong, but because by adding them into the case they can prevent the case from being removed to Federal court. That abuse is also corrected.

In other cases, counsel may waive Federal law claims. In other words, not fully represent their clients, the plaintiffs, in some of the measures that may be available to them under Federal laws, simply ignore those rights, ignore those laws, and bring the case in State court so that it cannot be removed to the Federal court. It will remain in the State court.

Another problem created by the ability of State courts to certify class actions which adjudicate the rights of citizens of many States is that oftentimes more than one case involving the same class is certified at the same time; in other words, in two different States or in two different counties of the same State. Under the Federal rules, that problem is solved.

In the Federal court system, those cases involving common questions of fact may be transferred to one district for coordinated or consolidated pretrial proceedings. When these class actions are pending in State courts, however, there is no corresponding mechanism for consolidating the competing suits. It is inefficient, it is wasteful, and it results in unfair and differing results when you have two different State courts deciding the same thing for the same nationwide group of plaintiffs. There is no corresponding mechanism for consolidating the competing suits in State courts. Instead, a settlement or judgment in any of the cases makes <pre>[Page: H690]</pre>

The loser in this system is always the class members, the plaintiffs, the people who are getting these coupons and so on, while they watch their attorneys get multimillion-dollar settlements. The loser in the system is the class member whose claim is extinguished by

the settlement at the expense of counsel seeking to be the one entitled to recovery of fees.

This bill is designed to prevent these abuses by allowing large interstate class-action cases to be heard in Federal court. It would expand the statutory diversity jurisdiction of the Federal courts to allow class-action cases to be brought in or removed to Federal court.

Mr. Speaker, I yield to the gentleman from Georgia (Mr. Gingrey), another Member of the House who has been a major contributor to our effort to reform class-action lawsuit abuse, someone who has championed legal reform and has done an outstanding job representing his constituents.

**Rep. John Gingrey [R-GA]:** I thank the gentleman from Virginia (Mr. Goodlatte) for allowing me to participate in this hour to discuss something of such tremendous import to the people of this country and to the small business men and women who are suffering so much because of class action and lawsuit abuse.

The President was so clear in his recent State of the Union address in talking about the need to reform the civil justice system. He talked about it being kind of a three-legged stool. And class action is an extremely important part of that reform; asbestos litigation and how we deal with a trust fund for people that have been possibly exposed to, and more serious, if they actually have health problems related to asbestos. We need to make sure that that is done in a fair way so that those who are truly hurt are the ones that benefit from any awards that are given or, in the case of asbestos, from a trust fund that is set up.

Class-action reform is something that we have been trying to do in this Congress for a long time. Our friends on the other side of the aisle like to say that this is a bill that has not been marked up, that we just bring this before the House and it does not go through the committee and it does not go through the hearings and the markup of that sort of thing.

Senate bill 5, which we are dealing with now, which we will have an opportunity to debate tomorrow and pass in this Chamber, is almost the exact same bill, I think it is **H.R. 1115**, that passed this body in the 108th Congress and passed with really strong bipartisan support.

**Quick Info**

H.R. 1115 [109th]: To amend the Harmonized Tariff Schedule of the United States to clarify the...

Last Action: Referred to the Subcommittee on Trade.
Status: Dead

So these arguments from the other side suggesting that we are rushing something through, nothing could be further from the truth. In fact, in the Rules Committee, of which I am a member, we agreed to make in order a rule, an amendment in the nature of a substitute from our friends on the other side of the aisle. In that amendment essentially is every amendment, maybe except for one, but almost every amendment that was offered to this bill, Senate bill 5, in the other body that was thoroughly discussed and debated and defeated in a bipartisan fashion.

We are going to give those on the other side of the aisle an opportunity for one more bite at the apple tomorrow in the abundance of fairness, to give them an opportunity to argue those points once again. I think that it is time. Over 10 years we have been working on this bill, long before I got to the Congress.

Let me just, if I might, go through a little bit of chronology in regard to this bill. The 105th Congress, that is four Congresses ago, 8 years ago, almost 10 years ago, the Senate had a bill, 2083, Class Action Fairness Act. The Senate hearing held, reported by the Senate subcommittee. **H.R. 3789**, Class Action Jurisdiction Act of 1998, committee hearing, markup held, reported from the House Judiciary Committee, 17-12.

**Quick Info**

H.R. 3789 [109th]: To amend title I of the Employee Retirement Income Security Act of 1974 to...

Last Action: Referred to the Subcommittee on Employer-Employee Relations.
Status: Dead

106th Congress, **H.R. 1875**, Interstate Class Action Jurisdiction Act of 1999. Committee hearing, markup held. Passed the floor of this body 222-207.

**Quick Info**

H.R. 1875 [109th]: To authorize the Secretary of the Interior to study the suitability and...

| 107th Congress, H.R. 2341, Class Action Fairness Act, committee hearing, markup held, passed floor 233-190. And on and on and on. So those who would suggest, Mr. Speaker, that this has not had a fair hearing, nothing could be further from the truth. | Last Action: Executive Comment Requested from Interior. Status: Dead |

I want to ask my colleagues to look at this slide here to my left and the title of the slide, "Who Wins?" This is pretty clear. This would be a typical class-action abuse case. Maybe it was in Madison County, Illinois, where so many of these cases are filed in State court. I do not know if this particular one was there but we know lots of cases have been filed there in Madison County. Class members. Coupons for crayons, a video rental, apple juice, popcorn, golf balls. And what do the plaintiffs' attorneys get? $11.45 million. That is the problem.

Let me just give you an example of another case, this one from Texas, Jefferson County State Court. Shields et al. v. Bridgestone. The suit involves customers who had Firestone tires that were among those that the National Highway Traffic Safety Administration investigated or recalled, but who did not suffer any personal injury or property damage. After a Federal appeals court rejected class certification, the plaintiffs' counsel and Firestone negotiated a settlement which has now been approved by the Texas State court. Under the settlement, the company has agreed to redesign certain tires, in fact, a move that already was underway irrespective of this lawsuit, and also to develop a 3-year consumer education and awareness campaign. But the members of the class received nada. Nothing. The lawyers? They got $19 million.

This, Mr. Speaker, is why I am here and grateful to the chairman for letting me participate in this Special Order to make sure that we all understand that when people are injured, when people need a redress of their grievances, they do not need to be getting coupons that are worthless unless they take the trouble of redeeming them, and then they are worth very little and all the money goes to plaintiffs' attorneys. This is just about leveling the playing field.

We will be talking about the other two legs of the stool. I mentioned asbestos and, of course, civil justice reform in regard to medical liability, the Health Act of 2003, so-called tort reform. That is the other leg of the stool that we need to address, because the unintended consequences of not doing anything is if you put small businessmen and - women totally out of business because of the cost of defending these frivolous cases in the health care field, people do not have access to health care in a timely fashion.

Then doctors who practice in a high-risk specialty, such as emergency room care or obstetrics or neurosurgery, hang up their stethoscopes and white coats and pick up a fishing rod or a set of golf clubs at the prime of their career.

So that is why we are here. There is why this is so important. I thank the gentleman for yielding.

**Rep. Robert Goodlatte [R-VA]:** I thank the gentleman for his support of this legislation and his very cogent reasoning about why it is needed.

I have one last chart I want to show before we close, and that is this poll taken in USA Today about the opinions of the public on class action lawsuits.

As I said at the outset, this bill does not take away the right of anybody to bring a class action lawsuit, and class action lawsuits have their place in our legal system.

But the American public knows what is going on. When they were asked who benefits most from class action lawsuits? Lawyers for the plaintiffs, by far the number one answer. Forty-seven percent.

The second answer, lawyers for the companies. They get paid too, 20 percent. The companies being sued 7 percent. Remember they get to give out those products promoting their products. They get out of what could be a worse situation. And the buyers of the products, 5 percent. And the plaintiffs 9 percent.

The overwhelming majority of the public, more than 70 percent, know that class action lawsuits are not serving the people that they are supposed to serve. The lawyers get the cash, the plaintiffs get the coupons, the consumers pay higher prices for goods and services, and it is an abuse.

Tomorrow we have the opportunity to correct it once and for all, to pass a bill that will be identical to the bill passed by the Senate and send it to the President of the United States for his signature. He has been a champion on this issue. He has indicated his willingness to sign that legislation.

I urge my colleagues to get the job done, to pass this legislation and reform the abuses in our class action lawsuit industry that have taken place, and let us return it to class action justice for plaintiffs who deserve it.

---

GovTrack is not affiliated with the U.S. government or any other group. You are encouraged to reuse any material on this site. For more information, see About GovTrack. Feedback (but not political opining) is welcome to operations@govtrack.us , but I can't do your research for you, nor can I pass on messages to Members of Congress. This website is just a pet project of a regular joe.