# Exhibit 23

1 of 1 DOCUMENT

In re: AMERICAN ONLINE SPIN-OFF ACCOUNTS LITIGATION; This Document Relates To: All Actions

MDL Docket No. 04-1581-RSWL, Master Case No. CV 03-6971-RSWL

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

2005 U.S. Dist. LEXIS 45625

May 9, 2005, Decided
May 9, 2005, Filed

**COUNSEL:** [*1] For America Online Spin-Off Accounts Litigation, (2:04-ml-01581-RSWL-PLA), In Re: Joseph M Graham, Jr, LEAD ATTORNEY, Kirkland & Ellis, Los Angeles, CA.

For Mary Duessent, (2:04-ml-01581-RSWL-PLA), Plaintiff: Allison L Ehlert, LEAD ATTORNEY, Daniel C Girard, LEAD ATTORNEY, Jonathan K Levine, LEAD ATTORNEY, Sanjay M Ranchod, LEAD ATTORNEY, Girard Gibbs & De Bartolomeo, San Francisco, CA; C Brooks Cutter, LEAD ATTORNEY, Stuart Talley, LEAD ATTORNEY, Kershaw Cutter Ratinoff & York, Sacramento, CA; Eric H Gibbs, LEAD ATTORNEY, Girard Gibbs, San Francisco, CA; Mark J Tamblyn, LEAD ATTORNEY, Wesler Toriseva Wallace, Sacramento, CA; Michael J Pucillo, LEAD ATTORNEY, R Scott Palmer, LEAD ATTORNEY, Berman DeValerio Pease Tabacco Burt and Pucillo, West Palm Beach, FL; Shannon P Cereghino, LEAD ATTORNEY, Finkelstein Thompson and Loughran, San Francisco, CA.

For America Online Inc, (2:04-ml-01581-RSWL-PLA), Defendant: C Robert Boldt, LEAD ATTORNEY, Sydne J Michel, LEAD ATTORNEY, Joseph M Graham, Jr, LEAD ATTORNEY, Kirkland and Ellis, Los Angeles, CA; Daniel T Donovan, LEAD ATTORNEY, Eugene F Assaf, LEAD ATTORNEY, John C O'Quinn, LEAD ATTORNEY, Jonathan Brightbill, LEAD ATTORNEY, Laura A Thorns, [*2] LEAD ATTORNEY, Kirkland & Ellis, Washington, DC.

For ICT Group Inc, (2:04-ml-01581-RSWL-PLA), Defendant: C Robert Boldt, LEAD ATTORNEY, Sydne J Michel, LEAD ATTORNEY, Joseph M Graham, Jr, LEAD ATTORNEY, Kirkland and Ellis, Los Angeles, CA; Daniel T Donovan, LEAD ATTORNEY, Eugene F Assaf, LEAD ATTORNEY, John C O'Quinn, LEAD ATTORNEY, Laura A Thorns, LEAD ATTORNEY, Kirkland & Ellis, Washington, DC.

For Mary Duessent, (2:04-ml-01581-RSWL-PLA), Counter Defendant: Michael J Pucillo, LEAD ATTORNEY, Berman DeValerio Pease Tabacco Burt and Pucillo, West Palm Beach, FL.

For Mary Duessent, individually on behalf of the general public and all others similarly situated, Robert Edward Coffey, Wendy Coffey, Patricia Webb, (2:03-cv-06971-RSWL-PLA), Plaintiff: C Brooks Cutter, LEAD ATTORNEY, Stuart Talley, LEAD ATTORNEY, Kershaw Cutter Ratinoff & York, Sacramento, CA; Dennis Stewart, LEAD ATTORNEY, Hulett Harper Stewart, San Diego, CA; Eric H Gibbs, LEAD ATTORNEY, Girard Gibbs, San Francisco, CA; Jonathan K Levine, LEAD ATTORNEY, Sanjay M Ranchod, LEAD ATTORNEY, Girard Gibbs and De Bartolomeo, San Francisco, CA; Mark J Tamblyn, LEAD ATTORNEY, Wesler Toriseva Wallace, Sacramento, CA; Shannon P Cereghino, [*3] LEAD ATTORNEY, Finkelstein Thompson and Loughran, San Francisco, CA; Thomas V Girardi, LEAD ATTORNEY, Girardi & Keese, Los Angeles, CA.

For David Wendt, Tapetha Spencer, Vince Motley, Doris Lott, Andrew Sheldon, Suzi Bernstein, William French, Michael Irwin, John McCall, Stephanie Salatich, Linda Rubin, Patti Meza, Marie Lopez, (2:03-cv-06971-RSWL-PLA), Plaintiffs: C Brooks

Cutter, LEAD ATTORNEY, Stuart Talley, LEAD ATTORNEY, Kershaw Cutter Ratinoff & York, Sacramento, CA; Eric H Gibbs, LEAD ATTORNEY, Girard Gibbs, San Francisco, CA; Jonathan K Levine, LEAD ATTORNEY, Sanjay M Ranchod, LEAD ATTORNEY, Girard Gibbs and De Bartolomeo, San Francisco, CA; Mark J Tamblyn, LEAD ATTORNEY, Wesler Toriseva Wallace, Sacramento, CA.

For America Online Inc, a Delaware corporation, ICT Group Inc, a Pennsylvania corporation, (2:03-cv-06971-RSWL-PLA), Defendants: Daniel T Donovan, LEAD ATTORNEY, Eugene F Assaf, LEAD ATTORNEY, Kirkland & Ellis, Washington, DC; Joseph M Graham, Jr, LEAD ATTORNEY, Kirkland & Ellis, Los Angeles, CA.

**JUDGES:** RONALD S.W. LEW, United States District Judge.

**OPINION BY:** RONALD S.W. LEW

**OPINION**

**ORDER GRANTING PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF UNDER THE ALL WRITS ACT**

Plaintiffs' Motion for Injunctive Relief [*4] under the All Writs Act, *28 U.S.C. § 1651(a)*, for an order enjoining Defendants America Online, Inc. ("AOL") and ICT Group, Inc. ("ICT") from proceeding with a settlement of Plaintiffs' claims in *O'Leary v. America Online, Inc., No. 03-L-491*, pending in St. Clair, Illinois, came before the Court on May 9, 2005. Both sides were represented by counsel of record and oral arguments made by both parties. Having considered all papers and argument submitted, **THE COURT FINDS AND ORDERS AS FOLLOWS:**

**I. BACKGROUND**

**A.** *Brief Case Summary*

These cases stem from AOL's alleged opening of spin-off sub accounts ("SOSAs"), without permission from account holders, through the use of deceiving pop-up ads. Plaintiffs brought twelve class actions that have been transferred to this Court by the Multi-District Litigation Panel for pre-trial proceedings.

On January 23, 2004, these MDL cases were advanced for coordination and this Court issued an Initial Case Management Order designating Kershaw, Cutter, Ratinoff & York, LLP and Girard, Gibbs & DeBartolomeo, LLP as co-lead counsel.

On July 8, 2004, co-lead counsel filed the operative pleading, the First Amended Consolidated Complaint ("FACC") which applies to all [*5] of the actions. The FACC alleges: (1) violation of the Electronic Funds Transfer Act (*15 U.S.C. § 1693e*), (2) violation of California's Consumers Legal Remedies Act (*Cal. Civ. Code §§ 1750, et seq.*), (3) violation of California's Unfair Competition Law (*Cal. Bus. & Prof. Code §§ 17200, et seq*), (4) violation of Virginia's Consumer Protection Act (*Va. Code §§ 59.1-200, et seq.*) (5) conversion, and (6) unjust enrichment. The FACC was brought by plaintiffs Mary Duessent, Marie Lopez, Patti Meza, Robert Coffey, Wendy Coffey, Patricia Webb, Linda Rubin, Stephanie Salatich, John McCall, Michael Irwin, William French, Suzi Bernstein, Andrew Sheldon, Doris Lott, Vince Motley, Tapetha Spencer, and David Wendt. (FACC at 1.)

**B.** *Motions the Court Has Heard*

On April 26, 2004, this Court heard Plaintiff Snow's motion for amendment of the Initial Case Management Order No. 1 and for Protective Order. The Court denied the motions because it found the co-lead counsel appointed in the first case management order appropriate. Additionally, the Court found the motion to amend the initial case management order premature, because at that time most of the related cases were not before this Court.

On July 26, [*6] 2004, the Court heard Defendants AOL and ICT's motion in support of Defendants' proposed case management schedule. Plaintiffs filed a brief in support of their own case management order. The parties agreed to most of the schedule, but Defendants wanted early resolution of procedural issues and motions to dismiss, while Plaintiffs wanted to begin discovery immediately. The Court granted Defendants' motion and adopted Defendants' Case Management Order Number 2.

Additionally, on September 13, 2004, the Court heard both Defendant AOL and Defendant ICT's motions to dismiss. The Court, finding that Plaintiffs sufficiently alleged facts sufficient to withstand a motion to dismiss, denied both Defendants' motion in their entirety. On that same day, the Court also heard Defendants AOL and

ICT's motion for protective order and Plaintiffs' motion for protective order. In their version, Defendants requested three additional changes with which Plaintiffs disagreed. The Court granted in part and denied in part both Defendants' motion and Plaintiffs' motion. The Court ordered a single designation system, ordered disclosure of experts' names, and ordered disclosure of the names of former employees [*7] to whom "confidential" documents would be disclosed.

Finally, at the end of October 2004, the Court also heard Plaintiff Christine Snow's Motion to Remand and Defendants AOL and ICT's Motion to Enter [Defendants' Proposed] Discovery Plan and Case Management Order No. 3. The Court granted Snow's Motion to Remand and granted Defendants' Motion to Enter Proposed Discovery Plan and Case Management Order No. 3.

Now, currently before the Court is Plaintiffs' Motion for Injunctive Relief asking the Court to enjoin the *O'Leary* settlement pending in Illinois.

## III. DISCUSSION

### A. *Legal Standard: All Writs Act and Injunctions*

The All Writs Act, *28 U.S.C. § 1651(a)*, authorizes courts, under extraordinary circumstances, to compel action by non-parties who "are in a position to frustrate the implementation of a court order or the proper administration of justice." *United States v. New York Tel. Co., 434 U.S. 159, 174, 98 S. Ct. 364, 54 L. Ed. 2d 376 (1977); see also United States v. City of Detroit, 329 F.3d 515, 522 (6th Cir. 2003)*.

Under the Anti-Injunction Act, *28 U.S.C. § 2283*, federal courts have the power to enjoin state court proceedings when: (1) the injunctions is "expressly authorized by Act of Congress"; (2) the injunction [*8] is "necessary in aid of [the court's] jurisdiction"; or (3) the injunction is necessary "to protect or effectuate [the court's] judgments."

"The Anti-Injunction Act applies although the injunction would be directed at a litigant . . . instead of the state court proceeding itself." *California v. Randtron, 284 F.3d 969, 975 (9th Cir. 2002)*. The three listed exceptions are "narrow." *Chick Kam Choo v. Exxon Corp., 486 U.S. 140, 146, 108 S. Ct. 1684, 100 L. Ed. 2d 127 (1988)*. "Unless one of the statutory exceptions applies, a federal injunction restraining prosecution of a lawsuit in state court is absolutely prohibited." *Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987)*. Any "doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state action to proceed." *Id. at 739-40; Bechtel Petroleum, Inc. v. Webster, 796 F.2d 252, 253 (9th Cir. 1986), cert. dismissed, 481 U.S. 1065, 107 S. Ct. 2455, 95 L. Ed. 2d 864 (1987)*.

However, an order pursuant to the All Writs Act is proper if it is "necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide the case." *In Re Diet Drugs Prod. Liab. Litig., 282 F.3d 220, 234 (3d Cir. 2002)*. [*9]

### B. *Analysis*

Plaintiffs bring this motion on the grounds that if granted final approval, the *O'Leary* Illinois state court settlement would extinguish the claims in the MDL proceeding before this Court. Plaintiffs argue that when AOL was unsuccessful in settling the MDL SOSA litigation before this Court, it secretly negotiated to settle the MDL SOSA claims in a completely unrelated non-SOSA state court action in Illinois. Plaintiffs contend that the word "SOSA" did not show up in the *O'Leary* case until the *O'Leary* plaintiffs moved to file a third amended complaint on the same day they moved for preliminary approval of the settlement.

In its papers, Plaintiffs assert that this settlement may actually be detrimental to the SOSA putative class because: (1) most claimants in that settlement will receive a few free months of AOL service, not cash refunds; (2) the $ 20 to $ 70 of unauthorized charges claimants are to receive will likely be reduced significantly, because there is a $ 25 million total cap on monetary compensation to be paid by AOL under the settlement; (3) the *O'Leary* settlement does not differentiate between the [*10] valuable claims of SOSA class members and the claims of persons who were charged for other unauthorized AOL services and products; and (4) the onerous three-page claim form and four pages of instructions will limit substantially the number of claimants.

Based on these arguments, Plaintiffs assert the old adage that Defendants have "made their bed and must now lay in it." Plaintiffs contend that since the inception of cases challenging AOL's SOSA scheme, AOL has

demonstrated an intent to litigate these cases in federal court vis a vis the MDL litigation. Therefore, Plaintiffs claim that AOL's forum-shopping is precisely the kind of conduct that the Class Action Fairness Act intended to prevent. As such, Plaintiffs ask the Court to enjoin Defendants from pursuing settlement of Plaintiffs' SOSA claims in the *O'Leary* action without notice to and the approval of this Court.

In response, Defendants argue that given that, in this Court, there is no certified class, no motion for class certification even filed, no depositions or computer inspections to date, and no settlement presented to the Court, Plaintiffs are inviting the Court to err by granting such extreme and unprecedented relief. Further, [*11] Defendants contend that Plaintiffs' proposed use of the All Writs Act has not been endorsed by the Ninth Circuit, and, at a minimum, would create a clear and irreconcilable conflict between case law in this Circuit and that of the Second and Third Circuits.

Defendants state that Plaintiffs are now seeking a proverbial "second bite of the apple," because the Illinois state court supervising the approval of the *O'Leary* settlement overruled objections that the action would interfere with the MDL litigation. Defendants argue that the SOSA class members in the *O'Leary* settlement, will not, as Plaintiffs argue, be precluded from participating in the MDL litigation. Defendants contend that in the *O'Leary* case, notice will just be sent to the class, then class members (such as the Plaintiffs here) can opt-out, object at the Fairness Hearing, or file a claim for relief. Defendants assert that is the most efficient course of action and Plaintiffs' attorneys should not be able to derail an entire class settlement for its own interests - i.e. attorneys' fees.

In support of its contentions, Defendants make four arguments: (1) the requested injunction is not permitted under federal law, because the [*12] Anti-Injunction Act prohibits Plaintiffs' requested relief since there are no cases where a federal court can assert jurisdiction where a class is not yet certified; (2) the Illinois state court has concurrent jurisdiction and clear authority to settle these claims as state courts have the authority to settle federal statutory claims of a nationwide class of plaintiffs [1]; (3) Plaintiffs' requested injunction would violate the *Rooker-Feldman* doctrine, because this court would be in essence hearing a de facto appeal of the state court's entry of settlement; and (4) the relief Plaintiffs seek is unnecessary as they have the opportunity to "opt-out" of the settlement.

> 1   In this argument, Defendants also point out that in both *O'Leary* and this MDL litigation, the putative class did not explicitly reference "SOSA" accounts, but that the class definition encompassed such accounts. Thus, Defendants contend that it never misled the court in *O'Leary* to add these putative class members at the last minute.

Plaintiffs reply that AOL mischaracterizes the extensive mediation and litigation activity that has transpired in the MDL litigation, and which supports issuance of the requested injunction. Further, [*13] Plaintiffs contend that AOL's failure to explain why it never disclosed the existence of the *O'Leary* SOSA claims demonstrates a "reverse auction [2]" and gamesmanship. Plaintiffs harp on the fact that before the settlement announcement, the SOSA claims were never a part of *O'Leary,* and if they were within the ambit of the class definition, Defendants would have moved for its transfer to this Court as a tag-along action.

> 2   A "reverse auction" is the "practice whereby the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement with, in the hope that the district court will approve a weak settlement and will preclude other claims against the defendant." *Reynolds v. Beneficial Nat'l Bank, 288 F.3d 277, 282 (7th Cir. 2002).*

In examining the case law on this issue, it appears that the All Writs Act is only applied in extraordinary circumstances. Courts have held that the scope of a federal court's power under the All Writs Act depends on the nature of the case before the court and the legitimacy of the ends sought to be achieved through the exercise of the power. See *In re Lease Oil Antitrust Litigation, 48 F. Supp. 2d 699 (S.D. Tx.1998).* A court [*14] may not rely on the Act to enjoin conduct that is "not shown to be detrimental to the court's jurisdiction," instead, any order under the Act must be "directed at conduct which, left unchecked, would have had the practical effect of diminishing the court's power to bring the litigation to its natural conclusion." *ITT Community Dev. Corp. v. Barton, 569 F.2d 1351, 1359 (5th Cir. 1978).*

Because an injunction is not "expressly authorized

by Act of Congress" or is necessary "to protect or effectuate [the court's] judgments," the only basis on which the Court can enjoin the Illinois state court action is that an injunction "necessary in aid of [the court's] jurisdiction."

The situation here is such that an injunction is "necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide the case." *In Re Diet Drugs Prod. Liab. Litig., 282 F.3d 220, 234 (3d Cir. 2002)*. A settlement in the Illinois action diminishes this Court's ability to bring the MDL litigation to a natural conclusion.

Although this is not a situation where the Court technically has jurisdiction [*15] over the SOSA plaintiffs in the *O'Leary* action, as a class has not yet been certified in the MDL litigation, nor is this a case involving exclusive federal question jurisdiction, [3] this is a situation where the Court's jurisdiction is threatened and "extraordinary circumstances" exist.

> 3  Plaintiff attempts to argue that a class need not be certified in order for a court to exercise its authority to enjoin, by citing to the case of *In Re Lease Oil Antitrust Litig., 48 F. Supp. 2d 699, 702-3 (S.D. Tex. 1998)*.
>
> In that case, however, the court found that it clearly exercised jurisdiction over the claims and the parties, because it involved federal antitrust causes of action. *Id.* Therefore, that court found that it had to take preliminary measures to protect its jurisdiction over an area of exclusive federal jurisdiction. *Id.* As such, the *In Re Lease Oil* Court held that it needed to act immediately in order to prevent the parties before it from possibly pursuing an inadequate or collusive settlement in state courts, which would release the apparently stronger claims in the instant case. *Id.* Accordingly, the Court found that both the "nature of the case" and the "legitimacy of the ends" warranted [*16] action by the Court under the All Writs Act. This is not the situation in the present action.

Further, this case is unlike *In Re General Motors Corp. Pick-Up Fuel Tank Products Liability Litigation I, 134 F.3d 133 (3d Cir. 1998)*. In that case, plaintiffs in an MDL action sought an injunction against a nationwide state court settlement that would extinguish their claims against General Motors. Even though the MDL plaintiffs in that case had already filed for class certification, the Third Circuit held that the requested injunction was not "necessary in aid of its jurisdiction" because the MDL court was not considering a competing class settlement.

In the instant matter, the parties have begun -settlement negotiations in the MDL litigation, and settlement in the Illinois state court action has the likelihood of eviscerating the Court's MDL jurisdiction over the putative SOSA class. The purpose of MDL litigation is to allow "centralization" and to prevent the type of forum-shopping that can occur from reverse auctions. [4] Further, under MDL litigation, the defendants involved in the Illinois action had a duty, pursuant to Central District Local Rules 83-1.3.1 and 83-1.3.3 to notify the Court [*17] of the related case in Illinois. Accordingly, the underlying policy behind MDL litigation, coupled with a threat to the Court's jurisdiction over the MDL plaintiffs, weighs in favor of granting Plaintiffs' motion for injunctive relief.

> 4  This is precisely what Congress sought to do through the Class Action Fairness Act, which President George W. Bush signed into law in February 2005. Although that Act did not grandfather existing lawsuits, it was signed by the President in order to "prevent trial lawyers from shopping around for friendly local venues."

### IV. CONCLUSION

Here, the Court finds that an injunction is "necessary to aid in its jurisdiction," because the Illinois state court settlement in *O'Leary* threatens the Court's continuing jurisdiction over the MDL Plaintiffs' claims in connection with Defendants' program. Accordingly, the Court **GRANTS** Plaintiffs' motion for injunctive relief. Defendants are enjoined, pursuant to the All Writs Act, from proceeding with the settlement in *O'Leary v. America Online, Inc.*, No. 03-L-491, pending in St. Clair, Illinois, to the extent that the settlement releases Plaintiffs' claims in connection with Defendants' SOSA program.

**IT IS SO ORDERED.**

**RONALD** [*18] **S.W. LEW**

United States District Judge                                  DATED: May 9, 2005