# Exhibit 27

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE THOMAS AND FRIENDS® WOODEN RAILWAY TOYS LITIGATION | No. 07 C 3514 |
| This Document Relates To: | Judge Leinenweber |
| *Hesse v. Learning Curve Brands Inc., et al.*, No. 07 C 3514 | |
| *Deke v. RC2 Corp. et al*, No. 07 CV 3609 | |
| *Walton v. RC2 Corp. et al*, No. 07 CV 3614 | |
| *O'Leary v. Learning Curve Brands, Inc.*, No. 07 C 3682 | |
| *Djurisic v. Apax Partners, Inc. et al*, No. 07 C 3707; | |
| *Reddell v. Learning Curve Brands, Inc. et al.*, No. 07 C 3747; | |
| *Rhode v. Learning Curve Brands, Inc. et al*, No. 07 C 4187; | |
| *Kreiner v. RC2 Corp. et al.*, No. 07 C 4547; | |
| *Wilson v. RC2 Corp. et al*, No. 07 CV 4642 | |

**CORRECTED PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

## TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ........................................................................................ 1

II.   FACTS ....................................................................................................... 1

    A.    Plaintiffs and the Class Were Deceived by Defendants' Uniform
          Representations ........................................................................... 2

    B.    As a Result of Defendants' Negligence, Plaintiffs' Children Have
          Been Exposed to Hazardous Lead Paint ...................................... 3

    C.    Plaintiffs and the Class Have Suffered Injury .............................. 4

III.  STANDARD OF REVIEW ....................................................................... 4

IV.   ARGUMENT ............................................................................................. 5

    A.    At Class Certification, Plaintiffs Will Demonstrate That Illinois Law
          can be Applied on a Class-Wide Basis ........................................ 5

          1.    The Court's choice of law analysis should be delayed until
                class certification .............................................................. 5

          2.    If the Court decides to proceed with a choice of law analysis,
                Illinois law should apply to this action because no conflicts
                have been identified ........................................................... 6

    B.    Plaintiffs Have Standing To Prosecute Their Claims ................... 8

          1.    Plaintiffs have suffered injury in fact................................. 8

          2.    Plaintiffs have shown a causal connection between the
                injury and Defendants' conduct ........................................ 10

          3.    Plaintiffs have shown that their injuries are likely to be
                redressed by a favorable decision .................................... 10

    C.    All Named Plaintiffs Have Adequately Stated Claims for Consumer
          Fraud (Counts I, II and XI) ........................................................ 11

          1.    Plaintiffs properly allege a cognizable injury ................... 12

          2.    Plaintiffs properly set forth Defendants' deceptive acts and
                practices .......................................................................... 13

          3.    Plaintiffs properly allege consumer fraud claims under the laws
                of their home states ........................................................ 14

                a.    Alabama ................................................................. 14

b.     Arkansas .................................................................................. 14

c.     Connecticut ............................................................................ 15

     (1)    The Connecticut Plaintiffs adequately pled an
             unfair or deceptive trade practice ..................................... 16

     (2)    The Connecticut Plaintiffs alleged an
             "ascertainable loss" ......................................................... 16

            (a)    The CPLA does not apply to consumer
                    fraud claims ............................................... 17

d.     Illinois .................................................................................... 17

     (1)    The Illinois Plaintiffs properly alleged that they
             suffered actual damages as a result of Defendants'
             misconduct ....................................................................... 18

D.    The Illinois Plaintiffs Properly Alleged That Defendants'
Misrepresentations Proximately Caused Plaintiffs' Damages
Under the ICFA ............................................................................................ 19

     (1)    The Illinois Plaintiffs properly alleged claims
             for Defendants' concealment or omission of a
             material fact in violation of the ICFA .............................. 20

b.     Indiana ................................................................................... 21

     (1)    The Indiana Plaintiffs suffered "actual damages" ............ 21

     (2)    Indiana Law does not require written notice for an
             incurable deceptive practice .............................................. 22

c.     Massachusetts ........................................................................ 22

d.     New Jersey ............................................................................. 23

e.     New Mexico, Oklahoma and Rhode Island ................................. 23

f.     New York ................................................................................ 24

g.     North Carolina ...................................................................... 24

h.     Ohio ....................................................................................... 25

i.     Pennsylvania ......................................................................... 26

j.     Texas ...................................................................................... 26

E.    Plaintiffs Sufficiently Allege a Claim for Breach of Implied
      Warranty (Count III) ................................................................ 28

      1.    The only relevant issue at this pleading stage is Article III
            standing ............................................................................ 28

      2.    Defendants had notice of the alleged defect on June 13, 2007
            (and likely much earlier) .................................................... 28

      3.    At this pleading stage, Plaintiffs have adequately alleged breach
            of the implied warranty of merchantability ............................ 30

      4.    Consumers in Massachusetts and Oklahoma may recover
            economic damages .............................................................. 31

            a.    Massachusetts ........................................................ 31

            b.    Oklahoma ................................................................ 32

F.    The Express Warranty Claims (Count IV) are Properly Pleaded ............ 32

      1.    Plaintiffs allege the terms of the express warranty ................... 32

      2.    Plaintiffs allege that Defendants' affirmative statements
            regarding the safety and quality of the Thomas Toys were
            a basis of the bargain ......................................................... 34

G.    Plaintiffs' Strict Liability (Counts V and VI) and Negligence
      (Count VII) Claims are not Barred by the Economic Loss Doctrine ......... 35

      1.    Plaintiffs' tort claims are not precluded under Illinois law ......... 35

      2.    Dismissal of Plaintiffs' tort claims is also improper under
            any other state law ............................................................. 36

            a.    Arkansas ................................................................ 36

            b.    Connecticut ............................................................ 37

            c.    New Mexico ............................................................ 38

            d.    Ohio ...................................................................... 38

            e.    Rhode Island .......................................................... 39

H.    The Complaint Properly Requests Payment for Blood Lead Testing
      as a Form of Equitable Relief (Count VIII) ..................................... 39

I.    The Unjust Enrichment Claims are Properly Pled in the Alternative
      (Counts IX and X) .................................................................... 45

V.    CONCLUSION .................................................................................. 46

## TABLE OF AUTHORITIES

**PAGE**

*Abusio v. Consol. Edison Co.,*
    238 A.D.2d 454 (N.Y. App. Div. 1997) ................................................................. 43, 44

*Adams v. Wacaster Oil Co,*
    98 S.W.3d 832 (Ark. Ct. App. 2003) ........................................................................ 29

*In re "Agent Orange" Prod. Liab. Litig.,*
    996 F.2d 1425 (2d Cir. 1993), *overruled in part on other grounds,*
    537 U.S. 28 (2002) ........................................................................................................ 9

*Airborne Beepers & Video, Inc. v. AT&T Mobility LLC,*
    499 F.3d 663 (7th Cir. 2007) ....................................................................................... 5

*Allen v. General Elec. Co.,*
    32 A.D. 3d 1163 (N.Y. App. Div. 2006) ................................................................... 43

*American Fertilizer Specialists, Inc. v. Wood,*
    635 P.2d 592 (Okla. 1981) .......................................................................................... 29

*American Hardware Mfgs. Ass'n v. Reed Elsevier, Inc.,*
    2004 U.S. Dist. Lexis 28007 (N.D. Ill. Dec. 28, 2004) ......................................... 46

*Amity Regional Sch. Dist. 5 v. Atlas Constr. Co.,*
    No. X06CV 970153388S, 2000 Conn. Super. Lexis 2031
    (Conn. Super. Ct. Aug. 4, 2000) ............................................................................... 37

*Ampat/Midwest, Inc. v. Illinois Tool Works, Inc.,*
    1988 U.S. Dist. Lexis 4611 (N.D. Ill. May 12, 1988) ....................................... 33, 35

*Ashton v. Pierce,*
    541 F. Supp. 635 (D.D.C. 1982), *aff'd,* 716 F.2d 56 (D.C. Cir. 1983) ................. 9

*Association of Data Processing Serv. Orgs., Inc. v. Camp,*
    397 U.S. 150 (1970) ...................................................................................................... 8

*Barbara G. Banks, P.A. v. Thomas D. Lardin, P.A.,*
    938 So. 2d 571 (Fla. Ct. App. 2006) ........................................................................ 45

*Barbara's Sales, Inc. v. Intel Corp.,*
    2007 Ill. Lexis 1698 (Ill. Nov. 29, 2007) .................................................................. 6

*Barron v. Ford Motor Co.,*
    965 F.2d 195 (7th Cir. 1992) ....................................................................................... 7

*Barry v. Arrow Pontiac, Inc.*,
    494 A.2d 804 (N.J. 1985)....................................................................................13, 23

*In re Baycol Prods. Litig.*,
    218 F.R.D. 197 (D. Minn. 2003)....................................................................................6

*Bayh v. Sonnenburg*,
    573 N.E.2d 398 (Ind. 1991) .........................................................................................45

*Bell Atl. Corp. v. Twombly*,
    ___ U.S. ___, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)..............................................5

*Billions v. White & Stafford Furniture Co.*,
    528 So. 2d 878 (Ala. Civ. App. 1988) ........................................................................14

*Bowerman v. United Illuminating*,
    1998 Conn. Super. LEXIS 3575 (Conn. Super. Dec. 15, 1998) .........................................43

*In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*,
    288 F.3d 1012 (7th Cir. 2002) ......................................................................................6

*Brokaw v. Mercer County*,
    235 F.3d 1000 (7th Cir. 2000) ....................................................................................34

*Burns v. Jaquays Mining Corp.*,
    752 P.2d 28 (Ariz. Ct. App. 1987).............................................................................40

*Canadian Pac. Railway Co. v. Williams-Hayward Protective Coatings, Inc.*,
    2005 U.S. Dist. LEXIS 28988 (N.D. Ill. 2005) ......................................................45

*Carey v. Kerr-McGee Chem. Corp.*,
    999 F. Supp. 1109 (N.D. Ill. 1998) .....................................................................40, 42

*Carlough v. Amchem Prods.*,
    834 F. Supp. 1437 (E.D. Pa. 1993) ....................................................................8, 9, 10, 11

*Carroll Instrument Co. Inc. v. B.W.B. Controls Inc.*,
    677 S.W.2d 654 (Tex. Ct. App. 1984)........................................................................30

*Carroll v. Litton Sys., Inc.*,
    1990 U.S. Dist. Lexis 16833 (W.D.N.C. Oct. 29, 1990) ..........................................43

*In re Chicago Flood Litig.*,
    680 N.E.2d 265 (Ill. 1997).........................................................................................35

*Citicorp Leasing Inc. v. Meridan Leasing Corp.*,
    1992 WL 211050 (N.D. Ill. Aug. 26, 1992) ..............................................................46

*City of Cincinnati v. Beretta U.S.A. Corp.*,
    768 N.E.2d 1136 (Ohio 2002)..................................................................38

*Colgan Air, Inc. v. Raytheon Aircraft Co.*,
    2007 U.S. App. LEXIS 24360 (4th Cir. Oct. 18, 2007)....................34

*Commonwealth v. Johnson Insulation*,
    682 N.E.2d 1323 (Mass. 1997) ...........................................................31

*Connick v. Suzuki Motor Co.*,
    174 Ill. 2d 482 (Ill. 1996)..........................................................13, 20

*Crest Container Corp. v. R.H. Bishop Co.*,
    111 Ill. App. 3d 1068 (1982) ...........................................................33, 35

*Cromeens, Holloman, Sibert, Inc. v. AB Volvo*,
    349 F.3d 376 (7th Cir. 2003) .............................................................46

*Day v. NLO*,
    851 F. Supp. 869 (S.D. Ohio 1994) .........................................42, 43, 44

*DeMotses v. Leonard Schwartz Nissan, Inc.*,
    578 A.2d 144 (Conn. Ct. App. 1990)......................................13, 16

*Deegan & McGarry v. Medical-Cor.*,
    708 N.E.2d 1029 (Ohio Ct. App. 1998)...........................................25

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006).............................................................8, 9

*Dhamer v. Bristol-Myers Squibb Co.*,
    183 F.R.D. 520 (N.D. Ill. 1998) ....................................................39, 40

*Dillon v. Evanston Hosp.*,
    199 Ill. 2d 483 (2002) ......................................................................18

*Dombrowski v. Gould Elecs., Inc.*,
    31 F. Supp. 2d 436 (M.D. Pa. 1998) ..............................................43

*Duke Power Co. v. Carolina Envtl. Study Group*,
    438 U.S. 59 (1978)............................................................................9

*Elliott v. Chicago Hous. Auth.*,
    2000 U.S. Dist. Lexis 2697 (N.D. Ill. Feb. 25, 2000)...................42

*Erickson v. Pardus*,
    ___ U.S. ___, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007).................5

*Farm Bureau Ins. Co. v. Case Corp.*,
    878 S.W.2d 741 (Ark. 1994) ....................................................................36

*Forseth v. Village of Sussex*,
    199 F.3d 363 (7th Cir. 2000) ...................................................................35

*Frederick v. Simmons*,
    144 F.3d 500 (7th Cir. 1998) .....................................................................6

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*,
    528 U.S. 167 (2000) ..................................................................................8

*Furst v. Einstein Moomjy, Inc.*,
    860 A.2d 435 (N.J. 2004) .........................................................................12

*Gagne v. Vaccaro*,
    766 A.2d 416 (2001) ................................................................................45

*In re Genetically Modified Rice Litig.*,
    2007 U.S. Dist. Lexis 76435 (E.D. Mo. Oct. 15, 2007) ...........................36

*Gennari v. Weichert Co. Realtors*,
    691 A.2d 350 (N.J. 1997) .........................................................................23

*Gershengorin v. Vienna Beef, Ltd.*,
    2007 U.S. Dist. Lexis 73202 (N.D. Ill. Sept. 28, 2007) ......................32, 33

*Goldman v. Barnett*,
    793 F. Supp. 28 (D. Mass. 1992) .............................................................34

*Gould v. Artisoft*,
    1 F.3d 544 (7th Cir. 1993) .........................................................................7

*Grossman v. Waltham Chem. Co.*,
    436 N.E.2d 1243 (Mass. Ct. App. 1982) ..............................................13, 22

*HPI Health Care Servs., Inc. v. Mount Vernon Hosp., Inc.*,
    131 Ill. 2d 145 (1989) ..............................................................................45

*Harrington Mfg. Co. v. Powell Mfg. Co.*,
    248 S.E.2d 739 (N.C. Ct. App. 1978) ......................................................25

*Henry v. The Dow Chem. Co.*,
    701 N.W.2d 684 (Mich. 2005) .................................................................43

*Hinchliffe v. American Motors Corp.*,
    440 A.2d 810 (Conn. 1981) ..................................................................16, 17

*Hinton v. Monsanto Co.,*
    813 So. 2d 827 (Ala. 2001) ................................................................................44

*Hoang v. ETrade Group, Inc.,*
    784 N.E.2d 151 (Ohio Ct. App. 2003) ...............................................................25

*Holtzman v. GMS,*
    2002 WL 1923883 (Mass. Super. 2002) .............................................................31

*Jacobs v. Yamaha Motor Corp., U.S.A.,*
    649 N.E.2d 758 (Mass. 1995) ............................................................................31

*Jensen v. Bayer AG,*
    862 N.E.2d 1091 (Ill. Ct. App. 2007) ...............................................................43

*Johnson v. Brown & Williamson Tobacco Corp.,*
    122 F. Supp. 2d 194 (D. Mass. 2000) (Defs.' Br. at 35) ...................................33

*Jones v. Utilities Painting Corp.,*
    198 A.D.2d 268 (N.Y. App. Div. 1993) .............................................................44

*Killingsworth v. HSBC Bank Nevada, N.A.,*
    Nos. 06-161, 06-2178, 2007 WL 3307084 (7th Cir. 2007) ..................................4

*Klaxon Co. v. Stentor Elec. Mfg. Co.,*
    313 U.S. 487 (1941) .............................................................................................6

*In re LILCO Sec. Litig.,*
    111 F.R.D. 663 (E.D.N.Y. 1986) .........................................................................6

*Lewis v. Lead Indus. Ass'n,*
    793 N.E.2d 869 (Ill. Ct. App. 2003) .................................................................42

*Lionel Trains v. Albano,*
    831 F. Supp. 647 (N.D. Ill. 1993) .....................................................................20

*Lowrey v. Dingmann,*
    85 N.W.2d 499 (Minn. 1957) .............................................................................12

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) .............................................................................................8

*Martin v. Shell Oil Co.,*
    180 F. Supp. 2d 313 (D. Conn. 2002) ...............................................................43

*McCormick Piano & Organ Co. v. Geiger,*
    412 N.E.2d 842 (Ind. Ct. App. 1980) ...............................................................22

*Metropolitan-North Commuter R.R. v. Buckley,*
    521 U.S. 424 (1997)......................................................................................................43

*Moorman Mfg. Co. v. National Tank Co.,*
    435 N.E.2d 443 (Ill. 1982)..........................................................................................35

*Muehlbauer v. GMC,*
    431 F. Supp. 2d 847 (N.D. Ill. 2006) ........................................................................19

*Oliveira v. Amoco Oil Co.,*
    201 Ill. 2d 134 (2002) ................................................................................................19

*In re Orthopedic Bone Screw Prods. Liab. Litig.,*
    1995 U.S. Dist. Lexis 22042 (E.D. Pa. Feb. 22, 1995)......................................40

*Paige v. Philadelphia Hous. Auth.,*
    2002 U.S. Dist. Lexis 5447 (E.D. Pa. Mar. 28, 2002) ...................................9, 39

*In re Paoli R. Yard PCB Litig.,*
    916 F.2d 829 (3d Cir. 1990)....................................................................9, 40, 41, 44

*Pappas v. Pella Corp.,*
    363 Ill. App. 3d 795 (1st Dist. 2006) ........................................................................20

*Parker v. America Isuzu Motors, Inc.,*
    No. 3476, 2005 WL 2108680 (Pa. Comm. Pl. Sept. 2, 2005) ...........................13, 26

*Paz v. Brush Engineered Materials, Inc.,*
    949 So. 2d 1 (Miss. 2007)...........................................................................................44

*Petty v. Chrysler Corp.,*
    343 Ill. App. 3d 815 (1st Dist. 2003) ........................................................................18

*Phillips Petroleum Co. v. Shutts,*
    472 U.S. 797 (1985)......................................................................................................6

*Potter v. Firestone Tire & Rubber Co.,*
    863 P.2d 795 (Cal. 1993) ...........................................................................40, 42, 43, 45

*In re Prempro Prod. Liab. Litig.,*
    230 F.R.D. 555 (E.D. Ark. 2005).............................................................................44

*Redland Soccer Club, v. Department of the Army,*
    696 A.2d 137 (Pa. 1997) .............................................................................................44

*Redmac, Inc. v. Computerland of Peoria,*
    140 Ill. App. 3d 741 (1986) ........................................................................................34

*In re Relafen Antitrust Liab. Litig.*,
    221 F.R.D. 260 (D. Mass. 2004) ............................................................................6

*Reynolds Metals Co. v. Westinghouse Elec. Corp.*,
    758 F.2d 1073 (5th Cir.1985) ............................................................................29

*Riston v. Butler*,
    777 N.E.2d 857 (Ohio Ct. App. 2002) ............................................................44

*Rocket & Rollie LLC v. Pamco Printed Tape & Label Co. Inc.*,
    No. 4:07cv00023 JHL, 2007 WL 891150 (E.D. Ark. 2007) ...........................29

*Rousseau v. K. N. Constr., Inc.*,
    727 A.2d 190 (R.l. 1999) ..................................................................................39

*Ruminer v. GMC*,
    483 F.3d 561 (8th Cir. 2007) ............................................................................37

*Saltzman v. Pella Corp.*,
    2007 U.S. Dist. Lexis 19650 (N.D. Ill. Mar. 20, 2007) ...................................46

*Shannon v. Boise Cascade Corp.*,
    208 Ill. 2d 517 (2004) ......................................................................................19

*Siegel v. Shell Oil Co.*,
    480 F. Supp. 2d 1034 (N.D. Ill. 2007) ............................................................28

*Simmons v. Pacor, Inc.*,
    543 Pa. 664 (1996) ..........................................................................................43

*Sinclair v. Merck & Co., Inc.*,
    913 A.2d 832 (N.J. Super. 2007) ....................................................................43

*Small v. Lorillard Tobacco Co.*,
    720 N.E.2d 892 (N.Y. 1999) ...........................................................................24

*Smith, Allen, Mendenhall, Emons & Selby v. Thomson Corp.*,
    371 Ill. App. 3d 556 (Ill. Ct. App. 2006) .................................................12, 18

*Soules v. General Motors Corp.*,
    402 N.E.2d 599 (Ill. 1980) ..............................................................................36

*Sound of Music Co. v. 3M*,
    477 F.3d 910 (7th Cir. 2007) ...........................................................................18

*Spence v. Glock*,
    227 F.3d 308 (5th Cir. 2000) .............................................................................6

*St. John's United Church of Christ v. City of Chicago,*
   502 F.3d 616 (7th Cir. 2007) ...................................................................5

*In re St. Jude Med., Inc.,*
   425 F.3d 1116 (8th Cir. 2005) ...................................................................6

*Stamm v. Wilder Travel Trailers,*
   44 Ill. App. 3d 530 (1976) ...................................................................34

*State Farm Mut. Auto. Ins. Co. v. Kia Motors Am., Inc.,*
   828 N.E.2d 701 (Ohio Ct. App. 2005)...................................................38

*Stephenson v. Capano Dev., Inc.,*
   462 A.2d 1069 (Del. 1983) ...................................................................12

*Sutton v. St. Jude Med. S.C., Inc.,*
   419 F.3d 568 (6th Cir. 2005) .................................................................9

*Thorogood v. Sears, Roebuck & Co.,*
   No. 06 C 1999, 2006 WL 3302640 (N.D. Ill. Nov. 9, 2006).................7

*Thorogood v. Sears, Roebuck & Co.,*
   No. 06 C 1999, 2007 WL 3232491 (N.D. Ill. Nov. 1, 2007).........6, 14, 25, 27

*U.S. Tire-Technology, Inc. v. Boeran, B.V.,*
   110 S.W.3d 201 (Tex. Ct. App. 2003) ...................................................29

*Varney v. R.J. Reynolds Tobacco Co.,*
   118 F. Supp. 2d 63 (D. Mass 2000) ...................................................33

*In re Vioxx Prods. Liab. Litig.,*
   239 F.R.D. 450 (E.D. La. 2006)...........................................................6

*Wallis v. Ford Motor Co.,*
   208 S.W.3d 153 (Ark. 2005)...................................................................15

*In re Warfarin Sodium Antitrust Litig.,*
   212 F.R.D. 231 (D. Del. 2002), *aff'd*, 391 F.3d 516 (3d Cir. 2004)...................6

*Warth v. Seldin,*
   422 U.S. 490 (1975).................................................................................8

*Watson v. Coachmen Rec. Vehicle Co.,*
   2006 U.S. Dist. Lexis 15087 (S.D. Ill. Mar. 31, 2006)........................34

*Whitmore v. Arkansas,*
   495 U.S. 149 (1990).................................................................................9

001975-11 213282 V1

*Wisconsin Elec. Power Co. v. Zallea Brothers, Inc.*,
  606 F.2d 697 (7th Cir. 1979) ............................................................... 32

*York v. Sullivan*,
  338 N.E.2d 341 (Mass. 1975) ............................................................... 23

*Yost v. Millhouse*,
  373 N.W.2d 826 (Minn. Ct. App. 1985) ............................................... 12

*Zanakis-Pico v. Cutter Dodge, Inc.*,
  47 P.3d 1222 (Haw. 2002) ..................................................................... 12

## STATUTES

15 OKLA. STAT. § 751 ............................................................................... 23

815 ILCS § 505/1 ...................................................................................... 17

ARK. CODE ANN. § 4-2-607 ....................................................................... 29

ARK. CODE ANN. § 4-2 314 ........................................................................ 28

ARK. CODE ANN. § 16-116-101 .................................................................. 37

CONN. GEN. STAT. § 42-110g ..................................................................... 16

CONN. GEN. STAT. § 52-572m(d) .......................................................... 37, 38

CONN. GEN. STAT. § 52-572n(a) ................................................................ 17

ILL. REV. STAT. (Ch. 26) § 2-313 .............................................................. 32

IND. CODE. § 24-4-0.5-5(a) ........................................................................ 22

IND. CODE § 24-5-0.5-4(a) ......................................................................... 21

MASS. GEN. LAWS ANN. CH. 93A, §§ 2(a), 9(3) ........................................ 22

N.M. STAT. § 57-12-1 ................................................................................. 23

OHIO REV. CODE § 1345.09(B) ................................................................... 26

R.I. GEN. LAWS § 6-13.1-1 ......................................................................... 23

TEX. BUS. COM. CODE ANN. § 2-314 .......................................................... 28

## I.    INTRODUCTION

Defendants exposed thousands of children to lead paint, not through general environmental contamination, but through toys that were marketed directly for young children to play with on a daily basis. Yet Defendants would have this Court find that the parents that bought the lead-painted toys and the children that played with the toxic toys have *no* remedy for a refund for the defective toys nor for the costs of diagnostic testing necessary as a direct result of the children's exposure to a toxic and illegal substance. The law does not intend that the victims are left without a remedy while the wrongdoer takes its profit to the bank. Rather, the law provides specific remedies to redress Defendants' misrepresentations and omissions, Defendants' sale of a toxic substance to which children were exposed, and the fact that consumers did not receive the benefit of their bargain.

Plaintiffs bring this action as a Class Action pursuant to Rules 23(a), (b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of all persons who purchased Thomas & Friends Wooden Railway vehicles, buildings and other train set components which contain lead paint and which were imported and/or distributed by Defendants between January 2005 and June 2007. ¶ 1[1]. Despite marketing their toys as safe for young children, Defendants RC2 Corporation, Learning Curve Brands, Inc., and DOES I through X (collectively "Defendants") distributed "Thomas & Friends Wooden Railway" components ("Thomas Toys" or "Toys") that are made using red and yellow surface paint containing lead which is poisonous to children, especially if ingested. ¶ 2. As will be fully set forth below, Plaintiffs have adequately alleged claims for consumer fraud, breach of warranty, strict liability and negligence. Accordingly, Defendants' 12(b)(6) motion should be denied.

## II.    FACTS

For almost 30 years, toys intended for use by children that use paint with a lead content in excess of 0.06% have been banned in the United States, because the toys present a risk of lead

---

[1] All "¶" references cited herein, unless otherwise specified, are to the Second Amended Complaint (Dkt. # 65).

poisoning to young children. ¶ 52. Yet, despite this long-standing ban, Defendants have manufactured, marketed and/or distributed at least 1.5 million Thomas Toys tainted with yellow and red lead paint in excess of federal limits. ¶¶ 3, 66. Defendants did so despite clear regulatory prohibitions on the use of lead paint on toys, their knowledge that the ingestion of lead paint by children can cause serious long-term injury, their prior experiences with the marketing and sale of children's toys tainted with lead paint, and their representations that the Thomas Toys are safe for children. ¶ 3.

RC2's Thomas Toys are manufactured in the RC2 Industrial Zone in Dongguan, China, where three third-party, dedicated suppliers, operate three separate free-standing facilities. ¶ 58. While lead paint has been banned on products marketed to children in the United States since 1978, it is still widely used in other countries and therefore can still be found on imported toys. ¶ 53. Yet, despite the fact that RC2 used Chinese suppliers and manufacturers for the Thomas Toys, it was not until at least mid-2007 that Defendants purportedly instituted a new certification program for paint suppliers and alleged that they would begin safety testing each batch of paint used. ¶ 59. As a result, Defendants put tens of thousands of children at risk through their distribution and sale of contaminated products.

A.    **Plaintiffs and the Class Were Deceived by Defendants' Uniform Representations**

From at least 2005 through 2007, Defendants marketed Thomas Toys as "safe and quality playthings" despite the fact they are colored with lead paint. Defendants' marketing campaign is built around assuring parents that their toys are safe for children. For example, on their website, Defendants state:

      a.      "**We understand that what matters most to parents is keeping their children healthy, happy and safe.** What matters most to us is helping parents do just that by offering products for every stage of your child's development. . . ."

      b.      "Learning Curve offers developmental toys that engage children, and provide parents with peace of mind, knowing their children are being inspired and enlightened by **safe and quality playthings.**" [¶ 60 (emphasis in original).]

- 2 -

Plaintiffs and the Class were deceived by Defendants' representations and purchased the Thomas Toys believing that the toys were safe in compliance with regulations banning lead paint on toys and were safe for their children to play with as children normally do, including with the expectation that their toddlers and young children would lick, suck and bite the toys while playing. ¶ 61. Indeed, not one of Defendants' statements would lead any person to believe that Defendants were utilizing lead paint on toys. However, despite Defendants' clear, uniform representations that the Thomas Toys were safe for children, the toys posed significant risk to children that would come into contact with the lead paint. ¶ 62.

**B.     As a Result of Defendants' Negligence, Plaintiffs' Children Have Been Exposed to Hazardous Lead Paint**

Moreover, as a result of Defendants' negligent and reckless conduct, Plaintiffs' children and the Class were exposed to a known hazardous substance. Lead is invisible to the naked eye and has no smell. Yet, lead is known to be very dangerous to human beings. Essentially, lead lodges in the bone or skeletal structure of the body and certain events can cause it to latently move into the blood stream and cause significant difficulties. ¶ 37. The U.S. Center for Disease Control has set a blood lead "level of concern" of a mere 10 micrograms per deciliter of blood (a microgram is 1/1,000,000th of a gram and a deciliter is 1/10th of a liter or about 1/10 of a quart), and new research suggests that serious health effects may begin to set in with blood levels as low as 5 micrograms per deciliter. ¶ 38.

On average, children under six will absorb and/or retain about 50% of the lead they ingest. ¶ 39. Children can be exposed to lead through such things as contaminated dust, paint chips or lead-based toys. Children may be exposed to lead from consumer products through normal hand-to-mouth activity, which is part of their development. Children often place toys, fingers, and other objects in their mouth, exposing themselves to lead paint or dust. ¶ 40. According to the National Safety Council, it only takes the lead dust equivalent of a single grain of salt for a child to register an elevated blood lead level. ¶ 41.

Children under the age of six are the most vulnerable to poisoning by lead, due in large part to the fact that their brains and nervous systems have yet to fully form. The direct effects of pediatric lead poisoning can include reading disabilities, attention deficit, hyperactivity, behavioral problems, stunted growth, hearing impairment and damage to the kidneys and greater demand for medical care generally to treat those problems. If exposed to higher levels, young children may suffer from mental retardation, fall into a coma or die. ¶ 42. *See also* ¶ 43.

Thus, the very children that Defendants expected to lick, suck, bite, chip, and ingest the paint on the Thomas Toys have now been exposed to poisonous lead that can cause serious long term injury. ¶ 69.

## C.    Plaintiffs and the Class Have Suffered Injury

Plaintiffs are not seeking some unspecified replacement toys from Defendants, but rather seek a full refund for the purchases made by them and the Class. ¶ 70.

Moreover, as a result of the exposure of Plaintiffs' children and the Class to a known hazardous substance, the children are at an increased risk of being poisoned by lead. A universally recognized method for testing lead levels is a blood test. The reliability of blood lead testing comes from, in part, the capability of comparing blood lead test results, especially for children, to the published standard of 10 ug/dl, established by the Center for Disease Control (CDC). ¶ 46. Blood lead testing is also useful in signaling a need for further medical examinations, which can lead to a more definite diagnosis. ¶ 47. Accordingly, Plaintiffs also seek to recover the costs of diagnostic testing necessary to detect lead poisoning to their children resulting from Defendants' actions. ¶ 71.

## III.    STANDARD OF REVIEW

A court must accept a complaint's well-pleaded allegations as true while drawing all favorable inferences for the plaintiff. *Killingsworth v. HSBC Bank Nevada, N.A.*, Nos. 06-161, 06-2178, 2007 WL 3307084, at *2 (7th Cir. 2007) (citing *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006)). Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint

- 4 -

contain a "short and plain statement of the claim showing that the pleader is entitled to relief." This "short and plain statement" must be enough "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

While Defendants half-heartedly claim the *Twombly* standard requires dismissal, *Twombly* does "not require heightened fact pleading of specifics," but rather that the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*, 127 S. Ct. at 1974; *see also St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007). Thus, the Seventh Circuit observed that, under *Twombly* and the subsequent decision in *Erickson v. Pardus*, ___ U.S. ___, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007), a complaint should be dismissed only when "the factual detail in a complaint [is] so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007). Here, as will be more fully explained below, the facts and entitlement to relief are far from sketchy. Thus, under *Twombly* and Rules 8(a), 9(b), and 12(b)(6), Defendants' motion should be denied.

## IV.     ARGUMENT

### A.     At Class Certification, Plaintiffs Will Demonstrate That Illinois Law can be Applied on a Class-Wide Basis

#### 1.     The Court's choice of law analysis should be delayed until class certification

Defendants' attempt to force this Court to decide the substantive law to be applied is premature. Defendants have confused the procedural posture of this case; at this point in the litigation, Plaintiffs need only show that they have plead "factual allegations . . . enough to raise [the] right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965. Plaintiffs have met this burden by properly pleading claims under the substantive law of all of the states in which they reside. As the Plaintiffs have met this burden, it is premature for this Court to decide which state's law should be applied to this case.

- 5 -

Class certification is the proper juncture at which this Court should engage in a choice of law analysis. *See, e.g., In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 288 F.3d 1012 (7th Cir. 2002) (conducting extensive choice of law analysis as part of a review of a grant of class certification); *Thorogood v. Sears, Roebuck & Co.*, No. 06 C 1999, 2007 WL 3232491, at *2 (N.D. Ill. Nov. 1, 2007) (dealing with choice of law issue as part of class certification motion) (J. Leinenweber); *Barbara's Sales, Inc. v. Intel Corp.*, 2007 Ill. Lexis 1698 (Ill. Nov. 29, 2007) (same).[2] Moreover, regardless of whether this Court ultimately decides to apply the law of Illinois, or the law of each individual Plaintiffs' home state, Plaintiffs meet their burden under Fed. R. Civ. P. 12(b)(6).

**2.　If the Court decides to proceed with a choice of law analysis, Illinois law should apply to this action because no conflicts have been identified**

If this Court should decide to conduct a choice of law analysis at this juncture, then the application of Illinois law to the claims of all Plaintiffs (and a nationwide Class) would be appropriate. "A federal court, sitting in diversity, applies the choice of law rules of the state in which it sits." *See Frederick v. Simmons*, 144 F.3d 500, 503 (7th Cir. 1998); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). The Supreme Court has recognized that the application of the substantive law of one state to the claims of a plaintiff from another state is legitimate and constitutional so long as certain preconditions are met. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12, 816-22 (1985); *see also In re LILCO Sec. Litig.*, 111 F.R.D. 663, 670 (E.D.NY. 1986) (stating "[w]ithout doubt, *Shutts* does not require us to apply the law of each state in which the plaintiffs reside nor does it prohibit the application of one state's law to all plaintiffs, regardless of residence").

---

[2] *See also Spence v. Glock*, 227 F.3d 308, 311 (5th Cir. 2000) (finding that the threshold question in reviewing a class certification decision is "whether the district court conducted [the] proper choice of law analysis"); *In re St. Jude Med., Inc.*, 425 F.3d 1116 (8th Cir. 2005) (class certification ruled improper because district court did not conduct a proper choice of law analysis); *In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450 (E.D. La. 2006) (deciding choice of law in predominance analysis); *In re Relafen Antitrust Liab. Litig.*, 221 F.R.D. 260, 275 (D. Mass. 2004) (same); *In re Baycol Prods. Litig.*, 218 F.R.D. 197 (D. Minn. 2003) (same); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231 (D. Del. 2002) (same), *aff'd*, 391 F.3d 516 (3d Cir. 2004).

- 6 -

As the Seventh Circuit has noted, one of the first things a court should do in deciding a choice of law question is to determine whether there is actually a conflict between the laws. *See Barron v. Ford Motor Co.*, 965 F.2d 195, 197 (7th Cir. 1992) (stating "before entangling itself in messy issues of conflict of laws a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states"). "Where the application of relevant state law would not produce different results, however, a court need not engage in choice of law analysis and should apply the law of the forum state." *Thorogood v. Sears, Roebuck & Co.*, No. 06 C 1999, 2006 WL 3302640, at *4 (N.D. Ill. Nov. 9, 2006) (J. Leinenweber). Defendants have failed to identify any actual conflict between these laws,[3] and Plaintiffs would argue that any conflict found would either be on procedural issues and, therefore, not important, *see Thorogood*, 2007 WL 3232491, at *2, or would essentially amount to a false conflict under *Barron*.

It is a settled matter in the Seventh Circuit that when the parties have not identified an actual conflict between the differing states laws the District Court is to apply the law of the forum. *See Gould v. Artisoft*, 1 F.3d 544, 549 n.7 (7th Cir. 1993) (holding, "[w]here the parties have not identified a conflict between the two bodies of state law that might apply to their dispute, we will apply the law of the forum state-here, Illinois"). Since Defendants have failed to show any real conflict between the laws,[4] and in fact argues that the application of the law is uniform, this Court should apply Illinois law.

---

[3] In fact, Defendants argue throughout their brief that all the different laws around the country are unanimous in that none of them would allow Plaintiffs' claims to proceed. Further, Illinois is where substantially all of the actions occurred or from which all actions emanated. The Defendants are headquartered in Illinois, and that is where the toys in question were designed and marketed. ¶ 33(c). All the marketing and advertisement for these products emanated from Illinois. *Id.* Defendant negotiated the license for the Thomas Toys from Illinois. *Id.* at ¶ 33(a). Defendants oversaw their Chinese production facilities from its offices in Illinois. *Id.* at ¶ 33(d). Defendants directed the sale of its Thomas Toys to retail stores and other distributors from its Illinois offices. *Id.* at ¶ 33(b). Conversations with the Consumer Product Safety Commission occurred in Illinois. *Id.* at ¶ 33(e). Defendants' recall strategy similarly emanated from Illinois. *Id.* Moreover, Plaintiffs intend to conduct discovery on these issues in order to prepare the choice of law issue for the class certification proceedings.

[4] In the event that Defendants attempt to identify and raise any purported conflicts in the laws for the first time on reply, Plaintiffs respectfully request an opportunity to respond in a sur-reply and/or for this Court to defer consideration of those issues until class certification.

**B.    Plaintiffs Have Standing To Prosecute Their Claims**

Defendants' contention that Plaintiffs lack standing to prosecute this action is meritless. In support of their argument, Defendants incorrectly conflate the law on standing to bring suit. To meet the Article III, § 2 of the United States Constitution standing requirement, a plaintiff must demonstrate: (1) he or has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, the injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). In analyzing standing, courts "must accept all material allegations of the complaint and must construe the complaint in favor of the complaining party" (*i.e.*, the class members). *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

**1.    Plaintiffs have suffered injury in fact**

First, a plaintiff must have suffered an "injury in fact" that is "distinct and palpable" and "fairly traceable to the challenged action." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Here, Plaintiffs have alleged two types of injury in fact: the loss of use of a defective product (and thus seek a refund for the costs of that product), and exposure to a toxic substance (for which they seek remuneration for blood lead diagnostic testing).

Defendants construe the meaning of injury-in-fact too restrictively. The degree of the injury is immaterial. *Carlough v. Amchem Prods.*, 834 F. Supp. 1437, 1450 (E.D. Pa. 1993). "If a plaintiff can show that there is a possibility that defendant's conduct may have a future effect, even if injury has not yet occurred, the court may hold that standing has been satisfied." Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, FED. PRAC. & PROC. CIV. 3D § 1785.1 (2005). The potential for future harm may also involve economic costs, including medical monitoring. *Denney v. Deutsche Bank AG*, 443 F.3d 253, 265 (2d Cir. 2006). Aesthetic, emotional or psychological harm may also meet Article III standing. *See, e.g., Association of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150 (1970); *Denney*, 443 F.3d at 265.

Generally, "exposure to a toxic substance constitutes sufficient injury in fact to give a plaintiff standing to sue in federal court." *Carlough*, 834 F. Supp. at 1454; *see also Duke Power Co. v. Carolina Envtl. Study Group*, 438 U.S. 59, 73-74 (1978) (exposure to radiation constituted "direct and present injury" despite the fact the construction of the nuclear power plant was not yet completed).[5] Indeed, many federal class action cases have involved a class that includes persons who have been exposed to a toxin, but have not manifested any disease. *See, e.g., In re Paoli R. Yard PCB Litig.*, 916 F.2d 829, 861 (3d Cir. 1990) (holding that persons who had been exposed to PCBs could sue for medical monitoring expenses because "regardless of whether all plaintiffs alleged demonstrable physical injury, they all clearly alleged monetary injury").[6] Specifically, courts have found that exposure "to the risk of lead poisoning" satisfies the Article III injury-in-fact standing requirement. *See, e.g., Ashton v. Pierce*, 541 F. Supp. 635, 637 (D.D.C. 1982), *aff'd*, 716 F.2d 56 (D.C. Cir. 1983); *see also Paige v. Philadelphia Hous. Auth.*, 2002 U.S. Dist. Lexis 5447, at *3 (E.D. Pa. Mar. 28, 2002) (denying defendant's motion to dismiss and finding plaintiffs had standing regarding exposure to lead paint).

Here, Plaintiffs' Complaint explains in detail how exposure to lead causes bodily injury even if disease is not manifested until much later.[7] ¶¶ 39, 42, 44, 45. Plaintiffs further allege that their exposure requires immediate diagnostic testing. ¶ 91. Thus, Plaintiffs are not relying

---

[5] *See also Sutton v. St. Jude Med. S.C., Inc.*, 419 F.3d 568, 574-75 (6th Cir. 2005) (holding that the increased risk that a faulty medical device may malfunction constituted injury-in-fact, despite the fact that the class members' own devices had not malfunctioned and may have been beneficial).

[6] Although in many of those cases, there is no express finding as to Article III standing, it is clear the courts were satisfied as to their Article III jurisdiction because a finding of such jurisdiction is necessary to examining the merits.

[7] Defendants further neglect to recognize that an injury in fact differs from a legal interest and therefore, an injury in fact does not need to sustain a valid cause of action under tort law. *Denney*, 443 F.3d at 264 (finding that future-risk class members have suffered injury in fact regardless of whether their injuries are sufficient to sustain a cause of action, and thus that an injury in fact may simply be the "fear or anxiety of future harm.") Accordingly, courts have routinely held that exposure to toxic or harmful substances satisfies the Article III injury in fact standing requirement even without physical symptoms of injury caused by the exposure, and even though exposure alone may not satisfy a claim under tort law. *See, e.g., Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). *See also In re "Agent Orange" Prod. Liab. Litig.*, 996 F.2d 1425, 1434 (2d Cir. 1993) (rejecting the argument that "injury in fact means injury that is manifest, diagnosable or compensable" and finding that exposure to a toxin constitutes injury in fact) (internal quotation marks omitted), *overruled in part on other grounds*, 537 U.S. 28 (2002). Thus, a threshold determination of standing "in no way depends on the merits of plaintiffs' [claim]." *Whitmore*, 495 U.S. at 155.

on speculative future harm, but on their present injuries resulting from exposure to lead. Plaintiffs have been personally affected by Defendants' conduct in a concrete and particular way whether or not they ever develop a serious medical condition. This "personal stake" is exactly what the Article III injury-in-fact requirement demands. *Carlough*, 834 F. Supp. at 1455.

### 2.    Plaintiffs have shown a causal connection between the injury and Defendants' conduct

Second, Plaintiffs have shown a causal connection between the injury and the conduct complained of. First, Plaintiffs purchased Thomas Toys uniformly marketed by Defendants as "safe and quality" playthings intended for children. Defendants' sale and distribution of the toys in a toxic state and the subsequent recall rendered the toys useless for their intended purpose, and thus Plaintiffs' loss of the benefit of their bargain was caused directly by Defendants' sale of a product that was different than Defendants represented it to be.

Second, the Complaint alleges that the exposure to the toxic substance causes an immediate need for blood lead testing. Without Defendants' placement of the toxic toys in the hands of consumers, there would be no need for blood lead testing. Plaintiffs' injuries are the proximate result of exposure to Defendants' lead tainted toys. *See, e.g.*, ¶¶ 3, 5, 21, 24, 27, 85, 94, 105, 112, 123, 130. Plaintiffs' injuries can be traced to Defendants because of Defendants' failure to test adequately and sufficiently warn of the dangers of the lead paint. *See, e.g.*, ¶¶ 44-45, 64-68, 79, 120-23, 125-30. It is clear that Plaintiffs and their children have been exposed to lead on Defendants' products as evidenced by the recalls. *See, e.g.*, ¶¶ 3, 5, 9-30, 64-67, 69-71.

Thus, for the purpose of Article III standing, Plaintiffs have met their burden of establishing that the alleged injury is fairly traceable to Defendants' alleged wrongful acts.

### 3.    Plaintiffs have shown that their injuries are likely to be redressed by a favorable decision

Third, Plaintiffs have shown that their injuries are likely to be redressed by a favorable decision. In this case, Plaintiffs allege an injury directly to their children; an injury, moreover, that is unaffected by whether any given child who played with the lead painted toys became ill.

- 10 -

*See, e.g.*, ¶¶ 9-30. Defendants do not dispute, nor could they, that lead is a toxin and that the toys were subject to the recall because they were tainted with lead paint. Accordingly, by definition, each class member sues on the basis of *actual* exposure and not *future* exposure to lead.

Plaintiffs also claim that Defendants' wrongfully misrepresented their toys safety, and that this fraud directly caused economic loss to them as purchasers, since they would not have bought these toys had they not been misled by Defendants. *See, e.g.*, ¶¶ 61, 70, 79-82, 88-91, 122.

Here, it is self-evident that the conventional remedy sought by Plaintiffs – money damages – would do much to redress their injuries. "[A] damage claim, by definition, presents a means to redress an injury." *Carlough*, 834 F. Supp. at 1456 (citing *Cardenas v. Smith*, 733 F.2d 909, 914 (D.C. Cir. 1984)). Thus, for purposes of Article III standing, Plaintiffs have shown that their injuries are likely to be redressed by the relief requested in the Complaint. *See* ¶¶ 6, 69-71. Indeed, the Complaint seeks a full refund for the products and the cost of diagnostic testing to detect lead poisoning to their children resulting from Defendants' actions. ¶ 71. In sum, Plaintiffs have more than met Article III standing requirements at this early stage in the litigation.

C.  **All Named Plaintiffs Have Adequately Stated Claims for Consumer Fraud (Counts I, II and XI)[8]**

Defendants move to dismiss the consumer fraud claims brought by all Plaintiffs, arguing that each of the named Plaintiffs failed to state a claim pursuant to the particular consumer fraud statute in each of their home states. Defs.' Br. at 21-32. Defendants make two primary arguments:  (1) Plaintiffs failed to allege a cognizable injury; and/or (2) Plaintiffs failed to identify any deceptive act or practice attributable to Defendants.[9]

---

[8] This portion of Plaintiffs' argument is made in the alternative, as Illinois law should apply to Defendants' conduct and the claims of all Plaintiffs. However, out of an abundance of caution, Plaintiffs address Defendants' attack on Plaintiffs' consumer fraud claims pursuant to laws of each Plaintiffs' home state.

[9] Defendants' remaining arguments are addressed below.

Defendants' arguments miss their mark. In every instance, Defendants are forced to either ignore the allegations in the Complaint or ignore the law in each particular state to support their position. The Court must not allow Defendants to cherry-pick both the facts and law to fit their argument, and for the following reasons Defendants' Motion to Dismiss must be denied.

### 1.    Plaintiffs properly allege a cognizable injury

Defendants argue that Plaintiffs fail to allege any actual damage or injury, arguing that they merely "believe" that they are entitled to a refund. *See, e.g.,* Defs.' Br. at 21. Defendants argue that this type of "bald" allegation will not pass muster under any consumer fraud act; however, their analysis typically stops there. *See, e.g., id.* at 22. Defendants artificially limit their analysis to what is alleged regarding each individual Plaintiff, rather than what is alleged throughout the Complaint. *See, e.g., id.* at 21 (citing ¶ 14). Defendants chose to ignore that Plaintiffs' consumer fraud claims expressly incorporated every allegation found in the Complaint. ¶ 147.

It is no wonder Defendants chose to ignore the remainder of the Complaint, considering that Plaintiffs clearly alleged a cognizable injury as a result of Defendants' deceptive acts, practices and omissions. ¶ 82. Plaintiffs uniformly state that had they known that the Thomas & Friends toys were contaminated with lead-based paint, they would not have purchased the toys. *Id.* Plaintiffs bargained for lead-free toys; yet they received toys covered in lead-based paint, and as a result, suffered a cognizable injury – the purchase price of the Toys.[10]

---

[10] *See, e.g., Stephenson v. Capano Dev., Inc.,* 462 A.2d 1069, 1076 (Del. 1983) ("The aim of this [the benefit of the bargain] method [of calculating damages] is to put the plaintiff in the same financial position that he would have been in if the defendant's representations had been true."); *Lowrey v. Dingmann,* 85 N.W.2d 499, 502 (Minn. 1957) ("the measure of damages is the difference between the actual value of the property received and the price paid for it"); *Zanakis-Pico v. Cutter Dodge, Inc.,* 47 P.3d 1222, 1233 (Haw. 2002) ("In fraud or deceit cases, the measure of pecuniary damages is usually confined to either the 'out-of-pocket' loss . . . or the 'benefit of the bargain'. . . ."); *Smith, Allen, Mendenhall, Emons & Selby v. Thomson Corp.,* 371 Ill. App. 3d 556, 559 (Ill. Ct. App. 2006) ("Illinois courts have adopted the benefit-of-the-bargain rule, whereby damages are determined by assessing the difference between the actual value of the product sold and the value the product would have had at the time of the sale if the representations had been true."); *Yost v. Millhouse,* 373 N.W.2d 826, 830 (Minn. Ct. App. 1985) (Damages under the Minnesota consumer fraud statute are calculated, as are damages under Minnesota law for fraudulent representations inducing a contract, using the "out-of-pocket" rule: "the measure of [actual damages] is the difference between what the defrauded person paid and what he or she received."); *Furst v. Einstein Moomjy, Inc.,* 860 A.2d 435, 442 (N.J. 2004) ("The merchant who promises to deliver a product at a particular price must, at the option of the consumer, either deliver that product or render its replacement value.").

- 12 -

**2.    Plaintiffs properly set forth Defendants' deceptive acts and practices**

Defendants further argue that Plaintiffs have failed to specify any particular deceptive acts or practices attributable to Defendants. *See, e.g.*, Defs.' Br. at 28. Defendants go so far as to state that one Plaintiff "does not allege *any* deceptive conduct or misrepresentations by Defendants." *Id.* (emphasis added). Defendants treat this argument in precisely the same way as they treat their "cognizable injury" argument; ignoring the portions of the Complaint that knock out the legs from beneath their argument.

Plaintiffs allege that Defendants expressly stated that the Thomas & Friends toys were "safe" for children. ¶ 60(a), (b). Further, "despite [Defendants'] clear representations that the Thomas Toys were safe for children, Defendants distributed Thomas Toys manufactured in China which contain lead paint." ¶ 62. Based upon this representation, Plaintiffs purchased the Toys for their children. ¶ 61. Plaintiffs could not have identified a deceptive act any more clearly; yet, Defendants again chose to ignore these allegations in their analysis, acting as if they did not exist.

Plaintiffs further alleged that Defendants concealed and/or failed to disclose that the Thomas Toys were contaminated with lead-based paint. ¶ 79. If Defendants had disclosed that the toys were in fact contaminated with lead-based paint, then Plaintiffs would not have purchased the Toys. ¶ 82. As is discussed below, many states recognize an omission of material fact as a deceptive act. *See, e.g., Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 504 (Ill. 1996) ("An omission or concealment of a material fact in the conduct of trade or commerce constitutes consumer fraud."). *See also DeMotses v. Leonard Schwartz Nissan, Inc.*, 578 A.2d 144, 146 (Conn. Ct. App. 1990); *see also Grossman v. Waltham Chem. Co.*, 436 N.E.2d 1243, 1245 (Mass. Ct. App. 1982); *Barry v. Arrow Pontiac, Inc.*, 494 A.2d 804, 811 (N.J. 1985); *Parker v. Am. Isuzu Motors, Inc.*, No. 3476, 2005 WL 2108680, at *2 (Pa. Comm. Pl. Sept. 2, 2005). Again, Defendants turned a blind eye to these allegations.

Rather than address the Complaint Plaintiffs filed, Defendants chose to address the Complaint they *wished* Plaintiffs had filed. Defendants' tactic avails them nothing, and their motion must be denied.

### 3.    Plaintiffs properly allege consumer fraud claims under the laws of their home states

#### a.    Alabama

In Defendants' supplemental motion to dismiss, they argue that Ms. Deke's Alabama Deceptive Trade Practices Act ("ADTPA") claim fails because: (1) Alabama law prohibits private class actions under the ADTPA; and (2) Ms. Deke failed to allege any monetary loss. Both of Defendants' arguments fail.

First, this is not a motion for class certification. The issue at this stage is whether Ms. Deke adequately stated a claim under the ADTPA (she has), *not* whether she is able to maintain a class action. At the time when Plaintiffs move for class certification, this Court will determine whether to apply federal or state procedural rules. *See Thorogood*, 2007 WL 3232491, at *2 (noting that the substantive right is the right to sue, and "*the right to bring a class action*, the statute of limitations, treble damages and venue are all matters of procedure that do not implicate the basic right to sue but how you go about it.") (emphasis added).

Second, Plaintiffs properly alleged that they suffered monetary damage as Alabama law requires. *See, e.g., Billions v. White & Stafford Furniture Co.*, 528 So. 2d 878, 880 (Ala. Civ. App. 1988). Ms. Deke alleged that had she known that the Thomas & Friends toys were contaminated with lead-based paint, she would not have purchased the toys. *Id.* She purchased, paid for and thus bargained for lead-free toys, and instead she received toys covered in lead-based paint. As a result, Plaintiffs suffered monetary damages – the purchase price of the toys.

#### b.    Arkansas

Defendants' only argument with regard to Plaintiff Tonya Tubbs' Arkansas Deceptive Trade Practices Act ("ADTPA") claim is that she failed to allege any actual injury as a result of

- 14 -

Defendants' deceptive conduct. Defs.' Br. at 21. Defendants' characterization of Plaintiffs'

claim as one for the mere "dimunition in value," is simply incorrect. *See id.* at 22. Plaintiffs

alleged a clear injury:  the loss of the purchase price of the Toys and the cost of diagnostic

testing.  ¶ 82. There are no dimunition claims here:  Plaintiffs cannot sell the Toys for any

amount, nor can they continue to use or enjoy these Toys.  Rather, they are worthless, *i.e.*, no

child is allowed to play with them.

Defendants attempt to liken Plaintiffs' claims to those made in *Wallis v. Ford Motor Co.*,

208 S.W.3d 153 (Ark. 2005). *Wallis* involved claims regarding the propensity of the Ford

Explorer sport utility vehicle to roll over. *Id.* at 154. The *Wallis* plaintiffs claimed Ford's failure

to disclose the inherent defect "led millions of consumers to purchase or lease Ford Explorers at

*prices far in excess* of the values which would have been assigned to such vehicles had these

dangers been disclosed." *Id.* (emphasis added). Ultimately, the Arkansas Supreme Court found

that claims for a mere "dimunition in value" did not qualify as actual damage or injury under the

ADTPA. *Id.* at 162.

The distinction here is clear:  in *Wallis* plaintiffs would still have purchased the Ford

Explorers had they known of the vehicle's propensity to roll over, whereas Plaintiffs never

would have purchased – and frankly Defendants would not have been permitted to sell – the

lead-painted Toys had the health risks posed to children been disclosed.  ¶¶ 14, 70, 82.

Moreover, here, there is no "propensity" for the Toys to be covered in lead paint; the Toys *are*

covered in lead paint and thus were recalled.  By claiming that she would not have purchased the

Toys had Defendants' properly disclosed that the Toys were contaminated with lead-based paint,

Ms. Tubbs has clearly plead an actual injury.

       c.    **Connecticut**

The Connecticut Unfair Trade Practices Act ("CUPTA") is comprised of two essential

elements:  (1) the conduct at issue must constitute an unfair or deceptive trade practice; and,

(2) the plaintiff must suffer an ascertainable loss as a result of the unfair or deceptive trade

001975-11 213282 V1

practice. CONN. GEN. STAT. § 42-110g. Defendants argue that Connecticut Plaintiffs John

O'Leary and Kimm Walton have failed to adequately plead either of these elements. Defs.' Br.

at 22. Defendants further argue that the Connecticut Product Liability Act ("CPLA") preempts

the Connecticut Plaintiffs' claims. *Id.* at 23. Defendants are wrong on all three counts, and their

motion must be denied.

### (1)   The Connecticut Plaintiffs adequately pled an unfair or deceptive trade practice

The Connecticut Plaintiffs alleged both that Defendants misrepresented that the Thomas

& Friends toys were safe for children and concealed and/or failed to disclose that the Toys were

contaminated with lead-based paint. ¶¶ 60-62, 79. Notwithstanding Defendants' affirmative

misrepresentation, failing to disclose a material defect is also considered a deceptive trade

practice under the CUPTA. *See DeMotses,* 578 A.2d at 146. Further, determining whether a

particular act or practice violates the CUPTA is a clear question of fact. *Id.* Notwithstanding

that the Connecticut Plaintiffs alleged Defendants made an affirmative misrepresentation of

material fact, Defendants' failure to disclose the lead contamination is a question of fact not

appropriate for summary judgment, let alone a motion to dismiss.

### (2)   The Connecticut Plaintiffs alleged an "ascertainable loss"

Defendants' conclusory statement that the Connecticut Plaintiffs failed to allege an

ascertainable loss under the CUPTA ignores clear Connecticut law. *See Hinchliffe v. American*

*Motors Corp.,* 440 A.2d 810, 814 (Conn. 1981). In *Hinchliffe,* the Connecticut Supreme Court

explained that an "ascertainable loss" under the CUPTA is a broad concept:

> Whenever a consumer has received something other than what he
> bargained for, he has suffered a loss of money or property. . . .
> When the product fails to measure up, the consumer has been
> injured; he has suffered a loss.

*Id.* The Connecticut Plaintiffs alleged precisely what the Connecticut Supreme Court explained

satisfies the "ascertainable loss" requirement: they received something they did not bargain for.

The Connecticut Plaintiffs would not have purchased the Thomas & Friends toys had they

- 16 -

known that the Toys were covered in lead-based paint. ¶ 82. The Connecticut Plaintiffs bargained for lead-free toys; yet they received toys covered in lead-based paint, and as a result, suffered an ascertainable loss. *See Hinchliffe*, 440 A.2d at 814.

### (a)    The CPLA does not apply to consumer fraud claims

Defendants make the additional argument that the CPLA bars Plaintiffs' consumer fraud claims. Defs.' Br. at 23. The CPLA applies only to "claims or actions brought for personal injury, death or property damage"; essentially, torts. *See* CONN. GEN. STAT. § 52-572n(a). The CPLA does not mention "consumer fraud," or anything that could even be construed as consumer fraud. Defendants attempt to get around this clear deficiency in their argument by claiming, "Counts V, VI and VII of the Consolidated Complaint" are seeking compensation for injuries that would be preempted by the CPLA. Defs.' Br. at 23. The obvious problem with Defendants' position is that Defendants attempt to attack Count XI (consumer fraud) by arguing that *Counts V, VI and VII* would be barred by the CPLA, and as such Defendants' motion must be denied.

### d.    Illinois

Defendants erroneously assert that the Illinois Plaintiffs Channing Hesse, Aive Rei-Ghafoor, Sheree Argiris, Christine Wallar, and Thomas Brady ("Illinois Plaintiffs") fail to state a claim under the Illinois Consumer Fraud Act ("ICFA"), 815 ILCS § 505/1 *et. seq.*, because Plaintiffs have failed to allege: (1) actual damages (Defs.' Br. at 24); (2) that Defendants' misrepresentations proximately caused the Illinois Plaintiffs' damages (Defs.' Br. at 24); and (3) that a "fiduciary relationship" existed between the Illinois Plaintiffs and Defendants to sustain a claim based on a "concealment or omission." Defs.' Br. at 25. Each of these points is baseless.

- 17 -

> **(1)    The Illinois Plaintiffs properly alleged that they suffered actual damages as a result of Defendants' misconduct**

In order to sustain an action under the ICFA, a plaintiff must claim: (1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) that the deception occur in a course of conduct involving trade and commerce; (4) actual damage to the plaintiff; and (5) proximately caused by the deception. *Sound of Music Co. v. 3M*, 477 F.3d 910, 923 (7th Cir. 2007) (citing *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 149 (2002)).

Under the ICFA, the Plaintiffs need not prove the amount of damages to an absolute certainty. *Petty v. Chrysler Corp.*, 343 Ill. App. 3d 815, 823 (1st Dist. 2003). Nevertheless, contrary to Defendants' assertions, Plaintiffs properly allege damages suffered by the Illinois Plaintiffs and members of the Class under the ICFA. For example, Plaintiffs seek damages for reimbursement for the costs that they paid for the defective and dangerous Thomas Toys. ¶¶ 69-70, 86, 95, and Prayer for Relief, Sec. VII. *See also Smith, Allen, Mendenhall, Emons & Selby*, 371 Ill. App. 3d at 559 ("Illinois courts have adopted the benefit-of-the-bargain rule, whereby damages are determined by assessing the difference between the actual value of the product sold and the value the product would have had at the time of the sale if the representations had been true.").

Additionally, Plaintiffs' children and the Class have been significantly exposed to lead, a known hazardous substance. As a result of such exposure, the children are at an increased risk of being poisoned by lead. Under Illinois law, the Plaintiffs' increased risk of future harm is compensable. *Dillon v. Evanston Hosp.*, 199 Ill. 2d 483, 504 (2002) (the plaintiff is permitted to recover for *all* demonstrated injuries, including the plaintiff's increased risk of future injuries). Thus, Plaintiffs have pled "actual damages" as a result of Defendants' violations of the ICFA.

**D.    The Illinois Plaintiffs Properly Alleged That Defendants' Misrepresentations Proximately Caused Plaintiffs' Damages Under the ICFA**

Defendants erroneously assert that the Illinois Plaintiffs failed to plead proximate cause, as the Plaintiffs failed to allege that each Plaintiff was "personally deceived or mislead." Defs.' Br. at 24. Contrary to the Defendants, the Illinois Plaintiffs properly pled: (1) that each Illinois Plaintiff was deceived by the Defendants' misrepresentations; and (2) that Defendants' misrepresentations proximately caused Plaintiffs' damages.

The Illinois Supreme Court has held that to properly plead the element of proximate causation in a private cause of action for deceptive advertising brought under the ICFA,[11] the plaintiff must allege that he or she was "in some manner" deceived by the advertisement. *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 155 (2002). According to the Illinois Supreme Court, it is enough that the defendant's deception, whether made directly or indirectly, be committed with the intention that it influence the plaintiff's action and that the plaintiff relied on the deception to his or her detriment. *Shannon v. Boise Cascade Corp.*, 208 Ill. 2d 517, 525-26 (2004).

In this case, the Illinois Plaintiffs have properly pled that they incurred damages as a proximate result of Defendants' misrepresentations in violation of the ICFA. Specifically, *each* Illinois Plaintiff alleged that he or she was deceived by the Defendants' misrepresentations – through Defendants' advertisements – that the Thomas Toys were safe, as Defendants failed to disclose that the Thomas Toys were covered with lead paint.[12]

Moreover, the Illinois Plaintiffs alleged that they were actually deceived by the Defendants' misrepresentations through Defendants' marketing campaign (and on Defendants' website) into believing that the Thomas Toys were "safe and quality playthings" for their children to play with, despite the fact that the Toys were covered with lead paint. ¶¶ 60-62, 90.

---

[11] Ultimately, allegations regarding proximate cause under the ICFA need only be "minimal, since that determination is *best left to trier of fact*." *Muehlbauer v. GMC*, 431 F. Supp. 2d 847, 868-69 (N.D. Ill. 2006) (quoting *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill. 2d 482, 504 (1996)) (emphasis added).

[12] *See generally* ¶¶ 60-62; *see also* ¶ 11 (Plaintiff Channing Hesse); ¶ 12 (Plaintiff Aive Rei-Ghafoor); ¶ 13 (Plaintiff Sheree Argiris); ¶ 15 (Plaintiff Christine Wallar); and ¶ 16 (Plaintiff Thomas Brady).

- 19 -

Finally, the Illinois Plaintiffs have properly alleged that the Defendants' misrepresentations proximately caused Plaintiffs' damages. For example, Plaintiffs alleged: "If not for Defendants' deceptive and misleading representations, Plaintiffs and members of the Class would not have purchased the Thomas Toys given the health risks they posed to their children." Plaintiffs further alleged that: "Plaintiffs and members of the Class suffered damages as a result of Defendants' deceptive and/or unfair acts. . ." ¶¶ 91, 95. Thus, Plaintiffs have more than satisfied the "minimal" pleading requirements for proximate cause.

(1)    **The Illinois Plaintiffs properly alleged claims for Defendants' concealment or omission of a material fact in violation of the ICFA**

Under Illinois law, an omission or concealment of a material fact in the conduct of trade or commerce constitutes consumer fraud. *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill. 2d 482, 504 (1996). For a claim based on an omission or concealment under the ICFA, a plaintiff is required only to allege an omission of a "material fact" in the course of trade or commerce. *Pappas v. Pella Corp.*, 363 Ill. App. 3d 795, 802 (1st Dist. 2006). "A material fact exists where a buyer would have acted differently if it had known about the allegedly omitted information, or where that information is, the kind a buyer would be expected to rely on in deciding whether to purchase the product." *Id.* at 802 (citing *Connick*, 174 Ill. 2d at 505). Furthermore, it is unnecessary to plead a common law duty to disclose in order to state a valid claim of consumer fraud based on an omission or concealment.[13] *Connick*, 174 Ill. 2d at 505 (citing *Celex Group, Inc. v. Executive Gallery, Inc.*, 877 F. Supp. 1114, 1129 (N.D. Ill. 1995)).

---

[13] Defendants' reliance on *Lionel Trains v. Albano*, 831 F. Supp. 647 (N.D. Ill. 1993), is thus misplaced. First, under Illinois law, the Illinois Plaintiffs are *not* required to plead a common law duty to disclose. *Connick*, 174 Ill. 2d at 505. Second, *Lionel Trains* addressed the issue of *intentional fraud*. *Lionel Trains*, 831 F. Supp. at 650 ("Illinois courts have found that '[i]n order to prove fraud by the intentional concealment of a material fact, it is necessary to show the existence of a special or fiduciary relationship, which would raise a duty to speak.'") Finally, even if *Lionel Trains* applied to this matter, it is procedurally distinct from this case. *Lionel Trains* was decided at the summary judgment stage, after all the facts and discovery had been concluded. *Id.* at 651. In this case, fact discovery just commenced and the case is in its infancy. Thus, *Lionel Trains* is inapplicable.

- 20 -

In this case, the Illinois Plaintiffs have alleged that the Defendants concealed and omitted material facts concerning the dangerous condition of the Thomas Toys. ¶ 79. Further, Plaintiffs alleged that Defendants intended that the Plaintiffs rely on the concealment or omission of the material fact of the health risk posed by the Toys and that the Plaintiffs were, in fact, actually deceived by the omission or concealment, as Defendants masked the omission by marketing the Thomas Toys as safe for children. ¶ 81. Moreover, the Illinois Plaintiffs expressly alleged that they would not have purchased the Toys if they had known that the Thomas Toys were covered with lead paint. ¶ 82. Lastly, the Illinois Plaintiffs alleged that they sustained damages as a proximate cause of Defendants' misconduct of omitting or concealing a material fact. ¶¶ 84-86. Accordingly, the Illinois Plaintiffs have properly plead the elements necessary to sustain a cause of action for Defendants' concealment or omission of a material fact in violation of the ICFA.

### b. Indiana

The Indiana Deceptive Consumer Sales Act ("IDCSA") grants a private right of action to any person who suffers actual damages. *See* IND. CODE § 24-5-0.5-4(a). Defendants argue that Plaintiffs Theresa Redell, Patrick and Caryn Hudspeth and Ryan and Claudine Kreiner (the "Indiana Plaintiffs") fail to allege any actual damages. Defs.' Br. at 25. Again, Defendants simply ignore the allegations in the Complaint.

### (1)    The Indiana Plaintiffs suffered "actual damages"

The Indiana Plaintiffs purchased numerous Thomas & Friends toys for their children, believing that the Toys were safe. ¶¶ 17-19. They had no idea that the Toys were contaminated with lead-based paint. *Id.* The Indiana Plaintiffs would not have purchased the Toys had Defendants properly disclosed that the Toys were in fact covered in a toxic substance. ¶ 82. The Indiana Plaintiffs have met their burden of alleging an ascertainable monetary loss by claiming that they would not have purchased the Toys had Defendants properly disclosed that the toys were contaminated with lead-based paint.

- 21 -

(2)    **Indiana Law does not require written notice for an incurable deceptive practice**

Defendants make the additional argument that the Indiana Plaintiffs' claims fail because they failed to provide Defendants with written notice under the IDCSA. Defs.' Br. at 26. First, the Indiana Plaintiffs indeed provided the statutorily proscribed notice.[14] Second, even if Plaintiffs had not provided notice, the Act does not require written notice for an "incurable deceptive act." *See* IND. CODE. § 24-4-0.5-5(a); *see also, McCormick Piano & Organ Co. v. Geiger*, 412 N.E.2d 842, 849 (Ind. Ct. App. 1980) (stating that if a consumer fails to provide thirty days written notice to the supplier, "then his suit can only be for 'an incurable deceptive act'"). Rather if no notice is provided, Plaintiffs must prove that the supplier's deceptive acts were *intended* to mislead the consumer. *Id.* Therefore, Defendants' motion must be denied.

c.    **Massachusetts**

Defendants argue that Plaintiff Jodie Morrison failed to allege any conduct attributable to Defendants that amounts to an "unfair or deceptive practice" under the Massachusetts Regulation of Business Practice for Consumers Act. *See* MASS. GEN. LAWS ANN. CH. 93A, §§ 2(a), 9(3). Defs.' Br. at 26. However, a "failure to disclose any fact, the disclosure of which may have influenced a person not to enter into a transaction, is a violation" of the Act. *See Grossman v. Waltham Chem. Co.*, 436 N.E.2d at 1245. Here, Ms. Morrison alleges that, if Defendants had disclosed that the Toys were in fact contaminated with lead-based paint, Ms. Morrison would not have purchased the Toys. ¶ 82. Thus, Plaintiff has stated a claim.

Additionally, Defendants argue that Ms. Morrison failed to allege that she provided Defendants with written notice thirty days before commencing suit. Defs.' Br. at 26. First, Plaintiffs did provide notice. *See* n.14, *supra.* Second, the Massachusetts Supreme Court has

---

[14] On July 9, 2007 (forty-five days prior to filing the Consolidated Complaint), the Indiana Plaintiffs provided written notice of their claims, the injuries they suffered and the relief they sought. (July 9, 2007 letter from Plaintiff's Counsel to Defendants' Counsel). True and correct copies of Plaintiffs' written notice, Defendants' Response, and Plaintiffs' Reply are attached as Exhibits A-C to the Declaration of Beth Fegan submitted herewith. Plaintiffs only provide this information to the Court to support Plaintiffs' request for leave to amend the complaint to allege notice was provided if the Court deems the lack of such an allegation to be fatal.

001975-11 213282 V1

held that the "thirty day notice" is not jurisdictional, and is often a "fruitless ceremony." *York v. Sullivan*, 338 N.E.2d 341, 346 (Mass. 1975). In fact, the Court stated in dicta that "[e]ven if dismissal were proper, it should not be 'on its merits' or 'with prejudice.'" *Id.* at 347.

### d.    New Jersey

While describing Ms. Stumpf's purported deficiency as one of "proximate cause," the crux of Defendants' argument is that Michelle Stumpf did not describe the "representations" she had heard and relied upon. Defs.' Br. at 27. Defendants again ignore that Plaintiffs alleged Defendants affirmatively represented that the Thomas & Friends toys were safe for children, even though the Toys were covered in lead-based paint. ¶¶ 60-62.

Additionally, Defendants ignore "well-settled" New Jersey law that an omission of material fact or a failure to disclose is actionable under the Consumer Fraud Act. *See Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 365 (N.J. 1997); *Barry v. Arrow Pontiac, Inc.*, 494 A.2d at 811. Ordinarily, omissions of disclosure are actionable only if the defendant "acted with knowledge." *Id.* Here, Ms. Stumpf alleged both a material omission and Defendants made that omission with the requisite knowledge. ¶ 80.

### e.    New Mexico, Oklahoma and Rhode Island

The state consumer protection statutes in New Mexico, Oklahoma and Rhode Island grant private rights of action to persons who suffer actual injury, namely an ascertainable loss of money or property. *See* N.M. STAT. § 57-12-1, *et seq.*; 15 OKLA. STAT. § 751, *et seq.*; R.I. GEN. LAWS § 6-13.1-1, *et seq.* Defendants argue that Plaintiffs Tracy Hoffman (N.M.), Robyn Rohde (Okla.), and Elizabeth Harris (R.I.) fail to allege that they suffered actual damage and instead merely "believe" that they are entitled to a refund. Defs.' Br. at 27, 29, 30. Defendants' argument is ludicrous. Plaintiffs purchased numerous Thomas & Friends toys for their sons, believing that the Toys were safe. ¶¶ 22, 26, 28. None of the Plaintiffs had any idea that the Toys were contaminated with lead-based paint. *Id.* Once Defendants disclosed that the Toys

- 23 -

were contaminated, Plaintiffs immediately suffered a loss of money (the purchase price) and property (the Toys).

### f.     New York

In their brief, Defendants cite *Small v. Lorillard Tobacco Co.*, 720 N.E.2d 892, 898 (N.Y. 1999) for the proposition that "a bald allegation that a deceptive practice caused a plaintiff to purchase a product he would not have otherwise purchased is insufficient to meet the injury requirement." Defs.' Br. at 27. In *Small*, the Court set forth the injury the plaintiffs claimed:

> [P]laintiffs assert that defendants' deception prevented them from making free and informed choices as consumers. Plaintiffs add that had they known that nicotine was addictive, they never would have purchased cigarettes.. They posit that consumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices, have suffered an injury under General Business Law § 349.

720 N.E.2d at 898. The *Small* court went on to note that "plaintiffs do not allege that the cost of cigarettes was affected by the alleged misrepresentation, nor do they seek recovery for injury to their health as a result of their ensuing addiction." *Id.*

Plaintiff Kim Cosgrove's allegations are far different from those made in *Small*. Whereas in *Small*, cigarettes would have been available for purchase even if defendants had disclosed that nicotine was addictive, RC2's lead-paint contaminated toys are illegal and would not have been sold had truthful disclosures been made. Ultimately, as a result of the recall, Ms. Cosgrove had to remove 13 of her son's 22 Thomas & Friends toys. ¶ 23. Ms. Cosgrove specifically alleges that she was damaged both in that she purchased a toy that she would not have purchased had she known the truth, and also in the fact that her son was exposed to a harmful toxin, and as such will require diagnostic testing. *Id.* at ¶¶ 70-71.

### g.     North Carolina

Defendants argue that North Carolina Plaintiff Rebekah Lockhart failed to state a claim under the North Carolina Unfair and Deceptive Trade Practices Act ("North Carolina Act") because she purportedly failed to allege any deceptive conduct or misrepresentations made by

- 24 -

Defendants. Defs.' Br. at 28. In support, Defendants rely on the *Harrington* case, arguing that a "manufacturer's advertisements regarding capacity, strength and performance of product were not actionable under the Act." *Id.* (citing *Harrington Mfg. Co. v. Powell Mfg. Co.*, 248 S.E.2d 739, 745 (N.C. Ct. App. 1978)).

Initially, this is a gross mischaracterization of the *Harrington* case. There, the court found that the North Carolina Act was not applicable because the defendant's statements were either true or amounted to mere puffery. 248 S.E.2d at 743-44. The court found that advertising directed to sophisticated parties, which touts a product as the "only" product capable of a particular task is mere puffery, and not actionable. *Id.* Here, Ms. Lockhart has alleged both that Defendants misrepresented that their products were safe (¶¶ 2, 60-62), and that RC2 failed to disclose that the Toys were contaminated with lead-based paint. ¶ 79. These two acts are a far cry from the mere puffery disposed of in *Harrington*. Notwithstanding Defendants' misplaced reliance upon the *Harrington* case, Ms. Lockhart has adequately set forth both Defendants' affirmative misrepresentations and material omissions.

### h.    Ohio

Defendants argue that Ohio Plaintiff Cherise Wilson has failed to state a claim under Ohio's Consumer Sales Practices Act ("OCSPA") because she failed to set forth the requirements for "bringing a class action." Defs.' Br. at 28-29. However, as even the case relied upon by Defendants points out, this is an issue properly raised at the class certification stage, not a motion to dismiss. *See Deegan & McGarry v. Med-Cor.*, 708 N.E.2d 1029, 1033 (Ohio Ct. App. 1998) (denying a motion for class certification); *see also Hoang v. E\*Trade Group, Inc.*, 784 N.E.2d 151 (Ohio Ct. App. 2003) (denying class certification). Further, as this Court recently recognized, state procedural rules are not binding on federal courts. *See Thorogood*, 2007 WL 3232491, at *2. The substantive right is the right to sue, and "*the right to bring a class action*, the statute of limitations, treble damages and venue are all matters of procedure that do not implicate the basic right to sue but how you go about it." *Id.* (emphasis added).

- 25 -

Therefore, OHIO REV. CODE § 1345.09(B) provides no grounds to dismiss Plaintiffs' consumer fraud claims.

Additionally, Defendants argue that Ms. Wilson did not identify a particular misrepresentation made by Defendants. Defs.' Br. at 29. Again, like all other Plaintiffs, Ms. Wilson alleged that Defendants affirmatively represented that the Thomas & Friends toys were safe for children, despite the fact that the Toys were covered in lead-based paint. ¶¶ 60-62. Considering what was actually alleged in the Complaint, Defendants' selective analysis avails them nothing.

### i.    Pennsylvania

Plaintiff Elaine Vallejo purchased a number of Thomas & Friends toys for her son, believing that the Toys were safe. ¶ 27. Upon learning that the Toys were contaminated with lead-based paint, Ms. Vallejo paid to have her son tested for lead exposure. *Id.* Unfortunately, Ms. Vallejo's son tested positive for elevated lead levels. *Id.* If Ms. Vallejo had known that the Toys were contaminated, she would not have purchased the Toys for her son. *Id.*

Defendants argue that Ms. Vallejo's claim fails because she did not "allege that she heard or relied on any alleged misrepresentations by Defendants." Defs.' Br. at 30. Defendants simply ignore that Ms. Vallejo alleged Defendants affirmatively represented that the Toys were safe, when they were not. ¶¶ 60-62. Further, Ms. Vallejo alleged that Defendants failed to disclose the hazardous nature of the Toys. ¶ 82. Failing to disclose such a fact gives rise to a claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law. *See Parker v. Am. Isuzu Motors, Inc.*, 2005 WL 2108680, at *2. Ms. Vallejo clearly stated a claim under Pennsylvania law.

### j.    Texas

Defendants raise four arguments in hopes of avoiding liability under Texas law: (1) Plaintiffs failed to allege any misrepresentation; (2) Plaintiffs failed to allege causation; (3) Plaintiffs failed to allege economic damages; and, (4) Plaintiffs failed to provide written

- 26 -

notice. Again, Defendants are only able to support their arguments with a selective reading of the Complaint.

Initially, like every other Plaintiff, the Texas Plaintiffs alleged that Defendants misrepresented that the Thomas & Friends toys were safe for children. ¶ 60. Plaintiffs could not have been clearer – Defendants claimed their Toys were safe, when, in fact the Toys were covered in a toxic substance. ¶¶ 60-62. Second, like every other Plaintiff, the Texas Plaintiffs properly alleged that they relied on Defendants' misrepresentation. ¶ 61. Further, the Texas Plaintiffs alleged that they "would not have purchased the Thomas Toys given the health risks posed to their children" had the Defendants not misrepresented that the Toys were safe. ¶ 91. Third, the Texas Plaintiffs alleged an economic injury, namely, the purchase price of their Toys. ¶¶ 82, 91. The Texas Plaintiffs uniformly state that had they known that the Thomas & Friends toys were contaminated with lead paint, they would not have purchased the Toys. *Id.* Plaintiffs bargained for lead-free toys; yet they received toys covered in lead-based paint, and as a result, suffered a cognizable injury.

Finally, Defendants argue that Plaintiffs failed to provide the required sixty day written notice. *See* Defs.' Br. at 31 (citing TEX. BUS. & COM. CODE § 17.505(a)). First, Plaintiffs provided written notice. *See* n.14, *supra.* Second, this Court has recently recognized that state procedural requirements are not binding on federal courts. *See Thorogood*, 2007 WL 3232491, at *2. Defendants have clearly been placed on notice and given the opportunity to cure their consumer fraud, and this Court should exercise its ability to look past the Texas procedural requirement. *See Thorogood*, 2007 WL 3232491, at *2. Given that the notice was issued over 120 days ago, Defendants can hardly be said to not have sufficient notice of the claim.

- 27 -

**E.  Plaintiffs Sufficiently Allege a Claim for Breach of Implied Warranty (Count III)[15]**

    **1.  The only relevant issue at this pleading stage is Article III standing**

Defendants urge dismissal of the breach of implied warranty claims alleged under certain

states' commercial codes.  Essentially, Defendants assert that the named Plaintiffs have no

standing to assert claims on behalf of residents of other states, other than their own.  "This is a

'standing' argument, but it is an argument that pertains to standing under Fed. R. Civ. P. 23, not

standing in the Article III sense."  *Siegel v. Shell Oil Co.*, 480 F. Supp. 2d 1034, 1044 (N.D. Ill.

2007) (citing 1 NEWBERG ON CLASS ACTIONS § 1:2 n.11 ("Individual case or controversy

standing is distinct from and narrower than common issues and typicality of claims tests under

Rule 23.")).  Because Defendants' argument does not challenge the Court's jurisdiction, this

issue should be addressed at the class certification stage, and not on this motion to dismiss.

*Siegel*, 480 F. Supp. 2d at 1044 (the only relevant issue at the pleadings stage is Article III

standing, not whether plaintiffs are proper class representatives under Rule 23).

    **2.  Defendants had notice of the alleged defect on June 13, 2007 (and likely much earlier)**

Defendants argue the breach of the implied warranty claims under the Arkansas (ARK.

CODE ANN. § 4-2 314), Texas (TEX. BUS. COM. CODE ANN. § 2-314) and Oklahoma statutes

should be dismissed because Plaintiffs failed to adequately plead notice.  As discussed below,

under those states' law, the Complaint sufficiently alleges notice.

Defendants were notified of the breach by virtue of the recall at the latest by June 13,

2007, and were put on notice by the numerous inquiries they received concerning the defect of

the Thomas Toys.  ¶¶ 102-04.  Moreover, Defendants' actual knowledge of each Class member's

---

[15] In their supplemental memorandum, Defendants also move to dismiss a non-existent implied warranty claim. Defendants essentially argue that because Plaintiff Deke did not bring a claim for breach of the implied warranty of merchantability, her claim for breach of the implied warranty must be dismissed. However, to the extent that Defendants are attempting some sort of strained motion *in limine*, this is not the procedural time or place for such a motion. While Deke does not currently have an implied warranty claim pending, she reserves the right to add such a claim in the future pursuant to any limitations set forth in the appropriate scheduling orders.

claim is evidenced by Defendants' offer to provide a "replacement toy" to each of its Thomas Toys customers. ¶ 4.

Thus, where a Defendant has actual knowledge of the problem on a timely basis, a seller is on notice of a breach. *See Adams v. Wacaster Oil Co*, 98 S.W.3d 832 (Ark. Ct. App. 2003).[16] *See also Rocket & Rollie LLC v. Pamco Printed Tape & Label Co. Inc.*, No. 4:07cv00023 JHL, 2007 WL 891150, at *2 (E.D. Ark. 2007) (citing ARK. CODE ANN. § 4-1-202(a) (Supp. 2005) (a seller has notice of a breach: (1) when he has actual knowledge of it; or (2) he has received a notice or notification of it; or (3) from all of the facts and circumstances known to the seller at the time in question, he has reason to know)); *U.S. Tire-Tech, Inc. v. Boeran, B.V.*, 110 S.W.3d 201 (Tex. Ct. App. 2003) (defendant can be put on notice for purposes of section 2.607(c)(1) of the Texas Business and Commerce Code through a general expression of the buyer's dissatisfaction with the product).[17] *See also American Fertilizer Specialists, Inc. v. Wood*, 635 P.2d 592, 596 (Okla. 1981) (notification of breach may be either oral or in writing and is sufficient if it is informative to the seller of the general nature of the difficulty encountered with the warranted goods). In addition to being put on notice by the recall itself, Defendants were on notice of the defect in their Thomas Toys by the numerous contacts Defendants received from the Plaintiffs and the filing of numerous lawsuits. ¶¶ 110-11.

Defendants fail to cite any authority to support their conclusion that notice must be pled in the Complaint as part of a breach of implied warranty claim. *U.S. Tire-Tech, Inc. v. Boeran, B.V.*, 110 S.W.3d at 201, the only case upon which Defendants rely, addresses the sufficiency of evidence *adduced at trial* regarding timely notification. Indeed, notice ordinarily is a question of

---

[16] In *Adams*, a case cited by Defendants, the court granted summary judgment based upon the failure of plaintiff to give notice of any breach as required by ARK. CODE ANN. § 4-2-607 until *five years after* the breach. The purpose of the statutory notice requirement of a breach is twofold: to give the seller an opportunity to minimize damages in some way, such as by correcting the defect, and to give immunity to a seller against stale claims. *Adams, supra.* Here, notice was provided within months of the recall.

[17] *See also Reynolds Metals Co. v. Westinghouse Elec. Corp.*, 758 F.2d 1073, 1078 (5th Cir.1985) (the Fifth Circuit instructs that the notice provisions under § 2.607 "are not stringent and are liberally construed by the Texas courts.").

fact which is to be determined by the trier of fact. *Carroll Instrument Co. Inc. v. B.W.B. Controls Inc.*, 677 S.W.2d 654, 657 (Tex. Ct. App. 1984).

The Complaint alleges Defendants were well aware of the Class' dissatisfaction with the Thomas Toys by no later than June 2007, when the CPSC publicly disclosed to all Class members that Defendants' toys contained lead paint and the Class members commenced making inquiries regarding that frightening news. ¶¶ 102-03. Defendants' offer to each Class member to provide another toy to replace the toxic toy purchased further evidences Defendants' actual knowledge of the claims. ¶ 4. Thus, there is no basis for dismissal.

> **3.    At this pleading stage, Plaintiffs have adequately alleged breach of the implied warranty of merchantability**

Relying upon cases involving the sufficiency of evidence at trial, Defendants seek to dismiss the New Jersey[18] and Oklahoma[19] breach of implied warranty claims for failure to provide "evidence" that the product was not reasonably fit for the ordinary purposes for which it was sold and that the defect proximately caused injury. Defs.' Br. at 33-34.

At this pleading stage, the Complaint sufficiently alleges breach of warranty claims under New Jersey[20] and Oklahoma[21] law. The Complaint alleges: Defendants are merchants, and the Thomas Toys are goods, within the meaning of the applicable states' commercial codes (¶ 98); implied in the sale of the Thomas Toys was an implied warranty that the Toys are of merchantable quality and are safe and fit for use by young children (¶ 100); the Toys are inherently dangerous and defective in that they contain lead-based surface paint (¶ 101); notice

---

[18] Defs.' Br. at 33 (citing *Hollinger v. Shoppers Paradise of New Jersey Inc.*, 340 A.2d 687 (J.M. Super Ct. Law Div. 1975) (motion for involuntary dismissal made by defendant at the close of plaintiff's case at trial)).

[19] Defs.' Br. at 34 (citing *Collins Radio Co. v. Bell*, 623 P.2d 1039 (Okla. Civ. App. 1980) (sufficiency of evidence following jury verdict)).

[20] See *Hollinger, supra* at 337 (Under breach of implied warranty of merchantability, plaintiff must show that the produce was not reasonably fit for the ordinary purposes for which it was sold and such defect proximately caused injury to the ultimate consumer.).

[21] See *Collins, supra* at 1053 (To recover for a breach of implied warranty of merchantability, a plaintiff must prove: (1) a sale of goods by a merchant, (2) the goods were not "merchantable" at the time of sale, (3) injury and damage to plaintiff or his property proximately caused by the defective nature of the goods, and (4) appropriate notice of breach to the seller).

001975-11 213282 V1

(¶¶ 103-04); and as a direct and proximate result of the breach of warranties, Plaintiffs and the members of the Class suffered damages. ¶ 105; *see also* ¶¶ 96-104.

### 4.    Consumers in Massachusetts and Oklahoma may recover economic damages

#### a.    Massachusetts

Citing cases involving commercial transactions, Defendants seek to dismiss the claim for breach of implied warranty of merchantability under the Massachusetts Commercial Code because "plaintiff has only suffered economic loss." Defs.' Br. at 33. However, consumer contract-based warranty claims deserve separate consideration because of special legislation affecting them. *Jacobs v. Yamaha Motor Corp., U.S.A.*, 649 N.E.2d 758, 762 (Mass. 1995) (allowing recovery of purely economic loss to consumers). "Massachusetts cases allowing recovery of purely economic damages for breach of warranty are legion." *See Holtzman v. General Motors Corp.*, 2002 WL 1923883 (Mass. Super. 2002) (motorcycle purchasers adequately alleged breach of warranty claim arising out of design defect *capable* of causing injury or death) and cases cited therein.

Here, the Complaint adequately alleges consumers' right to seek damages under Massachusetts law arising from Defendants' sale of "unreasonably dangerous" toys.[22] Defendants' toys are inherently dangerous (¶ 101) because they contain surface paint with lead-based paint which is poisonous to children, especially if ingested. *Id.* at ¶¶ 37-45.

As recognized by the *Holtzman* court, Massachusetts law protects owners of a product who allege a design defect capable of causing injury or death. *Holtzman*, 2002 WL 1923883, at *3. *See also Jacobs*, 649 N.E.2d at 762 (["A]uthority elsewhere recognizes the right of a consumer under the UCC . . . to recover against a manufacturer or remote seller for breach of

---

[22] In Massachusetts, the Supreme Judicial Court equates a breach of implied warranty of merchantability that goods are fit for the ordinary purposes for which goods are used with the sale of an "unreasonably dangerous" product. *See Commonwealth v. Johnson Insulation*, 682 N.E.2d 1323, 1330 (Mass. 1997). A product is unreasonably dangerous where it is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics. *Id.* at 1330-31. Alternatively, the product may be considered unreasonably dangerous because of the absence of an adequate warning, sufficient to alert those who may be sensitive to the product and to allow users to balance the risk of harm against the product's social utility. *Id.* at 1331.

warranty causing damage other than personal injury."). Thus, the Massachusetts' claim should not be dismissed.

### b. Oklahoma

Moreover, Defendants also seek dismissal of the Oklahoma breach of warranty claim because Rohde's "perception that the trains might be harmful to her sons is insufficient to state a claim under Oklahoma law." Defs.' Br. at 34. Plaintiff Rohde allowed her sons to play with Thomas Toys contaminated with lead. ¶ 26. The Complaint alleges the drastic neurological and physiological effects which lead exposure can cause children, especially young children, and adults. ¶¶ 37-45. Rather than a mere perception of harm, the Complaint more than adequately alleges the actual harm that children may suffer as a result of exposure to the lead-contaminated Thomas Toys. *See, e.g.,* ¶¶ 26, 37-45. Accordingly, the breach of implied warranty claims should not be dismissed.

### F. The Express Warranty Claims (Count IV) are Properly Pleaded

Under the Uniform Commercial Code, as adopted by Illinois, an *express warranty* may be created as follows: "Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an *express warranty* that the goods shall conform to the affirmation or promise." ILL. REV. STAT. (CH. 26), §2-313 (emphasis added). Alternatively, "any description of the goods which is made part of the basis of the bargain creates an *express warranty* that the goods shall conform to the description." *Id.* (emphasis added).

### 1. Plaintiffs allege the terms of the express warranty

Defendants contend that Plaintiffs' express warranty claims fail because Plaintiffs do not allege the *terms* of the express warranty. However, advertisements and other promotional materials may create express warranties. *See Wisconsin Elec. Power Co. v. Zallea Bros., Inc.,* 606 F.2d 697, 700 (7th Cir. 1979) (manufacturers can make express warranties to the public through mass advertising and marketing); *Gershengorin v. Vienna Beef, Ltd.,* 2007 U.S. Dist.

- 32 -

Lexis 73202, at *13 (N.D. Ill. Sept. 28, 2007) (express warranty created in signage and advertising of Vienna Beef); *Ampat/Midwest, Inc. v. Illinois Tool Works, Inc.*, 1988 U.S. Dist. Lexis 4611, at *10 (N.D. Ill. May 12, 1988) (sales materials and brochures created express warranty); *Crest Container Corp. v. R.H. Bishop Co.*, 111 Ill. App. 3d 1068, 1074 (1982) (information in catalogs and brochures can create an express warranty).[23]  Plaintiffs specifically allege that:

> Defendants expressly warranted that the ***Thomas Toys were manufactured, packaged and labeled to conform with all safety requirements*** under U.S. federal and other applicable laws and regulations, industry developed voluntary standards and product specific standards, and that they were ***periodically reviewed and approved by independent safety testing laboratories.*** [¶ 107 (emphasis added).]

Plaintiffs also allege that Defendants' marketing campaign was built around assuring parents that their toys were safe for children. ¶ 60.  Specifically, Defendants' website states the following with respect to the Thomas Toys:

> a.    **"We understand that what matters most to parents is keeping their children healthy, happy and safe.**  What matters most to us is helping parents do just that by offering products for every stage of your child's development. . . ."

> b.    "Learning Curve offers developmental toys that engage children, and provide parents with peace of mind, knowing their children are being inspired and enlightened by **safe and quality playthings.**" (emphasis supplied).  [¶ 60 (emphasis in original).]

These warranties are alleged to have been contained, among other places, on RC2's website and on the labels and packaging of the Thomas Toys. ¶¶ 60, 107.

---

[23] Thus, the cases on which Defendants rely are inapposite, because the Plaintiffs did not plead the existence of anything resembling an *express warranty*. *See, e.g., Johnson v. Brown & Williamson Tobacco Corp.*, 122 F. Supp. 2d 194, 206 (D. Mass. 2000) (Johnson offered "no specific *affirmation* of fact or promise, nor any particular description, sample or model that might *give rise* to such a warranty.") (emphasis added) (Defs.' Br. at 35); *Varney v. R.J. Reynolds Tobacco Co.*, 118 F. Supp. 2d 63, 70 (D. Mass 2000) (plaintiff did not plead "the existence of anything remotely resembling an express warranty") (Defs.' Br. at 35). Here, plaintiffs *do* point to specific language online and on the product packaging itself which created an express warranty.

001975-11 213282 V1

While Defendants may dispute whether the statements alleged in paragraphs 60 and 107 give rise to an express warranty, such determinations are for the jury or factfinder. *See Colgan Air, Inc. v. Raytheon Aircraft Co.*, 2007 U.S. App. Lexis 24360, at *24 (4th Cir. Oct. 18, 2007) (it is a question of fact whether a statement gives rise to an express warranty); *Goldman v. Barnett*, 793 F. Supp. 28, 32 (D. Mass. 1992) (provision of warranty was a question of fact). *See also Watson v. Coachmen Rec. Vehicle Co.*, 2006 U.S. Dist. Lexis 15087, at *11 (S.D. Ill. Mar. 31, 2006) (at the motion to dismiss stage, plaintiff is not required to attach the express warranty to the complaint as long as he has complied with Rule 8(a)).

### 2. Plaintiffs allege that Defendants' affirmative statements regarding the safety and quality of the Thomas Toys were a basis of the bargain

In an express warranty action, plaintiff must show that the affirmation of fact or promise was made was part of the basis of the bargain. *See Redmac, Inc. v. Computerland of Peoria*, 140 Ill. App. 3d 741 (1986); *Stamm v. Wilder Travel Trailers*, 44 Ill. App. 3d 530 (1976). Here, the Complaint explicitly alleges that the named Plaintiffs made their purchasing decisions based on Defendants' representations regarding the safety and quality of the Thomas Toys when purchasing such toys. For example: "Plaintiff purchased these products ***based on defendants' representations*** that the toys are safe for children and are intended to be played with by young children." ¶ 11 (emphasis added). *See also* ¶¶ 12, 14-17, 19, 21, 23, 26.[24] There also is no dispute that Plaintiffs would not have purchased the Thomas Toys for their children had they known that the products contained unsafe levels of lead. Therefore, the fact that the Toys were safe for children's use clearly was a basis of the bargain.[25]

---

[24] Moreover, even for the named Plaintiffs that do not specifically plead the words "based on," their expectations regarding the safety of the Thomas Toys were reasonable in light of the fact that the Toys are marketed for children. *See* ¶ 9 ("Mr. Leary . . . had no expectations that the Thomas Toys were painted with hazardous substances. . ."); ¶ 10 ("Ms. Walton reasonably believed the Thomas Toys she purchased for her son were sufficiently tested and safe for a child's enjoyment."); ¶ 18 ("The Hudspeth Plaintiffs expected that the higher priced, wooden trains would be safe for their children."); ¶ 27 ("Ms. Vallejo believed [the Thomas Toys] were safe.").

[25] Even though the named Plaintiffs do not specifically reference Defendants' representations as the "basis of the bargain" – this is the clear import of Plaintiffs' allegations. *See Brokaw v. Mercer County*, 235 F.3d 1000, 1006 (7th Cir. 2000) (as long as they are consistent with the allegations of the complaint, plaintiffs may assert additional

- 34 -

Here, the burden is on Defendants to establish that their statements regarding the safety and quality of their Thomas Toys did not become a basis of the bargain for Plaintiffs. *See Ampat/Midwest, Inc. v. Illinois Tool Works, Inc.*, 1988 U.S. Dist. Lexis 4611, at *11 (affirmations made during a bargain become a part of the basis of the bargain unless clear affirmative proof shows otherwise); *Crest*, 111 Ill. App. 3d at 1074 (same). Defendants have not met this burden, nor is it an issue that should be decided on a Rule 12(b)(6) Motion.

**G.    Plaintiffs' Strict Liability (Counts V and VI) and Negligence (Count VII) Claims are not Barred by the Economic Loss Doctrine**

Defendants contend that all Plaintiffs' strict liability and negligence claims must be dismissed because Plaintiffs have failed to allege a compensable injury and such claims are barred by the economic loss doctrine. As discussed *supra*, all Plaintiffs have indeed alleged a compensable injury. Moreover, as explained in greater detail below, Defendants' argument is also wrong because many of the Plaintiffs' strict liability and negligence claims are not barred under the applicable states' laws.

**1.    Plaintiffs' tort claims are not precluded under Illinois law**

While Illinois recognizes the economic loss doctrine, which precludes a plaintiff from recovering solely economic damages in tort, *see Moorman Mfg. Co. v. National Tank Co.*, 435 N.E.2d 443, 450 (Ill. 1982), it is well established under Illinois law that there are exceptions to the economic loss doctrine if: (1) the plaintiff has sustained personal injury or property damage as a result of a sudden or dangerous occurrence; (2) the plaintiff's damages are proximately caused by the defendant's false misrepresentation; or (3) the plaintiff's damages are proximately caused by a negligent misrepresentation made by a defendant in the business of supplying information for the guidance of others in their business transactions. *See In re Chicago Flood Litig.*, 680 N.E.2d 265, 275 (Ill. 1997). Given the facts alleged in the Complaint, the fraudulent misrepresentation exception applies to this case.

---

facts in their response to the motion to dismiss); *Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000) (same).

Under Illinois law, fraudulent misrepresentation occurs when there is a: (1) false statement of material fact; (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance. *Soules v. General Motors Corp.*, 402 N.E.2d 599, 601 (Ill. 1980). Plaintiffs have alleged all of these elements in their Complaint. The Complaint alleges that Defendants knew that they imported toys that were at risk for being contaminated with lead paint because of an April 2003 recall of Defendants' toys for excessive levels of lead. ¶¶ 54-56. The Complaint likewise alleges that, despite having this knowledge, "Defendants failed to implement any appropriate testing and other safeguards to prevent the sale and marketing of toys contaminated with lead paint." ¶ 57. Moreover, the Complaint alleges that even though Defendants knew or should have known that the Thomas Toys contained toxic lead surface paint, they still marketed these toys as being safe for children, when in fact they were not. ¶¶ 88-89. Further, the Complaint alleges that Defendants made their false representations regarding safety with the intent that consumers rely on them, which Plaintiffs and members of the Class did and suffered substantial injuries as a result. ¶¶ 90-92. Thus, because Defendants' false misrepresentations proximately caused Plaintiffs' injuries, the economic loss doctrine is inapplicable under Illinois law.

**2.    Dismissal of Plaintiffs' tort claims is also improper under any other state law**

      **a.    Arkansas**

The Supreme Court of Arkansas has made clear that the economic loss doctrine does not apply to strict liability claims. *Farm Bureau Ins. Co. v. Case Corp.*, 878 S.W.2d 741, 743 (Ark. 1994) ("Arkansas permits recovery under strict liability when the only damages sustained are to the defective product."); *see also In re Genetically Modified Rice Litig.*, 2007 U.S. Dist. Lexis 76435, at *11 (E.D. Mo. Oct. 15, 2007) ("Defendants cannot cite any Arkansas case that applies the economic loss doctrine to negligence claims").

Defendants baldly assert that the Arkansas Plaintiff failed to state a claim under the Arkansas' Product Liability Act, ARK. CODE § 16-116-101, *et seq*. However, Defendants' contention is incorrect. Plaintiffs' strict liability claim (Count V) clearly states a claim under the Arkansas Product Liability Act because it alleges that: (1) the "Defendants were producers, manufacturers and/or distributors of Thomas Toys;" (2) "The Thomas Toys . . . were unreasonably dangerous in that, when the Thomas Toys left the hands of the Defendants they contained lead surface paint that could cause adverse health effects to young children exposed to that toxic substance;" and (3) "As a direct and proximate result of the defective and unreasonably dangerous condition of the Thomas Toys . . . Plaintiffs and members of the Class have suffered direct economic loss." ¶¶ 114-15, 117. *See Ruminer v. GMC*, 483 F.3d 561, 563-64 (8th Cir. 2007) (setting out elements of claims). Accordingly, the Arkansas Plaintiff's negligence and strict liability claims should not be dismissed.

### b.    Connecticut

Defendants contend that under Connecticut law, the economic loss rule bars the Connecticut Plaintiffs' tort claims because they seek to recover solely economic damages. Defendants' argument fails for two reasons. First, Defendants improperly rely on *Amity Regional Sch. Dist. 5 v. Atlas Constr. Co.*, No. X06CV 970153388S, 2000 Conn. Super. Lexis 2031 (Conn. Super. Ct. Aug. 4, 2000). *Amity Regional* is factually distinguishable because the plaintiff in that case sought damages for ***commercial*** losses that allegedly resulted from defective performance of contracts. *Id.* at *8-9 ("[t]he Connecticut Supreme Court has expressed its intent to respect the agreements of business persons who later claim commercial losses arising out of defective performance of contracts, by barring recovery in negligence for economic loss."). Here, Plaintiffs are consumers. *See also* the Connecticut Product Liability Act, CONN. GEN. STAT. § 52-572m(d) (distinguishing the definition of "harm" for consumers versus commercial parties). Defendants have not cited any case in which a court applying Connecticut law has held

- 37 -

that a consumer's tort claims solely for economic losses are indeed precluded by the economic loss doctrine.

Second, the Connecticut Product Liability Act, CONN. GEN. STAT. § 52-572m, *et seq.*, specifically provides for the recovery of economic loss for damage to the property itself. CONN. GEN. STAT. § 52-572m(d) ("'Harm' includes damage to property, including the product itself"). Therefore, pursuant to Connecticut law, the Connecticut Plaintiffs' strict liability and negligence claims should not be dismissed.

        **c.**    **New Mexico**

No New Mexico court has explicitly ruled that a consumer's tort claim is barred by the economic loss doctrine. Accordingly, this Court should decline to do so here.

        **d.**    **Ohio**

Defendants contend the economic loss doctrine bars the Ohio Plaintiff's tort claims for economic damages. Defendants, however, ignore that under Ohio law "[t]he failure to allege other than economic damages does not necessarily destroy the right to pursue common-law product liability claims." *City of Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1146 (Ohio 2002). "Therefore, although a plaintiff may be precluded from asserting its claims under Ohio's Product Liability Act, it can still assert common-law negligent design claims" and failure to warn claims. *State Farm Mut. Auto. Ins. Co. v. Kia Motors Am., Inc.*, 828 N.E.2d 701, 707 (Ohio Ct. App. 2005).

Under Ohio common law, to state a claim for failure to warn "the plaintiff must prove that the manufacturer knew or should have known, in the exercise of reasonable care, of the risk or hazard about which it failed to warn and that the manufacturer failed to take precautions that a reasonable person would take in presenting the product to the public." *Id.* at 707-08 (citation omitted). Plaintiffs' strict liability – failure to warn claim (Count VI) clearly states a claim under Ohio common law by alleging that: "Defendants knew or should have known that the Thomas Toys contained a non-obvious danger in their surface paint. However, Defendants failed to

inform Plaintiffs and the members of the Class as to the adverse health effects that the Thomas Toys could have on young children." ¶ 121. Thus, the Ohio Plaintiff's failure to warn claim should not be dismissed pursuant to Ohio common law.

### e.    Rhode Island

Defendants agree that the economic loss doctrine does not apply to consumers' tort claims under Rhode Island law. *See Rousseau v. K. N. Constr., Inc.*, 727 A.2d 190, 193 (R.I. 1999) ("[w]e conclude, therefore, that the economic loss doctrine is not applicable to consumer transactions."). Instead, Defendants baldly assert that the Rhode Island Plaintiff has failed to allege a compensable injury. Again, as discussed *supra*, all Plaintiffs have alleged a compensable injury. Therefore, the Rhode Island Plaintiff's strict liability and negligence claims should not be dismissed pursuant to Rhode Island law.

### H.    The Complaint Properly Requests Payment for Blood Lead Testing as a Form of Equitable Relief (Count VIII)

Plaintiffs specifically plead medical monitoring in the narrow context of blood lead testing, *i.e.*, the amount of monies paid or to be paid for blood lead testing of children who played with the lead tainted toys. *See, e.g.*, ¶¶ 69-71. Courts have been reluctant to address such medical monitoring remedies at the early motion to dismiss stage of the litigation. *See, e.g., Paige*, 2002 U.S. Dist. Lexis 5447, at *25.

Defendants' incorrectly reason that Plaintiffs' medical monitoring claim should be dismissed because the Plaintiffs have not yet identified any physical illness from their exposure to the lead-tainted toys. Defs.' Br. at 46-58. Traditionally, recovery for an injury was based on a type of physical harm. However, the "injury" in a medical monitoring claim, is the cost of the medical care and examinations that will detect the onset of physical injury. *See, e.g., Dhamer v. Bristol-Myers Squibb Co.*, 183 F.R.D. 520, 523 (N.D. Ill. 1998) (concerning prescriptive drug). Generally, courts have recognized that a plaintiff may recover the cost of diagnostic medical evaluation proved to be proximately caused by the defendant's wrongdoing. *See, e.g., Dhamer*,

- 39 -

183 F.R.D. at 523; *In re Paoli*, 916 F.2d at 852; *Carey v. Kerr-McGee Chem. Corp.*, 999 F. Supp. 1109, 1119-20 (N.D. Ill. 1998).

Indeed, the majority of cases where courts have found medical monitoring to be appropriate equitable or legal relief concern exposure to toxic substances. *See, e.g., In re Orthopedic Bone Screw Prods. Liab. Litig.*, 1995 U.S. Dist. Lexis 22042, at *28 (E.D. Pa. Feb. 22, 1995). Medical monitoring is appropriate in the toxic exposure context because doctors have the opportunity to diagnose warning signs of diseases and other medical problems. *Id.* Particularly in the toxic exposure context, as in this case, courts have repeatedly held that "recovery of medical monitoring damages is not contingent upon a showing of a present physical injury or upon proof that injury is reasonably certain to occur in the future." *Potter v. Firestone Tire & Rubber Co.*, 863 P.2d 795, 822-23 (Cal. 1993); *In re Paoli*, 916 F.2d at 852; *Burns v. Jaquays Mining Corp.*, 752 P.2d 28, 33 (Ariz. Ct. App. 1987).

In *Carey v. Kerr-McGee Chem. Corp.*, 999 F. Supp. 1109, 1117 (N.D. Ill. 1998), involving property damage and personal injury from thorium tailings produced by defendants, plaintiffs sought certification of a medical monitoring class and an order creating a court supervised fund to pay for medical monitoring of the class. In that case, defendants moved to dismiss claiming plaintiffs' complaint is insufficient in requesting damages for alleged future injuries without any claim of present injury or that the future injury is "reasonably certain" to occur. Plaintiffs responded that defendants mischaracterized their claim as one for an "increased risk" of contracting disease which requires proof of a "reasonable certainty," when they have actually alleged a claim for medical monitoring. *Id.* at 1118-19 (relying on the seminal case *In re Paoli*, 916 F.2d at 850). The court agreed with plaintiffs and recognized a medical monitoring claim.

The difference between a claim for an increased enhanced risk and one for the reasonable costs of medical monitoring is discussed in *In re Paoli*, 916 F.2d at 850, in which the court reasoned:

001973-11 213282 V1

> [A]n action for medical monitoring seeks to recover only
> quantifiable costs of periodic medical examinations necessary to
> detect the onset of physical harm, whereas an enhanced risk claim
> seeks compensation for the anticipated harm itself, proportionately
> reduced to reflect the chance that it will not occur. We think that
> this distinction is particularly important because the Pennsylvania
> Supreme Court has expressed some reluctance to recognize claims
> for enhanced risk of harm . . . The inquiry in an enhanced risk
> claim is the anticipated harm itself. The injury in a medical
> monitoring claim is the cost of the medical monitoring that will,
> one hopes, detect that inquiry. The former is inherently
> speculative because courts are forced to anticipate the probability
> of a future injury. The latter is much less speculative because the
> issue for the jury is the less conjectural question of whether the
> plaintiff needs medical surveillance. . .

Therefore, the appropriate inquiry is not whether it is reasonably probable that plaintiffs will

suffer harm in the future, but whether medical monitoring is, to a reasonable degree of medical

certainty, necessary in order to diagnose properly the warning signs of a disease. *Id.* at 829, 851.

Here, Plaintiffs are not seeking damages for lead poisoning or for the increased risk that

Plaintiffs will suffer harm in the future. Rather, Plaintiffs seek the costs of the blood lead test

necessary to properly diagnose any lead poisoning that already occurred. The Complaint

specifically alleges actual exposure to lead paint at levels in excess of federal levels. *See, e.g.,*

¶¶ 21, 24, 27. As a result, immediate medical testing in this case is necessary. For example, the

Complaint states:

> The very children that Defendants expected to lick, suck, bite,
> chip, and ingest the paint on the Thomas Toys have now been
> exposed to poisonous lead that can cause serious long-term injury.
> [¶ 69.]

Moreover, as a result of Defendants' negligent and reckless conduct, Plaintiffs' children and the

Class have been significantly exposed to a known hazardous substance. As a result of such

exposure, the children are at an increased risk of being poisoned by lead. . . ¶ 71.

The *Kerr-McGee* court's adoption of the reasoning set forth in *Paoli* is instructive:

> Medical monitoring claims acknowledge that, in a toxic age,
> significant harm can be done to an individual by a tortfeasor, not
> withstanding latent manifestation of that harm. Moreover, as we
> have explained, recognizing this tort does not require courts to
> speculate about the probability of future injury. It merely requires
> courts to ascertain the probability that the far less costly remedy of

- 41 -

> medical supervision is appropriate. Allowing plaintiffs to recover
> the cost of this care deters irresponsible discharge of toxic
> chemicals by defendants and encourages plaintiffs to detect and
> treat their injuries as soon as possible. These are conventional
> goals of the tort system as it has long existed in Pennsylvania.

*Kerr-McGee*, 999 F. Supp. at 1119-20.[26] The *Kerr-McGee* court concluded that medical

monitoring recognized "the very real present need for medical monitoring" and "is totally

consistent with and in no way compromises the Illinois courts' refusal to award damages for

future injuries that cannot be established to such a degree of medical certainty." 999 F. Supp. at

1120.  ...

In a case directly on point, the court in *Lewis v. Lead Indus. Ass'n*, 793 N.E.2d 869, 871,

873-74 (Ill. Ct. App. 2003), found that medical screening for children exposed to lead paint is a

present injury compensable in a tort action.[27] The *Lewis* court reasoned that there is "no reason

why the expense of such an examination is any less a present injury compensable in a tort action

than the medical expenses that might be incurred to treat an actual physical injury caused by such

a breach of duty." *Id.* at 874.

---

[26] *See also Potter*, 863 P.2d at 824 (involving a toxic landfill), cited by Defendants, in which the court emphasized four public policy considerations in granting medical monitoring:

> First, there is an important public health interest in fostering access to medical testing for individuals whose exposure to toxic chemicals creates an enhanced risk of disease, particularly in light of the value of early diagnosis and treatment for many cancer patients.

> Second, there is a deterrence value in recognizing medical surveillance claims . . .

> Third, "the availability of a substantial remedy before consequences of the plaintiffs' exposure are manifest may also have the beneficial effect of preventing or mitigating serious future illnesses and thus reduce the overall costs to the responsible parties."

> Finally, societal notions of fairness and elementary justice are better served by allowing recovery of medical monitoring costs. That is, it would be inequitable for an individual wrongfully exposed to dangerous toxins, but unable to prove that cancer or disease is likely, to have to pay the expense of medical monitoring, when such intervention is clearly reasonable and necessary.

*Potter*, 863 P.2d at 824 (citations omitted); *see also Day v. NLO*, 851 F. Supp. 869 (S.D. Ohio 1994).

[27] This Court should note that a similar class action on behalf of persons exposed to lead paint was certified in *Elliott v. Chicago Hous. Auth.*, 2000 U.S. Dist. Lexis 2697, at *36-37 (N.D. Ill. Feb. 25, 2000). In *Elliott*, the court rejected the argument that given the broad range of plaintiffs' exposure or lack of exposure to lead-based paint, potential causes of exposure, and injuries or lack of injuries, it was impossible for plaintiffs to be typical of the class as whole. *Id.* In *Elliott*, the Illinois district court held that "individual variations among Plaintiffs and class members concerning magnitude of exposure and extent of injuries does not defeat typicality, especially here where damages for personal injuries are not sought." *Id.*

- 42 -

Courts have rejected Defendants' argument that there is no need for medical monitoring because there are few, if any, plaintiffs with high blood lead levels. *See, e.g., Dombrowski v. Gould Elecs., Inc.*, 31 F. Supp. 2d 436, 443 (M.D. Pa. 1998).[28] In *Dombrowski*, plaintiffs introduced substantial evidence and testimony that there was a need for continual review of blood lead levels. *Id.* Additionally, plaintiffs in that case provided "abundant evidence and testimony that beyond immediate blood level testing, there is a need to be aware of and to review each person's past history, including exposure and potential exposure, as well as blood levels, and further, that additional review must be made of the individual's complaints and that there is a need, in some cases, for additional medical examinations, such as EKGs and neurological testing in certain cases." *Id.* Moreover, "[s]imple reference to a blood lead level, much testimony showed, would not be an appropriate way to monitor people who have obviously been exposed to a substantial hazard." *Id.* Thus, the costs of a medical monitoring program is a current compensable injury driven by the exposure of victims to a hazard, and not by test results of a few lucky individuals whose bodies had withstood the exposure to date.

The cases on which Defendants rely are inapposite. Some concern decisions on a full factual record at summary judgment or trial,[29] or at the class certification stage[30]; some do not

---

[28] *See also Day v. NLO*, 851 F. Supp. at 879, 880 (stating "[w]hen liability has been established courts have allowed for compensation for reasonable medical procedures incurred in an attempt to establish whether a plaintiff has not in fact been injury, even when those procedures prove that the plaintiff has not in fact been injured."; and "courts concerns over damages which are uncertain, speculative, or conjectural are overcome by the reasonableness of compensation for diagnostic tests in cases where liability has been established.") (citing *Friends For All Children v. Lockheed Aircraft, Corp.*, 746 F.2d 816, 825 (D.C. App. 1984)). *See also Potter*, 863 P.2d at 823-24 (holding "that recovery of medical monitoring damages should not be dependent upon a showing that a particular cancer or disease is reasonably certain to occur in the future").

[29] *See, e.g., Metro-North Commuter R.R. v. Buckley*, 521 U.S. 424, 425 (1997); *Sinclair v. Merck & Co., Inc.*, 913 A.2d 832, 834-35 (N.J. Super. 2007). *See also Martin v. Shell Oil Co.*, 180 F. Supp. 2d 313, 316, 323 (D. Conn. 2002) (denying summary judgment regarding medical monitoring); *Henry v. The Dow Chem. Co.*, 701 N.W.2d 684 (Mich. 2005); *Jensen v. Bayer AG*, 862 N.E.2d 1091, 1094 (Ill. Ct. App. 2007); *Redland Soccer Club, v. Department of the Army*, 696 A.2d 137 (Pa. 1997) (proving the requirements for a medical monitoring claim at the summary judgment stage turns on expert testimony); *Allen v. General Elec. Co.*, 32 A.D.3d 1163, 1164-66 (N.Y. App. Div. 2006) (denying defendants' motion for summary judgment dismissing the medical monitoring claims and relying upon expert testimony); *Bowerman v. United Illuminating*, 1998 Conn. Super. Lexis 3575, at *1, 25-26 (Conn. Super. Dec. 15, 1998) (examining plaintiffs' medical monitoring claim at the summary judgment stage). *See also Day v. NLO*, 851 F. Supp. at 876 (whether medical monitoring is appropriate for all class members is a jury question); *Carroll v. Litton Sys., Inc.*, 1990 U.S. Dist. Lexis 16833, at *152-54 (W.D.N.C. Oct. 29, 1990) (examining plaintiffs' medical monitoring claim after extensive discovery and expert testimony); *Simmons v. Pacor, Inc.*, 543 Pa. 664, 678-80 (1996) (examining medical monitoring at trial and recognizing a medical monitoring claim

- 43 -

involve a nationwide class action[31]; and others involve analyses of medical monitoring requests based on an increased risk of future disease as opposed to an immediate need to diagnose current disease.[32]

Defendants reliance on *Riston v. Butler*, 777 NE.2d 857, 862, 866 (Ohio Ct. App. 2002), is misguided as well. In that case, the court denied defendants' motion for sanctions against plaintiffs' attorney for filing a lawsuit, which included a medical monitoring claim for lead poisoning. *Id.* at 859. The court discussed how although the plaintiffs may not have prevailed at the summary-judgment stage, the subjective reasons for initially filing the complaint were more than adequate. *Id.* at 862. Indeed, the court found that at the time of filing the complaint, plaintiffs' medical monitoring claim for increased risk of harm from lead exposure was not legally groundless. *Id.* at 866. Similarly, in this case, Plaintiffs' allegations for medical monitoring for blood lead testing are more than adequate at this early motion to dismiss stage. Plaintiffs' medical monitoring claim for increased risk of harm from lead exposure is not legally groundless and is supported by sound law.

Finally, Defendants ignore the reasonableness of Plaintiffs' medical monitoring request, which is limited to a blood lead test. Indeed, courts impose a safeguard against speculative recovery in terms of the reasonableness of the procedures with respect to the tortious act. *Day*, 851 F. Supp. at 880. In determining the reasonableness of the procedures, courts consider expert testimony. *Id.* at 880-81. The monitoring must be directed to the disease for which Plaintiffs are at risk, and will only include procedures which are medically necessary in terms of that risk. *Id.*

---

under *In re Paoli R. Yard PCB Litig.*); *Redland*, 696 A.2d at 146 (a medical monitoring claim depends on expert testimony); *Abusio v. Consolidated Edison Co.*, 238 A.D.2d 454, 455 (N.Y. App. Div. 1997) (examining plaintiffs' medical monitoring claim with respect to a jury verdict).

[30] *See, e.g., In re Prempro Prod. Liab. Litig.*, 230 F.R.D. 555, 569, 571 (E.D. Ark. 2005) (in deciding a motion for class certification under Fed. R. Civ. P. 23(b)(2), addressing the variation in state laws with respect to medical monitoring and relied on expert testimony).

[31] *See, e.g., Hinton v. Monsanto Co.*, 813 So.2d 827 (Ala. 2001) (individual medical monitoring claim under Alabama law).

[32] *See, e.g., Paz v. Brush Engineered Materials, Inc.*, 949 So.2d 1, 5 (Miss. 2007) (explaining how Mississippi law does not recognize a medical monitoring claim based on increased risk of future disease); *Jones v. Utilities Painting Corp.*, 198 A.D.2d 268 (N.Y. App. Div. 1993).

001975-11 213282 V1

at 881; *see also Potter*, 863 P.2d at 825.  Here, the type and cost of Plaintiffs' blood lead testing request goes to the merits and will be established in the future by a developed record and expert testimony.

## I.    The Unjust Enrichment Claims are Properly Pled in the Alternative (Counts IX and X)

To establish unjust enrichment, plaintiffs must show that defendants have unjustly retained a benefit to plaintiffs' detriment and that defendants' retention of that benefit violates fundamental principles of justice, equity, and good conscience. *See Canadian Pac. Ry. Co. v. Williams-Hayward Protective Coatings, Inc.*, 2005 U.S. Dist. Lexis 28988, at *48-49 (N.D. Ill. 2005); *HPI Health Care Servs., Inc. v. Mount Vernon Hosp., Inc.*, 131 Ill. 2d 145, 160 (1989). *See also Gagne v. Vaccaro*, 766 A.2d 416 427-28 (2001); *Barbara G. Banks, P.A. v. Thomas D. Lardin, P.A.*, 938 So. 2d 571, 577 (Fla. Ct. App. 2006); *Bayh v. Sonnenburg*, 573 N.E.2d 398, 408 (Ind. 1991).

Defendants sold Plaintiffs toys with unsafe levels of lead and then replaced some of those toys in the recall with other toys containing lead.  In these circumstances, providing Plaintiffs with the offer of additional replacement toys (which may or may not contain unsafe levels of lead) does not constitute "returning the alleged benefit."  If Defendants agree to refund the purchase price of the toys in question, then Defendants will no longer be retaining the benefit of these transactions.

However, in the absence of such an offer, a claim for unjust enrichment lies.  Further, Defendants' argument regarding the cost of production of the original tainted toys and the cost of production of the tainted replacement toys rings hollow.  A claim for unjust enrichment is proper until Defendants return to Plaintiffs that to which Plaintiffs are entitled – which here would be the full purchase price of the Toys.

Defendants also argue that Plaintiffs' unjust enrichment claims must be dismissed because Plaintiffs have an adequate remedy at law under other causes of action asserted, including Plaintiffs' claim for express warranty.  Defs.' Br. at 42.  However, dismissal of the

unjust enrichment claims on this basis would be premature as Defendants also argue the lack of any express warranty. *See Saltzman v. Pella Corp.*, 2007 U.S. Dist. Lexis 19650, at *16-17 (N.D. Ill. Mar. 20, 2007) (premature to dismiss unjust enrichment claims in the context of a 12(b)(6) motion based on the existence of a contract).

Finally, alternative pleading is not only allowed under Federal Rule of Civil Procedure 8(e)(2), but is common. *See, e.g., Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003) ("a party is allowed to plead breach of contract, or if the court finds no contract was formed, to plead for quasi-contractual relief in the alternative. Once a valid contract is found to exist, quasi-contractual relief is no longer available."); *American Hardware Mfrs. Ass'n v. Reed Elsevier, Inc.*, 2004 U.S. Dist. Lexis 28007, at *49-50 (N.D. Ill. Dec. 28, 2004) (plaintiff can plead *unjust enrichment* in the alternative to a breach of contract claim); *Citicorp Leasing Inc. v. Meridan Leasing Corp.*, 1992 WL 211050, at 3 (N.D. Ill. Aug. 26, 1992) (federal pleadings may contain claims offered in the alternative). Thus, Plaintiffs' unjust enrichment claims should not be dismissed.

## V.    CONCLUSION

WHEREFORE, Plaintiffs respectfully request that this Court deny Defendants' Motion To Dismiss, and grant such other and further relief as this Court deems appropriate.[33]

---

[33] In the alternative, should the Court hold that Plaintiffs' claims are deficient in some way, Plaintiffs request leave to amend be granted pursuant to Fed. R. Civ. P. 15(a).

- 46 -

Dated:  December 14, 2007              Respectfully submitted,


By___/s/ Elizabeth A. Fegan_____
    Elizabeth A. Fegan
    Timothy P. Mahoney
    Daniel J. Kurowski
HAGENS BERMAN SOBOL SHAPIRO LLP
820 North Blvd, Suit B
Oak Park, Illinois 60301
(708) 776-5600
(708) 776-5601 (fax)
E-mail: beth@hbsslaw.com
E-mail: timm@hbsslaw.com
E-mail: dank@hbsslaw.com

Steve W. Berman
Ivy Arai
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, Washington 98101
(206) 623-7292
E-mail: steve@hbsslaw.com
E-mail: ivy@hbsslaw.com

Laurence D. King
Linda M. Fong
KAPLAN FOX & KILSHEIMER LLP
555 Montgomery Street, Suite 1501
San Francisco, CA  94111

Frederic S. Fox
Donald R. Hall
KAPLAN FOX & KILSHEIMER LLP
805 Third Avenue
New York, NY  10022

William N. Riley
Jamie Kendall
PRICE WAICUKAUSKI & RILEY, LLC
301 Massachusetts Ave
Indianapolis, Indiana 46204

*Interim Lead Counsel for the Class*

Kenneth A. Wexler
Edward A. Wallace
Andrae P. Reneau
WEXLER TORISEVA WALLACE LLP
55 West Monroe Street, Suite 3300
Chicago, IL 60602

Robert James Pavich
John J. Pavich
MONICO, PAVICH & SPEVACK
20 South Clark Street, Suite 700
Chicago, IL 60603

Kevin Barry Rogers
LAW OFFICES OF KEVIN ROGERS
307 North Michigan Avenue, Suite 305
Chicago, IL 60601

Thomas A. Zimmerman, Jr.
Hugh J. Green
ZIMMERMAN LAW OFFICES, P.C.
100 West Monroe Street, Suite 1300
Chicago, IL 60603

Alex G. Streett
James A. Streett
STREETT LAW FIRM, P.A.
107 W. Main St.
Russellville, AR 72811

Robert M. Foote
Mark A. Bulgarelli
Craig S. Mielke
Joe R. Whatley, of counsel
Edith Kallas, of counsel
Mitchell M. Breit, of counsel
FOOTE, MEYERS, MIELKE & FLOWERS, LLC.
28 North First Street, Suite 2
Geneva, IL 60134

Kathleen C. Chavez
CHAVEZ LAW FIRM, P.C.
28 North First Street, Suite 2
Geneva, IL 60134

001975-11 213282 V1

Nicholas B. Roth
EYSTER KEY TUBB ROTH
MIDDLETON & ADAMS LLP
Eyster Building
P.O. Box 1607
Decatur, AL  35602

*Additional Counsel for the Plaintiffs*

001975-11 213282 V1

Service List For In Re Thomas and Friends®
Wooden Railway Toys Litigation, No. 07C 3514

**Interim Lead Counsel For Plaintiffs**

Elizabeth A. Fegan, Esq.
Timothy P. Mahoney, Esq.
Daniel J. Kurowski, Esq.
HAGENS BERMAN SOBOL SHAPIRO LLP
820 North Boulevard, Suite B
Oak Park, IL 60301
beth@hbsslaw.com
timm@hbsslaw.com
dank@hbsslaw.com

Steve W. Berman, Esq.
Ivy D. Arai, Esq.
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
steve@hbsslaw.com
ivy@hbsslaw.com

Laurence D. King, Esq.
Linda M. Fong, Esq.
KAPLAN FOX & KILSHEIMER LLP
555 Montgomery Street, Suite 1501
San Francisco, CA 94111
LKing@kaplanfox.com
lfong@kaplanfox.com

Frederic S. Fox, Esq.
Donald R. Hall, Esq.
KAPLAN FOX & KILSHEIMER LLP
805 Third Avenue
New York, NY 10022
ffox@kaplanfox.com
dhall@kaplanfox.com

William Riley, Esq.
Joseph N. Williams, Esq.
Jamie Kendall, Esq.
Joe Williams, Esq.
PRICE WAICUKAUSKI & RILEY, LLC
The Hammond Block Building
301 Massachusetts Avenue
Indianapolis, IN 46204
wriley@price-law.com
jwilliams@price-law.com
jkendall@price-law.com

**Additional Plaintiffs' Counsel**

Robert M. Foote, Esq.
Mark A. Bulgarelli, Esq.
Craig S. Mielke, Esq.
FOOTE, MEYERS, MIELKE & FLOWERS, LLC
28 North First Street, Suite 2
Geneva, IL 60134
rmf@foote-meyers.com
mbulgarelli@foote-meyers.com
csm@foote-meyers.com

Kathleen Currie Chavez, Esq.
CHAVEZ LAW FIRM P.C.
28 North First Street, #2
Geneva, IL 60134
gkeg4@aol.com

Nicholas B. Roth, Esq.
EYSTER KEY TUBB ROTH MIDDLETON &
ADAMS LLP
402 East Moulton Street, S.E.
Decatur, AL 35602
nbroth@eysterkey.com

Joe R. Whatley, Esq.
Joseph P. Guglielmo, Esq.
Edith Kallas, Esq.
Mitchell M. Breit, Esq.
WHATLEY DRAKE & KALLAS
1540 Broadway, 37th Floor
New York, New York 10036
jwhatley@wdklaw.com
jguglielmo@wdklaw.com
ekallas@whatleydrake.com
mbreit@whatleydrake.com

Kenneth A. Wexler, Esq.
Edward A. Wallace, Esq.
Andrae P. Reneau, Esq.
WEXLER TORISEVA WALLACE LLP
1 North LaSalle Street, Suite 2000
Chicago, IL 60602
kaw@wtwlaw.us
eaw@wtwlaw.us
apr@wtwlaw.us

Mark J. Tamblyn, Esq.
WEXLER TORISEVA WALLACE LLP
1610 Arden Way, Suite 290
Sacramento, CA 95815
mjt@wtwlaw.us

Alex G. Streett, Esq.
James A. Streett, Esq.
STREETT LAW FIRM, P.A.
107 West Main St;
Russellville, AR 72811
alex@streettlaw.com
james@streettlaw.com

Robert James Pavich, Esq.
John J. Pavich, Esq.
Melanie Fairman, Esq.
MONICO, PAVICH & SPEVACK
20 South Clark Street, Suite 700
Chicago, IL 60603
rpavich@monicopavich.com
jpavich@monicopavich.com
mfairman@monicopavich.com

Kevin Barry Rogers, Esq.
LAW OFFICES OF KEVIN ROGERS
307 North Michigan Avenue, Suite 305
Chicago, IL 60601
rogers-law@sbcglobal.net

Thomas A. Zimmerman, Jr., Esq.
ZIMMERMAN AND ASSOCIATES
100 West Monroe, Suite 1300
Chicago, IL 60603
tom@attorneyzim.com

**Defendants' Counsel**

James L. Petersen, Esq.
Bart Thomas Murphy, Esq.
ICE MILLER LLP
2300 Cabot Drive
Suite 455
Lisle, IL 60532
James.petersen@icemiller.com
Bart.murphy@icemiller.com

Katherine A. Winchester, Esq.
Judy S. Okenfuss, Esq.
ICE MILLER LLP
One American Square
Suite 3100
Indianapolis, IN 46282-0200
Katherine.winchester@icemiller.com
Judy.okenfuss@icemiller.com

# EXHIBIT A



ELIZABETH A. FEGAN
DIRECT • (708) 776-5604
BETH@HBSSLAW.COM

HAGENS BERMAN
SOBOL SHAPIRO LLP

July 9, 2007

*Via Certified Mail / Return Receipt Requested*

Learning Curve Brands, Inc., and
Learning Curve Brands, Inc.
d/b/a RC2 Brands, Inc.
1111 W. 22nd Street
Suite 320
Oak Brook, IL 60523

Re:   *Hesse v. Learning Curve Brands, Inc., and Learning Curve Brands, Inc. d/b/a RC2
      Brands, Inc.; O'Leary v. Learning Curve Brands, Inc., and Learning Curve Brands, Inc. d/b/a
      RC2 Brands, Inc; and Reddell v. v. Learning Curve Brands, Inc., and Learning Curve Brands,
      Inc. d/b/a RC2 Brands, Inc.*

Notice pursuant to:  California Civil Code § 1782; Georgia Code § 10-1-399; Indiana Code
§ 24-5-0.5-5(a); Maine Revised Statutes, Title 5, § 50-634(g); Massachusetts General Laws
Chapter 93A, § 9(3); Texas Business & Commercial Code § 17.505; West Virginia Code §
46A-6-106(b); and Wyoming Statutes § 40-12-109

To Whom It May Concern:

        PLEASE TAKE NOTICE that is has come to the attention of a national putative class
of purchasers of "Thomas & Friends Wooden Railway" components ("Thomas Toys") that
you manufactured, distributed, marketed and sold the Thomas Toys as safe for children
despite the fact that the toys were made using red and yellow surface paint containing lead
which is poisonous to children, causing damage and personal injury to the purchasers and
their children.

        Accordingly, you have engaged in consumer fraud and deceptive practices in
connection with the sale of the Thomas Toys in violation of the California Deceptive
Practices Act, Cal. Civ. Code § 1770, *et seq.*, the Georgia Fair Business Practices Act, Ga.
Code. Ann. § 10-1-393, the Indiana Consumer Sales and Deceptive Practices Act, Ind. Code
Ann. § 24-5-0.5-3, the Maine Unfair Trade Practices Act, Me. Rev. Stat. Ann., Tit. 5, § 205-
A, *et seq.*, Mass. Gen. Laws Ch. 93A, § 1, *et seq.*, the Texas Deceptive Trade Practices-
Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.41, *et seq.*, the West Virginia
Consumer Protection Act, W.Va. Code § 46A-6-101 *et seq.*, and the Wyoming Consumer
Protection Act, Wyo. Stat. Ann. § 40-12-101, *et seq.*  This notice is being served on behalf of
the above-referenced putative class.

July 9, 2007
Page 2


    Said putative class hereby demands that you correct or otherwise rectify the damage caused by such unfair trade practices and return all monies paid by putative class members for the Thomas Toys as well as agree to pay for the costs of blood lead testing for the children exposed to the Thomas Toys. Otherwise, the class will continue to seek recovery of damages, costs and fees through the courts under California Civil Code §§ 1780, 1781, Georgia Code § 10-1-399, Indiana Code § 24-5-0.5-3, Maine Revised Statutes, Title 5, § 213, Massachusetts General Laws Chapter 93A, § 9(1), § 11, Texas Business & Commercial Code § 17.50(a)(1), West Virginia Code § 46A-6-106(a)(1), and Wyoming Statutes § 40-12-108.

    PLEASE TAKE FURTHER NOTICE that the attached Complaints contain more detailed allegations and are incorporated herein by this reference.

        Sincerely,

        HAGENS BERMAN SOBOL SHAPIRO LLP

        Elizabeth A. Fegan

EAF

cc.    Ivy Arai

# EXHIBIT B



**ICE MILLER** LLP

LEGAL COUNSEL

August 8, 2007

WRITER'S DIRECT NUMBER: (317) 236-2308
direct fax: (317) 592-4730
james.petersen@icemiller.com

<u>**Via Certified Mail**</u>

Elizabeth A. Fegan
HAGENS BERMAN SOBOL SHAPIRO LLP
820 North Boulevard, Suite B
Oak Park, IL 60301

Re:    *Hesse v. Learning Curve Brands, Inc. and Learning Curve Brands, Inc.*
*d/b/a RC2 Brands, Inc.; O'Leary v. Learning Curve Brands, Inc. and Learning*
*Curve Brands, Inc. d/b/a RC2 Brands, Inc.; and Reddell v. Learning Curve*
*Brands, Inc., and Learning Curve Brands, Inc. d/b/a RC2 Brands, Inc.*

Dear Beth:

We are in receipt of your letter dated July 9th 2007 which purports to provide notice pursuant to the Regulation of Business Practices for Consumer Protection Act, Mass. Gen. Laws, 93A § 1, *et seq.* Under the Massachusetts statute, notice must be given by the consumer bringing an action at least thirty days prior to bringing the action. Moreover, you have not specified the identity of or the damages claimed by the consumer(s). Without this information, RC2 Corporation is unable to offer cure, if desired. Furthermore, RC2 Corporation denies any liability pursuant to the statute.

Although we do not believe this to be appropriate notice under the statute, RC2 Corporation is nonetheless willing to offer, as it has in the recall, to replace consumers' recalled toys, pay associated postages and provide an additional Thomas toy to the consumer. Without further information as to any alleged actual damages, as required by statute, we can not determine whether any additional cure is appropriate.

Please provide us with the name and address of any client(s) you may now represent in Massachusetts.

Very truly yours,

ICE MILLER LLP

*[signature]*

James L. Petersen

I/1992915.1
One American Square | Suite 3100 | Indianapolis, IN 46282-0200 | P 317-236-2100 | F 317-236-2219

INDIANAPOLIS | CHICAGO | NAPERVILLE | WASHINGTON D.C.

www.icemiller.com

# EXHIBIT C



HAGENS BERMAN
SOBOL SHAPIRO LLP

ELIZABETH A. FEGAN
DIRECT • (708) 776-5604
BETH@HBSSLAW.COM

August 16, 2007

**_Via E-Mail_**

Mr. Bart Murphy
Ice Miller LLP
2300 Cabot Drive
Suite 455
Lisle, Illinois  60532

Mr. James Petersen
Ice Miller LLP
One American Square
Suite 3100
Indianapolis, IN 46282-0200

Re:    In re Thomas Trains Paint Litigation

Dear Bart and James:

I received your letters dated July 26 (one letter), July 27 (one letter) and August 8, 2007 (five letters), purporting to contest certain demands made by Plaintiffs under state statutes in Wyoming, West Virginia, Georgia, Massachusetts, California, Maine, and Texas.

First, you claim that without the specific identities of residents of each state, Defendants are unable to offer a cure. This position is disingenuous where Plaintiffs have asserted claims on behalf of a nationwide class. While the class members are identifiable through a verified claims process, Plaintiffs are not required at this time to provide you with the names of every person within each state whose children have been exposed to the Thomas Toys tainted with lead paint. In fact, at this point in time, Defendants actually hold the identities of many of the Class members in those states in their possession through the recall process. Accordingly, this position should not serve as an obstacle to Plaintiffs' demands under any of the state statutes.

Next, you claim that Plaintiffs have not afforded Defendants sufficient time to cure before filing suit. However, this position is equally unavailing where Defendants conclude that the steps that they have taken (recall and provision of a replacement toy) are a sufficient cure regardless of timing. Further, in the event that Defendant desires additional time to cure per Plaintiffs' demands, such time continues to run before the filing of a Consolidated Amended Complaint in the Northern District of Illinois.

ATTORNEYS AT LAW          SEATTLE  LOS ANGELES  BOSTON  PHOENIX  CHICAGO  SAN FRANCISCO
T 708.776.5600   F 708.776.5601
www.hbsslaw.com

001975-11  190959 V1

Mr. Bart Murphy
August 16, 2007
Page 2


    Finally, you assert that Plaintiffs have not provided you with sufficient information as to any alleged actual damages and thus are unable to determine whether any additional cure is appropriate. This position ignores the very specific demands set forth in the *Hesse, O'Leary,* and *Reddell* complaints, copies of which were provided to you. These demands include, *inter alia*, a refund of the purchase price of the Thomas Toys that were recalled as well as reimbursement for the costs of the blood lead testing that every pediatrician recommends the exposed children undergo. Of course, if you find that these cures are appropriate, Plaintiffs are certainly willing to sit down and discuss with you the best way to effectuate these cures in settlement of their lawsuits.

                       Sincerely,

                       HAGENS BERMAN SOBOL SHAPIRO LLP

                       Beth

                       Elizabeth A. Fegan

BF:BF
cc:    Steve W. Berman
       Fred Fox
       Will Riley