IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE RC2 CORP. TOY LEAD PAINT | ) | |
| PRODUCTS LIABILITY LITIGATION | ) | No. 07 CV 7184 |
| | ) | MDL No. 1893 |
| | ) | |
| *Document relates to all actions* | ) | Judge Leinenweber |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION FOR A PRELIMINARY INJUNCTION PURSUANT TO THE ALL WRITS ACT

**Table of Contents**

INTRODUCTION .................................................................................................................1

THE BARRETT SETTLEMENT IS FAIR AND REASONABLE ..................................4

   a.   Claims for Medical Monitoring or Blood Testing Not Warranted and Class Members Retain Individual Claims ..................................................................5

   b.   Plaintiffs' Counsels' Assertion That 60% of the Class Would Not Be Entitled to Relief is Yet Another Misstatement ...................................................6

   c.   Plaintiffs' Complaint About Coupon Relief Provided to Class Members Without Any Substantiation of their Claim is Absurd...............................................6

   d.   Class Members Have the Option to Receive a Replacement Item and a Bonus Toy ...........................................................................................................7

   e.   The Injunctive Relief is Distinct in Some Respects and There is No Reason to Delay its Implementation So That Plaintiffs' Counsel Can Claim Credit for its Implementation.............................................................................................7

   f.   Claims Administration is Audited and RC2 is the Most Effective And Efficient Entity to Perform this Function ..................................................................8

SETTLEMENT CHRONOLOGY ......................................................................................8

ARGUMENT .....................................................................................................................11

   I.   Plaintiffs' Requested Injunction is Beyond the Scope of the Anti-Injunction Act "In Aid of Jurisdiction" Exception. ..........................................................................11

   II.   The Court should Abstain from Issuing a Preliminary Injunction Pursuant to the *Colorado River* Doctrine. .................................................................................21

      A.   The Barrett Matter is a Parallel Action .................................................21

      B.   Eight of the Ten *Colorado River* Factors Strongly Support Abstention.......23

         1.   The Barrett Court has Assumed Jurisdiction ...........................................24

         2.   Threat of Piecemeal Litigation.................................................................24

         3.   Relative Progress of the Parallel Actions .................................................25

         4.   Order in Which Jurisdiction is Obtained ..................................................26

         5.   Source of Governing Law........................................................................27

         6.   Adequacy of State Court Action to Protect Federal Plaintiffs' Rights......27

         7.   Concurrent Jurisdiction ...........................................................................28

         8.   Vexatious Litigation................................................................................28

      C.   The Remaining Factors are Ambiguous...................................................28

III.    CAFA Does Not Limit the Ability of the State Court to Determine the Sufficiency of the Settlement.................................................................................29

IV.    Plaintiffs' Motion For Preliminary Injunction Is a Thinly Veiled Attempt To Engage This Court In Impermissible Appellate Review Of The Adequacy Of The Proposed Settlement And The Court's Preliminary Approval Order In *Barrett* ..........31

CONCLUSION ..........................................................................................................34

## Cases

*Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*,
    762 F.2d 205 (2nd Cir. 1985) ...................................................................25

*Atlantic Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*,
    398 U.S. 281 (1970) ............................................................................ 12, 20

*Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*,
    962 F.2d 698 (7th Cir. 1992)................................................................22, 25

*Chick Kam Choo v. Exxon Corp.*,
    486 U.S. 140 (1998) ...................................................................................12

*Colorado River Water Conservation District v. United States*,
    424 U.S. 800 (1976) .............................................................................21, 23

*De Simas v. Big Lots Stores, Inc.*,
    No. C 06 6614 SI, 2007 WL 686638 (N.D. Cal. March 2, 2007)................24

*Exxon Mobile Corp. v. Saudi Basic Industries Corp.*,
    544 U.S. 280 (2005) ...................................................................................32

*Franklin Commons East P'ship v. Abex Corp.*,
    997 F. Supp. 585 (D.N.J. 1998) .................................................................25

*Grider v. Keystone Health Plan Central, Inc.*,
    500 F.3d 322 (3rd Cir. 2007) .................................. 12, 13, 14, 15, 16, 17, 18

*In re American Online Spin-Off Accounts Litigation*,
    2005 WL 5747463 (C.D. Cal. May 9, 2005) .................................... 16, 19, 20

*In re First Commodity Corp., Customer Accounts Litigation*,
    89 B.R. 283 (D. Mass. 1988) ......................................................................24

*In re General Motors Prod. Liab. Lit.*,
    134 F.3d 133 (3rd Cir. 1998) ................................................................13, 16

*In re Lease Oil Antitrust Litigation*,
    48 F. Supp. 2d 699 (S.D. Tex. 1998)................................................ 16, 17, 20

*In re Managed Care Litig.*,
    236 F. Supp. 2d 1336 (S.D. Fla. 2002)............................................ 16, 17, 18

*In re Wireless Telephone Federal Cost Recovery Fees Litigation*,
    2003 U.S. Dist. LEXIS 26070 (W.D. Mo. Dec. 22, 2003) ....................16, 19

*Interstate Material Corp. v. City of Chicago*,
    847 F.2d 1285 (7th Cir. 1988) ....................................................................28

*LaDuke v. Burlington Northern R.R. Co.*,
    879 F.2d 1556 (7th Cir. 1989)........................................................ 21, 23, 24

*Lou v. Belzberg*,
    834 F.2d 730 (9th Cir. 1987)......................................................................11

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*,
    460 U.S. 1 (1983) .......................................................................... 23, 26, 27

*Romine v. Compuserve Corp.*,
    160 F.3d 337 (6th Cir. 1998)......................................................................25

*Rooker v. Fidelity Trust Co.*,
    263 U.S. 413 (1923) ...................................................................................32

*Schomber by Schomber v. Jewel Companies, Inc.*,
    614 F. Supp. 210 (N.D. Ill. 1985) .........................................................25, 26

*United States v. New York Tel. Co.*,
    434 U.S. 159, 98 S.Ct. 364 (1977) .............................................................11

*Winkler v. Eli Lilly & Co.,*
  101 F.3d (7th Cir. 1996) .......................................................................................13

**Statutes**

28 U.S.C. § 1332(d) ...................................................................................................29
28 U.S.C. § 1446 .......................................................................................................30
28 U.S.C. § 1453(b) ...................................................................................................30
28 U.S.C. § 2283 .......................................................................................................12

**Other Authorities**

14B Charles A. Wright et al., *Federal Practice & Procedure* § 3721, at 288 (1997) ......30

**Rules**

Illinios Code of Civil Procedure
  735 ILCS 5/2-801 et seq. (2008)................................................................................4
Illinios Code of Civil Procedure
  735 ILCS 5/2-806 (2008)...........................................................................................4

## INTRODUCTION

Plaintiffs' emergency motion for a preliminary injunction and the memorandum of law in support of the motion are long on rhetoric and short on substance. The motion and memorandum in support of it are replete with unsupported allegations and misstatements. Plaintiffs' Counsel's arguments are based on the faulty premise that the Class Action Fairness Act ("CAFA") eliminated state class action jurisprudence. Plaintiffs have not and cannot cite any authority which supports this faulty premise. CAFA does not eliminate state court jurisdiction over class action litigation.

Recognizing the weakness of the premise on which their argument is based, Plaintiffs' Counsel make unsupported allegations attacking the Parties in the state court settlement, denouncing the settlement and implicitly questioning the integrity of the Circuit Court of Cook County by inferring it would grant approval to a settlement which is not fair and reasonable to the class. For example, Plaintiffs state in their motion that Defendants "attempt to make an end-run around this Court and gain approval of a collusive nationwide settlement from an Illinois state court that has little connection to this litigation". (Pltfs' Motion at p.1). While Plaintiffs' Counsel may be upset that Class Counsel in the *Barrett* Action[1] were able to negotiate a fair and reasonable settlement which has been preliminarily approved by the Circuit Court of Cook County, prior to the time that they even made an initial settlement demand in this case on Defendants[2], this does not provide Plaintiffs' Counsel with a license to make unfounded allegations

---

[1] *Barrett v RC2 Corporation,* No. 07 CH 20924 (Circuit Court of Cook County).
[2] The Parties in *Barrett* reached a settlement agreement in principle on November 30, 2007 and it is undisputed that Plaintiffs' Counsel in this case did not make their initial demand until December 10, 2007.

1

regarding the character of the parties' actions or inaccurate statements regarding the settlement reached in the *Barrett* action.

Contrary to Plaintiffs' Counsels' assertion, an "end-run" was neither attempted nor was it necessary. There simply was nothing for Defendants to run around. There was no impending judgment in this case so Defendants were not attempting to race to a settlement to avoid an adverse judgment. In fact the status of this litigation is that Defendants have a fully briefed motion to dismiss on file.[3] This litigation is in its preliminary stages. No motion for class certification has even been filed yet so at this point the Court has jurisdiction over only the individual named plaintiffs who are free to opt-out of the settlement in *Barrett* and proceed with the pending litigation in federal court.

Nor is this a situation where Defendants unsuccessfully attempted to negotiate a settlement with the Federal Plaintiffs and then after being spurned in their settlement efforts they turned to the State Court Plaintiffs. The record shows here that the settlement in *Barrett* was achieved through a mediation conducted over multiple sessions conducted by a retired Chancery Judge of the Circuit Court of Cook County and reached on November 30, 2007 **prior** to the time the Federal Plaintiffs' Counsel even made their initial settlement demand on Defendants. Defendants had already reached a settlement in the *Barrett* case before settlement negotiations in this case ever got started.

Yet Plaintiffs' Counsel accuse Defendants of engaging in a "reverse auction". (Pltfs' Motion at ¶5, p.2). A reverse auction requires multiple bidders and involves playing the bidders off one another in an effort to strike a deal with the weakest or least

resolute bidder.   Federal Plaintiffs' Counsel's own assertions belie the notion that a reverse auction was conducted here.   Plaintiffs' Counsel complain bitterly about the fact that they did not even know of the settlement in *Barrett* until the after the Circuit Court Judge granted preliminary approval of the settlement on January 22, 2008.   Thus by their own admission Federal Plaintiffs' Counsel were not even aware of the terms of the settlement in *Barrett* nor were they approached by Defendants with an offer to settle with them if they were willing to cut a better deal than the settlement reached in *Barrett.* Further the record in this matter unequivocally establishes that Plaintiffs did not even make their initial settlement demand to Defendants until after the settlement in *Barrett* had already been agreed to.   Therefore it was impossible for Defendants' Counsel to approach Class Counsel in *Barrett* offering to settle with them if they would agree to terms less onerous than those requested by Plaintiffs' Counsel in this case.   The notion that a reverse auction was conducted here is absurd.

Equally absurd is the unsupported allegation that the settlement in *Barrett* was collusive.   As noted above the settlement was achieved through multiple face-to-face meetings between Class Counsel in *Barrett* and Defendants' Counsel which were initiated by Class Counsel and which commenced shortly after the *Barrett* case was filed.   These meetings then resulted in the parties agreeing to mediate.   The mediation was conducted by a retired Chancery Court Judge of the Circuit Court of Cook County over multiple sessions culminating in a settlement on November 30, 2007.   Further as this Court is well aware, under the Illinois Code of Civil Procedure notice of the proposed settlement has to be given to the class and class members may object to the settlement or opt-out.   735

---

[3]Most of the cases which have been transferred to this court in the MDL have not progressed this far.  All but one case was stayed, prior to the filing of any responsive

ILCS 5/2-801 et seq. (2008).   In addition the settlement is subject to final approval by the Court. 735 ILCS 5/2-806 (2008).  Thus the settlement agreement is subject to scrutiny by potential objectors and the Court prior to approval.  The implicit argument made by Federal Plaintiffs' Counsel here that the Circuit Court of Cook County would look the other way and grant approval to a collusive settlement is an affront to that Court.

## THE BARRETT SETTLEMENT IS FAIR AND REASONABLE

Contrary to the unfounded and/or mistaken assertions and misrepresentations of Plaintiffs' Counsel attacking the *Barrett* settlement, it is fair and reasonable.  However this is not an issue to be litigated before this Court but rather it is an issue to be determined by the Circuit Court of Cook County in the *Barrett* case.  However, since Plaintiffs' Counsel have not accurately described the terms of the settlement agreement to this Court, Defendants shall briefly address the issue here.

As noted by Class Counsel in the *Barrett* case in their response to Plaintiffs' Motion, the settlement reached in the *Barrett* case is superior in many ways to the settlement demand made by Plaintiffs' Counsel in this case on December 10, 2007. Further, every defense attorney knows that plaintiffs are willing to accept less than what is demanded in an initial demand so the reality is that the Federal Plaintiffs' Counsel would have accepted something less than their December 10, 2007 demand.

Plaintiffs' Counsel begin their attack on the settlement by misrepresenting that RC2 has stated in an SEC filing that the settlement will only cost them between $3.5 and $4.5 million and after backing out the attorney's fees this means only $500,000 to $1,500,000 will be paid to the class.  (Pltfs' Memo at p.7).  This statement appears to be nothing more than a blatant misrepresentation made in an attempt to mislead this Court.

pleading.

4

Plaintiffs' Counsel  point to a Form 8-K filing which RC2 filed with the SEC on January 22, 2008 which states the Company "announced that it expects to record **in the 2007 financial results** a charge in the range of $3.5 million to $4.5 million, net of tax, to cover estimated additional replacement costs or refunds, donations, notice charges, claims administration and legal fees related to the Settlement."  (See Ex. 29 to Plaintiffs' Memo at p.2, emphasis added).  Plaintiffs' Counsel ignores the highlighted text stating that the amount indicated is a charge to be recorded in 2007 financials.  The settlement will not be approved and implemented until sometime in 2008 so the bulk of the settlement costs or charges will be incurred in 2008 financials.  Plaintiffs' Counsels' attempt to mislead the Court into believing that RC2 stated the settlement will only cost it a total of $3.5 million to $4.5 million is at best a reckless misstatement.

> **a. Claims for Medical Monitoring or Blood Testing Not Warranted and Class Members Retain Individual Claims**

Plaintiffs' Counsel correctly note that the *Barrett* settlement does not include relief in the form of medical monitoring or blood testing.  However, they fail to consider the valid reasons such relief is inappropriate in a class settlement and ignore the fact that under the settlement class members retain the right to pursue individual claims for personal injury and that blood testing or medical monitoring costs if allowable under state law would be elements of damages in an individual action.  As Defendants have noted in their motion to dismiss, several states expressly reject claims for medical monitoring as a matter of law.  Further in the current environment where there have been literally millions of toys recalled for lead issues (Mattel has recalled over 26 million units – many for lead issues), there are insurmountable causation and individual questions.  Further the nature of the exposure created by RC2's recalled toys does not warrant this type of relief

on a class basis. This issue can be fully addressed and litigated through objections and potentially expert testimony in the fairness hearing in the *Barrett* case.

### b. Plaintiffs' Counsels' Assertion That 60% of the Class Would Not Be Entitled to Relief is Yet Another Misstatement

Plaintiffs' Counsel erroneously assert that 60% of the class comprised of persons who returned the recalled toys to RC2 in the recall and received replacement items, would not be entitled to relief is simply not true. (Pltfs' Memo at pp.8-9). The settlement provides that persons who received replacement items may return the replacement item they received for a cash refund. Amendment No. 1 to the Settlement Agreement which was executed by the Parties prior to the time they were served with Plaintiffs' Motion[4] clearly establishes that once again Plaintiffs' Counsel are wrong. (See Exhibit 4).

### c. Plaintiffs' Complaint About Coupon Relief Provided to Class Members Without Any Substantiation of their Claim is Absurd

The settlement in *Barrett* even goes so far as to allow relief to persons claiming they are class members without any documentation of ownership of a recalled toy. The settlement provides that persons who had a recalled toy and who disposed of the toy and do not have evidence of proof of purchase to substantiate their ownership of the recalled toy they disposed of, may still obtain relief in the form of a $15 coupon good for the purchase of a similar toy on Learning Curve's website. Despite the fact that the

---

[4]The Parties in *Barrett* filed an Agreed Motion for approval of Amendment No. 1 to the Settlement Agreement in the Circuit Court of Cook County on January 28, 2008 at 12:42 p.m. (See Exhibit 5). The amendment which is the subject of this motion makes it clear that relief is provided to class members who returned toys in the recall. Plaintiffs motion for an injunction which raises this issue was not served on Defendants counsel until 1:42 p.m. when it was received via e-mail and was not reviewed until later that date. (See Ex 1 - Murphy Declaration at ¶17). By then the Parties had already filed Amendment No. 1 seeking approval of this amendment.

settlement carves out relief for what is likely a small subset of the class, and provides this subset with relief at the risk of fraudulent claims, Plaintiffs' Counsel decry the form of relief being provided as inadequate.   (Pltfs' Memo at p. 10).   Their complaint is unreasonable and illogical; nonetheless, they are free to raise this objection at the fairness hearing in the *Barrett* case.

### d.   Class Members Have the Option to Receive a Replacement Item and a Bonus Toy

Plaintiffs' Counsel also complain that one of the options which RC2 is legally committing to provide to the class in the settlement is the same relief it is providing currently under the recall.  This is merely one option available to class members.  Further RC2 is legally binding itself under the settlement to provide relief which it is presently voluntarily providing and could discontinue providing.

### e.   The Injunctive Relief is Distinct in Some Respects and There is No Reason to Delay its Implementation So That Plaintiffs' Counsel Can Claim Credit for its Implementation

Amazingly Federal Plaintiffs' Counsel complain that RC2 has already voluntarily implemented certain components of the injunctive relief which it has agreed to under the settlement and cites this as a basis for its misguided assertion that the settlement is inadequate. (Pltfs' Memo at pp.11-12).  Apparently Plaintiffs' Counsel would prefer that RC2 wait to implement these improved safeguards as part of the settlement to allow Plaintiffs' Counsel to claim credit for forcing their implementation.  Such an assertion is misguided at best and further ignores the fact that under the settlement RC2 is agreeing to legally obligate itself to implement these measures.  Further the injunctive relief required under the settlement also includes measures not currently implemented and will require

actions distinct from current operations. For example, under the settlement agreement RC2 agrees to purchase and utilize XRF guns to screen and test products. XRF technology allows for quick non-destructive testing for the presence of heavy metals in surface paint of toys. This measure is not currently implemented and the settlement mandates that it be implemented. Notably, Plaintiffs' Counsels' demand of December 10, 2007 does not request such relief.

###    f.    Claims Administration is Audited and RC2 is the Most Effective And Efficient Entity to Perform this Function

Once again, Plaintiffs' Counsel misstates the terms of the settlement by asserting that RC2 is left unchecked as the claims administrator. (Pltfs' Memo at p.14). The settlement agreement expressly provides that an "appropriate independent third party [will] conduct an appropriate audit of the claims administration process." (See Settlement Agreement at p. 4 – Ex. 3 to Pltfs' Memo). Due to the nature of the options being offered to the class and the infra-structure RC2 has already put into place for the recalls, RC2 is logically the most effective and efficient entity to administer claims and the settlement agreement provides for auditing of the process.

## SETTLEMENT CHRONOLOGY

Since Plaintiffs' Counsel in this case have engaged in a campaign of misinformation before this Court, Defendants are compelled to apprise the Court of the chronology of events leading up to the settlement in *Barrett.* The following chronology is supported by the sworn declarations of Defendants' Counsel (see Exhibits 1 & 5), self authenticating documents such as court filings or the admissions of Plaintiffs' Counsel. The chronology demonstrates that the settlement in *Barrett* was not collusive, it was not the product of a reverse auction and that contrary to the statements made in open court by

Plaintiffs' Counsel Elizabeth Fegan, Defendants' Counsel were not asked if they were negotiating settlement with any other party and did not represent to Plaintiffs' Counsel that they would not do so.

| DATE | EVENT/DESCRIPTION |
|---|---|
|  |  |
| 08/07/07 | *Barrett* Complaint Filed – No. 07 CH 20924 in Circuit Court of Cook County |
|  |  |
| 08/13/07 | Face to face meeting with Plaintiff's counsel in *Barrett* at offices of Defense counsel solicited by State Court plaintiffs' counsel.  Preliminary settlement issues discussed and methods, including mediation, of reaching a settlement discussed.  Broad picture relief discussed. **(Ex. 1 Murphy Declaration at  ¶3 )** |
|  |  |
| 09/14/07 | Second face to face meeting with State Court Plaintiff's counsel at which Parties agreed in principle to mediate settlement.   By 9/28 parties had agreed to mediation before Jd. Robert Boharic (ret.).  **(Ex. 1 Murphy Declaration at ¶4 )** |
|  |  |
| 10/12/07 | Rule 26(f) Conference in Federal cases held at office of Federal Court Plaintiff's counsel Price Waicukauski & Riley in Indianapolis.  Issue of settlement only broached and no substantive discussions.  No settlement demand was solicited from Plaintiffs' Counsel at this meeting.  Defense Counsel were not asked if they were negotiating with other parties and did not agree not do so.  **(Ex. 5 Petersen Declaration)** |
|  |  |
| 10/15/07 | 1st Mediation Session in *Barrett* case is held before Jd. Robert Boharic (ret.)  **(Ex. 1 Murphy Declaration at ¶5 )** |
|  |  |
| 10/17/07 | Letter Riley (Pltfs' cnsl – Price firm) to Defendants' Counsel regarding "Proposed Settlement Discussion"  Letter proposes general concepts and is not a demand.  **(Ex. 2)** |
|  |  |
| 10/29/07 | 2nd Mediation Session in Barrett case – parties mediate before Jd. Boharic (ret.)  **(Ex. 1 Murphy Declaration at  ¶7 )** |
|  |  |
| 11/07/07 | Brief Discussion on Settlement between Plaintiffs' and Defense Counsel in Federal Actions in Federal Court Cafeteria following court hearing to discuss discovery issues.  *NOTE: This meeting did not occur on October 12, 2006 as alleged by Ms. Fegan in open court as the docket reflects there was no court appearance on that date.*  Murphy (Defense Counsel) advises Plaintiffs' counsel that Defendants willing to discuss settlement, but that medical monitoring was not necessary and was not |

| | |
|---|---|
| | acceptable to Defendants as part of settlement.  Murphy advises that Defendants not going to bid against themselves and that if Plaintiffs serious about settlement they should make a demand.  Plaintiffs' counsel indicate they need information to make demand and Murphy advises them to send request to him and he will respond to reasonable requests.  No substantive negotiations occurred at this meeting  **(Ex. 1 Murphy Declaration at ¶8 )** |
| | |
| 11/08/07 | Fegan (Federal Pltfs' cnsl) sends e-mail to Murphy (Defense Counsel) requesting information  "in order to allow us to formulate a settlement demand".  Fegan's e-mail also states "The more information you can provide, the more vetted *our **initial demand*** will be."   E-mail refers to "discussion yesterday (11/7)" verifying fact meeting took place on 11/7/07 and not on 10/12/07 as Ms. Fegan asserts.  **(See Ex. 3 and Ex. 1 Murphy Declaration at ¶9).** |
| 11/21/07 | Murphy (Defense cnsl) sends e-mails to Fegan (Federal Court Pltfs' cnsl) responding to information requested by Federal Plaintiff's counsel to make a demand.  **(Ex 1. Murphy Declaration at ¶10 )** |
| | |
| 11/30/07 | **3rd Mediation Session - Settlement Agreement (in principle) reached in *Barrett* case after all day mediation session before Judge Boharic (ret.).  (Ex. 1 Murphy Declaration at  ¶11 )** |
| | |
| 12/10/07 | Plaintiffs' Counsel (Federal) send initial demand letter to Defendants' Counsel.  Demand letter states it "will remain open for 30 days" Defendants never respond to this demand letter.  NOTE: This demand letter was not provided to Class Counsel in *Barrett* until after the settlement received preliminary approval on 1/22/08 and Federal Plaintiffs' Counsel issued a press release denouncing the *Barrett* settlement as being inadequate. (Demand Letter is attached as Exhibit to Real-Party-In Interest, State Plaintiffs' Response to Plaintiff's Emergency Motion.)  **(Ex. 1 Murphy Declaration at ¶12).** |
| | |
| 01/22/08 | Plaintiff's Motion for Preliminary Approval of Settlement presented to Judge Maki and initial preliminary approval order entered  **(Ex. 1 Murphy Declaration at ¶14)** |
| | |
| 01/23/08 | Formal typed Preliminary Approval Order presented to Judge Maki for entry and order entered.  **(Ex. 1 Murphy Declaration at ¶15)** |
| | |
| 01/28/08 1:47 a.m. | Murphy (Defense Cnsl) advises Plaintiff's counsel in *Barrett* in e-mail at 1:47 am, that over weekend he found errors in settlement documents including fact claim form and agreement did not explicitly provide for availability of cash refunds to class members who returned toys in recall and received replacement toys.  Proposes Amendment No.1 to Settlement Agreement to clarify and *cure* errors.  **(Ex. 1 Murphy Declaration at ¶16)** |

| | |
|---|---|
| 1/28/08 10:49 a.m. | At 10:49 am Murphy sends proposed Amendment No. 1 to Settlement Agreement to Plaintiff's counsel via e-mail. **(Ex. 1 Murphy Declaration at ¶16)** |
| 01/28/08 12:42 p.m. | Plaintiff's Counsel in Barrett files Agreed Motion to Approve Amendment No. 1 (Motion prepared and presented before 1/28 filings in state and federal court by counsel for Federal Plaintiffs served on Defendants). **(Ex. 4)** |
| 01/28/08 1:40 p.m. | Plaintiffs' Emergency Motion for a Preliminary Injunction is served on Defendants' Counsel via e-mail at 1:40 p.m. AFTER Amendment No. 1 to Settlement Agreement in Barrett is executed and AFTER Agreed Motion to Approve Amendment No. 1 to Settlement Agreement is filed. **(Ex. 6)** |

## ARGUMENT

The issuance of injunctive relief under the All Writs Act is extraordinary and is only warranted in specific limited circumstances. *United States v. New York Tel. Co.,* 434 U.S. 159, 174, 98 S.Ct. 364 (1977). Any doubts as to the propriety of issuing the injunction are to be resolved in favor of Defendants. *Lou v. Belzberg,* 834 F.2d 730, 739 (9th Cir. 1987). As shall be discussed below, these circumstances do not exist here and the Court should not enjoin Defendants and the Circuit Court of Cook County from proceeding with the *Barrett* case.

I.         **Plaintiffs' Requested Injunction is Beyond the Scope of the Anti-Injunction Act "In Aid of Jurisdiction" Exception.**

Plaintiffs seek the extraordinary remedy of enjoining the state court from evaluating the *Barrett* settlement, under the guise that such relief is necessary to preserve this Court's jurisdiction over this matter. While a federal court can, in very limited circumstances, enjoin a state court proceeding in order to protect the federal court's jurisdiction, that type of relief is not appropriate here. Contrary to Plaintiffs' arguments, the mere fact that approval of the settlement in *Barrett* may ultimately resolve the claims

alleged by Plaintiffs here is not sufficient to invoke this Court's power to enjoin the Barrett proceedings.  It should also be noted that here there has been no class certified and that the individual Plaintiffs in the cases pending before this Court are free to opt-out of the *Barrett* settlement and may elect to do so and proceed with the pending litigation before this Court.

Federal and state courts are free to proceed with parallel proceedings without reference to the proceedings in the other court, even if the end result is that the state action reaches resolution first. *Grider v. Keystone Health Plan Central, Inc.*, 500 F.3d 322, 329 (3rd Cir. 2007)  "The traditional notion is that *in personam* actions in federal and state courts may proceed concurrently, without interference from either court, and there is no evidence that the exception to [28 U.S.C.] § 2283 was intended to alter this balance." *Id.*  Consistent with this general principle, the Anti-Injunction Act prohibits a federal court from enjoining state court proceedings, unless the injunction is: 1) authorized by act of Congress; 2) necessary in the aid of the court's jurisdiction; or 3) necessary to protect or effectuate a judgment of the Court.  28 U.S.C. § 2283.  If, and only if, one of these exceptions applies, a federal court may enjoin state court proceedings.  *See e.g. Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1998) (The exceptions to the prohibition on enjoining state court proceedings are "narrow and not to be enlarged by loose statutory construction."); *Atlantic Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 297 (1970) ("[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy.")  Plaintiffs' proposed injunction is not authorized by any act of Congress, nor has this court issued a final judgment that

must be protected.  Therefore, the injunction sought by Plaintiffs is forbidden unless it is "necessary in aid of the court's jurisdiction."

The "in aid of jurisdiction" exception applies where: 1) an injunction is required to preserve a district court's *exclusive governance* in a removal action; 2) the proceeding constitutes an *in rem* action requiring preservation of a res; or 3) an injunction is necessary to preserve an *imminent settlement* of a federal action.  *In re General Motors Prod. Liab. Lit.*, 134 F.3d 133, 145 (3rd Cir. 1998)(emphasis added).  In addition, on limited occasions courts allow an injunction in complex nationwide cases such as class actions in order to preserve the federal court's flexibility and authority to administer the case.  *Winkler v. Eli Lilly & Co.,* 101 F.3d, 1196, 1203 (7th Cir. 1996); *Grider,* 500 F.3d at 330, fn. 3.  However, the mere existence of a parallel state class action is not sufficient reason to invoke the "in aid of jurisdiction" exception.  *Id.* at 330.  This is true even if the result is ultimately the termination of the federal case because the state court reaches resolution first.  *Id.* at 331 (Court refused to enjoin the parties from reaching a bona fide settlement in another court, even if that settlement were to result in the disposition of claims before it).

Specifically in the context of settlements, the All Writs Act is properly used only to enjoin activities in another court that threaten to undermine a <u>pending</u> settlement in the enjoining court.  *See e.g. Grider,* 500 F.3d at 329 *citing, e.g. Carlough v. Amchem Prods, Inc.*, 10 F.3d. 189, 202-04 (3rd Cir. 1993) (upholding an All Writs Act injunction of a state court action which threatened to derail a <u>pending</u> settlement in a complex multidistrict class action case in the enjoining federal court).  In those limited situations "[w]hen the Act has been used to <u>*block*</u> settlement efforts in another court, it is typically

13

because a party was deliberately using that forum to circumvent a <u>pending</u> settlement agreement in the enjoining court. *Id.* at 330-331 (some emphasis added).

The *Grider* case, decided just five months ago by the Third Circuit, and wholly ignored by Plaintiffs, is in all relevant ways analogous to this case. *Id.* at 323. *Grider* involved parallel federal putative class actions brought by physicians against a health plan—one in the Southern District of Florida and the *Grider* case in the Eastern District of Pennsylvania. *Id.* On the eve of a comprehensive settlement agreement in the Florida case (which had been pending for three years), the Plaintiffs in the *Grider* case (which had been pending for five years) moved for and received an injunction under the All Writs Act prohibiting the Defendants in that case from settling or attempting to settle claims in the Florida case that would have the real or practical effect of also resolving the claims in *Grider*. *Id.*

The Third Circuit vacated the injunction, finding it to be in excess of the District Court's power under the All Writs Act. *Id.* at 324. The court noted that the risk of "some measure of inconvenience or duplicative litigation" was not sufficient to justify enjoining another court from taking action in a parallel proceeding. *Id.* at 329. "Rather, an injunction under the All Writs Act is appropriate only when the state court action threatens to frustrate proceedings and disrupt the orderly resolution of the Federal litigation. That is, the state action must not simply threaten to reach judgment first, it must interfere with the Federal Court's own path to judgment." *Id.* at 329-330[5]. In reviewing the injunction, the court found no support for the proposition that a court may

---

[5]The Court noted that the All Writs Act applies only where a federal court is seeking to enjoin a state court proceeding. Although the rule typically would not apply where two actions are pending in courts of equal dignity, the court was willing to apply the analysis

enjoin parties from participating in or reaching a bona fide settlement in another court even if that settlement were to result in the disposition of claims before it, particularly when there is no pending settlement in the enjoining court. *Id.* at 331.

The court in *Grider* also found that the injunction was not appropriate because the Pennsylvania plaintiffs had adequate remedies at law to challenge the fairness or reasonableness of the settlement (a remedy available to the Federal Plaintiffs here as well). The court noted that the procedures for evaluating the proposed settlement were sufficient to protect the plaintiffs' rights and, therefore, made an injunction improper. "[A]ny fear that the Defendants may use future settlement discussions in Florida to release themselves from liability without ever having to answer for certain claims that are unique to the *Grider* litigation is assuaged by the protections contained in Rule 23(e)." *Id.* at 333.

Just as in *Grider*, no settlement (or even imminent settlement) with Federal Plaintiffs is pending which this Court needs to protect. And while this Court and the parties have clearly devoted resources over the last several months to this litigation, it is by no means equivalent to the more than five years the *Grider* Court and parties had invested in that case. Most importantly, just as the objection and "opt-out" protections provided adequate remedies available to the *Grider* plaintiffs, the objection and "opt-out" procedures provided in the Illinois state action afford the Federal Plaintiffs the same adequate remedies. Simply put, if Plaintiffs do not approve of the settlement or believe it to be unreasonable, they can raise those objections in the state proceedings, where this court must assume that Judge Maki will follow the law and protect the rights of all

---

because the differences in the parties issues in the two cases prevented them from being true "parallel proceedings." *Id.* at 330.

members of any settlement class.  *Id.* at 332 ("Courts must operate on the basis of the assumption that all federal judges follow the law and protect the rights of the class members...") (citation omitted).

While managing to ignore the *Grider* decision, Plaintiffs offer four non-binding and readily distinguishable district court opinions as support for their request.  *See In re American Online Spin-Off Accounts Litigation*, 2005 WL 5747463 (C.D. Cal. May 9, 2005);  *In re Wireless Telephone Federal Cost Recovery Fees Litigation*, 2003 U.S. Dist. LEXIS 26070 (W.D. Mo. Dec. 22, 2003);  *In re Managed Care Litig.*, 236 F. Supp. 2d 1336 (S.D. Fla. 2002);  and, *In re Lease Oil Antitrust Litigation*, 48 F. Supp. 2d 699 (S.D. Tex. 1998).

Two of the cases were actually dismissed by the *Grider* court as readily distinguishable from the factual scenario present here.  Specifically, the injunctions issued in both *In re Lease Oil Antitrust Litigation* and *In re Managed Care Litigation* arose out of instances where the federal court was blocking settlement efforts in another court, because a party was deliberately using the second forum to circumvent a <u>pending</u> settlement agreement in the enjoining court.  *Id.* at 330-331 (some emphasis added).[6] That is clearly not the case here.

---

[6]In fact, not all perceived "end runs" warrant an injunction. In *In re General Motors Prod. Liab. Lit.*, 134 F.3d 133 (3rd Cir. 1998), purchasers of certain General Motors pick-up trucks brought putative class action lawsuits that were consolidated in the Eastern District of Pennsylvania. *Id.* at 137. The parties reached a preliminary settlement which the district court preliminarily approved and certified a settlement class. On appeal, however, the Third Circuit rejected the class certification and settlement, and remanded for further proceedings. Following the remand, the parties elected to restructure their settlement in a parallel state court proceeding in Louisiana. Following preliminary approval in the state court action, members of the proposed district court class moved to enjoin further proceedings in the Louisiana action. These plaintiffs argued, *inter alia,* that the Louisiana settlement represented an "end run" around the district court's jurisdiction. However, the district court refused to grant the injunction and the Third

In *In re Lease Oil Antitrust Litigation*, an MDL panel had consolidated a series of cases arising out of alleged violations of federal antitrust laws in the Southern District of Texas. 48 F. Supp. 2d at 701. Several months later, a group of plaintiffs filed an antitrust suit in Alabama state court that did not include the federal antitrust claims. *Id.* The Alabama class plaintiffs reached a proposed settlement. *Id.* at 703. However, rather than releasing only the state law claims, the proposed settlement also released all federal antitrust claims against the defendant. In order to protect its jurisdiction over the exclusively federal antitrust claims, the district court enjoined the parties from entering into settlements in any other forum without its approval. *Id.* at 704.

The *Grider* court referred to *In re Managed Care Litigation* as the "clearest example" of a court properly applying the All Writs Act to enjoin settlement efforts in another court. There, a multitude of class action lawsuits were consolidated in the Southern District of Florida. Despite the consolidation of these actions in federal court, a similar class action remained pending before an Illinois state court. Although similar in some respects, the Illinois proceeding involved fewer claims and a much narrower plaintiff class than the consolidated federal proceedings. For over two years, the federal district court presided over the consolidated federal actions. 236 F. Supp. 2d at 1338.

Circuit affirmed finding that none of the justifications for exercising "in aid of jurisdiction" injunctive power existed:

> In fact, if the settlement is ultimately approved by the Louisiana appellate system (and the United States Supreme Court, if necessary), then the nationwide class will be certified (in Louisiana) and (excepting opt outs) no court will have any plaintiffs left with which to proceed. If disapproved, then the district court (or any other court) can continue with discovery. In short, none of the concerns which animated our narrow application of the "necessary in aid of its jurisdiction" exception to the Anti-Injunction Act in *Carlough* exist here.

During that time period, it issued orders on several major issues and, most importantly, certified a nationwide plaintiff class. *Id.* at 1338-39. During the same time frame, the Illinois class action remained limited in both the scope of its claims and its class definition. *Id.* at 1339.

Eventually, the Illinois plaintiffs reached a settlement with the defendant. *Id.* However, four days prior to filing a preliminary settlement agreement, the Illinois plaintiffs dramatically expanded the scope of their class action by amending their complaint to include claims creating federal jurisdiction and expanded the class definition to mirror the federal district court's certified class. *Id.* The defendant then removed the Illinois state court action to federal court in the Southern District of Illinois. *Id.* Without informing the Illinois district court of the MDL and without notifying the MDL court of the tag-along case, the Illinois plaintiffs and defendant obtained preliminary approval of a nationwide class settlement the following day. *Id.* at 1339, 1342. The MDL court enjoined the defendant from participating in the settlement,  finding that:

> [a]dmittedly, in most instances, the issuance of an injunction would be in order to *protect* a settlement.  Here, instead this Court seeks to *prevent* a settlement. This Court is well aware of the strong public interest favoring settlements.  However, it cannot turn a blind eye to the underhanded maneuvers [Defendant] took to obtain this settlement agreement. [Defendant] snookered both this Court and Judge Murphy in Illinois in an obvious attempt to avoid this Court's jurisdiction.

*Id.* at 1342.

As the Court in *Grider* emphasized, both of these cases presented extraordinary attempts to skirt federal court jurisdiction and were a far cry from the situation in that case, as well as in this one, where good faith, bona fide settlement negotiations with a party in a parallel action led to an arms-length settlement.  Nothing about the state court

---

*Id.*, referencing *Carlough v. Amchem Prods., Inc.*, 10 F.3d 189 (3d Cir. 1993).

settlement in *Barrett* threatens to impede the jurisdiction of this Court or justifies an injunction. While Plaintiffs are entitled to object to the reasonableness of the settlement, their arguments are properly heard and determined by the state court.

Similarly, the injunction issued in *In re American Online Spin-Off Accounts Litigation*, 2005 WL 5747463 (C.D. Cal. May 9, 2005) was entered to preclude the defendants from expanding an unrelated state court class action settlement to include claims brought by the plaintiffs in a consolidated federal class after first failing to settle with them. Specifically, the federal class action involved claims that the defendant had opened spin-off sub accounts ("SOSAs") without the class members' permission. *Id.* at *1. Following failed attempts to settle with the federal court class plaintiffs, the defendant reached a settlement of the SOSA claims in a completely unrelated non-SOSA state court action in Illinois. *Id.* at *2. The Court enjoined the settlement to prohibit the defendant's extraordinary attempts to avoid the federal jurisdiction by bootstrapping its settlement of the SOSA claims to a wholly unrelated non-SOSA matter.

Finally, in *In re Wireless Telephone Federal Cost Recovery Fees Litigation*, 2003 U.S. Dist. LEXIS 26070 (W.D. Mo. Dec. 22, 2003), the Court issued an injunction to protect the integrity of an imminent federal court settlement. Following the removal and consolidation of numerous putative class actions in federal court, the parties reached a global settlement. The district court granted preliminary approval of the settlement and certified a nationwide settlement class. Upon the defendants request, the district court then enjoined all other current and future federal and state actions arising out of the same circumstances. In doing so, the court relied on well-settled case law permitting injunctions to protect imminent federal court settlements.

19

None of the extraordinary circumstances in the four district court opinions relied on by Plaintiffs is present here. The *Barrett* parties have not dramatically expanded the class definition or the scope of claims asserted on the eve of settlement in a targeted effort to evade this Court's jurisdiction. Plaintiffs have not asserted any claims exclusively within federal court jurisdiction. There is no settlement or imminent settlement of the federal actions to protect. There is also no certified class.[7] Furthermore, unlike the *American Online* defendant, RC2's had already agreed to a settlement with the state court plaintiffs before RC2 ever received the federal plaintiffs initial settlement demand. (Settlement negotiations with Federal Plaintiffs had not even commenced at the time the *Barrett* settlement was reached – no demand made until December 10, 2007). Accordingly, the cases relied on by Plaintiffs provide no support for their requested injunction.

As discussed above, it is only under extraordinary, fully-circumscribed circumstances that a federal court may enjoin a state court under the All Writs Act. *See e.g. Atlantic Coast Line R.R. Co. v. Bhd. Of Locomotive Eng'rs*, 398 U.S. 281, 297 (1970). None of those exceptions are present here. Moreover, adopting the gross expansion of the "in aid of jurisdiction" exception which Plaintiffs propose here will effectively eviscerate all principles of federalism by permitting a federal court to enjoin a parallel state court action under any circumstances, thereby ensuring that a state court action could never reach resolution of parallel litigation without implicit or explicit federal court approval.

---

[7]The only of the above cases relied on by Plaintiffs where a class had not been certified was the *In re Lease Oil Antitrust Litig.* In that case, the Court found that it clearly exercised jurisdiction over the claims and the parties because it involved federal antitrust claims which were exclusively federal.

**II.**          **The Court should Abstain from Issuing a Preliminary Injunction Pursuant to the *Colorado River* Doctrine.**

Even if the Court concludes that it has the authority to issue a preliminary injunction under the All Writs Act, it should abstain from doing so pursuant to the principles set forth in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). In *Colorado River*, the United States Supreme Court provided guidelines for when Federal courts should abstain from taking action when there is a parallel proceeding in state court. Abstention based on the presence of a parallel state court proceeding rests on principles of "(w)ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.* at 817. Here, the Court should apply those principles to allow the state court process to work its course to determine the validity of the settlement entered into by the *Barrett* plaintiffs.

### A.     The Barrett Matter is a Parallel Action

The *Colorado River* doctrine applies only where concurrent state and federal actions are "parallel." *LaDuke v. Burlington Northern R.R. Co.*, 879 F.2d 1556, 1559 (7th Cir. 1989). "Suits are 'parallel' when substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Id.* (quoting *Calvert Fire Ins. Co. v. American Mut. Reinsurance Co.*, 600 F.2d 1228, 1229 n. 1 (7th Cir. 1979)). The *Barrett* action is a parallel action because it involves:   1) substantially similar parties; 2) who are litigating similar claims.

Both the MDL actions consolidated before this Court and the *Barrett* matter are brought as putative class actions. The plaintiff classes defined in *Barrett* and the Illinois Consolidated matter are indistinguishable. The *Barrett* Complaint defines the plaintiff

class as "purchasers of Thomas & Friends Wooden Railway vehicles, buildings, and other train set components ("Thomas & Friends Toys") containing lead paint and which were distributed by Defendant between the dates of January 2005 and June 2007."  The Illinois Consolidated plaintiffs define their plaintiff class as "all persons who purchased Thomas & Friends Wooden Railway vehicles, buildings and other train set components which contain lead paint and which were imported and/or distributed by Defendants between January 2005 and June 2007."[8]  Thus, the plaintiff classes as defined in each of the lawsuits are substantially similar.

The Defendants named in the two actions satisfy the "substantially similar" criteria as well.  The *Barrett* Complaint names RC2 Corporation as the defendant.  The Federal Consolidated plaintiffs have also named RC2 Corporation but have added Learning Curve Brands, Inc. ("Learning Curve") as an additional Defendant.  This difference, however, is not material.  Learning Curve is a wholly owned subsidiary of RC2 Corporation.  Although Learning Curve is not named in the *Barrett* Complaint, the Seventh Circuit has held that the defendants in parallel suits need not be identical, but must only have similar interests in the dispute.  *Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 700-01 (7th Cir. 1992).  RC2 Corporation and Learning Curve have similar interests in both the *Barrett* litigation and the Federal Consolidated cases as they both are named for purposes of imposing liability for the distribution of Thomas & Friends™ Wooden Railway Toys.[9]

---

[8]The other federal actions contained within the MDL define their putative classes in a substantially similar manner.

[9]Other cases included in the MDL name similar RC2 subsidiaries.  Further, the *Murdock v. RC2 Corp., et al.*, Cause No. 07-cv-7188, also names two retailers, Toys 'R' Us and WalMart, as defendants.  The claims against the retailers are the same as those against RC2.  Further, the *Barrett* settlement releases all claims against these retailers.

Both matters satisfy the second prong as well. Both *Barrett* and this MDL are class-action lawsuits based on the Defendants' alleged manufacturing, marketing, and/or distributing of Thomas & Friends™ Wooden Railway Toys made with paint containing excess levels of lead. Both, the federal complaints and *Barrett* assert claims based on consumer fraud, breach of warranties, negligence, and unjust enrichment. Furthermore, both complaints seek monetary damages based on the Defendants' alleged conduct. Thus, it is clear that both the *Barrett* action and the federal actions contained within the MDL assert similar claims.

### B.    Eight of the Ten *Colorado River* Factors Strongly Support Abstention

*Colorado River* set forth a series of factors that a federal court should consider when determining whether to abstain from taking action when a parallel state court lawsuit is pending. *Colorado River*, 424 U.S. at 818-19. Over time, courts have concluded that these factors are: 1) whether the state has assumed jurisdiction over property; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the order in which jurisdiction was obtained by the concurrent forums; 5) the source of governing law, state or federal; 6) the adequacy of state-court action to protect the federal plaintiff's rights; 7) the relative progress of state and federal proceedings; 8) the presence or absence of concurrent jurisdiction; 9) the availability of removal; and 10) the vexatious or contrived nature of the federal claim. *See LaDuke*, 879 F.2d at 1559.

The decision whether to abstain does not rest on a mechanical checklist. Instead, it relies on a careful balancing of the important factors as they apply in a given case. *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 16 (1983). A review

of the *Colorado River* factors demonstrates that the balance weighs in favor of abstention here.

### 1.    *The Barrett Court has Assumed Jurisdiction*

The *Barrett* Court has assumed jurisdiction over the property at issue, thus satisfying the first *Colorado River* factor.  Some courts have found that a class-wide settlement, which has been preliminarily approved, is a form of *res* over which the court has dominion.  *See e.g. In re First Commodity Corp., Customer Accounts Litigation*, 89 B.R. 283, 290 (D. Mass. 1988) (finding a *res* existing as a result of a class action settlement).[10]  Moreover, by preliminarily certifying a settlement class, the *Barrett* Court has assumed jurisdiction over the parties and claims at issue in both *Barrett* and the present MDL.  No similar certification or resulting jurisdiction has been or should be asserted by this Court over any of the classes proposed by Plaintiffs herein.

### 2.    *Threat of Piecemeal Litigation*

The third *Colorado River* factor, the desirability of avoiding piecemeal litigation, also supports abstention.  "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *LaDuke*, 897 F.2d at 1560 (citations omitted.)  Because the claims asserted in this MDL overlap with those resolved by the preliminarily approved *Barrett* settlement, considerations of comity, conservation of judicial resources, and wise judicial administration all strongly support abstention.  This same conclusion has been reached by a host of Federal courts.  *See LaDuke*, 879 F.2d at 1556 (holding that the threat of

---

[10]Other courts which have found a class wide settlement not to be "r*es* or property" have found the factor to be "wholly irrelevant" in similar occurrences.  *De Simas v. Big Lots Stores, Inc.*, No. C 06 6614 SI, 2007 WL 686638 at *6 (N.D. Cal. March 2, 2007)

piecemeal litigation from two parallel suits warranted federal abstention); *Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 701 (7th Cir. 1992) (holding that "the desirability of avoiding piecemeal litigation is the factor weighing most heavily in favor of a stay" where only two parallel suits had been filed); *Schomber by Schomber v. Jewel Companies, Inc.*, 614 F. Supp. 210 (N.D. Ill. 1985) (staying federal class action where one parallel state court class action was already underway); *Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 211 (2nd Cir. 1985) (upholding district court's grant of stay because "the danger of piecemeal litigation is the paramount consideration in this case"); *Romine v. Compuserve Corp.*, 160 F.3d 337 (6th Cir. 1998) (upholding stay of class action due primarily to the threat of piecemeal litigation); *Franklin Commons East P'ship v. Abex Corp.*, 997 F. Supp. 585 (D.N.J. 1998) (granting motion to stay parallel federal court litigation and noting that the desirability of avoiding piecemeal litigation is the most important factor in a federal court's decision to abstain).

In upholding a federal district court's decision to abstain in favor of the state court proceeding, the Sixth Circuit observed that class action litigation is particularly well suited to application of *Colorado River* abstention:

> Complex class litigation is particularly suited to the application of a non-duplication principle…[D]uplication of such class litigation, with all the multiplicity of waste attendant in it, is simply more likely to present an exceptional circumstance warranting *Colorado River* abstention.

*Romine*, 160 F.3d at 341 (citations omitted).  As both *Barrett* and this MDL involve indistinguishable classes and claims, this Court should follow the lead of numerous Federal courts and abstain from taking action pending final resolution of *Barrett*.

3.    *Relative Progress of the Parallel Actions*

---

(granting stay of federal class action where a parallel state court class action settlement had been preliminarily approved).

Along with the threat of piecemeal litigation, another factor which supports abstention is the seventh *Colorado River* factor:  the relative progress of the parallel actions.  The state court case has progressed to a point where a settlement was reached and preliminarily approved by the court.  The federal case is still in the initial stages of discovery, has multiple motions to dismiss pending, and is nowhere near settlement.  As such, the substantial progress of the *Barrett* matter supports abstention.

### 4.      *Order in Which Jurisdiction is Obtained*

The fourth factor, the order in which jurisdiction was obtained by the concurrent forums, also supports abstention.  With respect to jurisdiction, the *Barrett* court has assumed jurisdiction over the class by conditionally certifying a settlement class.  On the other hand, this Court is still several months away from even considering the question of class certification.[11]

If this Court determines that this factor relates to jurisdiction of the initial case, rather than class certification, the factor still would not support Plaintiffs.  Eighteen cases are currently consolidated before this Court.  Of these eighteen cases, some were initially filed prior to *Barrett*, while others were filed afterwards.  Accordingly, determining the order in which this Court and the *Barrett* Court obtained jurisdiction is difficult and largely superfluous when juxtaposed with other, more relevant factors.  Moreover, the technical order in which jurisdiction was obtained should not be the sole focus of this factor.  "[P]riority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions."  *Moses H. Cone*, 460 U.S. at 21.  *See also Schomber*, 614 F. Supp. at 217 ("this factor should not be

determined by a race to the courthouse but instead by the extent of progress in the respective forums.")

### 5.     Source of Governing Law

The fifth *Colorado River* factor, source of governing law, also supports abstention. Plaintiffs have focused their complaints on claims governed by state law, including various states' consumer fraud acts, commercial codes, and products liability law.[12] The absence of federal law is notable as "the presence of federal-law issues must always be a major consideration weighing against surrender." *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 25-6. As there are no federal law issues, the fifth factor supports the Defendants' argument for abstention.

### 6.     Adequacy of State Court Action to Protect Federal Plaintiffs' Rights

The adequacy of the state court action to protect the federal plaintiffs' rights is the sixth factor in the *Colorado River* test. As previously stated, both the *Barrett* matter and this MDL are brought on behalf of a class representing all persons who purchased Thomas & Friends™ Wooden Railway toys which were recalled and were distributed by the Defendants between January 2005 and June 2007. Furthermore, the state court has a specific procedure for analyzing Plaintiffs' claims regarding the adequacy of the settlement. Plaintiffs can present their arguments to the state court in an effort to persuade the court to reject the settlement. If they are not successful there, they can still

---

[11]Plaintiffs in the Illinois Consolidated action sought an order requesting Motions for Class Certification to be filed on May 2, 2008. At the urging of Defendants, Plaintiffs agreed to a slightly earlier date.

[12]One of the recently transferred cases, *Murdock v. RC2 Corp., et al.*, Cause No. 07-cv-7188, contains a single claim based upon federal law, a claim for violation of the Consumer Product Safety Act ("CPSA"). None of the other 17 lawsuits include a federal

opt out and pursue their claims separately. Thus, there is no reason why the state court action would not be an adequate forum for the federal court plaintiffs.

7.    *Concurrent Jurisdiction*

The eighth *Colorado River* factor examines whether there is concurrent jurisdiction over the plaintiffs' claims. As both this Court and the *Barrett* Court have concurrent jurisdiction over each and every one of the class members' claims, the eighth *Colorado River* factor weighs in favor of abstention as well.

8.    *Vexatious Litigation*

Finally, the multiplicity of lawsuits filed against the Defendants, each purporting to represent interchangeable plaintiff classes, who seek substantially similar damages for identical alleged acts by the Defendants, certainly falls into the category of "vexatious" litigation. *See Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1289 (7th Cir. 1988) (holding that separate suits initiated within several months of one another, seeking substantially the same relief from substantially the same parties constituted vexatious litigation). The flood of identical lawsuits against the Defendants does not promote the pursuit of justice on behalf of the allegedly injured plaintiffs, but instead represents a potential bonanza of attorney-fees for the class plaintiffs' attorneys who manage to propel the litigation in their particular forum ahead the fastest. In order to avoid this race to collect attorney fees, the Court should abstain from proceeding with this litigation and allow the parallel *Barrett* matter to reach its final conclusion.

**C.    The Remaining Factors are Ambiguous**

---

claim. Further, there is a Motion to Dismiss currently pending with regards to Murdock's CPSA claim.

28

The two remaining *Colorado River* factors neither support nor detract from the Defendants' arguments in favor of abstention.  The second factor examines the inconvenience of the federal forum geographically.  Although *Barrett* and this MDL are in separate courts, thereby forcing the Defendants to defend simultaneous suits in different locations, both courts are located in Cook County, Illinois.  Thus, this factor does not weigh heavily into the analysis.

Finally, the relevance of the ninth factor, which examines whether removal to federal court is available is mitigated by the settlement.  The *Barrett* parties have reached a settlement and need only final approval to fully resolve the litigation.  At this point, it would be counterproductive for the Defendants to remove *Barrett* to federal court and sacrifice the efforts of the *Barrett* Court and parties.  Thus, this factor should not weigh into the Court's decision to stay this MDL.

The Colorado River Doctrine sets forth a clear framework to be followed by Federal courts in determining whether they should abstain from taking action due to a parallel state court proceeding.  As discussed above, when applied to the procedural and factual scenario in this case it is readily apparent that abstention is the appropriate course.

**III.**       **CAFA Does Not Limit the Ability of the State Court to Determine the Sufficiency of the Settlement.**

In a further attempt to find support for their motions, the Federal Plaintiffs argue that cases meeting the requirements of the Class Action Fairness Act ("CAFA") "should be filed in federal court." (Pltfs' Motion at p. 23)  However, there is no such mandate in CAFA.  Instead, CAFA merely provides defendants the opportunity to remove a greater number of class actions by providing an expanded definition of diversity jurisdiction.  *See* 28 U.S.C. § 1332(d).  However, this expansion of diversity jurisdiction does not provide

Federal courts exclusive jurisdiction over such class actions, nor restrict the ability of a state court to preside over a class action, even a class action national in scope.

Plaintiffs' characterization of CAFA ignores a basic premise of the Act:  the decision whether to remove a class action is a discretionary decision left for defendants. *See* 28 U.S.C. § 1453(b); *cf.* 28 U.S.C. § 1446.  Section 1453(b) states that "[a] class action may be removed to a district court of the United States in accordance with section 1446…[.]"  Section 1446 states in relevant part:

> a)      A defendant or defendants desiring to remove any civil action or criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal . . .

> b)      The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

Section 1446 has long been interpreted to provide defendants the option to remove a State court action to Federal court.  14B Charles A. Wright et al., *Federal Practice & Procedure* § 3721, at 288 (1997) (Removal "gives a defendant who has been sued in a state court of competent jurisdiction the right to substitute federal forum when he or she chooses to do so for the forum originally selected by the plaintiff….")  CAFA's direct reference to of Section 1446 shows that Congress intended for defendants to retain

this option. If Congress had intended to mandate the removal of all class actions meeting CAFA's jurisdictional standards, the it simply could have done so. Further, if this was Congress' intent, then it would not have retainined the thirty-day provision allowing a defendant's right of removal to be waived, as was done so. Thus, a reading of the Act and related statutes, clearly shows that CAFA does not stand for a jurisdictional system in which class actions such as *Barrett* are barred from proceeding in State court.

Finally, although Plaintiffs cite extensively to quotations from the legislative history of CAFA regarding forum shopping, they fail to mention that a chief concern regarding forum shopping was that it ultimately operated to prejudice defendants by forcing them to settle for fear of exorbitant jury verdicts in plaintiff-friendly jurisdictions. As stated by Representative Robert Goodlatte, prior to the codification of CAFA, Defendant corporations would "get into these particular hand-picked jurisdictions where the judges and juries are known to be biased in favor of the plaintiff, in virtually every instance they know that when you get brought into those courts and you cannot remove the case to Federal court, where they will get fairer treatment, they better settle up." (Statement by Rep. Robert Goodlatte (R-Va), Ex. 11 to Plaintiffs' Memorandum In Support of Emergency Motion for Preliminary Injunction Pursuant to the All Writs Act at 6). CAFA's remedy was to provide *defendants* with an option to remove particular class actions to Federal court when defendants determined they would be unable to proceed fairly before the State court. It is ironic that Plaintiffs now attempt to use CAFA as a mechanism for forcing Defendants to litigate all class actions in Federal court. CAFA simply does not contain such a requirement.

IV.        **Plaintiffs' Motion For Preliminary Injunction Is a Thinly Veiled
           Attempt To Engage This Court In Impermissible Appellate Review Of**

**The Adequacy Of The Proposed Settlement And The Court's Preliminary Approval Order In *Barrett***

Plaintiffs devote the majority of their Memorandum In Support Of Emergency Motion For Preliminary Injunction Pursuant To The All Writs Act to attacking the adequacy of the settlement proposed in *Barrett*, the integrity of the state court proceedings, and the capacity of the Illinois state court to adjudicate a class action asserting state law claims that Plaintiffs argue are governed by Illinois law. Plaintiffs' inflammatory and inaccurate brief seeks to redirect the Court's attention away from the only issue properly before the Court—whether the injunction Plaintiffs seek is authorized by the All Writs Act and not barred by the Anti-Injunction Act—and instead focus the Court's attention on their unfounded allegations of collusion in the hope that the appearance of impropriety will sway the Court and obscure the shallowness of their legal argument. However, Plaintiffs' have brought their complaints about the proposed settlement before the wrong forum.

"The jurisdiction possessed by the District Courts is strictly original." *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923). "Under the legislation of Congress, no court of the United States other than [the Supreme] Court could entertain a proceeding to reverse or modify errors of that character. To do so would be an exercise of appellate jurisdiction." *Id.* (citation omitted) (holding that even if the state court incorrectly decided an issue of federal constitutionality, the district court lacks jurisdiction to review the decision, and the proper remedy is a timely appeal); *see also Exxon Mobile Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 292 (2005) (stating that 28 U.S.C. § 1257, "as long interpreted, vests authority to review a state court's judgment solely in this Court."). Plaintiffs' seek to persuade this Court to engage in precisely this type of extra-

32

jurisdictional review of the state court's Preliminary Approval Order. Their intention is even more transparent in their filings before the *Barrett* court. In their Emergency Application For Leave To Intervene As Plaintiffs, Individually And On Behalf Of All Persons Similarly Situated And To Stay Notice, Plaintiffs state that a stay in the *Barrett* case is appropriate to permit this Court to "consider the underlying reasonableness of the settlement." Pls' Em. Appl. ¶2. However, this Court may not engage in appellate-type review of orders entered in a parallel state court proceeding.

Despite this fundamental flaw in Plaintiffs' Emergency Motion, they have an adequate remedy at law to raise the concerns they have raised here: the procedure for challenging the proposed settlement in state court. Plaintiffs may file an objection to the settlement in the state court, raise all of the concerns they have raised here, and fully participate in the fairness hearing for final approval of the settlement on May 6, 2008, including being represented by their counsel in this action. If, after the conclusion of that process, Plaintiffs feel that their concerns regarding the settlement are not adequately addressed, they may opt out of the settlement.

In contrast, the relief sought by Plaintiffs will completely deny the Defendants and the *Barrett* plaintiffs the opportunity to have the settlement they have entered into evaluated by any court. Those parties have entered into an arm's length settlement as the result of a lengthy mediation process conducted by a highly respected retired judge. The decision to settle is based on the conclusion of experienced counsel, after conducting substantially more discovery than the Plaintiffs in the present case, that the terms of the settlement are in the best interests of his clients. While some Plaintiffs in the federal action apparently disagree with the terms of the settlement, others obviously do not. Those who want to challenge the settlement may do so in the state court proceeding.

However, if this Court enjoins that proceeding, there will be *no* forum in which the reasonableness of that settlement will ever be determined. Effectively, Plaintiffs are asking this Court to reject the *Barrett* settlement without any of the usual procedures and protections for evaluating the effectiveness of a class action settlement. This Court should not be persuaded to use its powers to usurp the authority of the state court in such a manner.

## CONCLUSION

For the foregoing reasons, this Court should refuse to indulge Plaintiffs' request for the extraordinary remedy of enjoining Defendants from proceeding with the settlement in *Barrett* and request that the Court deny Plaintiffs' Emergency Motion. and grant their motion to stay these proceedings.

Respectfully submitted

RC2 CORPORATION and
LEARNING CURVE BRANDS, INC.


*s/ Bart T. Murphy*
By one of their attorneys
Bart T. Murphy
ICE MILLER LLP
2300 Cabot Drive, Suite 455
Lisle, IL  60532
630-955-6392

Judith Okefuss
James Petersen
ICE MILLER LLP
One American Square
Indianapolis, IN 46282
317-236-2000

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 8th day of February, 2008, a copy of the foregoing has been filed electronically using the Court's CM/ECF system which sent electronic notification of this filing to the following counsel for Plaintiffs:

Elizabeth A. Fegan  beth@hbsslaw.com

Jack Reise  jreise@csgrr.com

Joe R. Whatley, Jr.  jwhatley@wdklaw.com

Robert James Pavich  rpavich@monicopavich.com

Thomas A. Zimmerman, Jr.  tom@attorneyzim.com\

William N. Riley  wirliey@price-law.com

Ben Barnow  b.barnow@barnowlaw.com

Ethan Mark Preston  ep@eplaw.us

Additionally, the undersigned hereby certifies that a copy of the foregoing has been deposited in the U.S. Mail, first class postage prepaid, on the 8th day of February, 2008, addressed to:

| | |
|---|---|
| Frederic S Fox<br>Kaplan, Kilsheimer & Fox LLP<br>805 Third Avenue<br>New York, NY  10022<br><br>James A. Streett<br>Streett Law Firm, PA<br>107 West Main<br>Russellville, AK  72811<br><br>Thomas M. Ferlauto<br>King & Ferlauto LLP<br>1880 Century Park East, Suite 820<br>Los Angeles, CA  90067 | |

*s Bart T. Murphy*
Bart T. Murphy

ICE MILLER LLP
2300 Cabot Drive, Suite 455
Lisle, IL  60532

I/2077671.1