# **Exhibit 5**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

IN RE THOMAS AND FRIENDS™
WOODEN RAILWAY TOYS LITIGATION

This Document Relates to:

All Actions

Case No.: 07-C-3514

JUDGE LEINENWEBER

**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF
DOCUMENTS TO DEFENDANTS RC2 CORPORATION,
LEARNING CURVE BRANDS INC. f/k/a/ RC2 BRANDS, INC.**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, plaintiffs, by their attorneys, hereby request that Defendants RC2 Corporation, and Learning Curve Brands, Inc., f/k/a RC2 Brands, Inc. (hereafter "RC2" or "Defendants") gather and produce all documents specified herein, which are in the possession, custody or control of either of the respondents or their agents or attorneys, in accordance with the Definitions and Instructions set forth below. The requests should be answered within 30 days of service.

## DEFINITIONS

1.  The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these requests all responses that might otherwise be construed to be outside of its scope.

2.  The term "any" means any and all. The term "all" has the same meaning.

3.  "APAX" means APAX Partners Inc. and its predecessors, successors, parent entity, subsidiaries (foreign or domestic), divisions, present or former employees, partners,

agents (including, but not limited to, attorneys, accountants, consultants, investment advisors or bankers), all joint ventures, limited or general partnerships or other entities operated or controlled by APAX.

4. "CPSC" means the United States Consumer Product Safety Commission.

5. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

6. The term "concerning" means mentioning, relating to, referring to, describing, evidencing or constituting.

7. "Document" has the same meaning as in Fed. R. Civ. P. 34(a), and includes, without limitation, the originals of all writings of every kind, including but not limited to, e-mail, letters, memoranda, reports, studies, legal pleadings, speeches, calendars, diary entries, travel records and vouchers, promotional materials, pamphlets, handwritten notes, drafts, lists, directives, reports, tabulations, minutes and records of meetings, and telephone records, which are now or formerly were in the actual or constructive possession and control of you, your attorneys or other agents. The term "document" further includes data processing and computer printouts, tapes, disks, and data stored in computers or data processing equipment, together with programs and program documentation necessary to retrieve, read, and utilize such data, and all other mechanical or electronic means of storing or recording data, as well as tape, film or cassette sound and/or visual recordings, and reproductions or film impressions of any of the aforementioned writings.

8. "HIT" means HIT Entertainment and its predecessors, successors, parent entity, subsidiaries (foreign or domestic), divisions, present or former employees, partners, agents

(including, but not limited to, attorneys, accountants, consultants, investment advisors or bankers), all joint ventures, limited or general partnerships or other entities operated or controlled by HIT.

9. "Including" shall be construed to mean without limitation.

10. "Knights of Sword toys" means any of the Britain's "Knights of the Sword" Series Toys."

11. "Lead Paint" means any paint or other surface pigment containing lead used on any Thomas & Friends toy or any Knights of Sword toy.

12. "Learning Curve" means Learning Curve Brands, Inc. and its predecessors, successors, parent entity, subsidiaries (foreign or domestic), divisions, present or former employees, partners, agents (including, but not limited to, attorneys, accountants, consultants, investment advisors or bankers), all joint ventures, limited or general partnerships or other entities operated or controlled by Learning Curve.

13. "Meeting" means the contemporaneous presence of any natural persons whether in person or by teleconferencing, video conferencing or otherwise, and whether or not such presence was by chance or prearranged, and whether or not the meeting was formal or informal or occurred in connection with some other activity.

14. "RC2" or the "Company" means RC2 Corporation and its predecessors, successors, subsidiaries (including Learning Curve Brands, Inc.), divisions, present or former employees, agents (including, but not limited to, attorneys, accountants, consultants, investment advisors or bankers), all joint ventures, limited or general partnerships or other entities operated or controlled by RC2, past or present.

15. The "Recalls" mean the recalls announced by the CPSC of (a) Thomas & Friends™ Wooden Railway Toys on June 13, 2007 (Release #07-212) and on September 26, 2007 (Release #07-308), and (b) Britain's "Knights of the Sword" Series Toys on September 26, 2007 (Release #07-310).

16. The "Recalled Toys" mean the Thomas & Friends™ Wooden Railway Toys and Britain's "Knights of the Sword" Series Toys" subject to the Recalls.

17. "Thomas & Friends toys" means any Thomas & Friends™ Wooden Railway Toys.

18. Unless otherwise specified, the terms "you" and "your" mean, the person who is responding to these requests, and any agents, attorneys, representatives, or other persons acting or authorized to act on behalf of that person.

## INSTRUCTIONS

1. If you object to fully producing a document because of a claim of privilege, please provide a privilege log stating the following information:

   a. The nature of the privilege claimed (including work product);

   b. If the privilege is being asserted in connection with a claim or defense governed by state law, the state privilege rule being invoked;

   c. The date of the document;

   d. The type of document (correspondence, memorandum, facsimile, etc.), its custodian, locations, and other such information sufficient to identify the document for a subpoena duces tecum or a document request, including where appropriate the author, the addressee, and, if not apparent, the relationship between the author and the addressee; and

   e. The general subject matter of the document.

4

2. All documents produced should be produced in the order in which they are maintained by you in the ordinary course of business.

3. You are under a continuous obligation to supplement your responses under the circumstances specified in Fed.R.Civ.P. 26(e).

4. You should produce the original of each document requested together with all non-identical copies and drafts of that document. If the original of a document cannot be located, a copy should be produced in lieu thereof, and should be legible and bound or stapled in the same manner as the original.

5. Documents not otherwise responsive to these requests should be produced if such documents mention, discuss, refer to or explain one or more documents that are called by these document requests, or if such documents are attached to documents called for by these document requests and constitute routing slips, transmittal memoranda or letters, comments, evaluations or similar materials.

6. Documents attached to each other should not be separated; separate documents should not be attached to each other.

7. Documents should include all exhibits or appendices which are referenced in, attached to, included, or are a part of the requested documents.

8. Where a request calls for the production of electronic files, they must be produced with all pertinent metadata, embedded data, and/or information providing or describing the creation, history, tracking, or management of such electronic files or data, including any information describing when and by whom such electronic files or data were collected, created, accessed, or modified, file names, file locations (*e.g.*, server identity, directory structure or

5

pathname), file types, file formats, and all persons with permission to view and/or modify such files.

## RELEVANT TIME PERIOD

Unless otherwise stated in a request, all documents requested are for the period January 1, 2001 through the present (the "Relevant Period") and shall include all documents and information which related, in whole or in part, to such period, or to events or circumstances during such period, even though dated, prepared, generated or received prior or subsequent to that period.

## DOCUMENTS REQUESTED

1. Organizational charts or other documents sufficient to identify:

    (a) RC2's corporate structure, and the corporate structure and relationship among RC2 and its subsidiaries, affiliates, divisions, departments, offices, units, joint venture partners or other corporate subdivisions.

    (b) The personnel of RC2 at the managerial level and above, as well as any personnel or organizational changes, including the names and positions of those persons subject to such changes.

    (c) All departments, divisions or other appropriate organizational unit and its members involved in or with knowledge concerning the lead contained in the surface paint of the Recalled Toys.

    (d) The personnel of RC2 at the managerial level and above, regarding RC2's compliance with and monitoring of safety standards, including U.S. and international toy safety standards.

2. Documents sufficient to identify the business relationship between RC2 and:

    (a) APAX with respect to the Recalled Toys.

    (b) HIT with respect to Recalled Toys.

3. All documents concerning the use of lead paint by any manufacturing facility actually used or considered by RC2 to manufacture the Recalled Toys.

4. All documents concerning any review, analysis, approval, testing, safety check or other similar investigation of the surface paint contained on the Recalled Toys by independent certified safety testing laboratories, internal testing laboratories or any other entity, whether or not the results revealed lead.

5. All documents concerning RC2's safety requirements of the toys it manufactures including:

    (a) Safety screening or safety testing of toys manufactured by RC2 or on its behalf by contractors, independent or otherwise.

    (b) The product safety specifications and applicable safety standards and requirements which apply to the manufacture of RC2 toys and products.

    (c) Internal manuals, memoranda, and other materials describing and discussing applicable standards which apply, and/or could apply, to the manufacture of RC2 toys.

    (d) Safety requirements for all materials used in the manufacture of toys.

    (e) Communications between you and your contract manufacturers and/or their paint suppliers regarding product safety.

(f)     Documents sufficient to identify by name and location any independent, safety testing laboratories that tested any of the Recalled Toys.

(g)     The institution and implementation of the "Multi-Check Toy Safety System" referenced in your letter dated September 6, 2007 submitted to members of the Committee on Energy and Commerce.

(h)     RC2's design of the Recalled Toys, including the choice of surface paint, whether those toys are part of the Recalls, or not.

(i)     Any other safety assessments, safety protocols and/or safety evaluations regarding any products RC2 manufactures, or which are manufactured on its behalf, or which it sells, including the Recalled Toys.

6.     All documents concerning your discovery of excess levels of lead contained in any of the Recalled Toys including when you made the discovery, how it was made and to whom it was communicated.

7.     All documents concerning the investigation undertaken by you after you discovered excess levels of lead contained in the Recalled Toys including:

(a)     Communications internally, and externally, including communications with your contract manufacturers, the CPSC and any other governmental entity, paint suppliers, independent and/or internal testing laboratories, and anyone else concerning the discovery of lead in the surface paint of the Recalled Toys.

(b)     Documents sufficient to identify the name and location of the manufacturing facilities which used lead paint in their manufacture of the Recalled Toys.

8

(c) Documents sufficient to identify the name and location of the paint suppliers supplying the lead paint used in the manufacture of the Recalled Toys.

(d) The level of lead contained in all of the Recalled Toys.

8. All documents concerning the Recalls including:

(a) Defendants' actions to inform retailers and wholesalers of the Recalls.

(b) Defendants' actions to inform the public of the Recalls including your actions to inform members of the public whose primary language is not English.

(c) Any steps taken by defendants to guarantee the Recalled Toys are no longer being manufactured with lead paint after the Recalls were announced by the CSPC on June 13, 2007 and then again on September 26, 2007.

(d) All documents identifying or concerning any toys that were or may have been packaged with one or more of the Recalled Toys listed in the CPSC recall notices of June 13, 2007 and September 26, 2007.

(e) All communications with RC2's other contract manufacturers not implicated in the recalls of June 13, 2007 and September 26, 2007 during and after the recall process regarding lead levels in the toys manufactured by RC2.

(f) The process by which RC2 determined which of the Recalled Toys would be included in the Recalls.

(g) The scope of the Recalls including any internal deliberations, investigations, meetings, or discussions within RC2 and any other defendant organization.

(h) RC2's decision to replace the Recalled Toys that were part of the Recalls, rather than refund the purchase price as a part of the recall.

9

(i) The decision to provide replacement toys including which toys to offer as replacement toys; the safety testing and/or approval, if any, for lead contained in the replacement toys; and the prices of the replacement toys.

(j) Any steps taken by RC2 and other defendants to guarantee the Recalled Toys that contain lead paint are no longer being sold to the public.

(k) Any investigations by any state or federal agencies concerning the Recalls.

(l) All documents concerning sales or distribution data of the Recalled Toys, including the prices of each Recalled Toy by SKU or serial number;

(m) The quantity of Recalled Toys returned by stores by SKU or serial number.

(n) The quantity of Recalled Toys returned by parents by SKU or serial number.

(o) Documents sufficient to identify the total number of toys sold in the United States which was subject to the Recalls.

(p) Documents sufficient to identify the total sales, revenues and profits made by you from the toys sold in the United States which were subject to the Recalls.

9. The production agreements between you and each of the contract manufacturers implicated in the Recalls.

10. All documents, if any, concerning any additional safeguards RC2 instituted after the CPSC announced the Recalls.

11. All documents involving the CPSC or any other governmental entity concerning the Thomas & Friends toys and/or the Knights of Sword toys, whether related to the Recalls, or not, including:

(a) All documents produced, or which you considered producing, to any of those entities.

(b) All transcripts of any testimony before such governmental entity.

(c) Communications regarding the scope of what should be produced to any of those entities.

(d) Communications with the CPSC or any other governmental entity, and your communications internally, concerning the Recalls including what should and should not be included in the Recalls, what should and should not be disclosed to consumers, what relief should and should not be provided to consumers and what you should do once you discovered lead in the surface paint of the Recalled Toys.

12. All documents concerning the level of lead contained in any of the toys you manufacture.

13. All documents concerning the manufacturing process of any toy listed in the Recalls including:

(a) The choice of, or procurement of, paint used in the manufacture of the Recalled Toys.

(b) Communications with each manufacturer, independent contractor or otherwise, involved in the manufacture of the Recalled Toys, and any evaluation of those contractors or manufacturers for any reason.

14. All documents concerning your communications with the subcommittee on Commerce, Trade and Consumer Protection of the Committee on Energy and Commerce or any other governmental entity regarding the Recalls including:

(a) The letters exchanged between Curt Stoelting of RC2 and Representatives Bobby L. Rush and Cliff Stearns in or about August and September 2007.

(b) All transcripts of any testimony before the Committee on Energy and Commerce.

(c) Internal memoranda, emails, research, lead level testing results, communications with contract manufacturing facilities and paint suppliers, and any other information RC2 considered in responding to the letter of August 22, 2007 addressed to Mr. Stoelting from the Subcommittee on Commerce, Trade and Consumer Protection regarding the recall of June 13, 2007.

15. All documents concerning your policies or guidelines with respect to the retention or destruction of documents.

16. All documents concerning the destruction or nonexistence of documents responsive to these requests, which documents once existed but no longer exist.

17. Any insurance policies that could relate to the claims alleged in this litigation.

18. All documents reflecting your communications with members of the proposed class including:

(a) All complaints, requests for information, questions, statements made by parents and purchasers of the Recalled Toys and any other communications, whether written or oral.

   (b) Your communications to parents concerning the Recalled Toys.

 19. All documents concerning your communications with any of the named plaintiffs in this consolidated action.

 20. All documents concerning testing for lead in children exposed to the Recalled Toys including any research, communications, emails, investigations, meetings, or discussions within RC2 and any other defendant organization.

 21. All documents concerning promotional and/or advertising materials for the Recalled Toys including:

   (a) Those published in newspapers, brochures, magazines, flyers, billboards and any other printed form, as well as those on television, radio, the internet, your website, and any other media format.

   (b) Those which accompanied the purchase of the Recalled Toys including the box and any other packaging containing visual or written material, labels affixed to the Recalled Toys, warranties, warranty cards, and any other booklets or materials.

   (c) All documents concerning and reflecting your representations to consumers regarding the safety of the Recalled Toys.

 22. All communications between any defendant and any public relations firm, or any other person or entity, concerning the Recalls, including communications concerning minimizing negative publicity for or negative consequences to defendants as a result of the Recalls.

DATED: October 30, 2007         KAPLAN FOX & KILSHEIMER LLP

*Christine M. Fox*

Frederic S. Fox
Christine M. Fox
850 Third Avenue, 22nd Floor
New York, New York 10022
Telephone: 212-687-1980
Facsimile: 212-687-7714
ffox@kaplanfox.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue
Suite 2900
Seattle, WA 98101
Telephone: 206-623-7292
Facsimile: 206-623-0594
steve@hbsslaw.com

Elizabeth A. Fegan
HAGENS BERMAN SOBOL SHAPIRO LLP
820 North Boulevard
Suite B
Oak Park, IL 60302
Telephone: 708-776-5600
Facsimile: 708-776-5601
beth@hbsslaw.com

William N. Riley
PRICE WAICUKAUSKI & RILEY
301 Massachusetts Avenue
Indianapolis, IN 46204
Telephone: 317-633-8787
Facsimile: 317-633-8797
wriley@price-law.com

Interim Co-Lead Counsel

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE THOMAS AND FRIENDS™ WOODEN RAILWAY TOYS LITIGATION<br><br>This Document Relates to:<br><br>All Actions | Case No.: 07-C-3514<br><br>JUDGE LEINENWEBER |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the following documents was served via overnight mail or as otherwise indicated on the 30TH day of October 2007 on the attorneys on the attached service list.

- **PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS RC2 CORPORATION, LEARNING CURVE BRANDS INC. f/k/a/ RC2 BRANDS, INC.**

_____
LYNETTE CAMERON-SINGER

# IN RE THOMAS AND FRIENDS WOODEN RAILWAY TOYS LITIGATION
## SERVICE LIST

**BY FEDERAL EXPRESS**
Bart Thomas Murphy, Esq.
Ice Miller LLP
2300 Cabot Drive
Suite 455
Lisle, IL 60532
Phone: (630) 955-0555
Fax: (630) 955-0662

**BY FEDERAL EXPRESS**
Judith Starobin Okenfuss, Esq.
James L. Petersen, Esq.
Ice Miller LLP
One American Square
Suite 3100
Indianapolis, IN 46282-0200
Phone: (317) 236-2100
Fax: (317) 236-2219

**BY FIRST CLASS MAIL**

William N. Riley, Esq.
Price Waicukauski & Riley, LLC
The Hammond Block Building
301 Massachusetts Avenue
Indianapolis, IN 46204
Phone: 317-633-8787
Fax: 317-633-8797

Steve Berman, Esq.
Ivy D. Arai, Esq.
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA, 98101
Tel. (206) 623-7292
Fax. (206) 623-0594

Beth Fegan, Esq.
Hagens Berman Sobol Shapiro LLP
820 North Boulevard, Ste B
Oak Park, IL, 60301
Tel: (708) 776-5604
Fax: (708) 776-5601