# Exhibit 14



ELIZABETH A. FEGAN
DIRECT • (708) 776-5604
BETH@HBSSLAW.COM

**HAGENS BERMAN
SOBOL SHAPIRO LLP**

December 10, 2007

**Confidential Settlement Communication
Pursuant to Fed. R. Civ. P. 408**

*Via Facsimile and Electronic Mail*

Bart Murphy                         James Petersen
Ice Miller LLP                      Judy Okenfuss
2300 Cabot Drive                    Ice Miller LLP
Suite 455                           One American Square
Lisle, IL 60532                     Suite 3100
                                    Indianapolis, IN  46282-0200

Re:   *Hesse et al. v. Learning Curve Brands, Inc. et al.*

Counsel:

After our October 12 discussion, we sent you a follow-up letter outlining a structure for a proposed settlement. In response, you requested a formal monetary demand on behalf of a Settlement Class. To that end, we requested and you provided, for purposes of settlement only, certain data in order to allow us to formulate a demand on behalf of a Settlement Class.

Set forth below is the demand of the Class Plaintiffs on behalf of a Settlement Class. This demand will remain open for 30 days; after that time, any settlement discussions we have will start at 100% of single damages.

We also thought it would be helpful to outline some of the issues we previously discussed with you. Preliminarily, we believe that this case can and should be settled. The cost of settlement to RC2 Corporation and Learning Curve Brands, Inc. ("RC2") at this point will be manageable compared to the risk RC2 faces if it loses on any issue in this case. Given just the undisputed facts that are within public knowledge, as well as what we expect to receive in further discovery, it is apparent that a Class judgment against Defendants could be several hundreds of millions of dollars when punitives are considered.

ATTORNEYS AT LAW          SEATTLE    LOS ANGELES    BOSTON    PHOENIX    CHICAGO    SAN FRANCISCO
708.776.5600     F 708.776.5601
820 NORTH BOULEVARD   SUITE B   OAK PARK, ILLINOIS 60301
www.hbsslaw.com

001975-11 210205 V1

Bart Murphy
James Peterson
Judy Okenfuss
December 10, 2007
Page 2

However, we understand RC2's desire to regain the trust of the parents that will buy RC2's products in the future and to focus its time and energy on ensuring that future products are safe for children as opposed to defending an ongoing class action suit. Therefore, we are willing, at this point in the case (prior to full class certification proceedings, including expenditures for final expert reports), to discuss a reasonable settlement that will fairly and adequately compensate the Settlement Class. We believe our settlement proposal, outlined below, is more than reasonable and look forward to discussing with you RC2's response and/or a date for mediation.

### A.   Liability Analysis

The first step in our analysis, as is true in any case, is to assess the strength of the case. Although you may dispute this, we view the class certification and liability case as strong. We don't believe we need to debate the essential elements of our consumer protection and product liability claims. While we may disagree over nuances in the law as to how the various elements of our claims are interpreted, we believe that our claims are sufficiently strong to achieve class certification and survive RC2's motion to dismiss. We also believe that if the Court concludes that RC2 sold toys that were tainted with lead paint and exposed children to a known toxic substance (both undisputed facts based on the regulatory documents publicly available), the Court will order Defendants to compensate consumers.

We both have had the benefit of reviewing certain documentary evidence to date and the parties' respective positions on the law (at least in the context of the Consolidated Complaint and Motion To Dismiss), and thus we will refrain from an exhaustive overview of our class certification or liability case. Suffice it to say that we expect in the next several months a parade of witnesses who will testify regarding RC2's lack of effective safety and quality controls and, as a result, RC2's sale and distribution of dangerous toys that pose significant risks to children's health. These witnesses will include the Class Plaintiffs, various third parties, and, if they testify truthfully, current and former employees of Defendants as well.

### B.   Settlement Proposal

Based on the foregoing here is an outline of a settlement proposal.

#### 1.   Settlement Class:

All persons and their children that owned any toy from the Thomas & Friends Wooden Railway Toys or Britains brand Knights of the Sword product lines that were subject to recall in June 2007 or September 2007.

Bart Murphy
James Peterson
Judy Okenfuss
December 10, 2007
Page 3

### 2.  Compensatory Relief per Fed. R. Civ. P. 23(b)(3): Refund Costs

As we previously outlined for you, the settlement would include a full monetary refund of those toys covered by the original recall. Individuals that received a replacement, including the tainted Toad toy, would still be eligible for full replacement value of their original toy. Based on the information exchanged to date for purposes of these discussions, we submit an initial refund demand of $30,960,000, which is based on 80% of our estimation of full refund damages.[1]

### 3.  Injunctive Relief per Fed. R. Civ. P. 23(b)(2):

#### a.  Costs of Blood Lead Testing

Based on our previous discussions and the current pleadings and discovery requests you have served on Plaintiffs, we believe that you may fundamentally misunderstand Plaintiffs' request for certain medical monitoring, namely the costs of blood lead testing.[2] We feel quite strongly that we will not face any causation issues with respect to recovery of medical testing and surveillance costs that result from the exposure of children to Defendants' toys tainted with lead paint.

For example, in the event that a mother sees the RC2 recall, identifies several subject toys in her possession and with which her child has played, and therefore calls her pediatrician with concerns, the pediatrician is bound by the standard of care to refer the exposed child to obtain a blood lead test. It is irrelevant to that inquiry whether or to what extent there are other sources of lead paint to which the child was exposed. Those questions, and thus the issue of causation, only become relevant in the event of a personal injury claim on behalf of an individual child who has elevated levels of lead in his blood. We are not seeking remuneration for personal injury in this lawsuit.

In this District and under Illinois law, the costs of blood lead testing are a current compensable injury. In fact, a far more extensive surveillance program for children exposed to lead paint was approved and certified under Fed. R. Civ. P. 23(b)(2) in *Elliott v. Chicago Housing Authority et al.*, 2000 U.S. Dist. LEXIS 2697 (N.D. Ill. 2000). There is no reason to expect that Judge Leinenweber would differ in his analysis.

---

[1] These numbers are based on Bart's representations, for purposes of settlement discussions only, in his November 21, 2007 correspondence, and are subject to confirmatory discovery in the event that an agreement is reached.

[2] For purposes of this settlement demand, Plaintiffs are willing to limit their demand to the costs of blood lead testing. However, in the event that these settlement discussions are not successful, Plaintiffs do not waive their rights to seek an expanded medical surveillance program, including continued surveillance in the future, to accomplish the early detection of latent disease.

Bart Murphy
James Peterson
Judy Okenfuss
December 10, 2007
Page 4

That being said, we also realize your clients' desire to avoid a common fund for costs of blood lead testing. Accordingly, we propose that this portion of the settlement be on a formula basis, namely that claimants would be entitled to receive the greater of the unreimbursed costs for a child's blood test *or* actual out of pocket costs where there is no insurance coverage for the blood test.

### b.    Other Injunctive Relief

As we previously outlined, RC2 would agree to base individual western inspectors in the plants in China, who are paid directly by RC2, that would be responsible for periodic inspections and the maintenance of quality control over products from the Chinese manufacturers. RC2 would also agree to other safeguards to be implemented.

### 4.    Notice:

Defendant shall be responsible for the costs of notice with respect to the settlement of the claims against RC2.

We look forward to RC2's response, counter-proposal and/or scheduling a date for mediation.

Sincerely,

HAGENS BERMAN SOBOL SHAPIRO LLP

Beth

Elizabeth A. Fegan

BF:BF
cc:    Fred Fox
       Larry King
       Will Riley
       Joe Williams
       Steve W. Berman
       Ivy Arai