# Exhibit 15

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

IN RE THOMAS AND FRIENDS<sup>TM</sup>
WOODEN RAILWAY TOYS
LITIGATION

This Document Relates to:

    All Actions

Case No.  07-C-3514

JUDGE LEINENWEBER

## DEFENDANTS RC2 CORPORATION AND LEARNING CURVE BRANDS, INC.'S RESPONSES TO PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Defendants, RC2 Corporation and Learning Curve Brands, Inc. f/k/a RC2 Brands, Inc. (collectively, "Defendants"), by counsel, answer Plaintiffs' First Request for Production of Documents to Defendants RC2 Corporation and Learning Curve Brands, Inc. f/k/a RC2 Brands, Inc., as follows:

## GENERAL OBJECTIONS AND RESPONSES

The following General Objections and Responses (collectively, the "General Responses" or "GR") apply to each numbered Request:

1.    Defendants and their attorneys have not completed their discovery or preparation for trial, nor have they concluded their analysis of information gathered to date.  These responses, therefore, are based upon information and records presently available to Defendants and their attorneys and specifically known to individuals who helped prepare these responses.  It is anticipated that further discovery and independent investigation may supply additional facts or information, which may require amendment or supplementation of these responses.

2.      Defendants object to the Requests to the extent that they seek information or documents protected by the attorney-client privilege, work product doctrine, (including those prepared in anticipation of litigation or involving insurers), the consultant's privilege (consultants retained for trial or in anticipation of litigation), or any other applicable privilege or immunity that would protect the information or documents from discovery. Defendants will not produce information or documents protected by such privileges; however, Defendants will produce a privilege log in compliance with the Federal Rules of Civil Procedure. Defendants do not intend to waive any such privilege or immunity through an inadvertent production or disclosure of protected information or documents.

3.      Defendants object to the Requests to the extent they call for confidential business information or trade secrets and, even if relevant and non-privileged, they will produce such information only upon the parties' execution of and the entry by the Court of a protective order.

4.      Defendants object to the Requests, including the Definitions and Instructions, to the extent that they seek to impose obligations on Defendants beyond those contained in the Federal Rules of Civil Procedure.

5.      These responses are submitted by Defendants subject to, and without intending to waive, but on the contrary intending to reserve:

        a.      All questions as to relevancy, materiality, privilege, and admissibility as evidence for any purpose of any of the information referred to in any subsequent proceeding in, or the trial of, this action or any other action or proceeding;

        b.      The right to object to other discovery procedures involving or related to the subject matter of these Requests herein responded to; and

- 2 -

c.    The right to clarify, amend, or supplement the responses set forth herein.

6.    Defendants object that Plaintiffs' definition of "HIT" is overly broad in that it includes corporate entities which had no involvement in the design, manufacture, marketing, distribution, or sale of the Recalled Toys.

7.    Defendants object that Plaintiff's definition of "Learning Curve" is overly broad in that it includes corporate entities which had no involvement in the design, manufacture, marketing, distribution, or sale of the Recalled Toys.  For the purposes of responding to this Request for Production the Defendants have used as a definition for Learning Curve the Defendant Learning Curve Brands Inc. which is named in the Consolidated Complaint.

8.    Defendants object that Plaintiffs' definitions of "RC2" and "Company" are overly broad in that they include corporate entities which had no involvement in the design, manufacture, marketing, distribution, or sale of the Recalled Toys.  For the purposes of responding to this Request for Production the Defendants have used as a definition for RC2 the Defendant RC2 Corporation which is named in the Consolidated Complaint.

9.    Defendants object that Plaintiffs' definition of "Relevant Time Period" is overly broad and seeks information that is neither relevant, nor reasonably calculated to lead to the discovery of admissible evidence.  The Recalled Toys were primarily manufactured from January, 2005 to June, 2007 at the Oversea Winners facility.  The All-Black Cargo Car, which was included in the September 26, 2007 Recall, was manufactured from March 2003 through July 2005 at 3i.

10.    Defendants object to Instruction No. 8 to the extent it exceeds agreements made by the parties regarding electronic production.

11.    Defendants object to Plaintiffs' Instruction No. 5 as it is vague, unduly burdensome, and imposes a duty on Defendants beyond what is required in the Federal Rules of Civil Procedure.

### REQUESTS AND RESPONSES

1.    Organizational charts or other documents sufficient to identify:

(a)    RC2's corporate structure, and the corporate structure and relationship among RC2 and its subsidiaries, affiliates, divisions, departments, offices, units, joint venture partners or other corporate subdivisions.

(b)    The personnel of RC2 at the managerial level and above, as well as any personnel or organizational changes, including the names and positions of those persons subject to such changes.

(c)    All departments, divisions or other appropriate organizational unit and its members involved in or with knowledge concerning the lead contained in the surface paint of the Recalled Toys.

(d)    The personnel of RC2 at the managerial level and above, regarding RC2's compliance with and monitoring of safety standards, including U.S. and international toy safety standards.

**RESPONSE:**

Defendants object to Request No. 1 for the following reasons:

(a)    Defendants object that this request is overly broad in that it seeks information about corporate and business entities other than the named Defendants and Defendants further object that this request seeks documents which are neither relevant, nor reasonably calculated to lead to the discovery of admissible evidence.

(b)    Defendants object that this request is overly broad and vague as to the term "managerial."

(d)    Defendants object that this request is overly broad and vague as to the terms "managerial" and "safety standards, including U.S. and international toy safety standards."

Subject to and without waiving these objections, Defendants will produce responsive documents upon entry of a suitable protective order by the Court.

2.    Documents sufficient to identify the business relationship between RC2 and:

(a)    APAX with respect to the Recalled Toys.

(b)    HIT with respect to Recalled Toys.

**RESPONSE:**

Defendants object that this request seeks documents which are neither relevant, nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving this objection, Defendants produce documents which are Bates Numbered RC2-11-000-0000001 to RC2-11-000-0000113.

3.    All documents concerning the use of lead paint by any manufacturing facility actually used or considered by RC2 to manufacture the Recalled Toys.

**RESPONSE:**

Defendants object that this request is overly broad and vague as to the term "the use of lead paint." Federal regulations and other potentially applicable standards do not require surface paint on toys to be lead-free; rather, these regulations and standards limit the levels of lead in toys. Defendants further object that information regarding manufacturing facilities other than the facilities that manufactured the Recalled Toys is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

4.    All documents concerning any review, analysis, approval, testing, safety check or other similar investigation of the surface paint contained on the Recalled Toys by independent certified safety testing laboratories, internal testing laboratories or any other entity, whether or not the results revealed lead.

**RESPONSE:**

Defendants object that this request is overly broad and requests information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence to the extent that it seeks information regarding conditions other than levels of lead paint. Defendants further object to the extent this request seeks documents prepared by a consulting expert, as such documents are protected by the work product doctrine and not discoverable under Fed. R. Civ. Pro. 26(a)(4)(B). Subject to and without waiving this objection, Defendants will produce testing reports of the surface paint upon entry of a suitable protective order by the Court.

5.    All documents concerning RC2's safety requirements of the toys it manufactures including:

(a)    Safety screening or safety testing of toys manufactured by RC2 or on its behalf by contractors, independent or otherwise.

(b)    The product safety specifications and applicable safety standards and requirements which apply to the manufacture of RC2 toys and products.

(c)    Internal manuals, memoranda, and other materials describing and discussing applicable standards which apply, and/or could apply, to the manufacture of RC2 toys.

(d)    Safety requirements for all materials used in the manufacture of toys.

(e)    Communications between you and your contract manufacturers and/or their paint suppliers regarding product safety.

(f)    Documents sufficient to identify by name and location any independent, safety testing laboratories that tested any of the Recalled Toys.

(g)    The institution and implementation of the "Multi-Check Toy Safety System" referenced in your letter dated September 6, 2007 submitted to members of the Committee on Energy and Commerce.

(h)    RC2's design of the Recalled Toys, including the choice of surface paint, whether those toys are part of the Recalls, or not.

- 6 -

(i)    Any other safety assessments, safety protocols and/or safety evaluations

regarding any products RC2 manufactures, or which are manufactured on its behalf, or

which it sells, including the Recalled Toys.

**RESPONSE:**

Defendants object that this request is overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence in that it seeks information regarding toys other than the Recalled Toys or, manufacturers other than those who manufactured the Recalled Toys. Further, this Request seeks information on all safety issues without any attempt to limit the scope to the surface paint properties at issue. There are a wide range of requirements placed on toys, many of which would be considered safety-related, that have no bearing on this case. For example, toys may be inspected for sharp edges or choking hazards. Requiring Defendants to produce documents bearing on these unrelated tests is unduly burdensome and meant to harass. Further, it also appears to be nothing more than a fishing expedition by Plaintiffs. Defendants further object to the extent this request seeks information regarding subsequent remedial measures. Further objections for the specific subparts are as follows.

(f)    Defendants object to the extent that this subpart seeks information on consulting experts, which is protected by the work product doctrine and not discoverable under Fed. R. Civ. Pro. 26(a)(4)(B).

(g)    Defendants object that this subpart seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Further, this subpart seeks information regarding subsequent remedial measures.

(h)    Defendants object that this subpart seeks confidential, proprietary, trade secret information. Defendants further object that this subpart is overly broad.

Subject to and without waiving these objections, Defendants will perform the following electronic search: ("Wing Shein") or (Oversea* Winner*) or (3i) or OW or ("Hansheng Wood Products") and safety w/50 Thomas or trains or TWR. Non-privileged responsive documents located by the electronic search, if any, will be produced as identified. Defendants will also produce the documents with Bates Numbers RC2-01-000-0000001 to RC2-01-000-0000378 and the documents referenced in response to Request No. 4 upon entry of a suitable protective order. With regards to subparts (a), (b), (c), (d), (e), and (i), Defendants are in the process of identifying any further responsive materials.

6.    All documents concerning your discovery of excess levels of lead contained in

any of the Recalled Toys including when you made the discovery, how it was made and to whom

it was communicated.

**RESPONSE:**

Defendants object to the extent that this request seeks information protected by the attorney-client privilege and/or work-product doctrine. Defendants further object that this request seeks information regarding subsequent remedial measures. Subject to and without waiving this objection, Defendants will perform the following electronic search with a date range of January 1, 2005 to September 26, 2007: lead w/5 paint w/20 Thomas or train or recall or TWR. Non-privileged responsive documents, if any, will be produced as identified. Further documents Bates Numbered RC2-01-000-0000001 to RC2-01-000-0000378 will produced upon entry of a suitable protective order.

7.    All documents concerning the investigation undertaken by you after you discovered excess levels of lead contained in the Recalled Toys including:

(a)    Communications internally, and externally, including communications with your contract manufacturers, the CPSC and any other governmental entity, paint suppliers, independent and/or internal testing laboratories, and anyone else concerning the discovery of lead in the surface paint of the Recalled Toys.

(b)    Documents sufficient to identify the name and location of the manufacturing facilities which used lead paint in their manufacture of the Recalled Toys.

(c)    Documents sufficient to identify the name and location of the paint suppliers supplying the lead paint used in the manufacture of the Recalled Toys.

(d)    The level of lead contained in all of the Recalled Toys.

**RESPONSE:**

Defendants object to subpart (a) of this request to the extent that it seeks information protected by the attorney-client privilege, work-product doctrine, and/or self-critical analysis privilege. Defendants also object to the extent that this request seeks information obtained from consulting experts, which is protected from discovery. Defendants further object that this request seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. All of the claims in this litigation relate to allegations that toys were sold containing surface paint with levels of lead which exceeded regulations or standards and were subsequently recalled.    Information regarding measures taken by the company after determination of the lead content is not relevant to these allegations and seeks information regarding subsequent remedial measures.

- 8 -

Defendants object to subpart (d) to the extent that it seeks information obtained from consulting experts, which is protected from discovery.

Subject to and without waiving these objections, Defendants will produce documents Bates Numbered RC2-01-000-0000001 to RC2-01-000-0000378 upon entry of a suitable protective order by the Court. Also, Defendants will produce testing reports of the surface paint upon entry of a suitable protective order by the Court.

Further, Defendants will perform the following electronic search with a date range of January 1, 2005 to September 26, 2007: (ovesea* winner*) or (3i) or ("Hansheng Wood Products") or OW and lead w/5 paint w/20 Thomas or train or TWR or recall. Non-privileged responsive documents located by the electronic search, if any, will be produced as identified.


8.    All documents concerning the Recalls including:

    (a)    Defendants' actions to inform retailers and wholesalers of the Recalls.

    (b)    Defendants' actions to inform the public of the Recalls including your actions to inform members of the public whose primary language is not English.

    (c)    Any steps taken by defendants to guarantee the Recalled Toys are no longer being manufactured with lead paint after the Recalls were announced by the CSPC on June 13, 2007 and then again on September 26, 2007.

    (d)    All documents identifying or concerning any toys that were or may have been packaged with one or more of the Recalled Toys listed in the CPSC recall notices of June 13, 2007 and September 26, 2007.

    (e)    All communications with RC2's other contract manufacturers not implicated in the recalls of June 13, 2007 and September 26, 2007 during and after the recall process regarding lead levels in the toys manufactured by RC2.

    (f)    The process by which RC2 determined which of the Recalled Toys would be included in the Recalls.

(g)    The scope of the Recalls including any internal deliberations, investigations, meetings, or discussions within RC2 and any other defendant organization.

(h)    RC2's decision to replace the Recalled Toys that were part of the Recalls, rather than refund the purchase price as a part of the recall.

(i)    The decision to provide replacement toys including which toys to offer as replacement toys; the safety testing and/or approval, if any, for lead contained in the replacement toys; and the prices of the replacement toys.

(j)    Any steps taken by RC2 and other defendants to guarantee the Recalled Toys that contain lead paint are no longer being sold to the public.

(k)    Any investigations by any state or federal agencies concerning the Recalls.

(l)    All documents concerning sales or distribution data of the Recalled Toys, including the prices of each Recalled Toy by SKU or serial number;

(m)    The quantity of Recalled Toys returned by stores by SKU or serial number.

(n)    The quantity of Recalled Toys returned by parents by SKU or serial number.

(o)    Documents sufficient to identify the total number of toys sold in the United States which was subject to the Recalls.

(p)    Documents sufficient to identify the total sales, revenues and profits made by you from the toys sold in the United States which were subject to the Recalls.

**RESPONSE:**

Defendants object that this request seeks information protected by the attorney-client privilege, work-product doctrine, and/or self-critical analysis privilege. Defendants further object that this request seeks information that is neither relevant nor reasonably calculated to lead

to the discovery of admissible evidence. All of the claims in this litigation relate to allegations that toys were sold containing surface paint with levels of lead which exceeded regulations or standards and were subsequently recalled. Information regarding measures taken by the company after determination of the lead content is not relevant to these allegations. This request seeks information regarding subsequent remedial measures. Further specific objections are as follows.

(c)     Defendants object that this subpart seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, Defendants object to the use of the words "guarantee" and "lead paint." Federal regulations and other potentially applicable standards do not require surface paint on toys to be lead-free; rather, these regulations and standards limit the levels of lead in toys.

(d)     Defendants object that this subpart is overly broad in that it seeks information regarding toys other than the Recalled Toys and, also, asks for all documents relating to these toys without any attempt to define or describe the documents requested. Defendants further object that it is vague with regard to its use of the term "concerning." Subject to and without waiving this objection, Defendants will produce documents that identify toys which may have been packaged with the Recalled Toys.

(e)     Defendants object that this subpart seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

(f)     Defendants object to this subpart to the extent that it seeks information protected by the attorney-client privilege and/or work product doctrine. Defendants further object to subpart f as the process used to determine the extent of the recall is not relevant in this case. There are no claims against Defendants based upon the recalls themselves, rather all claims relate to the toys which were subject to the recall. As such, the information sought in subpart f is not relevant nor reasonably calculated to lead to admissible evidence.

(g)     Defendants object to this subpart to the extent it seeks information about the discussions and communications held to determine the scope of the recalls. Such information is not relevant nor reasonably calculated to lead to admissible evidence as there are no claims against Defendants based upon the scope of the recalls, rather all claims relate to the toys which were subject to the recalls. Further, Defendants object to the extent that such information is protected by the attorney-client privilege and/or work product doctrine.

(h)     Defendants object that this subpart seeks information protected by the attorney-client privilege and/or work product doctrine. Defendants further object that this subpart seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. It is undisputed that Defendants offered to replace the Recalled Toys; thus, documents regarding their "decision" to do so are not relevant.

(i)     Defendants object that this subpart seeks information protected by the attorney-client privilege and/or work product doctrine.  Defendants further object that this subpart seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  It is undisputed that Defendants offered to replace the Recalled Toys; thus, documents regarding their "decision" to do so are not relevant.  Moreover, the toys at issue in this litigation are the Recalled Toys—not the replacement toys referenced in this subpart.

(j)     Defendants object that this subpart seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, Defendants object to the use of the words "guarantee" and "lead paint."  Federal regulations and other potentially applicable standards do not require surface paint on toys to be lead-free; rather, these regulations and standards limit the levels of lead in toys.

(l )    Defendants will produce documents including prices of the Recalled Toys; however, Defendants object to sales and distribution data as it is not relevant nor reasonably calculated to lead to admissible evidence.  Defendants, in other requests, are providing information regarding the number of Recalled Toys sold. Further information relating to specific sales and distribution information is not relevant to pending claims.

(p)     Defendants object to subpart (p) as it seeks documents which are not relevant nor reasonably calculated to lead to admissible evidence.  Information is already being produced with regards to the number of toys sold, the specific toys sold, and the retail price of these toys.

Subject to and without waiving these objections, Defendants will perform the following electronic search with a date range of January 1, 2005 to September 26, 2007:  lead w/5 paint w/20 Thomas or train or recall or TWR..  Non-privileged documents responsive to that electronic search, if any, will be produced as identified.  Further, see documents Bates Numbered RC2-01-000-0000001 to RC2-01-000-0000378 and RC2-01-005-0000001, which will be produced upon entry of a suitable protective order and documents Bates Numbered RC2-01-000-0004025 to RC2-01-000-0004033 which have been produced. With regards to subparts (a), (b), (d), (l), (m), (n), and (o), Defendants are in the process of identifying further responsive materials.

9.    The production agreements between you and each of the contract manufacturers implicated in the Recalls.

**RESPONSE:**

Documents Bates Numbered RC2-01-001-0000001 to RC2-01-001-0000003, will be produced upon entry of a suitable protective order.

10.    All documents, if any, concerning any additional safeguards RC2 instituted after the CPSC announced the Recalls.

**RESPONSE:**

Defendants object that this request seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Safeguards implemented after the recall are clearly subsequent remedial measures and, therefore, not relevant and protected from discovery.

11.    All documents involving the CPSC or any other governmental entity concerning the Thomas & Friends toys and/or the Knights of Sword toys, whether related to the Recalls, or not, including:

      (a)    All documents produced, or which you considered producing, to any of those entities.

      (b)    All transcripts of any testimony before such governmental entity.

      (c)    Communications regarding the scope of what should be produced to any of those entities.

      (d)    Communications with the CPSC or any other governmental entity, and your communications internally, concerning the Recalls including what should and should not be included in the Recalls, what should and should not be disclosed to consumers, what relief should and should not be provided to consumers and what you should do once you discovered lead in the surface paint of the Recalled Toys.

- 13 -

**RESPONSE:**

Defendants incorporate by reference their responses and objections to Request Nos. 6 and 7 and 8(g)-(i). Defendants object that this request is overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence as it seeks all documents regarding toys that were not subject to the recall and documents that are not even related to the recall. Defendants will produce only those documents related to the Recalled Toys. Defendants also object to the extent this request seeks information regarding subsequent remedial measures. Defendants further object that this request seeks information protected by the attorney-client privilege, work product doctrine and/or the self-critical analysis privilege. Specific additional objections to the subparts are as follows:

        (a)    Defendants objects that this request is overly broad with regard to the phrase, "or which you considered producing."

        (d)    Defendants object that this subpart seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. All of the claims in this litigation relate to allegations that toys were sold containing surface paint with levels of lead which exceeded regulations or standards and were subsequently recalled. Information regarding measures taken by the company after determination of the lead content is not relevant to these allegations.

Subject to and without waiving these objections, Defendants will produce documents Bates Numbered RC2-01-000-0000001 to RC2-01-000-0000378 and RC2-01-003-0000001 to RC2-01-003-0000376 upon entry of a suitable protective order by the court. Also see documents Bates Numbered RC2-01-003-0000377 to RC2-01-003-0000386. Defendants are in the process of identifying further responsive materials.

       12.    All documents concerning the level of lead contained in any of the toys you manufacture.

**RESPONSE:**

Defendants object that this request is overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence in that it seeks information regarding toys other than the Recalled toys. Defendants further object to the extent this request seeks documents prepared by consulting experts, as such information is protected by the work product doctrine and not discoverable under Fed. R. Civ. Pro. 26(a)(4)(B). Subject to and without waiving this objection, Defendants incorporate their response to Request No. 4.

13.    All documents concerning the manufacturing process of any toy listed in the Recalls including:

(a)    The choice of, or procurement of, paint used in the manufacture of the Recalled Toys.

(b)    Communications with each manufacturer, independent contractor or otherwise, involved in the manufacture of the Recalled Toys, and any evaluation of those contractors or manufacturers for any reason.

**RESPONSE:**

Defendants object that this request seeks confidential, trade secret, and proprietary information. Defendants further object that this request is overly broad in that it seeks information regarding processes which have no relation to the surface paints, which are at issue. Rather, as written, Defendants would have to produce any and all documents which they might have regarding the manufacturing of the wooden body of the train, the attachment of the wheels, and a myriad of other subjects which are equally not relevant to the pending matter. Specific additional objections to the subparts are as follows:

(b)    Defendants object that this request is overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence as it seeks documents which have no relation to the surface paints, which are at issue.

Subject to and without waiving these objections, Defendants will perform the following electronic search: ("Oversea* Winner*") or (3i) or OW or ("Wing Shein") or ("Hangsheng Wood Products") and manufactur* w/5 process w/50 Thomas or train or TWR w/50 lead w/5 paint. Non-privileged responsive documents located by the electronic search, if any, will be produced as identified. Defendants are also in the process of identifying any further responsive materials.

14.    All documents concerning your communications with the subcommittee on Commerce, Trade and Consumer Protection of the Committee on Energy and Commerce or any other governmental entity regarding the Recalls including:

(a)    The letters exchanged between Curt Stoelting of RC2 and Representatives Bobby L. Rush and Cliff Steams in or about August and September 2007.

(b)    All transcripts of any testimony before the Committee on Energy and Commerce.

(c)    Internal memoranda, emails, research, lead level testing results, communications with contract manufacturing facilities and paint suppliers, and any other information RC2 considered in responding to the letter of August 22, 2007 addressed to Mr. Stoelting from the Subcommittee on Commerce, Trade and Consumer Protection regarding the recall of June 13, 2007.

**RESPONSE:**

Defendants object to subpart (c) as it seeks information protected by the attorney-client privilege and/or work product doctrine. Responding to this request would require RC2 to reveal the mental processes of counsel. "Opinion work product which reveals the mental impressions or opinions of an attorney is not discoverable." *Equity Residential v. Kendall Risk Management, Inc.*, No. 04-c-3812, 2007 WL 4105492, at *3 (N.D. Ill. Nov. 16, 2007). Moreover, this request is overly broad and vague in that is seeks all documents RC2 "considered."

In response to subparts (a) and (b), Defendants produce the documents Bates Numbered RC2-01-003-0000377 to RC2-01-003-0000386. Documents Bates Numbered RC2-01-003-0000001 to RC2-01-003-0000376 will be produced upon entry of a suitable protective order.

15.    All documents concerning your policies or guidelines with respect to the retention or destruction of documents.

**RESPONSE:**

Defendants object to this request as it is vague and undefined. Defendants further object to the extent that this request seeks documents which are protected by the attorney client privilege and/or work product doctrine.

16.    All documents concerning the destruction or nonexistence of documents responsive to these requests, which documents once existed but no longer exist.

**RESPONSE:** None.

17.    Any insurance policies that could relate to the claims alleged in this litigation.

**RESPONSE:**  Documents responsive to this request have been previously produced.

18.    All documents reflecting your communications with members of the proposed class including:

(a)    All complaints, requests for information, questions, statements made by parents and purchasers of the Recalled Toys and any other communications, whether written or oral.

(b)    Your communications to parents concerning the Recalled Toys.

**RESPONSE:**

See documents produced in response to Request No. 19.  Defendants are in the process of identifying further responsive documents.

19.    All documents concerning your communications with any of the named plaintiffs in this consolidated action.

**RESPONSE:**

See documents produced at Bates Numbers RC2-01-005-0000002 to RC2-01-005-0000020.

20.    All documents concerning testing for lead in children exposed to the Recalled Toys including any research, communications, emails, investigations, meetings, or discussions within RC2 and any other defendant organization.

**RESPONSE:**

Defendants object that this request seeks information protected by the attorney-client privilege and/or work product doctrine.  Defendants further object that this request seeks non-discoverable information regarding the work of consulting experts, protected by Fed. R. Civ. Pro. 26(a)(4)(B).  Defendants also object to Request No. 20 as it is vague.  Depending on how the request is read, it may be seeking information on any lead testing performed on children who were "exposed" to the Recalled Toys or, it could potentially be read in a very broad manner to be seeking any information about testing for lead in children after an arguably similar exposure. Depending on the interpretation given, the request may be overly broad also.  Subject to and without waiving this objection, Defendants will perform the following electronic search: (lead

w/5 paint) or recall and (test w/10 children). Non-privileged responsive documents located by the electronic search, if any, will be produced as identified.

21.    All documents concerning promotional and/or advertising materials for the Recalled Toys including:

(a)    Those published in newspapers, brochures, magazines, flyers, billboards and any other printed form, as well as those on television, radio, the internet, your website, and any other media format.

(b)    Those which accompanied the purchase of the Recalled Toys including the box and any other packaging containing visual or written material, labels affixed to the Recalled Toys, warranties, warranty cards, and any other booklets or materials.

(c)    All documents concerning and reflecting your representations to consumers regarding the safety of the Recalled Toys.

**RESPONSE:**

Defendants object to this request to the extent it seeks promotional and/or advertising materials prior to the date of manufacture of the trains subject to the recalls.

Defendants object to subpart (c) as it is overly broad, unduly burdensome, and vague as to its use of "concerning" and "reflecting."

With regards to subparts (a) and (b), Defendants are in the process of identifying responsive materials.

22.    All communications between any defendant and any public relations firm, or any other person or entity, concerning the Recalls, including communications concerning minimizing negative publicity for or negative consequences to defendants as a result of the Recalls.

**RESPONSE:**

Defendants object to this request in that it is overly broad. Specifically, the request asks for all communications between any Defendant and any other person or entity concerning the recalls. Such a broad definition is vague and would be unduly burdensome to the Defendants. If this request is limited, as indicated by Plaintiffs communications concerning minimizing

- 18 -

negative publicity or negative consequences to Defendants as a result of the recalls, then Defendants object as the request seeks information protected by the attorney-client privilege, work product privilege, and/or self-critical analysis privilege.

DATED: December __, 2007                    By: _s/Judy S. Okenfuss_

                                            Judy S. Okenfuss
                                            James L. Petersen
                                            Katherine A. Winchester
                                            ICE MILLER LLP
                                            One American Square
                                            Suite 3100
                                            Indianapolis, IN  46282

                                            Bart T. Murphy
                                            ICE MILLER LLP
                                            2300 Cabot Drive
                                            Suite 455
                                            Lisle, IL  60532

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing, with the referenced documents, was deposited in the U.S. mail, first-class postage prepaid, on the 14th day of December, 2007, addressed Will Riley.  Further, a copy of the foregoing was sent via email on the 14th day of December, 2007, to the following:

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, Washington  98101
(206) 623-7292

Elizabeth A. Fegan
Daniel J. Kurowski
Timothy Patrick Mahoney
HAGENS BERMAN SOBOL SHAPIRO LLP
820 North Boulevard, Suite B
Oak Park, IL 60301
(708) 776-5600

Laurence D. King
Linda M. Fong
KAPLAN FOX & KILSHEIMER LLP
555 Montgomery Street, Suite 1501
San Francisco, CA  94111

Frederic S. Fox
Donald Hall
KAPLAN FOX & KILSHEIMER LLP
850 Third Avenue, 22nd Floor
New York, New York 10022
(212) 687-1980

William N. Riley
Jamie Ranah Kendall
Christopher Allan Moeller
PRICE WAICUKAUSKI & RILEY
301 Massachusetts Avenue
Indianapolis, IN 46204
(317) 633-8787

_s/Judy S. Okenfuss_
Judy S. Okenfuss
ICE MILLER LLP
One American Square
Suite 3100
Indianapolis, IN  46282
(317) 236-2115

I/2048809.5