IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE RC2 CORP. TOY LEAD PAINT PRODUCTS LIABILITY LITIGATION | ) No. 07 CV 7184 )  ) MDL No. 1893 )  ) Judge Leinenweber |

## DECLARATION OF WILLIAM N. RILEY IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR A PRELIMINARY INJUNCTION PURSUANT TO THE ALL WRITS ACT

I, William N. Riley, under penalties of perjury, state as follows:

1. I am a principal member at Price Waicukauski & Riley, LLC in Indianapolis, Indiana, was appointed by this Court as one of three Interim Co-Lead Counsel for the Putative Class, have full knowledge of the matters stated herein and could and would testify hereto if necessary.

2. On October 12, 2007, I hosted the Rule 26(f) conference at my office in Indianapolis. My Co-Lead Counsel, Elizabeth Fegan of Hagens Berman Sobol Shapiro LLP, Fred Fox and Lawrence King of Kaplan Fox LLP, attended by phone. James Petersen, Judy Okenfuss and Drew Miroff attended for Defendants.

3. During this conference, I raised the issue of settling the litigation with defense counsel. Mr. Petersen stated that Defendants were open to settlement discussions. However, he stated that Defendants wanted the settlement discussions to take place with certain conditions. Mr. Petersen explained that RC2 wanted settlement discussions to take place in the context of a mediation, and accompanied by a written proposal from Plaintiffs.

4. My co-counsel Ms. Fegan responded on behalf of Plaintiffs, stating that if we were to provide a written settlement proposal, then we would want an assurance that RC2 was not negotiating with other lawyers in a competing case.

5. Defense counsel tacitly agreed with this assertion and responded that Plaintiffs should make their written proposal.

6. Based on Defense counsel's response, and tacit agreement with the pre-condition, we had absolutely no understanding that Defendants were negotiating with any other plaintiffs. At no time did Mr. Petersen (or any other defense counsel) state that Defendants were negotiating with any other plaintiffs nor that they were engaged in any other settlement negotiations.

7. Based on Mr. Petersen's request that the MDL Plaintiffs issue a written demand, I sent a letter dated October 17, 2007, outlining our settlement demand. A true and correct copy of this letter is attached as Ex. A.

8. On October 23, 2007, I spoke with Mr. Petersen by telephone to discuss the draft Rule 26(f) report. Mr. Petersen stated that Plaintiffs' Interim Lead Counsel "would be receiving a generic letter indicating that RC2 is interested in settlement." Mr. Petersen further stated that "the company is very interested in settlement sooner rather then later," and that "RC2 knows that this will be more expensive the longer it goes on and even if they defeat class certification that will not be the end of the litigation." Further, we discussed suggested mediators and possible locations.

9. On October 30, 2007, I again spoke with Mr. Petersen by telephone. I inquired regarding providing Plaintiffs with some initial data for purposes of further settlement discussions at mediation. Mr. Petersen stated that he would be willing to give

Plaintiffs' Lead Counsel "the information on the units that were sold (less those returned from distributors and stores)" for purposes of continuing the settlement discussion. Mr. Petersen also stated that "RC2 wants to mediate before year end." Mr. Petersen told me that defense counsel was "going to have a conference call this afternoon to go over the mediators that plaintiffs suggested." I stated that Plaintiffs would provide available dates for the mediators.

10.     On November 1, 2007, I sent a letter to Mr. Petersen per our discussion, which included available dates for the suggested mediators. A true and correct copy of this letter is attached as Ex. B.

11.     On November 2, 2007, I spoke with Mr. Petersen, who stated that he expected that defense counsel would get back to us on Monday "with a mediator and a date" and stated that "Bart [Murphy, defense counsel in Chicago] is leaning toward the two Chicago mediators [proposed by the MDL plaintiffs] because he has had prior dealings with both of them."

12.     On November 7, 2007, I attended a meeting in the courthouse cafeteria with defense counsel and the other Interim Lead Counsel after a court hearing. During this meeting, Mr. Murphy requested that Plaintiffs provide Defendants with a second demand letter that included hard numbers. Mr. Murphy further stated that Plaintiffs should not include medical monitoring in their next demand, because Defendants were not willing to pay for medical monitoring. My co-counsel, Beth Fegan, responded that Plaintiffs would not release any medical monitoring claims without consideration for the Class, and that Plaintiffs thought he misunderstood the nature of the medical monitoring being requested as it was limited to the costs of diagnostic blood lead testing.

13. Further, Ms. Fegan, stated that Plaintiffs did not have the data that was in Defendants' possession and control to include hard numbers in a second demand. We explained that was why our initial demand included only the scope of relief that would have to be included in a settlement, and did not include final numbers. Accordingly, we requested that Defendants make an offer on the numbers to be ascribed to the common fund for the toy refunds. Mr. Murphy responded that Defendants were not going to bid against themselves, and it was in Plaintiffs' court to make an expanded demand.

14. Ms. Fegan stated that Plaintiffs needed data to make an expanded demand with hard numbers. Mr. Murphy responded that Plaintiffs should send an informal data request to him and he would consider it.

15. On Wednesday, November 21, 2007, I attended a conference at the offices of Defendants' counsel regarding the scope of electronic production to be made by Defendants. My co-counsel, Beth Fegan, attended in person, and Fred Fox and Lawrence King, attended by phone. Additionally, my associate Joseph Williams was present. Defendants' counsel James Petersen, Judy Okenfuss and Drew Miroff attended in person. At the end of the meeting, we inquired of Mr. Petersen regarding the status of setting a mediation. He stated that they needed a little more time to litigate before scheduling a mediation. We further inquired regarding a response to our data request, and he stated that he thought we should have a response soon.

I declare under penalties of perjury that the foregoing is true and correct.

February 12, 2008

William N. Riley