## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| BYRON BARRETT, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>RC2 CORPORATION,<br><br>Defendant. | No. 07 CH 20924<br><br>Judge William Maki |

### DECLARATION OF ROBERT V. BOHARIC

Since it has come to my attention that intervening parties are contesting the nature of a settlement agreement reached in a mediation I conducted in the instant case, in order to inform the Court of what happened in that mediation, I state as follows:

1. Prior to retiring from the bench in December of 2002, I was a Cook County trial court judge for 18 years. During that time, I spent 6 years in the Chancery Division, 6 years in Law Division, and 6 years in Criminal Division.

2. I am currently a mediator with ADR Systems in Chicago.

3. I have conducted hundreds of settlement conferences and mediations over the years, and have overseen numerous class action settlements.

4. In October I was retained by attorneys for Byron Barrett (and other affiliated counsel) and RC2 Corporation to mediate their pending litigation. Those Parties have given me permission to discuss the matters pertaining to the mediation herein.

5. I held three mediation sessions in October and November. In the first two such sessions, I focused the Parties on reaching an agreement regarding the scope of discovery. Such discovery ultimately included the deposition of two key RC2 personnel and the production of thousands of pages of documents.

6. In the final mediation session on November 30th, 2007, I had the parties discuss – for the first time – specific terms of the settlement. The Parties negotiated the monetary and in-kind relief to the class, the specifics of injunctive relief, a cy pres award, and the logistics of the settlement procedure. It was not until an agreement in principle was reached with respect to the class relief that the parties began discussing attorneys' fees.

7. The settlement terms were negotiated at arm's length and by no means appeared collusive. Indeed, Barrett's counsel informed RC2 that they would not discuss settlement terms until

discovery had been completed. Barrett's counsel also asked for assurances – which were provided by RC2 – that RC2 was not negotiating with any other plaintiff so as to avoid the appearance of a "reverse auction".

8. At one point, the Parties had a conflict regarding certain discovery. RC2 cancelled a mediation session, explaining it did not think it would be productive. Barrett's attorneys similarly made clear that if they did not receive the "agreed-upon" discovery, they would terminate the mediation. My staff and I worked to bring the Parties back to the table.

9. In my opinion as a mediator, I believe that the settlement the Parties reached is fair and reasonable and was negotiated in good faith without collusion.

Respectfully Submitted,

_____  2/12/08
Robert V. Boharic

## CERTIFICATION

Under penalties pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in the above Declaration are true and correct.

_____
Robert V. Boharic

February 12, 2008.