**FILED**

**FEBRUARY 19, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE RC2 CORP. TOY LEAD PAINT | ) | |
| PRODUCTS LIABILITY LITIGATION | ) | No. 07 CV 7184 |
| | ) | MDL No. 1893 |
| | ) | |
| *Document relates to all actions* | ) | Judge Leinenweber |

## DEFENDANTS' SUR-REPLY IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

### INTRODUCTION

Regrettably Defendants are forced to file this short sur-reply to rebut the factual assertions made for the first time in Plaintiffs' Reply brief and secondly to point out that in their Reply Plaintiffs' Counsel have created a "straw man have totally mischaracterized an argument made by Defendants in an ineffectual attempt to attack the merit of the argument.[1]

### ARGUMENT

**1.    THE SUPPLEMENTAL DECLARATIONS OF DEFENSE COUNSEL DEMONSTRATE THAT MR. RILEY'S DECLARATION INACCURATELY CHARACTERIZES STATEMENTS ALLEGED TO HAVE BEEN MADE BY DEFENSE COUNSEL**

The declaration of William Riley submitted by Plaintiffs for the first time with their reply memorandum attempts to mischaracterize statements made by defense counsel in an effort to make it appear as though the Parties were engaged in settlement negotiations as opposed to discussion about engaging in the settlement process.

---

[1]    Defendants also note that in the process of doing so, Plaintiffs' Counsel go out of their way to take a "cheap shot" at one of Defendants' counsel in this case by referencing a $750 Rule 11 sanction order entered against defense counsel in an unrelated case (which included one of the defense counsel in this case) for making what Judge Hibbler in that case found to be frivolous arguments in a memorandum in opposition to class certification. Notably the memo which Judge Hibbler took issue with in the unrelated

Defendants' Counsel have not and do not dispute that preliminary discussion <u>about</u> settlement occurred with Plaintiffs' counsel. However, Defendants did not ever engage in settlement <u>negotiations</u> with Federal Plaintiffs' Counsel. Plaintiffs' Counsels' attempt to blur the distinction between actual settlement <u>negotiations</u> (which did not occur) and the preliminary discussions which lead up to actual negotiations. Even if the Court were to accept every statement of Plaintiffs' Counsel on the issue of settlement discussions, the fact remains that settlement <u>negotiations</u> with the Federal Plaintiffs never commenced. As set forth in the declaration of Mr. Murphy submitted in support of Defendants' Response, Plaintiffs' Counsel were informed on November 7, 2007 by him that if they were serious about settlement they should make a demand. Try as Plaintiffs' Counsel may, they cannot avoid the fact that even their own e-mail communications with Defendants' Counsel (See Exhibit 3 to Defendants' Response), concede that their first settlement demand was not made until December 10, 2007.

It is hard to envision how negotiations could begin without a demand as Plaintiffs' Counsel have not asserted and cannot assert that Defendants made a settlement offer to them prior to their December 10, 2007 demand. Contrary to Mr. Riley's declaration, and as established by Mr. Murphy's declaration, Plaintiffs' Counsel were informed on November 7, 2007 by Mr. Murphy that if they were serious about settlement they should make a demand. (See Ex. 1 to Defendants' Resp – Murphy Decl. at ¶8).

While Plaintiffs' Counsel were attempting to engage Defendants' Counsel in settlement negotiations, Mr. Murphy informed them that if they were serious about settlement they should make a demand. (See Exhibit 1 to Defendants' Response –

---

case cited by Plaintiffs' Counsel here, was not even authored or signed by the Defense counsel in this case whose integrity Plaintiffs' Counsel attempt to impugn. See: Plaintiffs' Reply Memo at FN9.

2

Murphy Decl. at ¶8). Mr. Riley's declaration attempts to assert that prior to November 7, 2007, Plaintiffs had made a demand on Defendants and he attempts to spin statements he attributes to Mr. Murphy to achieve this objective. Notably Mr. Riley's declaration does not quote Mr. Murphy. The supplemental declaration of Mr. Murphy which is attached hereto as Exhibit 1, rebuts the inaccuracies contained in Mr. Riley's affidavit.

As noted, Mr. Riley's spin is also contradicted by one of his co-counsel Beth Fegan who unequivocally admits twice in her November 8, 2007 e-mail to Mr. Murphy that as of November 8, 2007 Plaintiffs had yet to make a settlement demand. In this e-mail Ms. Fegan, writing on November 8, 2007, states:

> Per our discussion yesterday and in order to allow us to formulate a settlement demand, set forth below is our informal request (or wish list) for data. The more information you can provide, the more vetted our initial demand will be.

(See: Defendants' Exhibit 3, emphasis added).

Contrary to Mr. Riley's spin, settlement negotiations never commenced between the Parties and the supplemental declarations of Messrs. Murphy and Petersen attached hereto as Exhibits 1 and 2 rebut Mr. Riley's spin. Plaintiffs have not and cannot point to single communication from Defendants' Counsel in response to a settlement demand Plaintiffs' Counsel made. This is because at the time they made their demand on December 10, 2007, which might have led to settlement negotiations, Defendants had already entered into a settlement in the *Barrett* case. Plaintiffs have not disputed the fact that Defendants never responded to their December 10, 2007 demand letter which by its terms expired on January 10, 2008.

2.    **CONTRARY TO PLAINTIFFS' COUNSELS' MISCHARACTERIZATION DEFENDANTS NEVER ARGUED THAT THE RELIEF SOUGHT BY PLAINTIFFS WAS BARRED BY THE "ROOKER-FELDMAN" DOCTRINE**

Contrary to the mischaracterization of Plaintiffs' Counsel, Defendants did not argue in their response brief that "Plaintiffs' request for relief under the All-Writs Act is barred by the 'Rooker-Feldman' doctrine" (Pltfs Reply Memo at p10). Defendants never made such an argument. What Defendants did argue is that Plaintiffs' request for a preliminary injunction is tantamount to seeking impermissible appellate review of the State Court's orders granting preliminary approval.

Defendants did not argue that the *Rooker-Feldman* doctrine has any bearing on the issues before the Court. In fact, Defendants never even cite *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983), or even mention the *Rooker-Feldman* doctrine itself. Rather, Defendants cited to *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 416 (1923), for the fundamental principles of jurisdiction discussed by the Supreme Court in that case. These principles gave rise to the *Rooker-Feldman* doctrine but are independent jurisdictional principles that are not impinged by the doctrine.

The *Rooker-Feldman* doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobile Corp. v. Saudi Basic Industries Corp.,* 544 U.S. 280, 284 (2005). Under the doctrine, such cases are "properly dismissed for want of subject-matter jurisdiction." *Id.* Defendants have not argued that the state court settlement or the preliminary approval order divest this Court of jurisdiction over the cases pending before

it. Further, contrary to Plaintiffs' assertions, Defendants did not argue that the doctrine operates to bar the issuance of an injunction under the All Writs Act.

The argument which was made by Defendants is simpler, more basic, and undeniable: namely that federal district courts are courts of original jurisdiction and have no authority to review state court decisions. *Exxon Mobile Corp.*, 544 U.S. at 292 (stating that 28 U.S.C. § 1257, "as long interpreted, vests authority to review a state court's judgment solely in this Court."). Thus, Plaintiffs' attacks on the settlement procedure and arguments regarding the adequacy of the settlement are for the state court to consider and resolve at the fairness hearing. This Court does not have jurisdiction to reach into the state court action and review the state court's orders.

This Court continues to have jurisdiction over the cases before it, and if Plaintiffs elect to opt out of the state court settlement, their cases can proceed before this Court unhindered by the *Rooker-Feldman* doctrine.[2] However, the only issues before the Court at this time are: (1) whether to stay the federal actions over which it has jurisdiction pending the fairness hearing and (2) whether an injunction aimed at halting the state court action and preventing the settlement to proceed to a fairness hearing is authorized by the All Writs Act, not barred by the Anti-Injunction Act, and warranted in this case.

---

[2] However, "*Rooker-Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions." *Exxon Mobile Corp.*, 544 U.S. at 284 These doctrines may effect Plaintiffs' actions. *Id.* at 293 ("Disposition of the federal

Respectfully submitted,

RC2 CORPORATION and
LEARNING CURVE BRANDS, INC.


s/Bart T. Murphy
By one of their attorneys
Bart T. Murphy
ICE MILLER LLP
2300 Cabot Drive, Suite 455
Lisle, IL 60532
(630) 955-0555



Judy S. Okenfuss
James L. Petersen
ICE MILLER LLP
One American Square
Suite 3100
Indianapolis, IN 46282

---

action, once the state-court adjudication is complete, would be governed by preclusion
law.").

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE RC2 CORP. TOY LEAD PAINT    )
PRODUCTS LIABILITY LITIGATION    )    No. 07 CV 7184
    )    MDL No. 1893
    )
*Document relates to all actions*    )    Judge Leinenweber

## SUPPLEMENTAL DECLARATION OF BART T. MURPHY

Bart T. Murphy, being first duly sworn on oath, states as follows:

1.    I am counsel for the Defendants RC2 Corporation and Learning Curve Brands, Inc. (collectively "Defendants") in the above captioned matter. Unless indicated to the contrary, I have personal knowledge of the facts stated herein.

2.    This supplemental declaration is unfortunately necessary to rebut misstatements which are now being made for the first time by William Riley counsel for Plaintiffs in Plaintiffs' Reply Brief. Since these statements were not made in Plaintiffs' opening memorandum in support of their motion, Defendants and I did not have the opportunity to address them.

3.    The simple fact which remains un-rebutted even if the Court were to accept all the statements made by Plaintiffs' Counsel at face value, is that NO SETTLEMENT NEGOTIATIONS EVER TOOK PLACE WITH PLAINTIFFS COUNSEL IN THIS CASE. While discussions about settlement took place as I and Defendants detailed in Defendants' Response to Plaintiffs' Motion, no settlement negotiations ever took place with Plaintiffs.

4.    Until Defendant reached an agreement in principle with Class Counsel in the *Barrett* case on November 30, 2007, and until this agreement was memorialized and

1

received preliminary approval from the Court, I was forced to assume that Defendants may be litigating on parallel paths in state and federal court. Therefore it was necessary for Defense Counsel to proceed forward with the federal litigation as while settlement negotiations were proceeding in the state court case, I had no assurance that they would result in a settlement. When preliminary approval was granted by the Circuit Court of Cook County to the Settlement Agreement reached in *Barrett,* Defendants promptly filed a motion in this Court on January 25, 2008 seeking a stay of these proceedings.

5.    I requested the Court's court reporter to produce the transcript of the January 31, 2008 hearing on the presentation of Plaintiffs' Motion for a Preliminary Injunction on an expedited basis and I was advised that she would be unable to produce the transcript on an expedited basis. I believe the transcript of this hearing will reveal that Ms. Fegan (Plaintiffs' Counsel) made statements which are inconsistent with those now being made for the first time by Mr. Riley in their reply brief. Of course without the transcript I cannot state this with surety or precision.

6.    Contrary to the assertion of Mr. Riley in paragraph 12 of his declaration, I never made a request at the November 7, 2007 meeting held between counsel for the Parties in the federal courthouse cafeteria that "Plaintiffs [should] provide Defendants with a second demand letter that included hard numbers" as he alleges. Notably Mr. Riley's assertion is not set forth as a direct quote of what I allegedly said and his assertion represents his spin on my statement. The statement is not accurate. Although I cannot set forth my exact words, I can state definitively that I never used the terminology "second demand" or anything close to it as the Federal Plaintiffs did not make any demand until December 10, 2007. This is independently verified by an e-mail message

which I received from Ms. Fegan on November 8, 2007 (immediately after the 11/7/07 meeting) which stated Plaintiffs needed information to make their "initial demand". (A copy of the email has been previously produced to this court). As I have stated already, I did inform Plaintiffs' Counsel at the November 7, 2007 meeting that if they were serious about settlement they should make a demand and also that I was not going to bid against myself. While I did advise Plaintiffs Counsel at this meeting that Defendants believed medical monitoring was inappropriate, I never said medical monitoring should not be part of their "next demand". I never used the words "next demand" or words conveying a similar meaning in this meeting as I did not then and do not now believe that Plaintiffs had made any demand until December 10, 2007.

7.    Contrary to the assertion of Mr. Riley in paragraph 13 of his declaration, Plaintiffs' Counsel never referred to any prior demand in the November 7, 2007 meeting. Again this assertion is belied by an e-mail I received from Ms. Fegan on November 8, 2007, the day after the meeting, which is discussed above. Further I never informed Plaintiffs' Counsel at this meeting that is was in "Plaintiffs' court to make an expanded demand." Again notably Mr. Riley does not assert the aforementioned language quotes what I said and it again represents his spin which is inaccurate. Contrary to the spin that Mr. Riley attempts to put on my words at this meeting, what I did state to Plaintiffs' Counsel was that if they were serious about settlement they should make a demand as I was not going to bid against myself.

FURTHER AFFIANT SAYETH NAUGHT.

Bart T. Murphy

3

Subscribed and sworn to
before me this 15th day of
February 2008.

_____
NOTARY PUBLIC

```
"OFFICIAL SEAL"
JANE D. BOYD
Notary Public, State of Illinois
My Commission Expires May 10, 2009
```

4

# EXHIBIT B

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

IN RE:                                          **MDL NO.    1893   ALL CASES**
RC2 CORP. TOY LEAD PAINT
PRODUCTS LIABILITY LITIGATIONS        Case No.  07 C 7184

### SUPPLEMENTAL DECLARATION OF JAMES L. PETERSEN

I, James L. Petersen, on oath, depose and state as follows:

1.      I am a partner at Ice Miller LLP, the law firm providing the defense for all defendants in *In re RC2 Corp. Toy Lead Paint Products Liability Litigation*, MDL 1893. I have full knowledge of the matters stated herein and could and would testify as follows.

2.      I have reviewed William Riley's declaration and it contains misstatements and statements taken out of context to give the impression that I was initiating efforts to arrange settlement discussions. At no time did I initiate settlement discussions with Counsel for Federal Plaintiffs.

3.      At all times I made it clear that any agreement to discuss settlement or arrange mediation had to be approved by Bart Murphy.

4.      I have not been engaged in any settlement negotiations with plaintiffs' counsel. My discussions have been limited to discussing whether settlement negotiations would be considered by RC2 and receiving inquiries regarding possible mediation to relay them to my partner Bart Murphy.

5.      The 26(f) conference held on October 12, 2007 did not involve settlement negotiations. The only discussions at that time related to the possibility of mediation and future settlement discussions. I have consistently made it clear that Bart Murphy would be in charge of

any settlement discussions and/or mediation.

6.     There were no conditions set by me or RC2's attorneys at the 26(f) conference under which future settlement discussions or mediation would take place.   We certainly discussed the possibility of mediation and may have said that any settlement demand should be in writing. As Mr. Riley makes clear, his co-counsel, Beth Fegan, did not ask us during the October 12, 2007 conference whether we were negotiating with any other parties.

7.     All of the quotes contained in Mr. Riley's declaration show nothing more than a willingness to listen to settlement offers made by the plaintiffs. Plaintiffs made no settlement demand until December 10, 2007, after the date that settlement was reached with the state court plaintiffs.

8.     Mr. Riley's letter of October 17, 2007 referred to by him in his declaration as "a demand letter" did not make a money demand or any other demand in settlement. In fact, the subject line of the letter states: "Proposed settlement Discussion".   It discussed general parameters and offered nothing to the defendant which could have been accepted as a settlement.

9.     The telephone calls Mr. Riley references in his declaration were all in connection with the parties efforts to prepare a 26(f) report for the Court and involved conversations of possible future settlement discussions and possible mediators as required by federal rules. Mr. Riley did argue his point of view that settlement discussions would be of benefit to RC2. Mr. Riley opened one of the conversations with a discussion of the reasons why RC2 should engage in early settlement discussions with plaintiffs' counsel.

10.    As noted in his declaration, Mr. Riley sought certain information and I advised him that I expected RC2 to provide the information, but that decision would have to be made by Bart Murphy.

11.    In paragraph 8 of his declaration, Mr. Riley references the fact that I said plaintiffs' interim lead counsel would be receiving a generic letter indicating that RC2 was interested in settlement. The letter being referred to by Mr. Riley was requested by plaintiffs' counsel as a condition to enter into negotiations with RC2. Plaintiffs' counsel did not ask for any representations in the letter other than a statement that RC2 was interested in discussing settlement. That letter was never issued.

FURTHER AFFIANT SAYETH NAUGHT.

James L. Petersen

Subscribed and sworn to
before me this 15th day of
February 2008.

Notary Public

I/2080802.1