IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE RC2 CORP. TOY LEAD PAINT PRODUCTS LIABILITY LITIGATION | Case No. 07 C 7184<br><br>MDL No. 1893<br><br>Hon. Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs' Emergency Motion for Preliminary Injunction Pursuant to the All Writs Act [6] and Defendants' Motion to Stay Proceedings [2]. For the following reasons, Plaintiffs' Motion is denied and Defendants' Motion is granted.

### I. FACTS & PROCEDURAL HISTORY

Plaintiffs in this Multi-District Litigation ("MDL") are numerous individuals who purchased toys marketed and distributed by Defendants RC2 Corporation and its subsidiary Learning Curve Brands, Inc. for young children. Defendants distributed Thomas & Friends Wooden Railway components ("Thomas Toys") that are made using surface paint containing lead, which is hazardous to children. On June 14, 2007, the U.S. Consumer Product Safety Commission ("CPSC") issued a recall of approximately 1.5 million Thomas Toys because the toys contained excessive and unsafe levels of lead paint. As part of the recall, RC2 offered consumers a replacement toy and a bonus toy. On September 26,

-1-

2007, RC2 announced a recall of five additional Thomas Toys, including one of the replacement toys, due to unsafe levels of lead paint.

Dozens of federal lawsuits have been filed throughout the country by consumers against RC2 alleging various causes of action relating to these toys.  On November 7, 2007, Plaintiffs filed a Second Amended Consolidated Class Action Complaint on behalf of all persons who purchased Thomas Toys that contain lead paint and were imported and/or distributed by Defendants between January 2005 and June 2007.  Second Amd. Compl. ¶ 1.  Plaintiffs allege, among other things, causes of action for violations of various state consumer protection laws, breach of implied warranties, negligence, product liability, and medical monitoring.  On December 19, 2007, the Judicial Panel ordered the consolidation of these actions and their transfer to this Court as MDL Docket No. 1893.  *See* MDL No. 1893 Transfer Order.

Defendants have filed a motion to dismiss, which is now fully briefed.  The parties have engaged in some discovery, including exchange of documents, requests to admit, and service of notice of depositions.

On October 12, 2007, the parties held a Rule 26(f) conference call.  The parties dispute what kind of settlement discussions took place during this call and in several exchanges after this call.  Plaintiffs state that Interim Co-Lead Counsel

-2-

William Riley raised the issue of settling with defense counsel.
Riley Dec. ¶ 3.  According to Mr. Riley, Mr. Petersen stated that
Defendants wanted settlement discussions to take place in the
context of a mediation with a written proposal from Plaintiffs.
*Id.*  Mr. Petersen states that they discussed the possibility of
mediation and defense counsel "may have said that any settlement
demand should be in writing."  Supp. Petersen Dec. ¶ 6.  Mr.
Riley states that Ms. Fegan stated that Plaintiffs wanted an
assurance that RC2 was not negotiating with other lawyers if
Plaintiffs were to provide a written demand, and that "Defense
counsel tacitly agreed with this assertion."  Riley Dec. ¶¶ 4-5.
Mr. Petersen states that Ms. Fegan "did not ask us during the
October 12, 2007 conference whether we were negotiating with any
other parties."  Supp. Petersen Dec. ¶ 6.  Mr. Riley sent a
letter dated October 17, 2007, referenced "Proposed Settlement
Discussion" that outlines basic contours of a settlement
proposal.  Ex. A, Riley Dec.  Mr. Riley and Petersen spoke on
various occasions in October and November 2007 regarding
settlement and mediation.  Riley Dec. ¶ 8-11.

On November 7, 2007, Interim Lead Counsel and Defense
counsel met and discussed settlement.  Supp. Murphy Dec. ¶¶ 6-7;
Riley Dec. ¶¶ 12-14.  Mr. Riley asserts that Mr. Murphy requested
a "second demand" with "hard numbers."  Riley Dec. ¶ 12.  Mr.
Murphy stated that Plaintiffs should make a demand, but denies

-3-

using the words "second demand."  Supp. Murphy Dec. ¶ 6.  Ms.
Fegan stated that Plaintiffs needed data from Defendants to make
such a demand.  Riley Dec. ¶ 13.  Plaintiff and defense counsel
exchanged emails regarding this information in the ensuing weeks.
*See* Ex. 28, Pls.' Reply.  On December 10, 2007, Plaintiffs made a
formal written demand.  Ex. 15, Pls.' Reply.  Defendants never
responded to this demand.

On August 7, 2007, Byron Barrett filed a Class Action
Complaint against RC2 in the Circuit Court of Cook County
(*Barrett v. RC2 Corp.*, No. 2007 CH 20924).  Ex. 1, Pls.' Mem. In
Support of Emergency Mot ("Pls.' Mem.").  Barrett brought the
action on behalf of purchasers of Thomas Toys that were recalled
in June and September 2007 due to excess lead surface paint.  *Id.*
Barrett's counsel, along with other counsel representing a
similar putative class in a case filed in another state, met with
RC2's counsel to discuss their views of the case and pre-trial
procedures.  *See* State Pls.' Response to Emergency Mot. for
Injunction at 7.  In October 2007, Barrett's counsel and RC2's
counsel retained a mediator, Judge Robert Boharic (Ret.).  The
parties had several mediation sessions with Judge Boharic over
the next two months and exchanged discovery.  *Id.*  On November
30, 2007, a settlement agreement was reached in principle.
Defs.' Response at 10.  The parties presented a settlement
agreement (*see* Ex. 3, Pls.' Mem.) to the court for preliminary

-4-

approval, and on January 22, 2008, Judge Maki entered a
handwritten preliminary approval order. *See* Exs. 5 & 26, Pls.'
Mem.

On January 25, 2008, RC2 moved to stay proceedings in this
court pending the outcome of the proceedings before the Circuit
Court of Cook County. *See* Defs.' Mot. to Stay Proceedings. On
January 28, Plaintiffs filed their motion requesting that this
Court "enjoin Defendants, and all those acting in conjunction
with Defendants, from pursuing, entering, negotiating, executing,
or enforcing any settlement of any claims presented in this
action without the express approval of this Court." Pls.' Mem.
at 24. On the same day, Plaintiffs filed an Emergency
Application for Leave to Intervene as Plaintiffs and Stay Notice
in the *Barrett* action. On January 29, the Circuit Court stayed
class notice pending further court order. *See* App. A, Pls.' Mot.
for Leave to File Brief in Excess of 15 Pages at 19. On January
31, the Circuit Court set a briefing schedule for MDL Plaintiffs'
motion to intervene and a hearing date of February 25, 2008.

## II. DISCUSSION

### A. Motion for Preliminary Injunction

The All Writs Act provides, "The Supreme Court and all
courts established by Act of Congress may issue all writs
necessary or appropriate in aid of their respective jurisdictions
and agreeable to the usages and principles of law." 28 U.S.C. §

1651(a).  "The All Writs Act . . . permits a federal court to support its jurisdiction, by 'issu[ing] such commands . . . as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained.'"  *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1202 (7th Cir. 1996) (quoting *United States v. New York Telephone*, 434 U.S. 159, 173 (1977)).

The power given to federal courts under the All Writs Act is circumscribed by the Anti-Injunction Act ("AIA"), which provides, "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283. The AIA applies whether the injunction is sought against parties to the state court action or the state court itself.  *See Atlantic Coast Line R.R. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 287 (1970).  Moreover, "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state court to proceed in an orderly fashion to finally determine the controversy."  *Id.* at 297.

There is no dispute that an injunction here would not be expressly authorized by Congress or issued to protect a judgment of this Court.  The question is whether an injunction is

-6-

necessary in aid of this Court's jurisdiction. "This exception . . . means that an injunction may be issued where 'necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case.'" *Winkler*, 101 F.3d at 1201 (quoting *Atlantic Coast*, 398 U.S. at 295).

Plaintiffs argue that an injunction is necessary to protect this Court's jurisdiction over the MDL proceeding and fairly and efficiently manage this complex litigation. *See* Pls.' Mem. at 19. However, the cases in which a federal court enjoined state court proceedings are factually distinguishable because settlement in federal court was imminent or conditionally approved, the federal court was protecting existing rulings such as discovery rulings, or the party sought to be enjoined had clearly tried to subvert the court's existing rulings. *See In re Baldwin-United Corp.*, 770 F.2d 328, 337 (2d Cir. 1985) (upheld injunction where settlement negotiations in district court had been underway for months and all that remained was court approval of the settlement); *see also Retirement Systems of Ala. v. J.P. Morgan Chase & Co.*, 386 F.3d 419 (2d Cir. 2004); In *re Diet Drugs*, 282 F.3d 220, 236 (3d Cir. 2002) (upheld injunction where there was a conditional class certification and pending settlement and noting that "[i]n complex cases where

-7-

certification or settlement has received conditional approval, or perhaps even where settlement is pending, the challenges facing the overseeing court are such that it is likely that almost any parallel litigation in other fora presents a genuine threat to the jurisdiction of the federal court."); *In re Wireless Telephone Federal Cost Recovery Fees Litigation*, 2003 U.S. Dist. LEXIS 26070, *11 (W.D. Mo. Dec. 22, 2003) (issued injunction "in aid of its jurisdiction to support its power to effectuate a final settlement now that the litigation has reached the settlement stage."); *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*, 134 F.3d 133, 144-45 (3d Cir. 1998) (upheld denial of injunction where "[n]o . . . interference or impairment" with the federal court's flexibility and authority to decide the case was apparent and noting that "in those cases cited by appellants were a state action has been enjoined, the federal court had already approved or conditionally approved its own settlement or the approval was imminent.").

For example, in *Winkler*, the Seventh Circuit upheld the district court's injunction prohibiting plaintiffs from seeking the disclosure of information that had been the subject of earlier orders by the district court. *See Winkler*, 101 F.3d at 1200-01. The Seventh Circuit held, "the district court quite reasonably believed that the plaintiffs were resorting to the state courts for the specific purpose of evading its ruling

-8-

denying discovery of the *Fentress* agreement. . . . Where a litigant's success in a parallel state court action would make a nullity of the district court's ruling, and render ineffective its efforts effectively to manage the complex litigation at hand, injunctive relief is proper." *Id.* at 1202.

In *In re Lease Oil Antitrust Litigation No. II*, 48 F. Supp. 2d 699 (S.D. Tex. 1998), the district court enjoined the parties from entering into a "global" settlement agreement in state court that would have had the effect of releasing the federal antitrust claims (which could only be litigated in federal court) without prior notice to and approval of the court.  The court took this action "to protect its jurisdiction over the exclusively federal antitrust claims . . . The MDL case features exclusive federal claims which entitle a prevailing plaintiff to treble damages. . . . If an effort by the defendants to reach an inadequate or collusive settlement in state courts is 'left unchecked,' then this court will be absolutely prevented from 'bring[ing] the litigation to its natural conclusion.'"  *Id.* at 704 (citation omitted).

In *In re Ocwen Federal Bank FSB Mortgage Servicing Litigation*, 397 F. Supp. 2d 957 (N.D. Ill. 2005), the district court enjoined counsel from pursuing parallel actions in state court because it "would subject this court's pre-trial Orders, including its Order granting Ocwen's Motion for Partial Summary

-9-

Judgment, to numerous instances of second guessing by state courts, and could well result in violations of the court's pre-trial Order staying discovery." *Id.* at 963. The counsel enjoined had "stated their intention to distribute materials obtained in their parallel state suits to Plaintiffs' counsel in this MDL, even though the court has issued a stay of discovery." *Id.* This was clearly an attempt to circumvent the court's rulings and hindered its ability to carry out its responsibilities under 28 U.S.C. § 1407. *Id.*

Unlike these cases, this MDL is not far advanced and there has not been a comparable expenditure of time and resources. The transfer order was entered in December 2007 and there has been some exchange of discovery and complete briefing on a motion to dismiss. *In re America Online Spin-Off Accounts Litigation*, 2005 WL 5747463 (C.D. Cal. May 9, 2005), is somewhat helpful to Plaintiffs in that the district court issued an injunction even though the MDL proceeding was in its early stages. However, even that case is distinguishable because "when AOL was unsuccessful in settling the MDL SOSA litigation before this Court, it secretly negotiated to settle the MDL SOSA claims in a completely unrelated non-SOSA state court action in Illinois." *Id.* at *2. The defendants also had a duty under the local rules to disclose the related state court action. *Id. at *5.* The record here does not show that Defendants settled with the *Barrett* plaintiffs

-10-

after failing to reach a settlement with the federal Plaintiffs. At most, the record shows that Plaintiffs and Defendants were engaged in settlement discussions around the same time that Defendants were engaged in mediation with the *Barrett* plaintiffs.

## B. Motion to Stay Proceedings

Defendants have filed a motion to stay proceedings in this Court pending final approval of the settlement in *Barrett*. This Court has the power to stay proceedings in the interest of judicial economy. *Landis v. North American Co.*, 299 U.S. 248, 254 (1936) (power to stay pending action "is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, counsel, and for litigants."). Since this MDL action and the *Barrett* action involve similar putative classes (individuals who purchased recalled Thomas toys) and similar claims (for breach of warranties, consumer fraud, negligence, etc.), the state court's approval of the settlement will have a substantial effect on some or all of Plaintiffs' claims before this Court.

The Court finds that Plaintiffs are not likely to be prejudiced by a stay. If the *Barrett* settlement is not approved by the state court, then Plaintiffs can proceed with this action. If the settlement is approved, then some or all of the claims of Plaintiffs who do not opt out will be barred by res judicata.

## III. CONCLUSION

-11-

In sum, the Court finds that an injunction is not "necessary in aid of its jurisdiction."  The parties vigorously dispute a number of other issues in their briefs, including the adequacy of the *Barrett* settlement.  If Plaintiffs believe that the the Circuit Court of Cook County.  If the objections are upheld, then Plaintiffs can proceed with the litigation in this Court.

Plaintiffs' Motion for Emergency Preliminary Injunction Pursuant to the All Writs Act is denied.  The Court enters a stay of this proceeding pending the Circuit Court of Cook County's decision approving or disapproving the proposed settlement in *Barrett v. RC2 Corp.*, or pending further order of this Court.


**IT IS SO ORDERED**.


_____
       Harry D. Leinenweber, Judge
       United States District Court

**DATE:**      February 20, 2008